IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTINE MCGOVERAN, | ) | |
| JOSEPH VALENTINE, and | ) | |
| AMELIA RODRIGUEZ, on behalf of | ) | |
| themselves and all other persons similarly | ) | |
| situated, known and unknown, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-1399 (LPS) |
| | ) | |
| AMAZON WEB SERVICES, INC. and | ) | |
| PINDROP SECURITY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PINDROP SECURITY, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:

Andrew B. Bloomer, P.C.
Catherine L. Fitzpatrick
Amelia Bailey
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

*Attorneys for Defendant Pindrop Security,
Inc.*

Diana M. Torres
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
(213) 680-8400

December 11, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................1

SUMMARY OF ARGUMENT ..............................................................................1

STATEMENT OF FACTS .....................................................................................4

ARGUMENT .........................................................................................................6

I.     PLAINTIFFS' BIPA CLAIM FAILS AS A MATTER OF LAW BECAUSE BIPA DOES NOT APPLY EXTRATERRITORIALLY AND NONE OF PINDROP'S ALLEGED CONDUCT OCCURRED IN ILLINOIS. ................................6

II.    PLAINTIFFS HAVE NOT STATED A PLAUSIBLE CLAIM AGAINST PINDROP UNDER ANY SECTION OF BIPA. ..............................................................8

     A.    Plaintiffs' Allegations Are Entirely Conclusory And Unsupported By Any Facts. ..................................................................................................9

     B.    Plaintiffs' Conclusory Allegations Do Not Identify Any Conduct By Pindrop Specifically That Violates Any Section Of BIPA. .................................11

          1.    All Five Counts Fail Because Plaintiffs Do Not Allege Facts Showing That Pindrop Collected Or Possessed Plaintiffs' Biometric Data. .........................................................................11

          2.    Count III Also Fails Because Plaintiffs Do Not Allege That Pindrop Profited From The Sale Of Their Biometric Information. ..........14

          3.    Counts IV And V Fail For The Independent Reason That Plaintiffs Allege No Facts Showing Pindrop Disclosed Plaintiffs' Biometric Data Or Failed To Meet A Pertinent Standard Of Care Under Sections 15(d) And (e). ..............................................................15

     C.    Plaintiffs Allege No Facts Showing That Pindrop Acted With The Negligence, Recklessness, Or Intent Necessary To Support Their Claim For Damages. ...............................................................................17

III.    PLAINTIFFS' BIPA CLAIMS FAIL AS A MATTER OF LAW. ..............................18

     A.    Plaintiffs' Complaint Contravenes BIPA's Statutory Exemption For Financial Institutions. ..............................................................................18

     B.    Plaintiffs' Interpretation Of BIPA Would Allow Damages Claims Based On Strict Liability, Contrary To The Plain Language Of The Act. ....................19

CONCLUSION ...................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Bello*,
  2016 WL 1670927 (D.N.J. Apr. 27, 2016), *aff'd sub nom. on other grounds,*
  *Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017) ........................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... *passim*

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ........................................................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ..........................................................................1, 7

*Baltus v. Weaver Div. of Kidde & Co.*,
  557 N.E.2d 580 (Ill. App. Ct. 1990) .................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................9, 17

*Bernal v. ADP, LLC*,
  2019 WL 5028609 (Ill. Cir. Ct. Cook Cnty. Aug. 23, 2019) ......................11, 12, 13

*Blackman v. Lincoln Nat'l Corp.*,
  2012 WL 6151732 (E.D. Pa. Dec. 10, 2012) .......................................................8

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ............................................................................5

*Corley v. United States*,
  556 U.S. 303 (2009) .......................................................................................18

*Dur–Ite Co. v. Indus. Comm'n*,
  68 N.E.2d 717 (Ill. 1946) .................................................................................7

*Ethypharm S.A. France v. Abbott Labs.*,
  707 F.3d 223 (3d Cir. 2013) ............................................................................16

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 F. App'x 94 (3d Cir. 2013) .......................................................................18

*Hamade v. Valiant Gov't Servs, LLC*,
  2019 WL 1410904 (W.D. Ky. Mar. 28, 2019) ....................................................8

*Hazlitt v. Apple, Inc.*,
  2020 WL 6681374 (S.D. Ill. Nov. 12, 2020) ...........................................................13, 14, 20

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ...................................................................10, 11, 12, 13

*Kloss v. Acuant, Inc.*,
  462 F. Supp. 3d 873 (N.D. Ill. May 21, 2020) ......................................................................13

*Landau v. CNA Fin. Corp.*,
  886 N.E.2d 405 (Ill. App. Ct. 2008) .......................................................................................7

*Liaquat Khan v. Van Remmen, Inc.*,
  756 N.E. 2d 902 (Ill. App. Ct. 2001) ......................................................................................7

*Longaker v. Bos. Sci. Corp.*,
  872 F. Supp. 2d 816 (D. Minn. 2012), *aff'd*, 715 F.3d 658 (8th Cir. 2013) ...........................8

*Maddux v. Metzger*,
  2020 WL 6742966 (D. Del. Nov. 16, 2020) ..........................................................................17

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010) ..................................................................................................15

*McGoveran v. Amazon Web Servs, Inc.*,
  2020 WL 5602819 (S.D. Ill. Sept. 18, 2020) ..............................................................2, 4, 5, 8

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ..........................................................................7

*Moore v. Solanco Sch. Dist.*,
  2020 WL 3888069 (E.D. Pa. July 10, 2020) ..........................................................................17

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) ....................................................................................................9

*Mullarkey v. Greenberg*,
  2009 WL 3754192 (D.N.J. Nov. 5, 2009) ..............................................................................17

*Namuwonge v. Kronos, Inc.*,
  418 F. Supp.3 d 279, 286 (N.D. Ill. 2019) ............................................................................13

