## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CHRISTINE MCGOVERAN, JOSEPH
VALENTINE, and AMELIA RODRIGUEZ, on
behalf of themselves and all other persons similarly
situated, known and unknown,

        Plaintiffs,

      v.

AMAZON WEB SERVICES, INC. and PINDROP
SECURITY, INC.,

        Defendants.

C.A. No. 1:20-cv-01399-LPS

---

## OPENING BRIEF IN SUPPORT OF DEFENDANT
## AMAZON WEB SERVICES, INC.'S MOTION TO DISMISS

Dated: December 11, 2020

Beth Herrington (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, IL  60601
(312) 324-1000
beth.herrington@morganlewis.com

Raechel Keay Kummer (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000
raechel.kummer@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web Services, Inc.*

# TABLE OF CONTENTS

**Page**

I. RELEVANT BACKGROUND ...................................................................... 2

    A. The Illinois Biometric Information Privacy Act .................................... 2

    B. The Parties ............................................................................................. 2

    C. Causes of Action ................................................................................... 4

II. ARGUMENT ............................................................................................... 4

    A. The Court Should Dismiss Plaintiffs' Claims Because BIPA Does Not Apply Extraterritorially to AWS's Alleged Conduct ............................ 5

        1. BIPA Does Not Apply Extraterritorially .................................... 5

        2. Plaintiffs' Claims Violate the Extraterritoriality Doctrine Because Plaintiffs Do Not Allege that AWS's Relevant Conduct Occurred "Primarily and Substantially" in Illinois .................................... 6

        3. The Southern District of Illinois's Order on Personal Jurisdiction Shows that AWS's Conduct Did Not Take Place "Primarily and Substantially" in Illinois .............................................................. 9

    B. BIPA's Financial Institution Exception Precludes Plaintiffs' Claims ................. 10

    C. Plaintiffs Fail to State Claims Under BIPA Sections 15(a)–(e) ........................... 11

        1. The Court Should Dismiss Plaintiffs' Section 15(b) Claim Because AWS is a Third-Party Provider and Thus Not Subject to Section 15(b) ......................................................................................... 12

        2. Plaintiffs Fail to Allege that AWS "Possessed" Their Biometric Data and thus Fail to State Claims Under Sections 15(a) and 15(c)–(e) ............................................................................................... 14

        3. Plaintiffs Fail to Plead a Section 15(a) Claim Because They Fail To Plausibly Allege that AWS Lacks a BIPA-Compliant Retention Policy .......................................................................................... 17

        4. Plaintiffs Fail to Plead a Section 15(c) Claim Because They Do Not Plausibly Allege that AWS "Profited" from Their Biometrics ......... 18

        5. Plaintiffs' Section 15(d) Claim Fails Because Plaintiffs Do Not Allege Facts Regarding AWS's Alleged Disclosure of Biometric Information .................................................................................. 19

        6. Plaintiffs' Section 15(e) Claim Fails Because Plaintiffs Do Not Identify the Applicable Standard of Care Nor Allege Facts About How AWS Stores, Transmits, or Protects Confidential and Sensitive Information ................................................................. 20

III. CONCLUSION ..........................................................................................

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005).............................................................................................5, 9

*Bernal v. ADP, LLC*,
    No. 2017-CH-12364, Order (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019).....................................13

*Bridges v. Torres*,
    809 F. App'x 69 (3d Cir. 2020) ...........................................................................................16

*Bryant v. Compass Group USA, Inc.*,
    2020 WL 7013963 (N.D. Ill. Nov. 29, 2020) .....................................................................17

*Dana Tank Container, Inc. v. Human Rights Comm'n*,
    687 N.E.2d 102 (Ill. App. Ct. 1997) ..................................................................................12

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)...........................................................................................................14

*Hazlitt v. Apple Inc.*,
    2020 WL 6681374 (S.D. Ill. Nov. 12, 2020) ...............................................................17, 18

*Heard v. Becton, Dickinson & Co.*,
    440 F. Supp. 3d 960 (N.D. Ill. 2020) .......................................................................12, 15, 19

*Honeywell Int'l, Inc. v. Dept. of Revenue of State of Ill.*,
    851 N.E.2d 79 (2006).........................................................................................................14

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3d Cir. 2012)..............................................................................................4, 8

*Kloss v. Acuant, Inc.*,
    462 F. Supp. 3d 873 (N.D. Ill. 2020) ..............................................................................8, 12

*Landau v. CNA Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. 2008) ..........................................................................................5

**TABLE OF AUTHORITIES**
(continued)

**Page**

*McGoveran v. Amazon Web Servs., Inc.*,
   2020 WL 5602819 (S.D. Ill. Sept. 18, 2020) ...................................................................1, 8, 10

*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ...........................................................................5

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) .......................................................................13, 19, 20

*Neals v. PAR Tech. Corp.*,
   419 F. Supp. 3d 1088 (N.D. Ill. 2019) ......................................................................................9

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ...................................................................................................5

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3d Cir. 1993) ..................................................................................................16

*People v. Hanna*,
   800 N.E.2d 1201 (Ill. 2003) .....................................................................................................14

*Pooh-Bah Enter., Inc. v. Cnty. of Cook*,
   905 N.E.2d 781 (Ill. 2009) .......................................................................................................18

*Rivera v. Google, Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ......................................................................................5

*Sisk v. Sussex Cty.*,
   2012 WL 1970879 (D. Del. June 1, 2012) ........................................................................3, 6, 16

