IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>      Plaintiffs,<br><br>    v.<br><br>AMAZON WEB SERVICES, INC. and PINDROP SECURITY, INC.,<br><br>      Defendants. | C.A. No. 1:20-cv-01399-LPS |

**REPLY BRIEF IN SUPPORT OF DEFENDANT
AMAZON WEB SERVICES, INC.'S MOTION TO DISMISS (D.I. 15)**

Dated: February 5, 2021

Beth Herrington (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, IL  60601
(312) 324-1000
beth.herrington@morganlewis.com

Raechel Keay Kummer (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000
raechel.kummer@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web Services, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

    I.    BIPA DOES NOT APPLY EXTRATERRITORIALLY TO AWS ...................... 1

        A.    Plaintiffs Do Not Allege that AWS's Relevant Conduct Occurred "Primarily and Substantially" in Illinois ..................................................... 1

        B.    The Southern District of Illinois's Personal Jurisdiction Order Demonstrates AWS's Conduct Did Not Occur "Primarily and Substantially" in Illinois ............................................................................. 4

    II.    BIPA'S FINANCIAL INSTITUTION EXCEPTION PRECLUDES LIABILITY ............................................................................................................ 5

    III.    PLAINTIFFS FAIL TO STATE ANY BIPA CLAIM ........................................... 6

        A.    Plaintiffs Fail State a BIPA Section 15(b) Claim Because AWS Did Not Collect Biometric Identifiers or Information ............................... 6

        B.    Plaintiffs' Section 15(a) and 15(c) – (e) Claims Should Be Dismissed Because AWS Does Not Possess Plaintiffs' Biometrics .......... 8

        C.    Plaintiffs' Section 15(a) Claim Should Be Dismissed Because It Is Unripe .................................................................................................... 8

        D.    Plaintiffs Fail to State a Section 15(c) Claim Because Plaintiffs Fail to Allege AWS Profited from Their Biometrics ................................. 9

        E.    Plaintiffs Fail to State a Section 15(d) Claim Because They Fail to Allege Facts that AWS Disclosed Biometrics .......................................... 9

        F.    Plaintiffs Fail to State A Section 15(e) Claim Because They Allege No Facts Demonstrating AWS Violated Any Standard of Care .............. 10

CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Armada (Sing.) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750 (N.D. Ill. 2017) ...................... 5

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) ........................................... 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 10

*Bernal v. ADP, LLC*, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Cook Cnty. Aug. 23, 2019) ............. 7

*Bryant v. Compass Grp. USA, Inc.*, 2020 WL 7013963 (N.D. Ill. Nov. 29, 2020) ........................ 9

*Hazlitt v. Apple Inc.*, 2020 WL 6681374 (S.D. Ill. Nov. 12, 2020) ................................................ 9

*Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960 (N.D. Ill. 2020) ........................... 7, 8, 10

*Honeywell Int'l, Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79 (2006) ........................... 8

*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725 (N.D. Ill. 2018) ........................ 2

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................................... 5

*Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 WL 3960451 (N.D. Ill. July 13, 2020) . 5

*Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873 (N.D. Ill. 2020) .......................................................... 7

*Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926 (N.D. Ill. 2019) ................... 3

*McGoveran v. Amazon Web Servs., Inc.*, 2020 WL 5602819 (S.D. Ill. Sept. 18, 2020) ............ 4, 5

*Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. 2017) ................................................ 3, 4

*Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) ............................................. 1, 3, 4

*Shaw v. Hyatt Int'l Corp.*, 2005 WL 3088438 (N.D. Ill. Nov. 15, 2005) ....................................... 3

*Super Pawn Jewlery & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303 (N.D. Ill. Mar. 29, 2013) ................................................................................................................................... 1

*United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892 (N.D. Ill. 2019) .......................................................................................................................... 3

*Vance v. IBM*, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) ........................................................ 3

*Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008) ....................................... 1

*Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781 (N.D. Ill. 2007) ................................................ 1

*Wooley v. Bridgeview Bank Mortg. Co., LLC*, 2015 WL 327357 (N.D. Ill. Jan. 23, 2015) ........... 2

**Statutes**

740 ILCS 14/15 ............................................................................................................... 6, 9

740 ILCS 14/25 ................................................................................................................... 6

Plaintiffs seek to apply Illinois's BIPA to activity they do not allege occurred in Illinois – in violation of both Illinois law and the Constitution – and seek to stretch BIPA well beyond its plain meaning. Plaintiffs also fail to state any viable claim under BIPA. The Court should reject Plaintiffs' efforts to improperly expand BIPA and grant AWS's motion to dismiss in its entirety.

