IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTINE MCGOVERAN,                )
JOSEPH VALENTINE, and               )
AMELIA RODRIGUEZ, on behalf of      )
themselves and all other persons similarly )
situated, known and unknown,        )
                                    )
                Plaintiffs,         )
                                    )
        v.                          )   C.A. No. 20-1399 (LPS)
                                    )
AMAZON WEB SERVICES, INC. and       )
PINDROP SECURITY, INC.,             )
                                    )
                Defendants.         )


**DEFENDANT PINDROP SECURITY, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**


                                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                    Jack B. Blumenfeld (#1014)
                                    1201 North Market Street
                                    P.O. Box 1347
                                    Wilmington, DE  19899
OF COUNSEL:                         (302) 658-9200
Andrew B. Bloomer, P.C.             jblumenfeld@morrisnichols.com
Catherine L. Fitzpatrick
Amelia Bailey                       *Attorneys for Defendant*
KIRKLAND & ELLIS LLP                *Pindrop Security, Inc.*
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Diana M. Torres
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(213) 680-8400

February 5, 2021

## TABLE OF CONTENTS

Page

I.    PLAINTIFFS' RESPONSE CONFIRMS THEY HAVE ALLEGED NO FACTS SHOWING WRONGFUL CONDUCT BY PINDROP IN ILLINOIS.............................1

II.    PLAINTIFFS HAVE NOT IDENTIFIED FACTUAL ALLEGATIONS THAT STATE A PLAUSIBLE CLAIM UNDER BIPA. ...............................................................................3

    A.    Plaintiffs Do Not Tie Pindrop's Alleged Behavior To Their Calls Or Show that Pindrop "Possessed" or "Collected" Their Biometric Information, As Required To State A Claim Under Any Section Of BIPA......................................3

        1.    Plaintiffs do not allege facts showing they called John Hancock call centers. ..................................................................................................4

        2.    Plaintiffs' allegations regarding Pindrop's purported capability and the technology it offers are irrelevant and do not show that Pindrop "possessed or "collected" plaintiffs' protected data. ...................................5

    B.    Plaintiffs' Claims For Violations Of Sections (c)-(e) Independently Fail. ..............6

    C.    Plaintiffs Do Not Dispute That The Complaint Alleges No Facts Showing Pindrop Acted With Negligence, Recklessness, Or Intent. ....................................8

III.    PLAINTIFFS CANNOT RECONCILE THEIR CLAIMS WITH BIPA'S BROAD EXCLUSION FOR FINANCIAL INSTITUTIONS. ..........................................................9

CONCLUSION....................................................................................................................10

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Argueta v. ICE,*
    643 F.3d 60 (3d Cir. 2011)...........................................................................................5, 7, 8

*Aschcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................................8, 9

*Avery v. State Farm Mut. Auto. Ins. Co.,*
    835 N.E. 2d 801 (Ill. 2005)................................................................................................2

*Bernal v. ADP, LLC,*
    2019 WL 5028609 (Ill. Cir. Ct. Cook Cty. Aug. 23, 2019).............................................6

*Commil USA, LLC v. Cisco Sys., Inc.,*
    575 U.S. 632 (2015).........................................................................................................8

*Compaq Comput. Corp. v. Packard Bell Elecs., Inc.,*
    948 F. Supp. 338 (D. Del. 1996)......................................................................................9

*Conaway v. McAfee-Garner,*
    2020 WL 6445895 (D. Del. Nov. 3, 2020) ......................................................................5

*Figueroa v. Kronos, Inc.,*
    454 F. Supp. 3d 772 (N.D. Ill. Apr. 13, 2020) ................................................................9

*Heard v. Becton, Dickinson & Co.,*
    440 F. Supp. 3d 960 (N.D. Ill. 2020) ..............................................................................6

*In the Matter of LightYear Dealer Tech., LLC,*
    FTC-2019-0047, C-4697 (Sept. 3, 2019)........................................................................10