*Rivera v. Google Inc.*,
  238 F. Supp. 3d 1088 (N.D. Ill. 2017) .....................................................................................7

*Rosenbach v. Six Flags Ent. Corp.*,
  129 N.E.3d 1197 (Ill. 2019) ..................................................................................................14

*Swiatlowski v. Werner Co.*,
   2006 WL 644484 (N.D. Ill. Mar. 7, 2006) ........................................................................20

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019) ........................................................................17

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
   390 F. Supp. 3d 892 (N.D. Ill. 2019) ........................................................................8

**Statutes**

740 ILCS 14/15(c) ........................................................................14

740 ILCS 14/15(d) ........................................................................6

740 ILCS 14/15(e) ........................................................................16

740 ILCS 14/20 ........................................................................4, 14, 17

740 ILCS 14/20(1) ........................................................................19

740 ILCS 14/20(2) ........................................................................19

740 ILCS 14/25(c) ........................................................................3, 18

15 U.S.C. § 6805(a) ........................................................................19

Gramm-Leach-Bliley Act of 1999 ........................................................................3

Kentucky Civil Rights Act ........................................................................8

Pennsylvania Humans Relations Act ........................................................................8

Tex. Bus. & Com. Code Ann. § 503.001 ........................................................................2

Wash. Rev. Code Ann. §19.375.900 ........................................................................2

**Rules**

Fed. R. Civ. P. 8 ........................................................................18

Fed. R. Civ. P. 8(a) ........................................................................10

Fed. R. Civ. P. 12(b)(6) ........................................................................6, 8, 20

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014) ........................................................................15

## NATURE AND STAGE OF THE PROCEEDINGS

This is plaintiffs' second lawsuit against defendant Pindrop Security, Inc. ("Pindrop"), on behalf of a purported class of Illinois residents seeking damages for alleged violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA").  The Illinois Act regulates the collection, use, retention, disclosure, and dissemination of biometric identifiers, such as fingerprints, voiceprints, retina and iris scans, hand scans, and facial geometry.  *Id.*  As before, plaintiffs allege, in a wholly conclusory fashion, that their "voiceprints" were collected, stored, and/or "used" without their consent.  In the first lawsuit, the District Court for the Southern District of Illinois held that plaintiffs had not alleged any wrongful conduct by Pindrop occurring in Illinois—or other connections to Illinois sufficient for personal jurisdiction—and dismissed the case without prejudice. Plaintiffs then refiled their lawsuit here, where Pindrop is incorporated. Pindrop has moved to dismiss the complaint.  This is Pindrop's opening brief in support of that motion.

## SUMMARY OF ARGUMENT

The complaint fails to state a claim and should be dismissed with prejudice.

First, the same rationale for the Illinois district court's holding that Illinois could not constitutionally exercise personal jurisdiction over Pindrop—including that plaintiffs' allegations concern conduct occurring outside Illinois—defeats their complaint in this action on the merits. The Illinois Biometric Information Privacy Act does not apply extraterritorially, and thus plaintiffs cannot state any claim under that statute where, as here, the alleged improper conduct did not occur "primarily and substantially" in Illinois.  *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005).

The Illinois statute, however, is the only one in the country that provides a private cause of action in connection with regulation of biometric information,[1] so despite their inability to allege wrongful conduct in Illinois by Pindrop, plaintiffs' new complaint again alleges the same purported violations of the Illinois statute. Specifically, plaintiffs claim they placed calls from Illinois to John Hancock "customer service representatives and/or call center(s)." D.I. 1 ¶ 93. According to plaintiffs, calls to John Hancock call centers were "intercepted" by the other defendant in this case—Amazon Web Services ("AWS"), which operates call centers and provides services and technology to John Hancock—and the audio was "sent" by AWS to Pindrop. *Id.* ¶¶ 101, 75. Plaintiffs allege that AWS and/or John Hancock use Pindrop's antifraud and authentication software in connection with those calls. *Id.* ¶¶ 67-68, 97-98. Plaintiffs do not, however, allege that Pindrop's purported statutory violations occurred "primarily and substantially" in Illinois; they allege no conduct by Pindrop in Illinois or even that Pindrop's software was used there. To the contrary, as the Illinois court recognized, "[n]othing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs." *See McGoveran v. Amazon Web Servs, Inc.*, 2020 WL 5602819, at *5 (S.D. Ill. Sept. 18, 2020). In short, plaintiffs' allegations regarding alleged wrongdoing outside Illinois cannot state a claim for violation of the Illinois statute as a matter of law, and their complaint should be dismissed with prejudice.

*Second*, plaintiffs fail to plead facts showing any plausible claim for relief. For example, plaintiffs distinguish between calls placed to John Hancock call centers and calls placed to John Hancock customer service representatives, but none of the plaintiffs say which he or she

---

[1] In other states with statutes regulating biometric data, the attorney general is charged with enforcement. *See* WASH. REV. CODE ANN. §19.375.900; TEX. BUS. & COM. CODE ANN. § 503.001.

called.  In fact, it is impossible to tell from the complaint whether *any* placed calls to call centers.  This is important because, although plaintiffs alleged that Pindrop's technology was used in connection with calls to John Hancock's call centers, they make no such allegations with respect to calls to customer service representatives.  In other words, plaintiffs allege, at most, that it is *possible* Pindrop's technology was used on audio from their calls, which is insufficient and requires dismissal of their claims.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (plaintiff must allege more than a "mere possibility of misconduct").