*Super Pawn Jewelry & Loan, LLC v. Am. Envtl. Energy, Inc.*,
   2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) ...........................................................................7

*Tarzian v. Kraft Heinz Foods Co.*,
   2019 WL 5064732 (N.D. Ill. Oct. 9, 2019) ...............................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................................................16

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) .........................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

15 U.S.C. §§ 6801, 6809.................................................................................................11

740 ILCS 14/10................................................................................................................2

740 ILCS 14/15................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 11 ...............................................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................... *passim*

This is the second forum in which Plaintiffs Christine McGoveran, Joseph Valentine, and Amelia Rodriguez allege that Defendants Amazon Web Services, Inc. ("AWS") and Pindrop Security, Inc. ("Pindrop") violated the Illinois Biometric Information Privacy Act ("BIPA"). Plaintiffs previously filed a related case in the U.S. District Court for the Southern District of Illinois. The Southern District of Illinois rightly dismissed that action for lack of personal jurisdiction on September 18, 2020, and as a result did not reach AWS's arguments that Plaintiffs failed to state a claim. D.I. 1-1; *McGoveran v. Amazon Web Servs., Inc.*, 2020 WL 5602819, at *5–6 (S.D. Ill. Sept. 18, 2020). Plaintiffs have refiled their Complaint in the District of Delaware, but their new forum choice should yield the same result of dismissal. Plaintiffs still fail to state a claim, and for numerous reasons, this Court should dismiss the Complaint with prejudice under Rule 12(b)(6):

*First*, BIPA does not apply extraterritorially. BIPA therefore could apply to AWS only if AWS's alleged BIPA-related conduct occurred primarily and substantially in Illinois. Plaintiffs fail to allege that AWS engaged in ***any*** conduct in Illinois giving rise to BIPA liability. On the contrary, Plaintiffs allege only that Massachusetts-based non-party John Hancock Financial Services, Inc. ("John Hancock") used AWS services to verify the identity of its customers over the phone. Plaintiffs do not claim that AWS's alleged storage of their biometric information has any link to Illinois. BIPA does not reach AWS's alleged conduct.

*Second*, BIPA's financial institution exception precludes Plaintiffs' claims. Plaintiffs' claims stem from calls made to John Hancock – a "financial institution" exempt from liability under 740 ILCS 14/25(c) – and AWS's alleged liability would be entirely contingent on the actions of John Hancock, an exempted entity.

*Third*, Plaintiffs' BIPA Section 15(a)–(e) claims should be dismissed for failure to state a claim because Plaintiffs fail to plausibly plead facts that AWS "collected" or "possessed" Plaintiffs' "biometric information." Plaintiffs claim that AWS is a third-party provider of cloud storage services. Plaintiffs fail to allege any direct relationship between themselves and AWS. BIPA's plain language and common sense make clear that the statute does not require third-party vendors like AWS to provide written notice or obtain consent from individuals with whom it has no relationship. Furthermore, the Court may take judicial notice of AWS's publicly-available data privacy policies, which are also relied upon and incorporated into the Complaint.

## I.     RELEVANT BACKGROUND

### A.     The Illinois Biometric Information Privacy Act

BIPA regulates the collection, possession, and storage of certain biometric identifiers and information. The statute defines "biometric identifier" using a short, exclusive list of personal data: "'[b]iometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

### B.     The Parties

Plaintiffs are Illinois residents who called John Hancock "customer service representatives and/or call center(s)" "from Illinois[] using Illinois telephone numbers." D.I. 1, Compl. ¶¶ 6–8, 93. Plaintiffs claim that John Hancock's "call center(s) use Amazon Connect with Pindrop biometric voiceprint authentication," which allegedly "collected, captured, obtained, and possessed the biometric identifiers of Plaintiffs." *Id.* ¶¶ 97, 115.

Non-party John Hancock is a Massachusetts-based company and "one of the nation's leading financial services companies, providing a broad array of insurance and investment products and services to retail and institutional customers, primarily in North America."[1]

Pindrop is a Delaware corporation that allegedly offers "voice biometric services" and "voiceprint services . . . used by call centers and customer service personnel to confirm the identity of individual callers." Compl. ¶¶ 12, 52–53.

AWS is a Delaware corporation. Plaintiffs allege that AWS "offers cloud storage services, offering its customers the ability to store their data, access their data remotely, and create backup copies of their data." *Id.* ¶¶ 10, 59. Plaintiffs also allege that AWS "offers call center services under the brand 'Amazon Connect,'" which is "a 'cloud-based contact center service.'" *Id.* ¶¶ 60–61 (citation omitted).

Plaintiffs claim that Pindrop's "voice authentication services" are integrated with AWS's Amazon Connect service, and that audio from incoming calls to call centers that use Amazon Connect "is sent to Pindrop for processing," where "[t]he analysis of intercepted telephone calls to extract biometric data takes place in part on Pindrop's servers[] and is done via software developed, maintained, and controlled by Pindrop." *Id.* ¶¶ 66–68, 78. Plaintiffs claim "[t]he output from that processing is returned to AWS's servers." *Id.* ¶ 75.

---

[1]   *See* John Hancock Annual Report (Form 10-K), at 4, available at https://www.sec.gov/Archives/edgar/data/736260/000092701603001209/d10k.htm (last accessed Dec. 4, 2020); Secretary of the Commonwealth of Massachusetts, Corporations Division – Business Entity Summary for JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=hXKc8TX9tXZ1k.a5v5jPESZPvU3WtgQO2AhXcfPmRfw- (last accessed Dec. 4, 2020). The Court can take judicial notice of these facts in considering AWS's Motion to Dismiss. *See, e.g.*, *Sisk v. Sussex Cty.*, 2012 WL 1970879, at *1 n.3 (D. Del. June 1, 2012) (court faced with a motion to dismiss can consider "matters of public record") (internal citations omitted).