## ARGUMENT

I. **BIPA DOES NOT APPLY EXTRATERRITORIALLY TO AWS.**

   A. **Plaintiffs Do Not Allege that AWS's Relevant Conduct Occurred "Primarily and Substantially" in Illinois.**

Under settled Illinois law, BIPA applies only to conduct that occurs "primarily and substantially" in Illinois. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005); *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100, 1104 (N.D. Ill. 2017) (BIPA "does not have extraterritorial application;" Illinois-resident plaintiffs' "asserted [BIPA] violations ... must have taken place in Illinois for them to win"). Plaintiffs do not contend otherwise. A plaintiff's Illinois residence **does not** provide a sufficient Illinois connection to avoid dismissal based on extraterritoriality. *See, e.g.*, *Super Pawn Jewlery & Loan, LLC v. Am. Envtl. Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (no substantial connection where plaintiff was an Illinois business); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing when only contact was plaintiff's Illinois residence); *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (same, further relying on lack of defendant's connections to or transactions in Illinois). Plaintiffs argue they "are Illinois citizens with Illinois telephone numbers who placed calls from within Illinois[.]" D.I. 19 at 7 (Opp'n 2). But that only demonstrates Plaintiffs' Illinois residency. Because residency, by itself, cannot provide the requisite link to Illinois, reframing residency three different ways fares no better.

The Complaint does not allege that AWS captured any purported "biometric data" in

1

Illinois or anywhere else. The Complaint only alleges that "***audio*** from incoming calls to call centers, such as those Plaintiffs contacted, is sent to Pindrop for processing" – not biometrics. Compl., D.I. 1 at ¶ 75 (emphasis added). Any alleged "biometrics" are captured outside of Illinois, purportedly by Pindrop. According to Plaintiffs, "[t]he analysis of intercepted telephone calls to extract biometric data takes place in part on Pindrop's servers, and is done via software developed, maintained, and controlled by Pindrop" – not AWS. *Id.* at ¶ 78. Collecting audio is not actionable under BIPA.

Faced with the inadequacy of their pleadings, Plaintiffs suggest that the extraterritoriality doctrine "is a highly fact-intensive issue not amenable to resolution on a motion to dismiss." D.I. 19 at 7 (Opp'n 2). But courts consistently grant motions to dismiss based on Illinois's extraterritoriality doctrine where, as here, a complaint fails to allege a substantial connection to the state. *See, e.g.*, *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 732–34 (N.D. Ill. 2018) (dismissing Illinois deceptive practices claim when plaintiff's "ties to Illinois do not sufficiently establish the requisite connection to Illinois when the allegedly illegal actions of a California-based company" caused Illinois company to lose business with Florida company) (citing cases); *Wooley v. Bridgeview Bank Mortg. Co., LLC*, 2015 WL 327357, at *1 (N.D. Ill. Jan. 23, 2015) ("[B]ecause nearly every circumstance leading to the [p]laintiffs' alleged injuries occurred in Kansas, the [Illinois minimum wage law] provides no avenue for relief."). Plaintiffs misconstrue *Avery v. State Farm Mut. Auto. Ins. Co.*'s statement that "there is no single formula or bright-line test for determining whether a transaction occurs within [Illinois]" to suggest that extraterritoriality determinations cannot be made via motion to dismiss. D.I. 19 at 21 (Opp'n 16)

(citation omitted). Case after case demonstrates Plaintiffs are wrong.[1]