*Liu Meng-Lin v. Siemens AG,*
    763 F.3d 175 (2d Cir. 2014).............................................................................................3

*McGoveran, et al. v. Amazon Web Servs., et al.,*
    3:20-cv-00031-NJR (S.D. Ill. Jan. 8, 2020)....................................................................4

*McTernan v. City of York, Penn.,*
    577 F.3d 521 (3d Cir. 2009).............................................................................................5

*Monroy v. Shutterfly, Inc.,*
    2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .................................................................3

*Neals v. PAR Tech. Corp.*,
   419 F. Supp. 3d 1088 (N.D. Ill. 2019) ........................................................9

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ....................................................................3

*Peatry v. Bimbo Bakeries USA, Inc.*,
   2020 WL 919202 (N.D. Ill. Feb. 26, 2020) ...............................................9

*Rios v. Cabrera*,
   2010 WL 5111411 (M.D. Pa. Dec. 9, 2010) ...............................................3

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................2, 3

*Rogers v. BNSF Railway Co.*,
   2019 WL 5635180 (N.D. Ill. Oct. 31, 2019).................................................9

*Tarzian v. Kraft Heinz Foods Co.*,
   2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)..................................................2

*Vance v. Int'l Bus. Machs. Corp.*,
   2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) ..............................................3

*Commonwealth of Penn. ex. rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988)........................................................................5

**Statutes**

740 ILCS 14/10.........................................................................................................1

740 ILCS 14/15(c) ....................................................................................................6

740 ILCS 14/15(e) ....................................................................................................7

740 ILCS 14/25(c) ....................................................................................................9

15 U.S.C. § 6801 *et seq*...........................................................................................10

Title V of the Gramm-Leach-Bliley Act of 1999 ...............................................9, 10

**Rules**

FED. R. CIV. P. 8 ...................................................................................................2, 8

FED. R. CIV. P. 9 ......................................................................................................8

FED. R. CIV. P. 9(b) .................................................................................................8

FED. R. CIV. P. 11 ..................................................................................................................7

**Other Authorities**

1 Data Sec. & Privacy Law § 7:17 (2020-2021)............................................................3

A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* ..............................4, 6, 7

Plaintiffs' opposition brief ("Opp. Br.", D.I. 18) does nothing to overcome the fundamental defects in their complaint: (i) their failure to allege any conduct in Illinois that purportedly violated the Illinois statute under which they bring their claims; (ii) the absence of any non-conclusory allegation or factual basis for a reasonable interference that Pindrop possessed, collected without permission, profited from, disclosed, or failed to adequately protect plaintiffs' biometric information—let alone did so in Illinois; and (iii) the fact that their claims—which would make it unlawful to provide authentication and anti-fraud solutions to financial institutions—cannot be reconciled with the statute's command that BIPA not be applied *in any manner* to financial institutions.   Each of these defects is fatal to plaintiffs' claims, and each independently demonstrates that plaintiffs' complaint does not state a cause of action and should be dismissed.

## I.   PLAINTIFFS' RESPONSE CONFIRMS THEY HAVE ALLEGED NO FACTS SHOWING WRONGFUL CONDUCT BY PINDROP IN ILLINOIS.

Plaintiffs do not dispute that they cannot state a claim under BIPA unless the alleged wrongful conduct occurred substantially and primarily in Illinois.  Instead, they argue first that, "[b]ecause Plaintiffs were physically present in Illinois when they made the calls, their voice audio was intercepted in Illinois."  Opp. Br. at 17, citing Compl. ¶¶ 85, 110–12.   Putting aside that the location of the *caller* sheds no light on where the call was "intercepted" (*i.e.*, answered), plaintiffs' "voice audio" is not a biometric identifier, and its collection does not violate BIPA.  Instead, BIPA defines "biometric identifiers" to include "voiceprints" and biometric information is "information . . . based on an individual's [voiceprint] used to identify an individual."  740 ILCS 14/10. Plaintiffs identify nothing to suggest their "voiceprints" were created, possessed, or stored by Pindrop (or anyone else) in Illinois, and without *any* wrongful conduct alleged to occur in Illinois, plaintiffs' claims should be dismissed.