Similarly, the complaint contains no non-conclusory allegations that Pindrop engaged in any conduct prohibited by the statute.  It alleges that "[t]he analysis of intercepted telephone calls to extract biometric data" is done via Pindrop's software, D.I. 1 ¶ 78, which Pindrop sells to others.  *Id.* ¶ 104.  The statute, however, does not purport to ban from Illinois products or services that allegedly facilitate collection of biometric data, but instead regulates *conduct—i.e.*, a defendant's use, collection, or disclosure of such data.  In that regard, plaintiffs allege AWS is the entity that provides services and technology to John Hancock and "stores," "collects and possesses" biometric information.[2]  D.I. 1 ¶¶ 79–80.  Plaintiffs' allegations that Pindrop's technology is used by John Hancock or AWS does not state a claim for relief.  *See Iqbal*, 556 U.S. at 678 (complaint must allege facts sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

*Third*, the statute expressly does not apply "in any manner" to financial institutions, like John Hancock, that are subject to the Gramm-Leach-Bliley Act of 1999 ("GLBA").  *See* 740 ILCS 14/25(c).  Plaintiffs' theory would make unlawful John Hancock's purported use of biometric

---

[2] In pointing out plaintiffs' allegation, Pindrop does not intend to imply that plaintiffs' conclusory allegation is sufficient to state a claim against AWS.

information as a method of authenticating calls from its customers, which is contrary to the statute's broad exclusion.  In other words, imposing liability on a vendor that provides technology or services to John Hancock would effectively prevent John Hancock from using biometric data to authenticate calls—something the Illinois legislature expressly declined to do.  Likewise, holding Pindrop liable for the manner in which other entities use its lawful products would be a form of strict liability, which is contrary to the plain language of the statute, and would eliminate a required element of a claim for damages—negligent, reckless, or intentional conduct.  *See* 740 ILCS 14/20.

## STATEMENT OF FACTS

Plaintiffs' complaint is materially identical to the complaint they filed last year against defendants AWS and Pindrop in the Southern District of Illinois.  *See McGoveran*, 2020 WL 5602819.  Defendants moved to dismiss that complaint for failure to state a claim and lack of personal jurisdiction.  Each of the parties filed declarations regarding the connections (or lack thereof) between defendants, the litigation, and the State of Illinois.  The court granted defendants' motions to dismiss for lack of personal jurisdiction and dismissed the case without prejudice.  *Id.*

As in their first complaint, plaintiffs' allegations focus on technology or services used in connection with "call centers" for John Hancock, a financial institution.  Plaintiffs allege that John Hancock call centers "us[e] services provided by Defendant [AWS]," which AWS provides "under the brand 'Amazon Connect.'"  D.I. 1 ¶¶ 9, 60.  According to the complaint, Amazon Connect makes use of Pindrop's voice authentication "service" to "determine the identity of callers."  *Id.* ¶¶ 67–68.  No such allegation is made with respect to calls to John Hancock customer service representatives.  Yet plaintiffs do not allege they called John Hancock call centers; in four separate paragraphs each plaintiff alleges only that he or she "called John Hancock customer service

representatives and/*or* call center(s) on numerous occasions, from Illinois, using Illinois telephone numbers." *Id.* ¶¶ 93–96 (emphasis added).

Plaintiffs allege that John Hancock call centers "'no longer require[] customers to have a pin for authentication.' Instead they use Pindrop's 'voice biometrics' to authenticate callers." *Id.* ¶ 98 & nn.20–21 (quoting Salesforce website, Why John Hancock Uses Salesforce & Amazon Connect for its Call Center, https://www.salesforce.com/products/service-cloud/resources/john-hancock-contactcenter/, archived at https://perma.cc/6PTX-CQHW. But in the part of the sentence omitted from plaintiffs' quote, the source makes clear that that John Hancock *continues* to use PINs for authentication. *Id.*[3] Plaintiffs conclude that it is "evident … Plaintiff [sic] called John Hancock call centers that had implemented Defendants' biometric data collection technology." D.I. 1 ¶ 99.

Although the complaint alleges that AWS and Pindrop provide distinct products and services, when describing the alleged statutory violations, the complaint refers to "Defendants" without specifying what (if any) purported unlawful conduct is attributed to Pindrop itself. *See* D.I. 1 ¶¶ 87–92. Furthermore, these allegations simply parrot the language of the statute. Without alleging any supporting facts, plaintiffs claim that:

- Defendants violated Section 14/15(a) by failing to make available a written policy establishing a retention schedule and guidelines for destroying biometric information and also failing to destroy biometric data. *Id.* ¶¶ 87, 88.

---

[3] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (courts may consider a document relied upon in the complaint to avoid circumstances where a plaintiff is able to maintain a claim "by extracting an isolated statement from a document and placing it in the complaint" without providing the full context).

- "Defendants fail to obtain informed written consent prior to collecting this biometric information as required by BIPA section 15(b)." *Id.* ¶ 86.

- Defendants and their corporate customers "'disclose, redisclose, and disseminate' to and between each other the biometric information and biometric identifiers of callers," without first obtaining consent. *Id.* ¶ 89 (quoting 740 ILCS 14/15(d)); *id.* ¶ 90.

- Defendants "profit" from the use of biometric data, in violation of Section 14/15(c) of BIPA. *Id.* ¶ 91.

- "[O]n information and belief, Defendants fail to apply the industry standard of care in storing, transmitting, and protecting from disclosure biometric data, and fail to apply a standard of care which is the same as or more protective than the manner in which they protect other confidential information, including, but not limited to healthcare data, in violation of BIPA section 15(e)." *Id.* ¶ 92.

The complaint does not allege that any purportedly wrongful conduct by Pindrop took place in Illinois. Plaintiffs allege that they placed calls "from Illinois" to John Hancock "customer service representatives and/or call centers" in unspecified locations, and that AWS "intercepted" calls to call centers and "sent" the audio to Pindrop, without alleging that Pindrop or its servers were located in Illinois. *Id.* ¶¶ 93–96; *id.* ¶¶ 101, 75.