### C.       Causes of Action

Plaintiffs allege in conclusory fashion that AWS violated BIPA "by collecting, possessing, redisclosing, profiting from, and failing to safeguard their biometric identifiers and biometric information." *Id.* ¶ 1.  Plaintiffs assert all five causes of action available under BIPA, alleging that AWS violated BIPA:

1)   Section 15(a) by not "creating and following a written policy, made available to the public, establishing and following a retention schedule and destruction guidelines for their possession of biometric identifiers and information," *id.* ¶ 133;

2)   Section 15(b) "by capturing, collecting, and obtaining Plaintiffs' . . . biometric identifiers and biometric information . . . without first obtaining informed written consent," *id.* ¶¶ 140–42;

3)   Section 15(c) "by profiting from the possession of Plaintiffs' . . . biometric identifiers and biometric information," *id.* ¶ 150;

4)   Section 15(d) "by disclosing, redisclosing, and disseminating Plaintiffs' . . . biometric identifiers and biometric information . . . without consent," *id.* ¶ 156; and

5)   Section 15(e) by "failing to store, transmit, and protect from disclosure these biometric identifiers and biometric information while using a reasonable standard of care within Defendants' respective industries," *id.* ¶ 162.

Plaintiffs do not allege that AWS ***directly*** collected or possessed their biometric data, but rather that the John Hancock call centers they called merely use AWS services to collect and possess Plaintiffs' data.  *See, e.g.*, *id.* ¶ 9 ("Plaintiffs made phone calls to call centers using services provided by [AWS]."); *id.* ¶ 59 (AWS offers customers "the ability to store ***their data***, access ***their data*** remotely, and create backup copies of data") (emphasis added).

## II.    <u>ARGUMENT</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[L]abels and conclusions" or "a formulaic

-4-

recitation of the elements of a cause of action" do not suffice.  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) ("[W]e disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.").

The Court should dismiss Plaintiffs' BIPA claims under Rule 12(b)(6) because the claims violate Illinois's extraterritoriality doctrine, are barred by BIPA's financial institution exception, and fail to state a claim under BIPA's plain language.

## A.      The Court Should Dismiss Plaintiffs' Claims Because BIPA Does Not Apply Extraterritorially to AWS's Alleged Conduct.

### 1.      BIPA Does Not Apply Extraterritorially.

Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (citation omitted).  "[N]one of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect." *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017).  Because BIPA "was not intended to and does not have extraterritorial application," "asserted violations of [BIPA] must have taken place in Illinois" to fall within the statute. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100, 1104 (N.D. Ill. 2017).  This Court must assess "where the essential elements of a BIPA violation [allegedly took] place." *Patel v. Facebook, Inc*., 932 F.3d 1264, 1276 (9th Cir. 2019).

AWS could be subject to BIPA only if "the majority of circumstances relating to the alleged violation of the [statute]" occurred in Illinois. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008).  Put another way, for BIPA to apply to AWS, "the circumstances relating to the claim [must have] occur[ed] primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 853; *see*

*also Patel*, 932 F.3d at 1275–76 (applying "primarily and substantially" test to BIPA claim). Plaintiffs' claims fail this test.

> **2.      Plaintiffs' Claims Violate the Extraterritoriality Doctrine Because Plaintiffs Do Not Allege that AWS's Relevant Conduct Occurred "Primarily and Substantially" in Illinois.**

AWS's alleged relevant conduct has no direct link to, and is several steps removed from, Illinois.  The Complaint does not allege that any AWS data center is in Illinois, and public documents demonstrate that AWS's U.S. data centers are in Virginia, Ohio, California, and Oregon – not Illinois.[2]  Plaintiffs allege that (i) they called John Hancock call centers from Illinois; (ii) John Hancock sent call audio recordings to Pindrop in Georgia;[3] (iii) Pindrop created "voiceprints" in Georgia based on the recordings; and (iv) Pindrop sent the "voiceprints" to AWS for storage. Compl. ¶¶ 75–81, 93–97.  BIPA does not regulate AWS's out of state conduct as a matter of law.

The primary and substantial elements of Plaintiffs' five BIPA claims involve the following alleged conduct:

- **Section 15(a) (Count I)**: Allegedly possessing Plaintiffs' biometric data without developing and following a public biometric retention and destruction policy and guidelines for destroying the data, *id.* ¶ 133;

- **Section 15(b) (Count II)**: Allegedly collecting Plaintiffs' biometric data without first notifying them of the purpose and duration of the collection and without their written consent, *id.* ¶¶ 140–41;

---

[2] *See* "Using AWS in the Context of Common Privacy & Data Protection Considerations" at 8, available at https://d1.awsstatic.com/whitepapers/compliance/Using_AWS_in_the_context_of_Common_Privacy_and_Data_Protection_Considerations.pdf, attached as Exhibit A.  The Court may consider materials outside the Complaint in ruling on AWS's Motion to Dismiss. *See, e.g., Sisk*, 2012 WL 1970879, at *1 n.3 (court faced with a motion to dismiss may consider "matters of public record" and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the . . . document[s]") (internal citations omitted).