Plaintiffs' cited authorities are inapposite and do not support their position. For example, Plaintiffs misconstrue the denial of a motion to dismiss in *Vance v. IBM*, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020), to argue the Court cannot decide extraterritoriality on such a motion. D.I. 19 at 19 (Opp'n 16). The *IBM* court suggested a Rule 12(b)(6) dismissal on extraterritorial grounds may be "generally inappropriate." *Vance*, 2020 WL 5530134, at *3. But neither of the cases it cited for this proposition actually supports a blanket approach; instead, in both of those cases, the courts denied motions to dismiss after evaluating the specific factual allegations plaintiffs pled showing sufficient Illinois connections. *See Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *6 (N.D. Ill. 2017) (evaluating whether conduct at issue was "alleged to have occurred in Illinois"); *Rivera*, 238 F. Supp. 3d at 1101–02 (concluding "[p]laintiffs sufficiently allege facts that would deem the asserted violations as having happened in Illinois"). Indeed, in *Rivera* the court cited with approval *Shaw v. Hyatt Int'l Corp.*, 2005 WL 3088438, at *2–3 (N.D. Ill. Nov. 15, 2005), in which the court granted a motion to dismiss on extraterritoriality grounds because Illinois "connections [were] too tenuous." Unlike *Monroy* and *Rivera*, Plaintiffs allege no facts connecting AWS's supposed BIPA-related conduct to Illinois.

Also, unlike *Monroy* and *Rivera*, Plaintiffs do not allege they communicated directly with AWS, but rather that they called **John Hancock** from Illinois. In *Monroy* and *Rivera*, an Illinois plaintiff allegedly uploaded a photo ***directly*** to the ***defendant's*** systems from a computer or device

---

[1] *See, e.g., United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 911 (N.D. Ill. 2019) (complaint failed to adequately allege conduct "occurred 'primarily and substantially' in Illinois despite plaintiff being "Illinois corporation with its headquarters in Chicago" and document containing alleged misrepresentation being drafted in Illinois); *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 939–40 (N.D. Ill. 2019) ("SBG fails to connect any of Maui Jim's alleged action forming the basis of its trade disparagement claim to Illinois. . . . [A] plaintiff's claims are insufficient to state a claim under the UDTPA where, as here, the plaintiff 'exclusively offers evidence of ... nationwide, as opposed to Illinois-specific, conduct.'") (citation omitted).

located in Illinois, so the defendant's collection arguably occurred in Illinois. *See, e.g.*, *Monroy*, 2017 WL 4099846, at *6 (plaintiff "allege[d] that [his] photo was uploaded to Shutterfly's website from a device that was physically located in Illinois and had been assigned an Illinois-based IP address"); *Rivera*, 238 F. Supp. 3d at 1101 (plaintiff's "photographs were allegedly 'automatically uploaded in Illinois to [Google's] cloud-based Google Photos service . . . from an Illinois-based Internet Protocol ('IP') address'" (citation omitted)). Plaintiffs likewise mischaracterize *Patel v. Facebook*, to argue the Illinois legislature "contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." D.I. 19 at 22–23 (Opp'n 17–18). The plaintiffs in *Patel* were Illinois users with a ***direct*** relationship with Facebook and used Facebook in Illinois. Plaintiffs allege no such relationship with AWS.[2]

### B. The Southern District of Illinois's Personal Jurisdiction Order Demonstrates AWS's Conduct Did Not Occur "Primarily and Substantially" in Illinois.

Attempting to minimize the Court's holding in *McGoveran v. Amazon Web Servs., Inc.*, 2020 WL 5602819 (S.D. Ill. Sept. 18, 2020) that the Southern District of Illinois lacks personal jurisdiction over AWS, Plaintiffs assert that the extraterritoriality and "specific personal jurisdiction" standards are "fundamentally different." D.I. 19 at 23 (Opp'n 18). Plaintiffs are wrong, as both focus on the nature of the defendant's alleged ties to the forum state. Plaintiffs are also wrong that there is "no authority" indicating that "the extraterritoriality standard is more

---

[2] Plaintiffs claim AWS "improperly relies on unauthenticated evidentiary materials purportedly showing that AWS data centers are in other states," and that AWS's argument regarding AWS's ***customers*** controlling data "stored with AWS … depends on numerous outside documents that 'were neither attached nor referred to in Plaintiff's [sic] Complaint and, thus, cannot be considered on a motion to dismiss." D.I. 19 at 15–16, 22 (Opp'n 10–11, 17). Plaintiffs ignore that the Court may consider information on AWS's website because the Complaint repeatedly cites information from the website upon which Plaintiffs' allegations are based. *See* D.I. 1 at pp. 9, 13, 14, 17. Courts in this Circuit have held that they can consider the content of websites when deciding motions to dismiss when the websites are cited in the complaint. *See, e.g.*, *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 500–01 (D.N.J. 2006).