Plaintiffs also say that "Pindrop's failures to make a written biometric data retention and destruction policy available to the public and to provide notice to and obtain consent from Illinois citizens necessarily occurred in Illinois." Opp. Br. at 17. But even assuming Pindrop failed to publish its policies in Illinois, without an allegation that Pindrop possessed voiceprints in Illinois, there is no basis for Illinois to require Pindrop to publish its data retention policies anywhere. Likewise, without an allegation that Pindrop collected voiceprints in Illinois, the statute does not require Pindrop to obtain permission at all, let alone there.

These fatal defects are integral to plaintiff's Complaint. Plaintiffs expressly allege a process whereby their calls were "intercepted" by AWS, and the voice audio was then "sent" to Pindrop for processing. Compl. ¶ 63 ("AWS obtains and stores biometric identifiers and biometric information for its customers."); ¶ 101 ("AWS knowingly intercepted the telephone calls made by Plaintiffs."); Opp. Br. at 3 ("AWS intercepts the call and sends audio from the call to Pindrop for processing."). The collection or possession of "voice audio," however, does not violate BIPA.

Plaintiffs cite various BIPA cases for the proposition that the extraterritorial analysis is "inappropriate for the motion to dismiss stage." Opp. Br. at 17. For example, in *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017), the court held that it lacked sufficient information from plaintiffs' complaint to evaluate the multiple factors identified in *Avery v. State Farm Mut. Auto. Ins. Co.* for determining whether the "situs" of a consumer transaction was in Illinois. 835 N.E. 2d 801, 853-54 (Ill. 2005). But BIPA claims—and the requirement that it be applied locally— are not an exception to Rule 8 and plaintiffs cannot avoid dismissal without alleging facts from which the court could plausibly infer wrongful conduct in Illinois. *See Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *3 (N.D. Ill. Oct. 9, 2019) (dismissing claim; holding that the federal rules, and not *Avery*, set the pleading standards for a Consumer Fraud Act claim in federal

court).  Here, plaintiffs have not plausibly alleged that Pindrop engaged in *any* conduct in Illinois that violated the statute.  Put differently, plaintiffs have not alleged facts constituting a local application of BIPA, and their clams should therefore be dismissed.  *See Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 183 (2d Cir. 2014) ("Because the [statute] . . . does not apply extraterritorially, and Liu has failed to plead facts constituting a domestic application," the complaint was properly dismissed.); *see also Rios v. Cabrera*, 2010 WL 5111411, at *3 (M.D. Pa. Dec. 9, 2010) (rejecting Pennsylvania Unfair Trade Practices and Consumer Protection Law claim because plaintiff alleged conduct "occurring outside of Pennsylvania" and thus "fail[ed] to state a claim on which relief can be granted").[1]

BIPA is the only statute in the country providing a private cause of action for the conduct it prohibits (*see* 1 Data Sec. & Privacy Law § 7:17 (2020-2021)).  Allowing plaintiffs' complaint to proceed on extraterritorial claims is contrary to BIPA, and to the rights of other states to determine the manner in which they regulate conduct within their own borders.

## II.   PLAINTIFFS HAVE NOT IDENTIFIED FACTUAL ALLEGATIONS THAT STATE A PLAUSIBLE CLAIM UNDER BIPA.

### A.   Plaintiffs Do Not Tie Pindrop's Alleged Behavior To Their Calls Or Show that Pindrop "Possessed" or "Collected" Their Biometric Information, As Required To State A Claim Under Any Section Of BIPA.