## ARGUMENT

## I. PLAINTIFFS' BIPA CLAIM FAILS AS A MATTER OF LAW BECAUSE BIPA DOES NOT APPLY EXTRATERRITORIALLY AND NONE OF PINDROP'S ALLEGED CONDUCT OCCURRED IN ILLINOIS.

Plaintiffs' complaint should be dismissed in its entirety under Rule 12(b)(6) because it requires an application of a state statute, not intended to apply outside of Illinois, to extraterritorial

conduct.  The Illinois Supreme Court has repeatedly held that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery*, 835 N.E.2d at 852 (quoting *Dur–Ite Co. v. Indus. Comm'n*, 68 N.E.2d 717, 722 (Ill. 1946)). Courts have found that "none of BIPA's express provisions indicates that [it] was intended to have extraterritorial effect."  *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017); *see also Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017)**.**

Thus, to be actionable, a BIPA violation must occur *within Illinois*.  *See Rivera*, 238 F. Supp. at 1100 (plaintiffs' "asserted violations of [BIPA] must have taken place in Illinois in order for them to win").  According to the Illinois Supreme Court, this means plaintiffs must show that the circumstances relating to Pindrop's alleged violations of BIPA "occur[red] *primarily and substantially*" in Illinois.  *Avery*, 835 N.E.2d at 854 (emphasis added); *see also Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. Ct. 2008) ("[T]he majority of circumstances relating to the alleged violation of the [statute]" must have occurred in the state.); *Liaquat Khan v. Van Remmen*, *Inc.*, 756 N.E. 2d 902, 913 (Ill. App. Ct. 2001) (affirming dismissal of claim by Illinois resident against out-of-state employer because "it is clear that the legislature intended for [the Illinois Wage Payment and Collection Act] to apply only to Illinois employees and Illinois employers").

Plaintiffs' complaint makes clear that the circumstances related to their claims against Pindrop took place entirely outside of Illinois.  Indeed, the only conduct alleged to occur in Illinois was not by Pindrop, but by plaintiffs, who placed calls "from" Illinois to John Hancock "customer service representatives and/or call center(s)" in unspecified locations. D.I. 1 ¶¶ 6–8, 93.  Moreover, according to plaintiffs, the call centers "us[ed] services provided by [AWS]," not Pindrop.  *Id.* ¶ 9. It is only after AWS allegedly "intercepted" plaintiffs' calls that the data was supposedly sent to

Pindrop.  *Id.* ¶ 101.  But plaintiffs do not and cannot allege that anything other than their initiation of the call occurred in Illinois.

> The Southern District of Illinois reached the same conclusion in plaintiffs' first case:
>
>> Plaintiffs were the ones who made the call—to John Hancock—from their Illinois phone numbers.  AWS then intercepted the calls once they were connected to an Amazon Connect call center and sent the audio to Pindrop for processing.  The output from that processing was the returned to AWS's servers.  Nothing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs.

*McGoveran*, 2020 WL 5602819, at *5.  In other words, plaintiffs have not alleged any conduct or actions by Pindrop in Illinois.  Because plaintiffs do not allege and cannot show that Pindrop's purported conduct occurred primarily and substantially in Illinois, they cannot state a BIPA claim against Pindrop.  *See, e.g. U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 911 (N.D. Ill. 2019) (dismissing claim for violation of Illinois statute where plaintiff failed to allege conduct occurring "primarily and substantially in Illinois"); *cf. Blackman v. Lincoln Nat'l Corp.*, 2012 WL 6151732, at *2–3 (E.D. Pa. Dec. 10, 2012) (dismissing claim under the Pennsylvania Humans Relations Act because the "discriminatory act" took place outside of Pennsylvania); *Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 819 (D. Minn. 2012) (dismissing employee's claim under Minnesota Human Rights Act as an impermissible extraterritorial application where employee worked in California, and contract specified Minnesota forum), *aff'd*, 715 F.3d 658 (8th Cir. 2013); *Hamade v. Valiant Gov't Servs, LLC*, 2019 WL 1410904, at *4–5 (W.D. Ky. Mar. 28, 2019) (dismissing claim under Kentucky Civil Rights Act where employee worked only in Iraq, notwithstanding purported agreement that Kentucky law would apply).

## II.   PLAINTIFFS HAVE NOT STATED A PLAUSIBLE CLAIM AGAINST PINDROP UNDER ANY SECTION OF BIPA.

Rule 12(b)(6) requires dismissal when a complaint lacks allegations of fact that, if true, would enable the court to infer a defendant is liable.  *See Iqbal*, 556 U.S. at 678 (plaintiff must

"plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, or "naked assertion[s]" devoid of "further factual enhancement," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citations omitted). The Court does not accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citations omitted). Where, as here, the complaint lacks non-conclusory assertions from which a court could infer an entitlement to relief, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.")).

### A. Plaintiffs' Allegations Are Entirely Conclusory And Unsupported By Any Facts.

Plaintiffs' allegations attempting to tie Pindrop to plaintiffs' biometric data are nothing more than the type of "threadbare recitals of the elements of a cause of action," lifted from BIPA's text, that fall short of the requirements of *Iqbal, Twombly*, and their progeny. *Iqbal*, at 556 U.S. at 678. Plaintiffs' only possible connection to Pindrop is the alleged use of its technology on data obtained from calls to John Hancock call centers, but plaintiffs allege no more than a possibility that their telephone calls were ever subject to the processes alleged in their complaint. D.I. 1. ¶¶ 93–96 (plaintiffs "called John Hancock customer service representatives and/or call center(s)").