[3] Pindrop is a Delaware corporation, Compl. ¶ 12, with its headquarters and principal place of business in Atlanta, Georgia.  *See* Bloomberg, Pindrop Security, Inc. Profile, available at https://www.bloomberg.com/profile/company/0313861D:US (last visited Dec. 4, 2020).

- **Section 15(c) (Count III)**: Allegedly "[p]rofit[ing]" from Plaintiffs' biometric data, *id.* ¶ 150;

- **Section 15(d) (Count IV)**: Allegedly disclosing Plaintiffs' biometric data without their consent or where the disclosure was not made to "complete any financial transaction requested or authorized by Plaintiffs," *id.* ¶ 156; and

- **Section 15(e) (Count V)**: Allegedly "failing to store, transmit, and protect from disclosure" Plaintiffs' biometric data "while using a reasonable standard of care within Defendants' respective industries," *id.* ¶ 162.

The Court should dismiss all five counts because Plaintiffs do not allege that AWS engaged in ***any*** of this conduct ***in Illinois*** – and they could not so allege consistent with their obligations under Rule 11.  Fed. R. Civ. P. 11.

Plaintiffs make only unsupported, conclusory statements about the location of the alleged conduct:

- Plaintiffs reside in Illinois and "called John Hancock customer service representatives and/or call center(s) . . . from Illinois[] using Illinois telephone numbers."  Compl. ¶¶ 6–8, 93.

- "Defendants gathered data about Illinois callers including their phone numbers," "knew that they were extracting biometric information from calls originating in Illinois, from Illinois citizens, using Illinois phone numbers," and "knew that they were extracting this biometric data from call audio intercepted in Illinois."  *Id.* ¶¶ 82, 84–85; *see also id.* ¶¶ 110–12 (alleging "Defendants performed biometric analysis to extract biometric data from audio taken from Illinois").

- "Defendants profit from the Biometric Data they collect in Illinois . . . ."  *Id.* ¶ 109.

Each of these statements fall well short of alleging that AWS's relevant conduct occurred "primarily and substantially" in Illinois.  *First*, Plaintiffs' Illinois residence cannot, without more, satisfy Illinois's extraterritoriality doctrine.  *See, e.g.*, *Super Pawn Jewlery & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (no substantial connection where plaintiff was an Illinois business); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752,

775 (N.D. Ill. 2008) (dismissing case when only contact was plaintiffs' Illinois residence).  Nor can Plaintiffs satisfy the extraterritoriality doctrine by claiming that "Defendants gathered data about Illinois callers including their phone numbers," Compl. ¶ 82, an allegation that boils down to nothing more than Plaintiffs' Illinois residency.

*Second*, Plaintiffs fail to allege an Illinois nexus by claiming Defendants "knew that they were extracting biometric information from calls originating in Illinois, from Illinois citizens, using Illinois phone numbers" and "knew that they were extracting this biometric data from call audio intercepted in Illinois." *Id.* ¶¶ 84–85.  Defendants' alleged knowledge has no bearing on the conduct regulated by BIPA Section 15, i.e., the collection and storage of biometric data.  In any event, Plaintiffs' statement regarding Defendants' purported "knowledge" "that they were extracting biometric information from calls originating in Illinois, from Illinois citizens, using Illinois phone numbers" is an unsupported legal conclusion that fails to meet *Twombly* and *Iqbal*'s plausibility standard.  *See, e.g.*, *James*, 700 F.3d at 679; *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (N.D. Ill. 2020) (dismissing BIPA Section 15(b) and (d) claims where "[plaintiff] does not support her claims with sufficient facts").  Plaintiffs allege no ***facts*** indicating how AWS purportedly "knew" it was extracting biometric information from calls originating in Illinois. "Plaintiffs' voice audio" being "intercepted in Illinois by Defendants" and "Defendants perform[ing] biometric analysis to extract biometric data from audio taken from Illinois," Compl. ¶¶ 110–11, similarly fails to allege an Illinois connection because Plaintiffs do ***not*** allege that their "voice audio" constitutes biometric information subject to BIPA or that any purported "biometric analysis" took place in Illinois – only that the analysis was performed on "audio taken from Illinois."

-8-

*Third*, Plaintiffs' allegation that "Defendants profit from the Biometric Data they collect in Illinois," *id.* ¶ 109, is irrelevant.  Plaintiffs allege only that AWS profited through its commercial relationship with ***Massachusetts-based*** John Hancock.  *See id.* ¶¶ 97, 104; *McGoveran*, 2020 WL 5602819, at *6 ("[T]here is no indication that either AWS or Pindrop specifically targeted Illinois citizens when they provided their voiceprinting services to John Hancock.  Rather, Plaintiffs' voiceprints were collected because John Hancock chose to use Amazon Connect with Pindrop to analyze the voices of its customers.").

In short, AWS's alleged possession of "voiceprints" of Illinois residents, Compl. ¶¶ 2, 113, 133, 150, 156, 162–63, does ***not*** show AWS possessed, collected, profited from, disclosed, or stored "voiceprints" ***in Illinois*** without using the reasonable standard of care.  On the contrary, Plaintiffs allege AWS obtained their voiceprints from Pindrop, who in turn obtained "call audio" from Massachusetts-based John Hancock.  *Id.* ¶¶ 64–75.  Plaintiffs do not allege AWS's purported conduct – or any part of this process – occurred "primarily and substantially" in Illinois, as required to state a claim under Illinois law, nor do they have a good faith basis to do so given their awareness of the location of AWS's U.S. data centers.  *Avery*, 835 N.E.2d at 853; *see also Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091–92 (N.D. Ill. 2019) (dismissing BIPA complaint with leave to amend where court was "unable to reasonably infer from the complaint that [plaintiff's] fingerprint was collected in Illinois"); *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *3 (N.D. Ill. Oct. 9, 2019) (dismissing claims under Rule 12(b)(6) based on absence of Illinois connection).