demanding than the personal jurisdiction standard." *Id.* Personal jurisdiction only requires "certain **minimum contacts**" with the forum state sufficient to "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To determine extraterritoriality, on the other hand, requires "Illinois courts [to] consider whether ***the circumstances relevant to the claim*** are alleged to have occurred '***primarily and substantially***' in Illinois." *Armada (Sing.) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 757 (N.D. Ill. 2017). Minimum contacts are not enough. *See Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 WL 3960451, at *8 (N.D. Ill. July 13, 2020) (finding likelihood of personal jurisdiction but failure to allege conduct "primarily and substantially" in Illinois). Here, the Southern District held:

> In this case, Plaintiffs were the ones who made the call—to John Hancock—from their Illinois phone numbers. AWS then intercepted the calls once they were connected to an Amazon Connect call center and sent the audio to Pindrop for processing. The output from that processing was then returned to AWS's servers (Doc. 1-1 at ¶ 59). ***Nothing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs***.

*McGoveran*, 2020 WL 5602819, at *5 (emphasis added). These allegations failed to meet the "minimum contacts" requirement and fail to allege that any relevant conduct by AWS occurred "primarily and substantially" in Illinois.

## II. BIPA'S FINANCIAL INSTITUTION EXCEPTION PRECLUDES LIABILITY.

Plaintiffs' BIPA claims are predicated on the alleged collection of biometric information from phone calls to John Hancock customer service representatives regarding Plaintiffs' financial accounts. *See* D.I. 1 at ¶¶ 93–96. John Hancock is a financial institution, *see* D.I. 16 at 22 (Mem. 11), which allegedly used "Pindrop biometric voiceprint authentication" to secure customers' financial information by using the technology "to authenticate callers." D.I. 1 at ¶¶ 97–98. This intentionally broad provision should apply with equal force to any third-party vendors – like AWS – engaged by the financial institution to provide services to its customers.

Plaintiffs argue this exception is "narrow," and criticize AWS for not citing any supporting authority. D.I. 19 at 24–25 (Opp'n 19–20). ***First***, as Plaintiffs concede, this is a case of first impression. *Id.* at 24. No cases have decided this issue. ***Second***, this exception is not "narrow" – far from it. BIPA is clear: "***Nothing*** in this Act shall be deemed to apply ***in any manner*** to a financial institution or an affiliate of a financial institution[.]" 740 ILCS 14/25 (emphasis added). Plaintiffs argue that "[n]othing in that language suggests, even remotely, that the exemption extends to entities that have business relationships with financial institutions." D.I. 19 at 24. To the contrary, the statute includes not just a financial institution, but "an affiliate" of a financial institution. 740 ILCS 14/25. The statute does not apply "in any manner" to a financial institution. The Complaint should be dismissed with prejudice.

### III.     PLAINTIFFS FAIL TO STATE ANY BIPA CLAIM.

#### A.     Plaintiffs Fail State a BIPA Section 15(b) Claim Because AWS Did Not Collect Biometric Identifiers or Information.

Plaintiffs' Section 15(b) claim should be dismissed because, as alleged, AWS did not actively "collect" Plaintiffs' biometric identifiers or information – a requirement under Section (b). *See* 740 ILCS 14/15(b) (private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information). Plaintiffs contend they "have alleged in extensive detail how AWS collected and obtained their biometric voice data without satisfying the statute's notice and consent requirements." D.I. 19 at 11 (Opp'n 6). But Plaintiffs' allegations regarding the creation or "collection" of any alleged biometrics all relate to Pindrop, not AWS. The Complaint alleges that Pindrop (not AWS) "offers voice biometric services," D.I. 1 at ¶ 52; that Pindrop (not AWS) "advertises products and services that confirm the identity of the speaker by voice," *Id.* at ¶ 5; and that the "analysis of intercepted telephone calls to extract biometric data takes place in part on Pindrop's servers, and is done via software developed, maintained, and controlled by Pindrop" –

not AWS. *Id.* at ¶ 78.

Plaintiffs also criticize AWS's citation to *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873 (N.D. Ill. 2020), *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960 (N.D. Ill. 2020), and *Bernal v. ADP, LLC*, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Cook Cnty. Aug. 23, 2019) because, unlike those cases, "Plaintiffs have alleged their relationship with John Hancock, which allowed AWS to acquire their biometric information, while also explaining how AWS collected their data." D.I. 19 at 12 (Opp'n 7). Plaintiffs are wrong.