Putting aside that plaintiffs have alleged no wrongful conduct that happened in Illinois, they also do not dispute that "collection" or "possession" of plaintiffs' protected information is a necessary predicate to all of their claims, yet they identify no non-conclusory allegations that

---

[1]   *Vance v. Int'l Bus. Machs. Corp.*, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020), and *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *6 (N.D. Ill. Sept. 15, 2017), relied on *Rivera* and are similarly unhelpful.  And in *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019), the court examined whether the question of extraterritorial application could be determined on a class wide basis for purpose of class certification, not whether it should be deferred until summary judgment.

connect Pindrop to plaintiffs' protected information. Their theory apparently is that Pindrop collected information protected by the statute (i.e., voiceprints) on every call to John Hancock call centers, and that plaintiffs placed calls to such call centers. But the complaint is devoid of factual allegations to support this theory and, instead, alleges facts to the contrary.

1.   **Plaintiffs do not allege facts showing they called John Hancock call centers.**

Plaintiffs allege that Pindrop obtains audio from calls placed to call centers operated by John Hancock, but plaintiffs never allege they actually called those call centers; the only reasonable inference from their allegations is that they *may or may not have* done so. *See* Compl. ¶¶ 93–96 (each plaintiff separately alleging that plaintiff "called John Hancock call center(s) and/or customer service representatives"). In their brief, plaintiffs say that "Plaintiffs' use of 'and/or' simply indicates that the numerous calls . . . did not *exclusively* involve call centers." Opp. Br. at 13. But this is not what "and/or" means. "And"—standing alone—is the appropriate conjunction to convey that the calls were not exclusively made to call centers, but also included customer service representatives. By including "or," plaintiffs have instead alleged that their calls may have been made to a call center, or may have been made to a customer service representative. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* at 116 ("[A]nd combines items while *or* creates alternatives."). Thus, their allegation would be true even if plaintiffs *never* called a John Hancock call center. Plaintiffs do not claim inadvertence or mistake, and indeed they made the same allegation in their first complaint filed in Illinois, *McGoveran, et al. v. Amazon Web Servs., et al.*, 3:20-cv-00031-NJR, Dkt. 1, ¶ 67 (S.D. Ill. Jan. 8, 2020), even after Pindrop pointed out their failure to allege they actually called call centers, *id*. at Dkt. 35 at 7. Plaintiffs nevertheless repeat this may-or-may-not-have allegation *four* separate times in their

4

present complaint.  Compl. ¶¶ 93–96.  Plaintiffs' present mischaracterization of this allegation cannot cure their failure to allege a necessary fact.

In short, plaintiffs do not allege more than a mere possibility that their calls were ever subject to the processes alleged in their complaint, which fails to show any connection to Pindrop and renders their claims implausible.  *See Argueta v. ICE*, 643 F.3d 60, 72–73 (3d Cir. 2011) ("[A] complaint pleading facts that are merely consistent with liability is insufficient."); *see McTernan v. City of York, Penn.*, 577 F.3d 521, 530 (3d Cir. 2009) (A court must "draw on its judicial experience and common sense" in reviewing the complaints' adequacy.) (citation omitted).

2.    **Plaintiffs' allegations regarding Pindrop's purported capability and the technology it offers are irrelevant and do not show that Pindrop "possessed or "collected" plaintiffs' protected data.**

Recognizing their failure to plead facts that could establish Pindrop's liability, plaintiffs improperly attach and rely on an "Integration Guide," erroneously claiming that it was "incorporated by reference" in their complaint.  Opp. Br. at 3 & n.1, Ex. 1.[2]  It was not.  The complaint cites a completely *different* document from *Amazon's* website.  Compl. ¶ 55, n.9; ¶ 65, n.14; ¶ 74, n.17.  "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss,'" and the court cannot look beyond the "complaint's averments" in deciding the motion.  *Commonwealth of Penn. ex. rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d