In addition, plaintiffs' suggestion that the alleged use of Pindrop's technology is the only way John Hancock authenticates calls depends upon their truncating a quotation from a source that says the opposite: that the company also continues to use PINs for authentication. *Id*. ¶ 98 & nn.20–21.[4] Plaintiffs' failure to allege, one way or the other, if they used a PIN when they called John Hancock—along with their manipulation of the quoted source—further demonstrates that plaintiffs have alleged no more than a possibility of any connection between plaintiffs and Pindrop's technology.

In short, plaintiffs have not alleged that Pindrop has taken any action or engaged in any conduct in relation to *plaintiffs'* biometric data.  Instead, their assertion that "AWS and Pindrop apply their voice biometric technology to every caller to John Hancock's call center(s)," D.I 1. ¶ 100, without facts showing that plaintiffs called a John Hancock call center and that Pindrop itself applied its technology to their calls, is the type of conclusory allegation that fails to state a plausible claim.  *Iqbal*, at 556 U.S. at 678, 680; *see id.* at 678–79 ("[Rule 8(a)] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) (dismissing complaint where plaintiff "repeatedly alleges that [defendant] 'collected' his biometric data without alleging how, when, or any other factual detail.. . . These allegations 'merely parrot' the BIPA's statutory language; they do not provide any 'specific facts to ground [plaintiff's] legal claims.'").

---

[4] Quoting Salesforce website, Why John Hancock Uses Salesforce & Amazon Connect for its Call Center, https://www.salesforce.com/products/service-cloud/resources/john-hancock-contactcenter/, archived at https://perma.cc/6PTX-CQHW).  The complete sentence reads "John Hancock still offers authentication via the Lex bot when customers provide personally identifiable information (PII) but the company no longer requires customers to have a pin for authentication."

**B.      Plaintiffs' Conclusory Allegations Do Not Identify Any Conduct By Pindrop Specifically That Violates Any Section Of BIPA.**

1.      All Five Counts Fail Because Plaintiffs Do Not Allege Facts Showing That Pindrop Collected Or Possessed Plaintiffs' Biometric Data.

Even if plaintiffs were able to allege that Pindrop's software was used by John Hancock to authenticate their calls—and they do not—they allege no facts showing *Pindrop* itself took any action in violation of BIPA.  To show that Pindrop violated *any* section of BIPA, plaintiffs must allege that Pindrop either collects or possesses a biometric identifier or biometric information, as defined in the statute.  Specifically, Section 15(b) of BIPA applies only to entities that take affirmative action to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information," while Sections 15(a) and 15(c)–(e) apply only to entities that possess biometric identifiers or biometric information. Plaintiffs' allegations are insufficient to show that Pindrop either collected or possessed their biometric data.

*First*, Count II of the complaint seeks to hold Pindrop liable for alleged violations of Section 15(b), which requires companies to obtain informed consent before they "collect, capture, purchase, receive through trade, or otherwise obtain" a person's biometric data.  "[M]ere possession of biometric data is insufficient"; instead "for Section 15(b)'s requirements to apply, an entity must, at a minimum, take an active step."  *See Heard*, 440 F. Supp. 3d at 965–66 (citing, *e.g., Bernal v. ADP, LLC*, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Cook Cnty. Aug. 23, 2019)). Indeed, the section's four verbs—"collect, capture, purchase [or] receive through trade"—require affirmative action to acquire an individual's biometrics.

Plaintiffs fail to show that *Pindrop* "collected" their biometric data, as their complaint is devoid of any allegation showing affirmative action taken by Pindrop.  Plaintiffs claim they called "John Hancock customer service representatives and/or call center(s)," D.I 1 ¶¶ 93–96, and that

11

the "call centers us[ed] services provided by Defendant Amazon Web Services," *id.* ¶ 9.  Plaintiffs then assert that *AWS* "intercepted the telephone calls made by Plaintiffs to John Hancock and collected and stored plaintiffs' biometric data harvested from those calls." *Id.* ¶ 101.  But plaintiffs never allege that *Pindrop* received calls from plaintiffs or any other Illinois citizens, or that *Pindrop* did anything to collect biometric identifiers or information.[5]  As a result, plaintiffs fail to state a claim against Pindrop under Section 15(b) of BIPA, and Count II of their complaint should be dismissed.  *See Heard*, 440 F. Supp. 3d at 967 (plaintiff "does not allege how the data made its way to [defendant's] systems."); *Bernal*, 2019 WL 5028609, at *2 (dismissing complaint where plaintiff "failed to allege facts sufficient  . . . to properly assess Defendant's actual involvement  . . . beyond the fact that Defendant supplied Rockit with the technology").

*Second*, Counts I and III–V are brought under Sections 15(a) and (c)–(e) of BIPA, respectively, all of which require non-conclusory allegations that Pindrop "possesses" biometric data.  Those Counts should be dismissed because plaintiffs have not alleged any facts showing Pindrop "exercised any form of control over the data or that it held the data at its disposal." *Heard*, 440 F. Supp. 3d at 968 (dismissing claims under Sections 15(a) and 15(d) of BIPA because plaintiff did not adequately plead possession).  Instead, plaintiffs allege that "the biometric data of Plaintiffs and the Class are stored on *AWS's servers*," that "*AWS* collects and possesses 'biometric information' as defined by BIPA," and that "*AWS* stores biometric templates on its servers."  D.I. 1 ¶¶ 79–81 (emphasis added).  *Pindrop*, however, is never alleged to have exercised *any* dominion or control over biometric data, and, as a result, plaintiffs do not, and cannot, state a claim under Sections (a), (c), (d), or (e) of BIPA.

---

[5] As noted above, Pindrop does not intend to imply that plaintiffs' conclusory allegations about AWS are sufficient to survive a motion to dismiss on any of their causes of action.