### 3.    The Southern District of Illinois's Order on Personal Jurisdiction Shows that AWS's Conduct Did Not Take Place "Primarily and Substantially" in Illinois.

Before filing their Complaint in this Court, Plaintiffs filed a similar complaint in the U.S. District Court for the Southern District of Illinois.  *See* D.I. 1-1 (Civil Cover Sheet attached to

Complaint listing "related case" before Honorable Nancy J. Rosenstengel in Case No. 3:20-CV-31-NJR (S.D. Ill.)).  The court in that case ("*McGoveran I*") held that it had no personal jurisdiction over AWS because AWS lacked "minimum contacts" with Illinois and personal jurisdiction could not be established based on AWS's ties to non-party John Hancock:

> In this case, Plaintiffs were the ones who made the call – to John Hancock – from their Illinois phone numbers.  AWS then intercepted the calls once they were connected to an Amazon Connect call center and sent the audio to Pindrop for processing.  The output from that processing was then returned to AWS's servers.  ***Nothing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs***.
>
> Moreover, there is no indication that either of these companies purposefully directed their activities at Illinois citizens or that this litigation arises from contacts they created with Illinois.  Rather, the litigation arises because John Hancock, a third party based in Massachusetts, contracted with AWS and Pindrop to analyze the voices of its customers.

*McGoveran I*, 2020 WL 5602819, at \*5–6 (internal citations omitted) (emphasis added).  The extraterritoriality standard – requiring that the relevant conduct occur "primarily and substantially" in Illinois – is more robust than the "minimum contacts" specific personal jurisdiction standard. Because personal jurisdiction in Illinois does not exist, it follows that Plaintiffs' claims violate the more exacting Illinois's extraterritoriality doctrine.  And, as in *McGoveran I*, Plaintiffs allege that AWS and Pindrop "appl[ied] their voice biometric technology to every caller to John Hancock's call centers – not just those calls initiated by Illinois residents," *id.* at \*6; *see* Compl. ¶ 100 – meaning Plaintiffs do not allege that AWS specifically directed any conduct at Illinois.

**B.      BIPA's Financial Institution Exception Precludes Plaintiffs' Claims.**

BIPA explicitly does not apply "***in any manner***" to "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach Bliley Act of 1999 [the 'GLBA'] and the rules promulgated thereunder."  740 ILCS 14/25(c) (emphasis added).  The

-10-

GLBA applies to financial institutions, i.e., companies that offer consumers financial products or services like loans, financial or investment advice, or insurance. 15 U.S.C. §§ 6801, 6809. BIPA's financial institution exception precludes AWS's liability in this case.

Plaintiffs allege that their biometric information was collected and stored when they called John Hancock, Compl. ¶¶ 93–101, which is a financial institution subject to the GLBA. *See* John Hancock Annual Report (Form 10-K), at 33 (describing "federal initiatives" with an "impact on [John Hancock's] business," including the GLBA).

Because BIPA does not apply "***in any manner***" to John Hancock – the only entity with whom Plaintiffs communicated – BIPA likewise does not apply to AWS. Plaintiffs' own Complaint (Compl. at p. 17 n.20) cites an article noting that Pindrop's security services, offered in connection with those offered by AWS, were implemented at John Hancock's insistence to protect its customers' financial accounts and information – the whole point of the GBLA and BIPA exception. AWS's alleged liability in this case is entirely contingent on the actions of John Hancock, an exempted entity. Plaintiffs cannot circumvent the financial institution exception by attacking vendors affiliated with John Hancock because BIPA expressly does not apply to exempt financial institutions "in any manner." 740 ILCS 14/25(c). It follows that BIPA cannot apply to a third-party vendor acting on an exempted entity's behalf and/or at an exempt entity's direction. Accordingly, this Court should dismiss Plaintiffs' Complaint in its entirety for failure to state a claim.

### C.    Plaintiffs Fail to State Claims Under BIPA Sections 15(a)–(e).

Even if BIPA applied to AWS's alleged conduct (it does not) and Plaintiffs' claims were not barred by BIPA's financial institution exception (they are), the claims would ***still*** fail because Plaintiffs fail to plausibly plead that AWS possessed, collected, profited from, disclosed, or stored

their biometric data without using the appropriate standard of care and thus fail to state claims under Sections 15(a)–(e).

1.      **The Court Should Dismiss Plaintiffs' Section 15(b) Claim Because AWS is a Third-Party Provider and Thus Not Subject to Section 15(b).**

BIPA Section 15(b) requires private entities who "collect" an individual's biometric data to first: (1) inform the individual "in writing that . . . biometric information is being collected"; (2) inform the individual "in writing of the specific purpose and length of term for which . . . biometric information is being collected"; and (3) receive "a written release executed by the subject." 740 ILCS 14/15(b).  Unlike Sections 15(a) and 15(c)–(e) – which are triggered by passive "possession" of biometric data – only ***actions*** trigger Section 15(b), i.e., the private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information.  *Id.*  Section 15(b) therefore does not regulate entities that merely "possess[]" biometric information, but only entities who actively "collect" biometric information.  Had the legislature meant Section 15(b) to apply to all entities who "possess" biometrics, it could have explicitly done so – as it did in Sections 15(a) and 15(c)–(e).  *See, e.g.*, *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. Ct. 1997) ("Where the legislature uses certain words in one instance and different words in another, it intended different results.").