The *Kloss* plaintiff (like Plaintiffs here) made "barebone" allegations that Acuant "offers biometric enabled verification services to private companies" and "that at some unspecified time she used Acuant's mobile application." *Kloss*, 462 F. Supp. 3d at 877. The court found such allegations deficient because, *inter alia*, plaintiff did not allege "whether she had a direct relationship with Acuant or with one of the private companies that used Acuant's software. *Id.* Here, not only do Plaintiffs not allege a direct relationship with AWS, they do not even allege that it is AWS's software that supposedly collected their biometrics. D.I. 1 at ¶ 52 ("Pindrop offers voice biometric services."). Plaintiffs ignore the *Heard* holding that "for Section 15(b)'s requirements to apply, an entity must at a minimum, **take an active step** to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Heard*, 440 F. Supp. 3d at 965–66. The same holds true for *Bernal*, where Plaintiffs again ignore the court's clear language that Section 15(b)'s "requirement that the private entity whose actions the subsection is meant to regulate must receive a 'written release' . . . suggest[s] that the legislature did not intend for the subsection to apply to a third party entity." *Bernal*, 2019 WL 5028609, at *1.

Plaintiffs do not allege AWS took any affirmative steps to "capture" any biometrics. Rather, Plaintiffs allege the raw "audio from incoming calls to call centers, such as those Plaintiffs

contacted, is sent to Pindrop for processing," that "Pindrop hosts Plaintiffs' and the Class's biometric data on its servers," and that "Pindrop exclusively controls these servers." D.I. 1 at ¶¶ 75–76. Plaintiffs' Section 15(b) claims against AWS should be dismissed.

> B. **Plaintiffs' Section 15(a) and 15(c) – (e) Claims Should Be Dismissed Because AWS Does Not Possess Plaintiffs' Biometrics.**

The Complaint fails to allege that AWS exercised any dominion or control over Plaintiffs' biometrics and therefore fails to allege that AWS is in possession of biometric identifiers or information in violation of BIPA. Plaintiffs first attack AWS's inclusion of publicly available documents, arguing that AWS's reference to its website constitutes outside documents that cannot be considered on a motion to dismiss. D.I. 19 at 16 (Opp'n 11). But their own Complaint repeatedly cites information *from the AWS website*.

Furthermore, Plaintiffs fail to allege that AWS "possessed" their biometric data. It is well-settled under Illinois law that one does not possess an item "unless he has the ability, at a given time, to exercise dominion and control over [it]." *Honeywell Int'l, Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79, 85 (2006). Here, Plaintiffs' "allegations concerning possession merely parrot the statutory language" and fail to allege that AWS "exercised *any* dominion and control over" Plaintiffs' biometric data. *See Heard*, 440 F. Supp. 3d at 968; *see e.g.* D.I. 1 at ¶ 63, 79–81. The Complaint instead alleges a series of activities where John Hancock or Pindrop – not AWS – exercised control over their biometrics. *See e.g.* D.I. 1 at ¶¶ 59, 93–101; *id.* at ¶ 76 ("Pindrop hosts Plaintiffs' and the Class's biometric data on its servers. Pindrop exclusively controls these servers."). AWS did not possess Plaintiffs' biometric data and is not subject to BIPA Sections 15(a) or 15(c)–(e).

> C. **Plaintiffs' Section 15(a) Claim Should Be Dismissed Because It Is Unripe.**

Plaintiffs' Section 15(a) claim should be dismissed because it is unripe. Plaintiffs fail to

allege that they stopped using the John Hancock call centers and thus fail to allege any obligation to destroy biometric data. Plaintiffs argue that "regardless of whether AWS failed to *comply* with retention and destruction guidelines, a failure to make the required policy *available to the public* constitutes a section 15(a) violation." D.I. 19 at 17 (Opp'n 12). As indicated in *Bryant v. Compass Grp. USA, Inc.*, 2020 WL 7013963, at *2 (N.D. Ill. Nov. 29, 2020), Section 15(a) is to be construed as a whole, with the requirement for retention and destruction guidelines being an "antecedent allegation." Reading Section 15(a) as a whole, a claim for a lack of public policy on its own is unripe if the obligation to destroy biometric data has not occurred, as in this case.