---

[2]    Moreover, neither document actually says what plaintiffs claim.  The document cited in the complaint describes (at most) Pindrop's *capability*; it does not support an inference that the software was employed on every call to AWS, let alone on plaintiffs' calls.  Nor is it apparent that "extracting intelligence" is the same as collecting or possessing biometric identifiers or information, as defined in and required by BIPA.  Compl. ¶ 55, n.9 (citing "Analytics for contact center security in the AWS Cloud," archived at https://perma.cc/3LJG-47KE).  Similarly, the documents cited in the Complaint describe "Deep Voice" and "Phoneprinting" (one which mentions "biometrics" and one that does not) and plaintiffs do not allege which product John Hancock employed.  *See* Compl. ¶¶ 56, n.10, 57, n.11. Ex. 1, "About Phoneprinting Technology," archived at https://perma.cc/UK2R-25FN (explaining that Pindrop's Phoneprinting product detects "fraudsters" by examining things like type of phone used, location, and caller id manipulation).

173, 181 (3d Cir. 1988); *Conaway v. McAfee-Garner*, 2020 WL 6445895, at *2 (D. Del. Nov. 3, 2020) (disregarding "exhibits that were not included with the original complaint"). The Integration Guide thus has no bearing on this motion.

Plaintiffs also seek to avoid dismissal by pointing to other conclusory allegations that Pindrop "collects" and "hosts" biometric identifiers, but these conclusions are contradicted by the alleged process described in their complaint. Plaintiffs specifically allege that (1) AWS intercepts their voice audio from calls they made to John Hancock, Compl. ¶ 101; (2) AWS, John Hancock, or some other entity sends that voice "audio" to Pindrop, *id.* ¶ 75; (3) Pindrop's "platform," or product, performs "analysis" on the calls that "in part" leads to the extraction of biometric data, *id.* ¶¶ 73, 75, 78; (4) Pindrop returns the "output" back to AWS, who uses it to "creat[e]" biometric information, *id.* ¶¶ 75, 79; and (5) AWS stores this output on its servers, *id.* ¶¶ 79, 81. Taking plaintiffs' allegations at face value, they have not shown "[Pindrop's] actual involvement, relative to the biometric scanning technology, beyond the fact that [Pindrop] supplied [John Hancock and AWS] with the technology." *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 967 (N.D. Ill. 2020) (quoting *Bernal v. ADP, LLC*, 2019 WL 5028609, at *2 (Ill. Cir. Ct. Cook Cty. Aug. 23, 2019)). Plaintiffs' five counts should be dismissed on this basis alone.

### B.   Plaintiffs' Claims For Violations Of Sections (c)-(e) Independently Fail.

Per BIPA Section 15(c), an entity may not "sell, lease, trade, or otherwise profit from a person's . . . biometric information." 740 ILCS 14/15(c). Plaintiffs argue that Pindrop "otherwise profited from possessing, collecting, and analyzing customers' biometric voice data." Opp. Br. at 12. But it is well settled that a general or "catch-all" term in a statute includes only "the same general kind or class specifically mentioned." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, at 199. "[P]ossessing, collecting, and analyzing" do not describe commercial activity of the kind mentioned. Nor does providing "a service for which it is paid."

Compl. ¶104.  If it did, any for-profit enterprise that possesses biometric data would violate the statute, rendering the other subsections of the statute superfluous.  *See id.* at 174 (Interpretation should not "cause another provision . . . to have no consequence.").

Nor do plaintiffs' allegations regarding Pindrop's purported disclosure of their information plausibly support their Section 15(d) claim.  Plaintiffs argue that "Pindrop collects biometric information and creates biometric identifiers, which it disseminates to AWS and its customers."  Opp. Br. at 14.  This is nothing more than a boilerplate recitation of the statute, which should be disregarded, as is plaintiffs' allegation that Pindrop "discloses" biometric identifiers or information to its "corporate customers."  Compl. ¶ 89.  *See Argueta*, 643 F.3d at 74.  Moreover, plaintiffs claim that "[t]he analysis of intercepted telephone calls to extract biometric data takes place *in part* on Pindrop's servers," Compl. ¶ 78 (emphasis added), but do not explain what part of that analysis Pindrop performs, or if it involves data subject to BIPA—*voiceprints*.  As a result, plaintiffs have not plausibly alleged that Pindrop "discloses" anything prohibited under BIPA to AWS or anyone else.