Plaintiffs' reliance on a diagram taken from Amazon's website provides them no help on any of their five Counts. According to plaintiffs, the diagram shows biometric data is "sent to Pindrop for processing" and Pindrop returns the output from that processing to AWS. *Id.* ¶¶ 73-75. But it shows no such thing. The Pindrop icon in the diagram is identified as a "platform," not a separate entity that performs authentication on its own. *Id.* ¶ 73. Indeed, one of the articles plaintiffs cite refers to Pindrop's product as a "self-service" technology. *See* BusinessWire, *Amazon Connect Certifies Pindrop's Security and Authentication Technology*, available at https://www.businesswire.com/news/home/20171127005113/en/Amazon-Connect-Certifies-Pindrops-Security-Authentication-Technology (last accessed Nov. 20, 2020) (cited in D.I. 1 ¶ 66 n.15). Far from plausibly showing that Pindrop collects or exercises control over biometric data, the documents relied on by plaintiffs indicate that Pindrop provides voice recognition technology which *other entities* can use to verify the identity of callers.[6]

These contradictions are confirmed by other allegations in the complaint. For example, plaintiffs allege that "[t]he analysis of intercepted telephone calls to extract biometric data . . . is done via *software* developed, maintained, and controlled by Pindrop," D.I. 1 ¶ 78 (emphasis added), which Pindrop sells to others, *id.* ¶ 104. Critically, plaintiffs allege that *AWS*, not Pindrop, "collects and possesses 'biometric information'" and "stores this biometric information on its servers." *Id.* ¶¶ 79, 80. In other words, plaintiffs' claim that Pindrop "hosts" their data, *id.* ¶ 76,

---

[6] See *Hazlitt v. Apple, Inc.*, 2020 WL 6681374, at *9 (S.D. Ill. Nov. 12, 2020) (describing cases in which "the relationship between the plaintiff and the manufacturer was a third-party relationship—the manufacturers sold machines to employers or businesses who then had employees or customers use the devices, ultimately collecting their biometric data. In those cases, the intervening employer or business possessed and collected the biometric data, not the manufacturer of the device") (citing *Heard*, 440 F. Supp. 3d at 965-66; *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873 (N.D. Ill. May 21, 2020); *Namuwonge v. Kronos, Inc.*, 418 F. Supp.3 d 279, 286 (N.D. Ill. 2019); *Bernal*, 2019 WL 5028609, at *1-2).

cannot be reconciled with their own allegations.  There is thus no basis to hold Pindrop liable under any section of BIPA, and all five Counts should be dismissed.

2.      Count III Also Fails Because Plaintiffs Do Not Allege That Pindrop Profited From The Sale Of Their Biometric Information.

Section 15(c) prohibits entities in possession of a person's biometric identifiers or information from selling, leasing, trading, or otherwise profiting from that person's data.  740 ILCS 14/15(c).  Plaintiffs allege that Pindrop profited by "marketing, selling and performing ***biometric analysis and storage services***," not that it sold, leased, or traded ***biometric data***, which is what Section 15(c) requires.  *See* D.I. 1 ¶ 150 (emphasis added).  Furthermore, plaintiffs' allegation that Pindrop profited from possession of biometric data is unsupported by any facts tying Pindrop's purported profits to *their individual* biometric information.  Thus, although plaintiffs assert that "Section 15(c) is an unqualified prohibition on profiting from Biometric Data," *id.* ¶ 34, only a person "aggrieved" by a violation of the statute has a cause of action for its breach.  740 ILCS 14/20.  According to the Illinois Supreme Court, a plaintiff is "aggrieved" if the person's "biometric identifier or biometric information ***is subject to the breach***."  *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019) (emphasis added).  Without facts showing that plaintiffs' data is connected to Pindrop's alleged breach of Section 15(c), plaintiffs are not aggrieved by the alleged breach and cannot state a claim.

Plaintiffs' allegations are similar to those rejected in *Hazlitt v. Apple Inc.*, 2020 WL 6681374 (S.D. Ill., Nov. 12, 2020), in which plaintiffs claimed Apple violated Section 15(c) by profiting off its facial recognition technology.  *Id.* at *7.  The court held that plaintiffs did "not allege that Apple sold or otherwise profited from their *individual* biometric data," and therefore "[did] not, nor could they, claim to be personally or individually affected by Apple selling devices based on the facial recognition technology in its Photos app."  *Id.*  The court's analysis was in the

context of evaluating plaintiffs' standing to sue in federal court, and because the court found it

lacked jurisdiction, it did not address whether plaintiffs stated a claim. But its reasoning parallels

the Illinois Supreme Court's holding that an "aggrieved person" is one whose data was subject to

the claimed breach. Because plaintiffs failed to plead facts establishing that Pindrop profited from

its use or possession of their *individual* biometric information or identifiers, they cannot state a

claim for violation of Section 15(c).

> 3.    Counts IV And V Fail For The Independent Reason That Plaintiffs Allege
>       No Facts Showing Pindrop Disclosed Plaintiffs' Biometric Data Or Failed
>       To Meet A Pertinent Standard Of Care Under Sections 15(d) And (e).

Plaintiffs do not allege that Pindrop disclosed any biometric information to a third party in

violation of Section 15(d). Instead, plaintiffs allege only that, "AWS, Pindrop, and their corporate

customers also 'disclose, redisclose, and disseminate' to and between each other the biometric

information and biometric identifiers of callers." D.I.. 1 ¶ 89; *see also id*. ¶ 104. Plaintiffs do not

identify how or to whom Pindrop disclosed any biometric information, let alone the biometric

information of plaintiffs. Indeed, according to plaintiffs, AWS, not Pindrop, possesses and stores

the biometric data that is purportedly collected. *See id*. ¶¶ 79–81. In other words, plaintiffs plead

no facts showing that Pindrop did, or even could, disclose or disseminate any of plaintiffs'

biometric information to a third party. In the absence of such factual allegations, plaintiffs'

formulaic recitation that "Defendants" committed the acts prohibited by a statute is not enough to

state a claim. *Mayer v. Belichick,* 605 F.3d 223, 237 (3d Cir. 2010).