This textual difference confirms Section 15(b) does not apply to AWS's alleged conduct, as Plaintiffs do not claim AWS actively collected biometric information directly from them.  *See, e.g.*, *Kloss*, 462 F. Supp. 3d at 876 (dismissing BIPA Section 15(b) claim where "[plaintiff] does not allege her relationship to [defendant] which allowed [defendant] to acquire her biometric information, i.e. whether she had a direct relationship with [defendant] or with one of the private companies that used [defendant's] software"); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d

-12-

960, 965–66 (N.D. Ill. 2020) ("[F]or Section 15(b)'s requirements to apply, an entity must at a minimum, **take an active step** to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data.") (citation omitted) (emphasis added); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing Section 15(b) claim against third-party timekeeping vendor and noting the "difference between *possessing* and *collecting* biometric information"); *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013, Tr. at 29–36 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(b) claim against third-party timekeeping vendor) (attached as <u>Exhibit B</u>); *Bernal v. ADP, LLC*, No. 2017-CH-12364, Order at 2–3 (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(a)–(d) claims against third-party timekeeping vendor and noting Section 15(b)'s "requirement that the private entity whose actions the subsection is meant to regulate must receive a 'written release' . . . suggest[s] that the legislature did not intend for the subsection to apply to a third party entity") (attached as <u>Exhibit C</u>).

Following this authority, the Court should dismiss Plaintiffs' Section 15(b) claim against AWS, a passive third party that allegedly only offered "its customers the ability to store **their data**, access **their data** remotely, and create backup copies of data." Compl. ¶ 59 (emphasis added); *see also id.* ¶¶ 93–101 (alleging that while calling **John Hancock**, Plaintiffs' biometrics were processed and stored using Amazon Connect). Key here, Plaintiffs allege their biometrics were collected "[b]ecause John Hancock's call centers(s) use this technology." *Id.* ¶ 98. As a third-party provider, AWS is not subject to BIPA's written notice and consent requirements as a matter of law. *Namuwonge*, 418 F. Supp. 3d at 286.

Construing Section 15(b) to impose notice and release obligations on third-party service providers like AWS would yield absurd results and render BIPA unworkable. Plaintiffs would need to provide written consent (at least) three times and to (at least) three separate entities (John

Hancock, then Pindrop, then AWS) to ensure compliance with BIPA.  But "to read BIPA as requiring that a third party provider of the biometric . . . technology, without any direct relationship with [plaintiffs], obtain written releases from said [plaintiffs] would be unquestionably not only inconvenient but arguably absurd."  Ex. C at 2–3.  It would be particularly absurd where John Hancock is expressly exempted from liability under BIPA.  *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *People v. Hanna*, 800 N.E.2d 1201, 1207–09 (Ill. 2003) (rejecting statutory construction leading to "absurd result" that regulated entity would be unable to comply with the statute's requirements).

As a third-party, cloud-storage provider with no direct connection to Plaintiffs, AWS is not liable under BIPA Section 15(b) as a matter of law.  This Court should dismiss Plaintiffs' Section 15(b) claim with prejudice.

> **2.    Plaintiffs Fail to Allege that AWS "Possessed" Their Biometric Data and thus Fail to State Claims Under Sections 15(a) and 15(c)–(e).**

Sections 15(a) and 15(c)–(e) apply only to private entities "in possession" of biometric data.  740 ILCS 14/15.  Plaintiffs, however, fail to allege facts supporting their conclusory allegation that AWS "possessed" biometric data, Compl. ¶ 63, and thus fail to plausibly plead that AWS is subject to any requirements set forth in Sections 15(a) or (c)–(e).

The term "possession" is well-defined legally:

> . . . a man is said to possess or to be *in possession* of anything of which he has the apparent control, or from the use of which he has the apparent power of *excluding others* . . . [A]ny of the usual outward marks of ownership may suffice, *in the absence of manifest power in someone else* . . . .

-14-

*Black's Law Dictionary* (10th ed. 2014) (citation omitted) (emphasis added).  Under Illinois law, one does not possess an item "unless he has the ability, at a given time, to exercise dominion and control over [it]."  *Honeywell Int'l, Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79, 85 (2006).  Thus, Plaintiffs must plead that AWS exercised control over their biometrics to the exclusion of others.

The Complaint fails to allege that AWS exercised *any* dominion and control over Plaintiffs' biometric data – much less "to the exclusion of all others."  Being a third-party vendor has nothing to do with the "possession" of biometrics, as a matter of law.  Plaintiffs allege a series of activities where ***John Hancock,*** not AWS, exercised control over their biometrics.  *See, e.g.*, Compl. ¶¶ 59, 93–101 (AWS offers "its customers the ability to store ***their data*** [and] access ***their data*** remotely" and alleging that while calling non-party John Hancock, Plaintiffs' biometrics were processed and stored using the Amazon Connect service) (emphasis added); *Heard*, 440 F. Supp. 3d at 968 (dismissing Section 15(a) claim where plaintiff did "not adequately plea[d] 'possession' because he fail[ed] to allege that [defendant] exercised *any* dominion or control over [his] biometric data").[4] Plaintiffs never allege that John Hancock delegated its dominion and control over its customer data to AWS, a mere vendor.  Sections 15(a) and 15(c)–(e) turn on possession and do not apply to AWS.  Plaintiffs' claims Sections 15(a) and 15(c)–(e) must be dismissed.