      **D.**      **Plaintiffs Fail to State A Section 15(c) Claim Because Plaintiffs Fail to Allege AWS Profited from Their Biometrics.**

Plaintiffs' Section 15(c) claims should be dismissed because Plaintiffs fail to allege AWS profited from their biometrics. Plaintiffs argue that marketing biometric voice capabilities to its customers, thereby enhancing the sale of AWS products, is somehow sufficient to violate Section 15(c). D.I. 19 at 17 (Opp'n 12). On the contrary, Section 15(c) makes clear that the profit must be from "a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Consistent with that language, courts have held general sales of devices with biometric technology do not violate Section 15(c). *See e.g. Hazlitt v. Apple Inc.*, 2020 WL 6681374, at *7 (S.D. Ill. Nov. 12, 2020) ("Moreover, by its plain language, section 15(c) clearly prohibits profiting from "a person's or a customer's" biometric identifier or biometric information, not the general sales of devices equipped with facial recognition technology.") While Plaintiffs allege that "AWS charges fees for and profits from voiceprint products and services," D.I. 1 at ¶ 69, Plaintiffs do not allege that AWS charges any fees or profits from selling individuals' biometrics.

      **E.**      **Plaintiffs Fail to State a Section 15(d) Claim Because They Fail to Allege Facts That AWS Disclosed Biometrics.**

Plaintiffs do not allege any facts regarding AWS's alleged disclosure of biometric identifiers or information. Plaintiffs argue they "more than adequately demonstrate that AWS has disclosed, redisclosed, or disseminated Plaintiffs' biometric data[.]" D.I. 19 at 18 (Opp'n 13). This is not true. While the Complaint vaguely asserts that "Pindrop, after collecting Plaintiffs' and the Class's biometric data, disclosed and disseminated that data to AWS," the Complaint only asserts a naked conclusion that "AWS, after receiving from Pindrop and storing Plaintiffs' and the Class's biometric data, redisclosed and disseminated that data to AWS's Amazon Connect customers." D.I. 1 at ¶ 117–18. Plaintiffs do *not* explain how AWS purportedly makes that "redisclosure" or to whom. Mere parroting of statutory language is not enough under Rule 8. Plaintiffs must plausibly plead that AWS – not Pindrop or John Hancock – disseminated their alleged biometric information. They do not. Like the *Heard* court, this Court should dismiss Plaintiffs Section 15(d) claims as the "complaint contains no allegations of fact." *Heard*, 440 F. Supp. 3d at 969.

### F. Plaintiffs Fail to State A Section 15(e) Claim Because They Allege No Facts Demonstrating AWS Violated Any Standard of Care.

The Complaint lacks allegations about how AWS stores, transmits, or protects confidential and sensitive information. In attempting to plead a Section 15(e) claim, Plaintiffs both fail to identify any applicable standard of care and fail to allege facts about how AWS allegedly violated that standard. Plaintiffs assert that the "complaint sufficiently alleges that AWS has failed to do so" in paragraphs 92, 120, and 122. D.I. 19 at 19 (Opp'n 14). Those paragraphs are nothing more than improper conclusory statements, "on information and belief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' Section 15(e) claim should be dismissed.

### CONCLUSION

For the foregoing reasons and the reasons stated in AWS's Opening Brief, each of Plaintiffs' claims against AWS should be dismissed with prejudice.

| | |
|---|---|
| February 5, 2021 | **MORGAN, LEWIS & BOCKIUS LLP** |
| Beth Herrington (admitted *pro hac vice*)<br>77 West Wacker Drive, Suite 500<br>Chicago, IL  60601<br>(312) 324-1000<br>beth.herrington@morganlewis.com | */s/ Jody C. Barillare*<br>Jody C. Barillare (#5107)<br>1201 North Market Street, Suite 2201<br>Wilmington, DE  19801<br>(302) 574-3000<br>jody.barillare@morganlewis.com |
| Raechel Keay Kummer (admitted *pro hac vice*)<br>1111 Pennsylvania Avenue, NW<br>Washington, DC  20004-2541<br>(202) 739-3000<br>raechel.kummer@morganlewis.com | *Attorneys for Defendant Amazon Web Services, Inc.* |

-11-