Finally, plaintiffs effectively concede they do not know whether Pindrop violated Section 15(e) in connection with the storage, transmission, and protection of biometric identifiers or information.  *See* Opp. Br. at 15.  The complaint alleges no facts showing that Pindrop (1) failed to meet the "reasonable standard of care within [its] industry," or (2) did not protect such information in the same manner in which it protects other sensitive information, *see* 740 ILCS 14/15(e), and thus provides no notice of what purported standards or conduct are at issue (on information and belief or otherwise).  In fact, plaintiffs do not identify the governing industry standard of care that Pindrop purportedly failed to meet, which is not a fact "within Pindrop's exclusive control" or something plaintiffs could not have determined without the benefit of

discovery.  Opp. Br. at 11.  As this claim is "without any factual basis or justification," it should be dismissed.  *Cf.* FED. R. CIV. P. 11 advisory committee's note to 1993 amendment (Pleading "on information and belief . . . *is not a license to* join parties, *make claims*, or present defenses *without any factual basis or justification*.") (emphasis added).

### C.  Plaintiffs Do Not Dispute That The Complaint Alleges No Facts Showing Pindrop Acted With Negligence, Recklessness, Or Intent.

Plaintiffs argue that, under Rule 9(b), "state of mind" may be alleged generally.  But "Rule 9 merely excuses a party from alleging [state of mind] under an elevated pleading standard.  It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Aschcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009).  Lacking any factual allegations, plaintiffs claim they are entitled to an inference of negligent, reckless, or intentional conduct because Pindrop "continue[s] to collect voiceprints . . . in violation of BIPA more than 12 years after the statute's enactment."  Opp. Br. at 16.  Even if the enactment date were relevant to whether a defendant's *conduct* meets the statutory standard (and it is not), plaintiffs' inference makes no sense in connection with allegations regarding a company's recent offering (by an out-of-state defendant).

Equally important, a statute prescribing an *intentional act* refers to *intentional conduct,* not *intent to violate the statute;* and knowledge or ignorance of the statute is irrelevant to whether the act was intentional.  *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015).  So too, a defendant's awareness of a statute enacted years ago is irrelevant to whether actions addressed by the statute were conducted with reasonable care or negligently.  Plaintiffs' proposed inference would effectively repeal a statute's state-of-mind requirement some number of years after enactment—something that courts cannot do.  The inference is illogical and unreasonable and cannot save their claim.  *See Argueta*, 643 F.3d at 74 (Court should "reject certain broad

characterizations . . . which were not supported by either the actual factual allegations  . . .  or reasonable inferences from such allegations.").[3]

Finally, plaintiffs argue that the requested injunction is sufficient to survive dismissal even without properly alleging Pindrop's state of mind, but do not dispute they must allege irreparable harm and the lack of an adequate legal remedy.  The complaint contains no such allegations, and statements in plaintiffs' brief cannot be used to amend their pleading or supply missing allegations. *See Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 948 F. Supp. 338, 344 (D. Del. 1996).

## III.   PLAINTIFFS CANNOT RECONCILE THEIR CLAIMS WITH BIPA'S BROAD EXCLUSION FOR FINANCIAL INSTITUTIONS.

Pindrop does not seek to expand BIPA's exclusion for financial institutions—the plain text of the statute could not be more broad: BIPA shall not "be ***deemed to apply in any manner to a financial institution*** or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 [the "GLBA"] and the rules promulgated thereunder."  740 ILCS 14/25(c) (emphasis added).  Plaintiffs argue that the exclusion does not apply to third parties, but do not dispute that, under their view, in order for John Hancock to use voice recognition to authenticate its customers' calls and deter fraud, it must either do so entirely "in house," without proprietary capabilities available only from a third party, ***or conform to BIPA***.  Plaintiffs cannot reconcile this outcome with BIPA's broad exclusion of financial institutions.