Plaintiffs' claim that Pindrop "disclosed" biometric information to AWS is likewise

insufficient to state a claim under Section 15(d). *See* D.I. 1 ¶ 117. "Disclosure," in the legal

context, means "to make known or public; to show after a period of inaccessibility or of being

unknown; to reveal." *Black's Law Dictionary* (10th ed. 2014). It is, of course, nonsensical to

accuse Pindrop of "revealing" something to AWS that plaintiffs allege AWS itself collected in the

first place.  *See id.* ¶ 101 ("AWS knowingly intercepted the telephone calls made by Plaintiffs to John Hancock and collected and stored Plaintiffs' biometric data harvested from those calls.").  In other words, plaintiffs' conclusory allegations concerning Pindrop are contradicted by their conclusory allegations about AWS, rendering their claims incoherent and implausible.  *See Iqbal*, 556 U.S. at 680.

Finally, plaintiffs' claim that Pindrop violated Section 15(e)'s standard of care requirement is equally deficient.  That section requires an entity "in possession of a biometric identifier or biometric information" to use "the reasonable standard of care ***within the private entity's industry***" to "store, transmit, and protect" such data and to do so in "the ***manner in which the private entity stores, transmits, and protects other confidential and sensitive information***."  740 ILCS 14/15(e) (emphasis added).  Plaintiffs do not allege any facts (i) showing that Pindrop stores such information, (ii) explaining or describing Pindrop's storage practices with respect to confidential and sensitive information and how Pindrop purportedly failed to follow its own practices, or (iii) identifying the industry standard of care Pindrop's practices allegedly failed to meet.[7]  Plaintiffs' legal conclusions, unsupported by facts, do not suffice to state a claim against Pindrop under Section 15(e) of BIPA.  *See Iqbal*, 556 U.S. at 678; *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (courts must "disregard legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (citations omitted).

---

[7] Instead, plaintiffs assert the curious conclusion that defendants "fail[ed] to treat Plaintiffs' biometric data with the same degree of care they applied to other confidential data, such as healthcare data."  D.I. 1 ¶ 120.  But they have not alleged that Pindrop is in the healthcare industry (it is not).  They instead claim that Pindrop's website states that it requires the collection of employees' healthcare data.  Pindrop's website states no such thing.  *See* https://www.pindrop.com/company/careers/.  In any event, these mistaken contentions are entirely irrelevant to plaintiffs' allegation that Pindrop does not apply the appropriate standard of care.

### C.   Plaintiffs Allege No Facts Showing That Pindrop Acted With The Negligence, Recklessness, Or Intent Necessary To Support Their Claim For Damages.

Finally, to state a claim for damages under BIPA, plaintiffs must allege facts showing that Pindrop's conduct was negligent, reckless, or intentional.  *See* 740 ILCS 14/20 (allowing liquidated or actual damages (whichever is greater) for negligent, reckless, or intentional conduct).[8]  Yet, as to this required element, the complaint contains only legal conclusions that must be disregarded on a motion to dismiss:

> 134.  Defendants' BIPA violations are violations of Defendants' duty of ordinary care owed to Plaintiffs and the Class.

> 135.  In the alternative, Defendants' BIPA violations were willful and wanton. Defendants knowingly, intentionally and/or recklessly violated the duty they owed to Plaintiffs and the Class.

D.I. 1 ¶¶ 134, 135; *see Iqbal*, 556 U.S. at 679 (legal conclusions "must be supported by factual allegations").  Plaintiffs have not alleged any facts from which a court could infer that any purported violation of BIPA was either negligent or reckless.  Indeed, plaintiffs have pleaded nothing about Pindrop's state of mind or degree of fault.  *See Twombly*, 550 U.S. at 570; *Maddux v. Metzger*, 2020 WL 6742966, at * 5 (D. Del. Nov. 16, 2020) (dismissing Eighth Amendment claim because conclusory allegations were insufficient to show sufficiently culpable state of mind); *Moore v. Solanco Sch. Dist.*, 2020 WL 3888069, at *3 (E.D. Pa. July 10, 2020) ("When

---

[8] In their Prayer for Relief, plaintiffs request an injunction "to protect the Class," but their complaint fails to allege an inadequate legal remedy, so they are not entitled to an injunction as a matter of law.  *See TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) ("[T]he inability to show irreparable harm–or, relatedly, that a legal remedy would be inadequate–defeats a request for injunctive relief."); *Allen v. Bello*, 2016 WL 1670927, at *15 (D.N.J. Apr. 27, 2016) (holding that plaintiffs "have not shown that they have no adequate remedy at all, and their request for injunctive relief against [defendant] must be dismissed."), *aff'd sub nom. on other grounds, Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017); *Mullarkey v. Greenberg*, 2009 WL 3754192, at *2 (D.N.J. Nov. 5, 2009) (dismissing claim for injunctive relief because "[n]one of the allegations of Plaintiff's Complaint, even if assumed to be true, plausibly support the inadequacy of a legal remedy for the Plaintiff's alleged harm, such as money damages").

pleading knowledge, the complaint must still contain more than a 'conclusory allegation,' and the pleading must meet the 'less rigid — though still operative — strictures of Rule 8.'") (quoting *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 103 n.15 (3d Cir. 2013)).[9]

In sum, plaintiffs' complaint is devoid of facts showing Pindrop did—or even could do— anything that violates BIPA. Plaintiffs' bare legal conclusions and unsupported allegations are insufficient to state any valid claim. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (quotations and citation omitted). Accordingly, all five of plaintiffs' Counts should be dismissed.