Plaintiffs' Section 15(a) and 15(c)–(e) claims also fail because AWS customers, e.g., John Hancock, retain ownership and control of any content they store using AWS services.  AWS's publicly-available agreements and policies regarding data privacy state that AWS customers own

---

[4] To the extent the Complaint suggests any entity besides John Hancock possessed their biometric data, it alleges that entity is ***Pindrop*** (not AWS).  *See, e.g.*, Compl. ¶ 76 ("Pindrop hosts Plaintiffs' and the Class's biometric data on its servers.  ***Pindrop exclusively controls these servers***.") (emphasis added).

and control their content and retain complete control over when and whether AWS continues to host their data.  Any biometric information collected by AWS's commercial customer is that customer's content, as defined by the AWS Customer Agreement.  *See, e.g.*, AWS Customer Agreement at 20, § 14, available at https://aws.amazon.com/agreement/ (last accessed Dec. 4, 2020), attached as Exhibit D ("'Your content' means Content that you or any End User transfers to us for processing, storage or hosting by the Services in connection with your AWS account . . . ."); *id.* at 3, § 3.2 ("You may specify the AWS regions in which Your Content will be stored. You consent to the storage of Your Content in, and transfer of Your Content into, the AWS regions you select. We will not access or use Your Content except as necessary to maintain or provide the Service Offerings, or as necessary to comply with the law or a binding order of a governmental body."); AWS's "Data Privacy FAQ" at 2, available at https://aws.amazon.com/compliance/data-privacy-faq/ (last accessed Dec. 4, 2020), attached as Exhibit E ("As a customer, ***you maintain ownership of your content***, and you select which AWS services can process, store, and host your content. We do not access or use your content for any purpose without your consent.") (emphasis added).[5]  "Using AWS in the Context of Common Privacy & Data Protection Considerations" further provides that "***[c]ustomers retain ownership and control of their content*** when using AWS services," and that:

---

[5] These online documents are matters of public record and may be considered by this Court in ruling on AWS's Motion to Dismiss.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts "ordinarily examine . . . matters of which the court may take judicial notice" when ruling on a Rule 12(b)(6) motion); *Sisk*, 2012 WL 1970879, at *1 n.3.  Moreover, the Complaint repeatedly cites information from AWS's website, Compl. at pp. 9, 13, 14, 17, and the Court can also consider AWS's website in connection with this Motion as "'a document *integral to or explicitly relied* upon in the complaint.'"  *Bridges v. Torres*, 809 F. App'x 69, 71 (3d Cir. 2020) (internal quotation marks and citation omitted); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering job application attached to motion to dismiss where plaintiff's claims were based on document).

> AWS does not collect personal data from individuals whose personal data is included in content a customer stores or processes using AWS, and ***AWS has no contact with those individuals***. Therefore, AWS is not required and is unable in the circumstances to communicate with the relevant individuals. AWS only uses customer content to provide the AWS services selected by each customer to that customer and does not use customer content for any other purposes.

Ex. A at 3, 14 (emphasis added).  AWS did not possess Plaintiffs' biometric data and is not subject to BIPA Sections 15(a) or 15(c)–(e).  This Court should dismiss Plaintiffs' Section 15(a) and 15(c)–(e) claims for failure to state a claim.

> **3.      Plaintiffs Fail to Plead a Section 15(a) Claim Because They Fail To Plausibly Allege that AWS Lacks a BIPA-Compliant Retention Policy.**

The Court should dismiss Plaintiffs' Section 15(a) claim because the claim is unripe. Section 15(a) requires an entity to destroy biometric data when "the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."  740 ILCS 14/15(a).  Here, Plaintiffs do not allege that they stopped using John Hancock call centers and thus fail to allege that any obligation to destroy data under Section 15(a) has been triggered.  *See, e.g.*, *Bryant v. Compass Group USA, Inc.*, 2020 WL 7013963, at *2–3 (N.D. Ill. Nov. 29, 2020) (dismissing "unripe" Section 15(a) claim where plaintiff failed to allege that initial purpose for collecting biometric data was satisfied); *Hazlitt v. Apple Inc.*, 2020 WL 6681374, at *6 (S.D. Ill. Nov. 12, 2020) (plaintiffs "fail[ed] to describe a violation" of Section 15(a) by "not alleg[ing] that they have ceased use of the application or device collecting the biometric data," meaning "the initial purpose for collecting the data has not been satisfied, nor have three years passed since Plaintiffs last interacted with Apple or its devices").

The Court should also dismiss the Section 15(a) claim because Plaintiffs do not allege that AWS "established retention and destruction guidelines," Compl. ¶ 133 (claiming Defendants did not "creat[e] . . . a written policy" regarding retention of biometric data), which is an "antecedent

-17-

allegation" required to state a Section 15(a) claim.  *See Bryant*, 2020 WL 7013963, at *2 (dismissing Section 15(a) claim where complaint was "silent as to whether [defendant] had any retention and destruction guidelines" and noting: "[o]ne cannot fail to comply with guidelines that do not exist.  Merely holding on to biometric information does not give rise to a § 15(a) claim unless holding on to it violates the established retention and destruction guidelines").  For this reason, too, the Court should dismiss Plaintiffs' Section 15(a) claim.