---

[3]     Because *Iqbal* confirms that pleading state of mind is subject to Rule 8's plausibility standard, plaintiffs' reliance on cases relaxing that standard is misplaced.  Opp. Br. at 15-16 (citing cases).  In any event, these cases are factually distinguishable and provide no basis to infer that Pindrop knew for twelve years that it was purportedly subject to the statute.  For example, the defendant in *Rogers v. BNSF Railway Co.* was plaintiffs' employer—not a third party vendor—operating multiple locations in Illinois.  2019 WL 5635180, at *1 (N.D. Ill. Oct. 31, 2019).  *See also Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *1 (N.D. Ill. Feb. 26, 2020) (applying the inference to an Illinois defendant).  The other cases plaintiffs cite simply relied on the holding of *Rogers* without conducting any independent analysis, and therefore add nothing. *See Figueroa v. Kronos, Inc.*, 454 F. Supp. 3d 772, 786 (N.D. Ill. Apr. 13, 2020); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092–93 (N.D. Ill. 2019).

Nevertheless, plaintiffs argue that the statute must apply to third parties providing products or services to financial institutions because it does not include a separate provision excluding contractors of financial institutions, as it does for government contractors. But this compares apples to oranges. There is also no "exclusion" for government entities, as there is for financial institutions, because the Act applies only to "***private entities***." Therefore, as to third party contractors of government entities, a stand-alone exclusion was necessary. By contrast, given the breadth of the exclusion for financial institutions subject to Title V of the GLBA. 15 U.S.C. § 6801 *et seq*., no additional language was necessary to exclude third parties acting on their behalf.

Declining to extend BIPA liability to third parties acting on behalf of financial institutions is entirely consistent with BIPA's structure and purpose—and with the desire to avoid conflict with federal law. Financial institutions are, of course, subject to the strict requirements of the GLBA, and their contractors must likewise conform to the federal regulations when acting in their behalf. For example, the Federal Trade Commission recently filed a complaint for violations of the GLBA Safeguards Rule, against a software vendor that was "significantly engaged in data processing" for a financial institution subject to the GLBA. *See In the Matter of LightYear Dealer Tech., LLC*, FTC-2019-0047, C-4697 (Sept. 3, 2019). Plaintiffs' attempt to distinguish financial institutions from third parties providing them products and services is contrary to the Illinois legislature's command that BIPA shall not apply "in any manner" to financial institutions.

## **<u>CONCLUSION</u>**

Plaintiffs do not and cannot state a claim and their complaint should be dismissed with prejudice.

10

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

OF COUNSEL:

Andrew B. Bloomer, P.C.
Catherine L. Fitzpatrick
Amelia Bailey
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Diana M. Torres
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
(213) 680-8400

February 5, 2021

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com

*Attorneys for Defendant Pindrop Security, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 5, 2021, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                            *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Andrew D. Schlichter, Esquire                         *VIA ELECTRONIC MAIL*
Joel Rohlf, Esquire
Alexander L. Braitberg, Esquire
SCHLICHTER BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO  63102
*Attorneys for Plaintiffs*

Jody C. Barillare, Esquire                               *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
1201 North Market Street, Suite 2201
Wilmington, DE 19801
*Attorneys for Defendant Amazon Web Services, Inc.*

Elizabeth Herrington, Esquire                        *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601
*Attorneys for Defendant Amazon Web Services, Inc.*

Raechel Keay Kummer, Esquire                    *VIA ELECTRONIC MAIL*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
*Attorneys for Defendant Amazon Web Services, Inc.*


                              */s/ Jack B. Blumenfeld*

                              _____
                              Jack B. Blumenfeld (#1014)