## III.   PLAINTIFFS' BIPA CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiffs' Complaint Contravenes BIPA's Statutory Exemption For Financial Institutions.

Plaintiffs' complaint against Pindrop separately fails in its entirety under the express provisions of BIPA, and no repleading can save it. As the statute demands, "[n]othing in this Act shall be deemed to apply *in any manner* to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 (the "GLBA") and the rules promulgated thereunder." 740 ILCS 14/25(c) (emphasis added).

As plaintiffs' complaint shows, Pindrop's only alleged involvement in this case is that its lawful technology is incorporated with AWS's services, which are employed by John Hancock's call centers to authenticate callers. *Id.* ¶ 97. As plaintiffs' allegations make clear, John Hancock

---

[9] Furthermore, nothing in the statute suggests that negligence or recklessness may be inferred from a bare violation, which is the most plaintiffs allege; otherwise, the specification of negligence or recklessness in the statute would be entirely superfluous. *Cf. Corley v. United States*, 556 U.S. 303, 314 (2009) (one of the most basic interpretive canons is that "'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (citation omitted).

is a financial institution under the GLBA.  *See id.* ¶¶ 93–96; 15 U.S.C. § 6805(a) (including in the definition of financial institution "investment companies," "investment advisers," "any person engaged in providing insurance," and "any other financial institution").  Under these circumstances, imposing liability on Pindrop—because a financial institution's call centers allegedly used Pindrop's technology in connection with calls by plaintiffs to that financial institution—necessarily requires application of BIPA in some manner to a financial institution. Given plaintiffs' allegations, Pindrop could only be liable under BIPA if the financial institution plaintiffs allegedly called is subject to and required to comply with BIPA's provisions.  Such a requirement would necessarily be an application of BIPA to a financial institution, in violation of BIPA's express terms.  In other words, by alleging that plaintiffs' biometric data was collected during calls to a financial institution that used Pindrop's services and technology to authenticate callers, plaintiffs' complaint contravenes BIPA's prohibition and impermissibly seeks to impose liability for conduct expressly allowed under BIPA.

**B.     Plaintiffs' Interpretation Of BIPA Would Allow Damages Claims Based On Strict Liability, Contrary To The Plain Language Of The Act.**

BIPA does not outlaw the possession, collection, dissemination, or storage of biometric data, nor products or services that facilitate such possession, collection, etc.  Instead, the statute imposes restrictions on how those activities are carried out, and provides for damages only if the violation was negligent, reckless, or intentional.  Plaintiffs have alleged no facts suggesting negligent, reckless, or intentional conduct by Pindrop, and hence awarding damages against Pindrop under the circumstances of this case—for its customer's lawful conduct and use of Pindrop's lawful product or services—is contrary to the legislature's decision to require some degree of fault.  *See* 740 ILCS 14/20(1); 740 ILCS 14/20(2).

Plaintiffs seek to hold Pindrop liable for conduct over which it has no control.  According to plaintiffs: (1) they called John Hancock; and (2) John Hancock uses Amazon Connect—which uses Pindrop's technology—to authenticate its callers.  But plaintiffs have not alleged that Pindrop has any control over the manner in which its customers use its technology.  Nor have they explained how Pindrop can be liable for damages (without reference to fault) for John Hancock's use of its products or services, or how or why Pindrop should be held responsible for John Hancock's alleged use of Pindrop's technology to authenticate callers.  Indeed, to hold Pindrop liable for the actions of a BIPA-exempt entity—actions Pindrop cannot control—would eliminate any consideration of Pindrop's fault.  This consideration, though, is the key distinction between a negligence and strict liability standard under Illinois law.  *See, e.g.*, *Swiatlowski v. Werner Co.*, No. 03 C 0691, 2006 WL 644484, at *3 (N.D. Ill. Mar. 7, 2006) ("Negligence does not permit liability without fault.") (citing *Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580, 586 (Ill. App. Ct. 1990)).  Plaintiffs' attempted end run around the exclusion for financial institutions—by suing an entity that merely provides technology or services used by the financial institution— would eliminate a required element (degree of fault) for a claim for damages.  *Cf. Hazlitt*, 2020 WL 6681374, at *9 (noting that where "the manufacturers sold machines" used to collect biometric data, "the intervening employer or business possessed and collected the biometric data, not the manufacturer of the device.").

For this reason as well, plaintiffs' complaint should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, plaintiffs' complaint against Pindrop should be dismissed in its entirety and with prejudice under Rule 12(b)(6) because plaintiffs have not alleged—and cannot allege—any viable claim against Pindrop.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Andrew B. Bloomer, P.C.
Catherine L. Fitzpatrick
Amelia Bailey
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Diana M. Torres
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
(213) 680-8400

December 11, 2020

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant Pindrop Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 11, 2020, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire        *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Andrew D. Schlichter, Esquire        *VIA ELECTRONIC MAIL*
Joel Rohlf, Esquire
Alexander L. Braitberg, Esquire
SCHLICHTER BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO  63102
*Attorneys for Plaintiffs*

Jody C. Barillare, Esquire        *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
1201 North Market Street, Suite 2201
Wilmington, DE 19801
*Attorneys for Defendant Amazon Web Services, Inc.*

Elizabeth Herrington, Esquire        *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601
*Attorneys for Defendant Amazon Web Services, Inc.*

Raechel Keay Kummer, Esquire                           *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendant Amazon Web Services, Inc.*

/s/ *Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)