  **4.**   **Plaintiffs Fail to Plead a Section 15(c) Claim Because They Do Not Plausibly Allege that AWS "Profited" from Their Biometrics.**

  Plaintiffs' BIPA Section 15(c) claim – based on AWS allegedly "profiting" from Plaintiffs' biometrics by "charg[ing] fees for and profit[ing] from its Amazon Connect services," Compl. ¶ 69 – turns on a mischaracterization of "profit" under Section 15(c).  That section provides an entity may not "sell, lease, trade, or otherwise profit from a person's . . . biometric identifier or biometric information."  The four verbs – "sell, lease, trade, or otherwise profit" – all contemplate the direct provision of biometric data in exchange for money.  740 ILCS 14/15(c).  "[W]hen a statutory clause specifically describes several classes of . . . things and then includes 'other . . . things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009).  Thus, like "sell," "lease," and "trade," Section 15(c)'s use of "otherwise profit" contemplates an entity receiving a pecuniary benefit in exchange for a person's biometric data – not the indirect "profit" gained by charging fees for providing a "cloud-based contact center service" that uses "voice authentication services."  Compl. ¶¶ 61, 67; *see* IL H.R. Tran. 2008 Reg. Sess. No. 276 at 112 (BIPA's legislative history showing legislature intended for Section 15(c) to "prohibit[] the ***sale*** of biometric information") (emphasis added) (excerpt attached as Exhibit F); *Hazlitt*, 2020 WL 6681374, at *7 ("[B]y its plain language, section 15(c) clearly

prohibits profiting from 'a person's or a customer's' biometric identifier or biometric information, not the general sales of devices equipped with facial recognition technology."). Plaintiffs allege that "AWS charges fees for and profits from voiceprint products and services," Compl. ¶ 69, but they do not allege that AWS charges fees or profits from selling individuals' biometric data. The Court should therefore dismiss Plaintiffs' Section 15(c) claim.

> **5.** **Plaintiffs' Section 15(d) Claim Fails Because Plaintiffs Do Not Allege Facts Regarding AWS's Alleged Disclosure of Biometric Information.**

Section 15(d) requires that a private entity not "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information" unless the individual consents or the disclosure completes a financial transaction. 740 ILCS 14/15(d). Plaintiffs appear to allege AWS violated 15(d) because "Pindrop, after collecting Plaintiffs' . . . biometric data, disclosed and disseminated that data to AWS," who "after receiving from Pindrop and storing Plaintiffs' . . . biometric data, redisclosed and disseminated that data to AWS's Amazon Connect customers." Compl. ¶¶ 117–18; *see also id.* ¶ 119 ("Defendants disseminated, between each other and their call center clients, the biometric data of Plaintiffs . . . ."). Plaintiffs' conclusory allegations that both Defendants disclosed Plaintiffs' biometric information are insufficient to state a claim. *Id.* ¶ 156. Plaintiffs fail to allege facts regarding what biometric information AWS allegedly disclosed, or how AWS allegedly disclosed that unidentified biometric information. Plaintiffs thus fail to allege a Section 15(d) violation. *See Heard*, 440 F. Supp. 3d at 969 (dismissing Section 15(d) claim where plaintiff's "[c]omplaint contains no allegations of fact"); *Namuwonge*, 418 F. Supp. 3d at 285 (dismissing Section 15(d) claim where plaintiff merely alleged "on information and belief" that defendant disclosed her biometric information to third parties and failed to allege "specifics related to any disclosure"); Ex. C at 4–5 (single statement

-19-

that defendant's technology allowed dissemination of plaintiff's biometric information "f[e]ll short of sufficient factual pleading").

      **6.**    **Plaintiffs' Section 15(e) Claim Fails Because Plaintiffs Do Not Identify the Applicable Standard of Care Nor Allege Facts About How AWS Stores, Transmits, or Protects Confidential and Sensitive Information.**

Plaintiffs likewise fail to allege facts supporting their claim that AWS violated Section 15(e) by not "stor[ing], transmit[ing], and protect[ing] from disclosure all biometric identifiers and biometric information" using a reasonable standard of care within the private entity's industry, and in a manner that is the same as or more protective than the manner in which the entity stores, transmits, and protects other confidential and sensitive information. 740 ILCS 14/15(e). Plaintiffs do not identify the standard of care applicable to AWS's industry, nor allege facts regarding the manner in which AWS stores, transmits, or protects confidential and sensitive information. Because Plaintiffs' allegations are "void of any facts" regarding the alleged storage and protection of Plaintiffs' biometric data, the Court should dismiss Plaintiffs' Section 15(e) claim. Ex. C at 4–5; *see also Namuwonge*, 418 F. Supp. 3d at 285.[6]

## III.   <u>CONCLUSION</u>

For the foregoing reasons, AWS respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

---

[6] The Court should also dismiss the Complaint because Plaintiffs fail to allege facts showing AWS acted with the state of mind necessary to support their claim for damages. To state a claim for damages under BIPA, Plaintiffs must allege facts showing that AWS's conduct was negligent, reckless, or intentional. *See* 740 ILCS 14/20 (allowing liquidated or actual damages (whichever is greater) for negligent, reckless, or intentional violations). But as to this required element, the Complaint contains only legal conclusions that must be disregarded on a motion to dismiss. *See, e.g.*, Compl. ¶¶ 91–92 (concluding without explanation that "Defendants' BIPA violations are violations of Defendants' duty of ordinary care owed to Plaintiffs").

December 11, 2020

Beth Herrington (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, IL  60601
(312) 324-1000
beth.herrington@morganlewis.com

Raechel Keay Kummer (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000
raechel.kummer@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
_____
Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web Services, Inc.*

-21-