**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>            Plaintiffs,<br><br>   v.<br><br>AMAZON WEB SERVICES, INC. and PINDROP SECURITY, INC.,<br><br>         Defendants. | C.A. No. 1:20-cv-01399-SB |

**OPENING BRIEF IN SUPPORT OF DEFENDANT AMAZON WEB SERVICES, INC.'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Dated: April 4, 2022

Beth Herrington (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, IL  60601
(312) 324-1000
beth.herrington@morganlewis.com

Raechel Keay Kummer (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000
raechel.kummer@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web
Services, Inc.*

## <u>TABLE OF CONTENTS</u>

I.   RELEVANT BACKGROUND ................................................................................................ 3

    A.   Procedural History ..................................................................................................... 3

    B.   The Illinois Biometric Information Privacy Act ........................................................ 4

    C.   The Parties .................................................................................................................. 4

    D.   Plaintiffs' BIPA Claims. ............................................................................................. 5

II.  ARGUMENT ..................................................................................................................... 6

    A.   BIPA's Financial Institution Exception Precludes Plaintiffs' Claims. .................. 7

    B.   Plaintiffs Fail to State Claims Under BIPA Sections 15(a)–(d). .......................... 9

    1.   The Court Should Dismiss Plaintiffs' Section 15(b) Claim Because
        Plaintiffs Do Not Plausibly Allege That AWS Collected Their Biometric
        Information. ............................................................................................................ 10

    2.   Plaintiffs Fail to State Claims Under Sections 15(a) and 15(c)–(d). ................... 11

    3.   Plaintiffs Fail to Plead a Section 15(c) Claim Because They Do Not
        Plausibly Allege That AWS "Profited" From Their Biometrics. ........................ 15

    4.   Plaintiffs' Section 15(d) Claim Fails Because Plaintiffs Do Not Allege
        Facts Regarding AWS's Alleged Disclosure of Biometric Information. ........... 16

III. CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................7

*Bernal v. ADP, LLC*,
  No. 2017-CH-12364, Order (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019).......................11

*Bridges v. Torres*,
  809 F. App'x 69 (3d Cir. 2020) ..............................................................................13

*Bryant v. Compass Grp. USA, Inc.*,
  503 F. Supp. 3d 597 (N.D. Ill. 2020) ...................................................................7, 8

*Butch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)....................................................................................7

*Cameron v. Polar Tech Indus., Inc. & ADP, LLC*,
  No. 2019-CH-000013 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) ...........................11

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010)....................................................................................7

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) .................................................................11, 12

*Honeywell Int'l, Inc. v. Dept. of Revenue of State of Ill.*,
  851 N.E.2d 79 (Ill. App. Ct. 2006) ........................................................................11

*Jacobs v. Hanwha Techwin Am., Inc.*,
  No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ..............................10, 12

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012)....................................................................................7

*Kloss v. Acuant, Inc.*,
  462 F. Supp. 3d 873 (N.D. Ill. 2020) .....................................................................10

*McGoveran v. Amazon Web Servs., Inc.*,
  2020 WL 5602819 (S.D. Ill. Sept. 18, 2020).........................................................3

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*McGoveran v. Amazon Web Servs., Inc.*,
2021 WL 4502089 (D. Del. Sept. 30, 2021) ........................................................................3

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ............................................................................11, 17

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993) .............................................................................................13

*Pooh-Bah Enter., Inc. v. Cnty. of Cook*,
905 N.E.2d 781 (Ill. 2009) .................................................................................................16

*Rosenbach v. Six Flags Ent. Group*,
2019 IL 123186 ...........................................................................................................4, 5, 6

*Rosenbach v. Six Flags Ent't Corp.*,
129 N.E.3d 1197 (Ill. 2019) ...............................................................................................14

*Sigcho-Lopez v. Illinois State Bd. of Elections*
--- N.E.3d ---, 2022 WL 869783 (Ill. 2022) ......................................................................15

*Sisk v. Sussex Cty.*,
2012 WL 1970879 (D. Del. June 1, 2012) .....................................................................5, 13

*Stauffer v. Innovative Heights, LLC*,
480 F. Supp. 3d 888 (S.D. Ill. 2020) ....................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...........................................................................................................13

*Zellmer v. Facebook, Inc.*,
No. 18-cv-1880, D.I. 87 (N.D. Cal. Mar. 31, 2022) ................................................3, 14, 15

**Statutes**

740 ILCS 14/10 ..........................................................................................................................4

740 ILCS 14/15 ................................................................................................................ *passim*

740 ILCS 14/20 ..........................................................................................................................4

740 ILCS 14/25(c) ...............................................................................................................1, 7, 8

15 U.S.C. § 6801 ........................................................................................................................8

15 U.S.C. § 6809 ........................................................................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

16 C.F.R. § 314.4 ..................................................................................................8

Federal Rule of Civil Procedure 12(b)(6) .......................................................1, 3, 7, 13

IL H.R. Tran. 2008 Reg. Sess. No. 276 ..........................................................16

Defendant Amazon Web Services, Inc. ("AWS") respectfully submits this opening brief in support of its motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' First Amended Complaint for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiffs' First Amended Complaint ("FAC") seeks to impose liability on AWS under the Illinois Biometric Information Privacy Act ("BIPA") based on AWS's provision of cloud services to non-party John Hancock Financial Services, Inc. ("John Hancock").  Specifically, Plaintiffs allege that AWS provided John Hancock with access to Amazon Connect, a software product that allows companies to set up virtual call centers and route customer telephone calls to the companies' customer service representatives, who can be located anywhere in the world.  Plaintiffs allege that during telephone calls facilitated by Amazon Connect, John Hancock used software created by Defendant Pindrop Security, Inc. ("Pindrop") to collect biometric voiceprints from Plaintiffs and other John Hancock customers for the purpose of authenticating their identity before disclosing or collecting their private financial information.  John Hancock allegedly collected, processed, and stored that biometric information using AWS cloud servers.

On their face, these allegations demonstrate that AWS did not violate BIPA, and the FAC should be dismissed for two independent reasons.

*First*, BIPA's financial institution exception precludes Plaintiffs' claims, which are based entirely on Plaintiffs' telephone calls to John Hancock and John Hancock's alleged collection, processing, and storage of Plaintiffs' voiceprints using Pindrop software and AWS cloud servers.  As a "financial institution," John Hancock is exempt from BIPA.  *See* 740 ILCS 14/25(c).  And Plaintiffs cannot sidestep that exemption by asserting claims against John Hancock's vendors, such as AWS, that were allegedly hired to facilitate its biometric security

1

measures.

*Second*, Plaintiffs' BIPA Section 15(a)–(d) claims should be dismissed for failure to state a claim because Plaintiffs fail to plead facts supporting a plausible inference that AWS "collected" or "possessed" Plaintiffs' "biometric information" or "biometric identifiers."  As the FAC makes clear, AWS did not interact with Plaintiffs in any way.  Rather, John Hancock allegedly (i) used Amazon Connect software to create a virtual call center, (ii) used Pindrop software to collect biometric information from John Hancock customers, and (iii) processed, transmitted, and/or stored that biometric information using AWS cloud servers.  Even taken as true for purposes of this motion, these allegations do not establish that AWS itself collected biometric information from anyone, nor do they establish that AWS owned or controlled the biometric information allegedly collected by John Hancock, as required to establish "possession" under BIPA.  Nor could Plaintiffs allege that AWS owned or controlled John Hancock's data given that AWS customers maintain ownership and control of their data at all times, even if they pay AWS to store or process it for them.

Common sense also dictates that BIPA does not apply to AWS under these circumstances. AWS was not in a position to obtain consents from John Hancock's customers before John Hancock allegedly collected their biometric data using Pindrop, nor did AWS have the right to establish a retention schedule for biometric data owned and controlled by John Hancock.  Indeed, applying BIPA to cloud-services providers like AWS would lead to absurd results, as they would be required to police each of their customer's accounts and obtain consents from individuals with whom they have no direct relationship (or even contact information).  That is an impossible task given that AWS alone has more than a million enterprise customers and generally does not know what specific data those customers are collecting and storing on AWS servers.  As a federal court

recently observed, "it would be patently unreasonable to construe BIPA" to require a party to provide notice to and obtain consent from persons "who are for all practical purposes total strangers" to that party. *Zellmer v. Facebook, Inc.*, No. 18-cv-1880, D.I. 87 (N.D. Cal. Mar. 31, 2022) ("3/31/22 Order," attached as <u>Exhibit A</u>), at 4. Any AWS customer that collects and stores biometric information—as John Hancock allegedly did here—is responsible for complying with BIPA, and the Court should reject Plaintiffs' cynical attempt to expand BIPA liability to cloud-services providers, like AWS, which merely store and process information on their customers' behalf.

## I.     RELEVANT BACKGROUND

### A.     Procedural History

Plaintiffs originally filed this case in the U.S. District Court for the Southern District of Illinois. The Southern District of Illinois dismissed that action for lack of personal jurisdiction on September 18, 2020. *McGoveran v. Amazon Web Servs., Inc.*, 2020 WL 5602819, at *5–6 (S.D. Ill. Sept. 18, 2020).

Plaintiffs then filed their initial Complaint in this Court on October 16, 2020. D.I. 1. On September 30, 2021, this Court granted Defendants' motions to dismiss the Complaint on the basis that "BIPA violations must occur in Illinois in order for plaintiffs to obtain any relief," but Plaintiffs "fail[ed] to allege conduct that occurred primarily and substantially in Illinois." *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *3–4 (D. Del. Sept. 30, 2021).

On February 17, 2022, Plaintiffs filed the FAC. The FAC contains new (and baseless) allegations intended to remedy that defect, but the FAC suffers multiple other defects that require its dismissal under Rule 12(b)(6).[1]

---

[1] Although the FAC contains new allegations about the BIPA claims' supposed connection to Illinois, should this case proceed to discovery, the record will show that the relevant events did not

B.      **The Illinois Biometric Information Privacy Act**

BIPA regulates the collection, possession, and storage of "biometric identifiers" and "biometric information." The statute defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. And "'[b]iometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

BIPA provides for per-violation liability of $1,000 (for negligent violations) or $5,000 (for intentional or reckless violations), plus attorney's fees. 740 ILCS 14/20. Plaintiffs and class members can recover these amounts based on a violation of the statute alone; no actual injury is required. *Rosenbach v. Six Flags Ent. Group*, 2019 IL 123186 ¶ 23.

C.      **The Parties**

Plaintiffs are Illinois residents who allege that they called John Hancock "call centers" "from Illinois[] using Illinois telephone numbers." FAC ¶¶ 6–9, 98. Plaintiffs claim that the John Hancock "call center(s) use Amazon Connect with Pindrop biometric voiceprint authentication," which allegedly "collected, captured, obtained, and possessed the biometric identifiers of Plaintiffs." *Id.* ¶¶ 102, 155.

John Hancock is a Massachusetts-based company and is "one of the nation's leading financial services companies, providing a broad array of insurance and investment products and services to retail and institutional customers, primarily in North America."[2]

_____

occur primarily and substantially in Illinois, and summary judgment should be granted on that basis.

[2]  *See* John Hancock Annual Report (Form 10-K), at 4, available at https://www.sec.gov/Archives/edgar/data/736260/000092701603001209/d10k.htm; Secretary of the Commonwealth of Massachusetts, Corporations Division – Business Entity Summary for JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=hXKc8TX9tXZ1k.a5v5jPESZPvU3WtgQO2AhXcfPmRfw-. The Court can take judicial notice of these facts in

Pindrop is a Delaware corporation that allegedly offers "voice biometric services . . . used by call centers and customer service personnel to, among other things, confirm the identity of individual callers." *Id.* ¶¶ 12, 58.

AWS is a Delaware corporation and is the world's leading cloud computing company. It provides products and services such as servers, storage, networking, remote computing, mobile development, and security.[3] AWS has millions of customers worldwide.[4] The FAC alleges that AWS "offers call center services under the brand 'Amazon Connect,'" which is "a 'cloud-based contact center service.'" *Id.* ¶¶ 51–52 (citation omitted). The FAC further alleges that John Hancock was an AWS customer that used the Amazon Connect product, *id.* ¶ 98, and that AWS routed Plaintiffs' telephone calls and data through its "network of servers." *Id.* ¶ 71.

Plaintiffs claim that Pindrop's "biometric voice authentication services" can be integrated with Amazon Connect such that audio from incoming telephone calls "is analyzed by Pindrop." *Id.* ¶ 131. In particular, Plaintiffs allege that "[t]he analysis of words . . . takes place at least in part on Defendants' server network[] and is done via biometric voice technology developed, maintained, and controlled by Pindrop." *Id.* ¶¶ 67–68, 83, 131. Plaintiffs further claim "[t]he biometric output of [Pindrop's] analysis … is transmitted across AWS's server network." *Id.* ¶ 133.

### D.    Plaintiffs' BIPA Claims.

Plaintiffs allege in conclusory fashion that AWS violated BIPA "by collecting, possessing, redisclosing, profiting from, and failing to safeguard their biometric identifiers and biometric

---

considering AWS's Motion to Dismiss. *See, e.g.*, *Sisk v. Sussex Cty.*, 2012 WL 1970879, at *1 n.3 (D. Del. June 1, 2012) (court faced with a motion to dismiss can consider "matters of public record") (internal citations omitted).

[3] *See* https://aws.amazon.com/what-is-aws/.

[4] *Id.*

information." *Id.* ¶ 1.  Plaintiffs assert four separate claims under BIPA, alleging that AWS violated:

1)  Section 15(a) by not "creating and following a written policy, made available to the public, establishing and following a retention schedule and destruction guidelines for their possession of biometric identifiers and information," *id.* ¶ 180;

2)  Section 15(b) "by capturing, collecting, and obtaining Plaintiffs' . . . biometric identifiers and biometric information . . . without first obtaining informed written consent," *id.* ¶¶ 187–89;

3)  Section 15(c) "by profiting from the possession of Plaintiffs' . . . biometric identifiers and biometric information," *id.* ¶ 197; and

4)  Section 15(d) "by disclosing, redisclosing, and disseminating Plaintiffs' . . . biometric identifiers and biometric information . . . without consent," *id.* ¶ 203.

Notably, Plaintiffs do not allege that they had a direct relationship with AWS or that AWS collected or controlled their biometric data.  Rather, Plaintiffs allegedly maintain 401(k) or annuity accounts with John Hancock, and they called John Hancock's customer service center "regarding" those accounts.  *Id.* ¶¶ 99-101.  John Hancock allegedly used Amazon Connect to facilitate those calls, during which John Hancock allegedly collected biometric information from Plaintiffs using Pindrop software for the purpose of verifying their identities before collecting or disclosing their private financial information.  *See, e.g.*, *id.* ¶ 68 (AWS "*offered*" customers—like John Hancock—the services at issue) (emphasis added); *id.* ¶ 9 ("Plaintiffs made phone calls to call centers using services provided by [AWS]."); *id.* ¶ 103 (John Hancock call centers "use Pindrop's 'voice biometrics' to authenticate callers").

## II.    ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[L]abels and conclusions" or "a formulaic

recitation of the elements of a cause of action" do not suffice.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) ("[W]e disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.").   The factual pleadings must show "more than a sheer possibility that a defendant has acted unlawfully."  *Butch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).   Where there is an "obvious alternative explanation" for the conduct alleged—such as that the defendant did not comply with a statute because the statute does not apply to the conduct as alleged—this standard cannot be met.  *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 566).

Here, the Court should dismiss Plaintiffs' BIPA claims under Rule 12(b)(6) because the claims are barred by BIPA's financial institution exception and because the FAC fails to state a claim upon which relief can be granted under BIPA's plain language.

## A.   BIPA's Financial Institution Exception Precludes Plaintiffs' Claims.

BIPA does not apply "***in any manner***" to "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach Bliley Act of 1999 [the "GLBA"] and the rules promulgated thereunder."  740 ILCS 14/25(c) (emphasis added); *see also Bryant v. Compass Grp. USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) ("The General Assembly's decision to exclude certain entities from BIPA's coverage is eminently rational … [financial institutions] already had privacy safeguards in place, so imposing additional obligations on them would have been minimally efficacious.").   The GLBA applies to financial institutions, i.e., companies that offer consumers financial products or services like loans, financial or investment advice, or insurance.  15 U.S.C. §§ 6801, 6809.

BIPA's financial institution exception precludes AWS's liability in this case.  Plaintiffs

allege that their biometric information was collected and stored during their interactions with John Hancock, FAC ¶¶ 98–107, which is a financial institution subject to the GLBA.  *See* John Hancock Annual Report (Form 10-K), at 1 ("John Hancock Financial Services, Inc. . . . is one of the nation's leading financial services companies, providing a broad array of insurance and investment products and services to retail and institutional customers"); *id.* at 33 (describing "federal initiatives" with an "impact on [John Hancock's] business," including GLBA).

Because BIPA does not apply to John Hancock "in any manner," BIPA likewise does not apply to AWS, which is alleged, at most, to have facilitated John Hancock's biometric security measures by providing it with access to Amazon Connect and other cloud services.  In other words, Plaintiffs cannot circumvent BIPA's financial-institution exemption by suing John Hancock's service providers, which undisputedly acted on John Hancock's behalf and at its direction.  740 ILCS 14/25(c).

Excluding financial institutions and their service providers from BIPA's coverage is "eminently rational," *see Bryant*, 503 F. Supp. 3d at 601, as GLBA is a law "similar to BIPA that requires financial institutions to explain their information-gathering practices and how they safeguard sensitive data to their customers."  *Stauffer v. Innovative Heights, LLC*, 480 F. Supp. 3d 888, 903 (S.D. Ill. 2020).  GLBA also requires financial institutions to oversee the service providers with which they work, including AWS.  *See* 16 C.F.R. § 314.4 (GLBA implementing regulations providing that "[i]n order to develop, implement, and maintain your information security program, you shall … [o]versee service providers, by: (1) Taking reasonable steps to select and retain service providers that are capable of maintaining appropriate safeguards for the customer information at issue; (2) Requiring your service providers by contract to implement and

maintain such safeguards; and (3) Periodically assessing your service providers based on the risk they present and the continued adequacy of their safeguards.").

Given this federal statutory scheme, which ensures that financial institutions and their service providers safeguard sensitive customer data (including biometric information), BIPA's exemption for financial institutions can only be fairly and logically read to include their service providers. Indeed, it would be nonsensical to exempt financial institutions from BIPA while subjecting their service providers—who are already subject to oversight under the GLBA—to BIPA's onerous requirements. It would also lead to absurd and unworkable results, as this case demonstrates. AWS, as a cloud-services provider, was not in a position to obtain consents from John Hancock's customers before John Hancock allegedly collected their biometric information through Pindrop and stored it on AWS servers. Yet Plaintiffs ask this Court to hold AWS liable for that conduct, despite the fact that John Hancock itself is exempt from BIPA and *was not required to obtain customer consents* before collecting and storing that information. In other words, under Plaintiffs' interpretation of the statute, there would have been no BIPA violation had John Hancock processed and stored their biometric information on its own servers, but there is a BIPA violation because John Hancock allegedly paid AWS to process and store that information in the cloud. The Court should reject such a nonsensical and overly narrow interpretation of the financial-institution exemption and dismiss Plaintiffs' claims in their entirety.

**B.    Plaintiffs Fail to State Claims Under BIPA Sections 15(a)–(d).**

Even if Plaintiffs' claims were not barred by BIPA's financial-institution exemption, they would still fail because Plaintiffs fail to plead facts supporting a plausible inference that AWS possessed, collected, profited from, disclosed, or stored their biometric data in violation of BIPA Sections 15(a)–(d).

9

1.    **The Court Should Dismiss Plaintiffs' Section 15(b) Claim Because Plaintiffs Do Not Plausibly Allege That AWS Collected Their Biometric Information.**

BIPA Section 15(b) requires private entities that "collect" an individual's biometric data to first: (1) inform the individual "in writing that . . . biometric information is being collected"; (2) inform the individual "in writing of the specific purpose and length of term for which . . . biometric information is being collected"; and (3) receive "a written release executed by the subject." 740 ILCS 14/15(b).  Unlike Sections 15(a) and 15(c)–(d), which apply to "possession" of biometric data, only affirmative ***actions*** trigger Section 15(b): the private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information.  *Id.*  Section 15(b) therefore does not regulate entities that merely "possess[]" biometric information, only entities that actively "collect" biometric information.

Based on its plain language, Section 15(b) does not apply to AWS's alleged conduct, as Plaintiffs do not, and cannot, allege that AWS actively collected biometric information directly from them.  To the contrary, Plaintiffs allege that ***John Hancock*** was the entity taking active steps to collect their biometric information for identity-verification purposes, which it allegedly accomplished using Pindrop software.  The mere fact that John Hancock allegedly stored or processed that information on AWS servers—***without any active involvement from AWS***—is patently insufficient to hold AWS liable under Section 15(b).  *See, e.g.*, *Zellmer*, 3/31/22 Order at 6 (Section 15(b) claim failed because the plaintiff lacked any direct relationship with the defendant); *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) ("[T]his court concludes that for Section 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data."); *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (N.D. Ill. 2020) (dismissing BIPA Section 15(b) and (d) claims where "[plaintiff] does not allege her relationship to [defendant] which

allowed [defendant] to acquire her biometric information, i.e. whether she had a direct relationship with [defendant] or with one of the private companies that used [defendant's] software"); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 965–66 (N.D. Ill. 2020) ("[F]or Section 15(b)'s requirements to apply, an entity must, at a minimum, ***take an active step*** to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data") (citation omitted) (emphasis added); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing Section 15(b) claim against third-party timekeeping vendor and noting the "difference between *possessing* and *collecting* biometric information"); *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013, Tr. at 29–36 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(b) claim against third-party timekeeping vendor) (attached as <u>Exhibit B</u>); *Bernal v. ADP, LLC*, No. 2017-CH-12364, Order at 2–3 (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019) (dismissing Section 15(a)– (d) claims against third-party timekeeping vendor ADP and noting Section 15(b)'s "requirement that the private entity whose actions the subsection is meant to regulate must receive a 'written release' . . . suggest[s] that the legislature did not intend for the subsection to apply to a third party entity") (attached as <u>Exhibit C</u>).

### 2. Plaintiffs Fail to State Claims Under Sections 15(a) and 15(c)–(d).

#### a. Plaintiffs fail to allege that AWS "possessed" their biometric data.

Sections 15(a) and 15(c)–(d) apply only to private entities "in possession" of biometric data. 740 ILCS 14/15(a),(c)-(d). Under Illinois law, one possesses an item if one "has the ability, at a given time, to exercise ***dominion and control*** over [it]." *Honeywell Int'l, Inc. v. Dept. of Revenue of State of Ill.*, 851 N.E.2d 79, 85 (Ill. App. Ct. 2006) (emphasis added). Thus, to plausibly allege that AWS possessed their biometric data, Plaintiffs must plead facts showing that AWS had the ability to exercise dominion and control over that data.

11

Plaintiffs allege no such facts.  To the contrary, Plaintiffs allege facts showing that it was *John Hancock,* not AWS, that exercised dominion and control over their biometric information. *See, e.g.*, FAC ¶¶ 98, 103 (alleging that Plaintiffs called "call centers used by John Hancock on numerous occasions" and John Hancock "use[d] Pindrop's 'voice biometrics'" to authenticate their identities, so that they were not required "to have a pin" to authenticate their identity to John Hancock and obtain information about their accounts); *see Jacobs*, 2021 WL 3172967, at *3 (dismissing Section 15(a) claim where the plaintiff "does not provide any factual allegations that plausibly establish that defendant exercised control over plaintiff's data or otherwise held plaintiff's data at its disposal"); *Heard*, 440 F. Supp. 3d at 968 (dismissing Section 15(a) claim where plaintiff did "not adequately plea[d] 'possession' because he fail[ed] to allege that [defendant] exercised *any* dominion or control over [his] biometric data").

Plaintiffs do not, and cannot, allege any facts showing that John Hancock handed over ownership or control of its data—including Plaintiffs' biometric information—to AWS, which was merely John Hancock's cloud-services provider.  Plaintiffs have thus failed to plead "possession" under Sections 15(a) and 15(c)–(d), and those claims should be dismissed.

Plaintiffs' inability to allege facts showing that AWS exercised dominion or control over John Hancock's data is unsurprising given that AWS customers retain ownership and complete control of all content they store with AWS.  For example, AWS's publicly available Data Privacy FAQ states, "As a customer, *you maintain full control of your content that you upload to the AWS services under your AWS account*. . . .  We do not access or use your content for any purpose without your agreement." (emphasis added).[5]  In another public disclosure titled "Using AWS in

---

[5]  https://aws.amazon.com/compliance/data-privacy-faq/.  Because the FAC repeatedly cites information from AWS's website, FAC at pp. 12-16, 26, 27, 29-31, and because the relationship between AWS and its customers is at the heart of Plaintiffs' claims, the Court can consider AWS's

the Context of Common Privacy & Data Protection Considerations" (attached as <u>Exhibit D</u>), AWS again states that "*[c]ustomers retain ownership and control of their content* within the AWS environment," and that:

> **AWS does not collect personal data from individuals whose personal data is included in content a customer stores or processes using AWS**, and **AWS has no contact with those individuals**. Therefore, AWS is unable in these circumstances to communicate with the relevant individuals. AWS uses customer content only to provide the AWS services selected by each customer to that customer, and does not use customer content for any other purposes without the customer's consent.

Ex. D at 2, 13 (emphasis added).

Plaintiffs rely heavily on AWS's website in the FAC, and they provide the Court no basis to conclude that these public statements by AWS are inaccurate. Indeed, nothing in the FAC even suggests that John Hancock gave up ownership or control of the biometric information that it collected from Plaintiffs to improve its security measures. Accordingly, Plaintiffs have failed to plead facts showing that AWS "possessed" their biometric information within the meaning of BIPA, and Plaintiffs' claims under BIPA Sections 15(a) and 15(c)–(d) should be dismissed.

### b. Applying BIPA to a cloud-computing platform like AWS would lead to absurd results.

Construing BIPA to apply to third-party cloud-computing platforms like AWS would lead to absurd and unworkable results, as demonstrated by Plaintiffs' own allegations. The *Zellmer*

---

website in connection with this Motion as "'a document *integral to or explicitly relied* upon in the complaint.'" *Bridges v. Torres*, 809 F. App'x 69, 71 (3d Cir. 2020) (internal quotation marks and citation omitted); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering job application attached to motion to dismiss where plaintiff's claims were based on document). Moreover, the Court may consider these online documents for the additional reason that they are matters of public record. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts "ordinarily examine . . . matters of which the court may take judicial notice" when ruling on a Rule 12(b)(6) motion); *Sisk*, 2012 WL 1970879, at *1 n.3 (courts faced with a motion to dismiss may consider "matters of public record" and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]") (internal citations omitted).

court emphasized the "obvious and insoluble problems" that would follow if BIPA were not limited to "situations where a business had at least some measure of knowing contact with and awareness of the people subject to biometric data collection." *Zellmer*, 3/31/22 Order at 5-6 (Ex. A). Those problems are amply demonstrated here. For example, Plaintiffs allege in the FAC that AWS had an obligation to obtain Plaintiffs' consent before **John Hancock** collected Plaintiffs' biometric information and before **John Hancock** stored that information on AWS's cloud servers. But Plaintiffs fail to explain how AWS could possibly have obtained Plaintiffs' consent given that it did not interact with them and does not control what data John Hancock chooses to process or store using its AWS cloud-services account. Plaintiffs' claims are based on an untenable construction of BIPA, and they are flatly inconsistent with the Illinois Supreme Court's statement that compliance with BIPA "should not be difficult" and the expense of compliance should be minimal. *Id.*, quoting *Rosenbach v. Six Flags Ent't Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019).

Likewise, Plaintiffs allege in the FAC that AWS had an obligation to create and comply with a publicly available retention/deletion schedule for biometric information. FAC ¶ 180. But Plaintiffs fail to explain how AWS could possibly have created or implemented such a schedule for data ***owned and controlled by John Hancock***. Indeed, absent narrow circumstances not present here, AWS has no right to delete any of the data that John Hancock stores in its AWS account, because Amazon does not own or control that data. In the context of cloud services, the only fair and logical reading of BIPA is that the entity actually collecting and storing the biometric information—here, John Hancock—has an obligation to comply with BIPA's requirements, not the cloud-services provider that merely processes or hosts the data on its customer's behalf.

Any contrary reading of BIPA would be a death knell for cloud computing as it exists today. That is because cloud-services providers like AWS host data for millions of customers,

and, in many instances, have no visibility into the contents of that data, including whether it contains biometric information.  If merely hosting customer data—without ownership or control—qualified as "possession" for BIPA purposes, then cloud-services providers would be put in an impossible position.  They would be required to obtain consents for the collection of biometric data they do not know is being collected, from customers with whom they have no relationship and no contact information.  They would also be required to maintain and comply with a public retention policy for biometric data, while having no ability to identify biometric data in their customers' accounts and no legal right to delete it.  As a result, cloud-services providers would face potential BIPA liability any time a customer stored biometric data—even if the customer was exempt from BIPA, as John Hancock was here.  BIPA was never intended to apply this way, and it should not be interpreted in such an absurd and unworkable manner.  *See Sigcho-Lopez v. Illinois State Bd. of Elections* --- N.E.3d ---, 2022 WL 869783, at *5 (Ill. 2022) ("a court presumes that the legislature did not intend absurd, inconvenient, or unjust result"); *Zellmer*, 3/31/22 Order at 6 (granting summary judgment on BIPA claim "[g]iven the readily apparent impossibility" of complying with BIPA for a defendant who had no relationship with, or knowledge of, the persons whose biometric data was collected).

### 3. Plaintiffs Fail to Plead a Section 15(c) Claim Because They Do Not Plausibly Allege That AWS "Profited" From Their Biometrics.

Plaintiffs' BIPA Section 15(c) claim—based on AWS allegedly "profiting" from Plaintiffs' biometrics by "charg[ing] fees for and profit[ing] from its Amazon Connect services," FAC ¶ 136—turns on a mischaracterization of "profit" under Section 15(c).  That section provides that an entity may not "sell, lease, trade, or otherwise profit from a person's . . . biometric identifier or biometric information."  The four verbs—"sell, lease, trade, or otherwise profit"—all contemplate the direct provision of biometric data in exchange for money.  740 ILCS 14/15(c).  "[W]hen a

15

statutory clause specifically describes several classes of . . . things and then includes 'other . . . things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009).  Thus, like its use of "sell," "lease," and "trade," Section 15(c)'s use of "otherwise profit" contemplates an entity receiving a pecuniary benefit in exchange for a person's biometric data.   *See* IL H.R. Tran. 2008 Reg. Sess. No. 276 at 112 (BIPA's legislative history showing legislature intended for Section 15(c) to "prohibit[] the *sale* of biometric information") (emphasis added) (attached as Exhibit E).

Here, Plaintiffs do not allege any facts even suggesting that AWS profited from selling or otherwise transferring Plaintiffs' biometric information to a third-party.  Rather, Plaintiffs merely allege that AWS profited by charging John Hancock a fee *for using Amazon Connect*, which allegedly had the ability to integrate with Pindrop software.  FAC ¶ 136 ("AWS charges fees for and profits from its Amazon Connect services").  That is insufficient to trigger BIPA's prohibition on selling biometric information, and the Court should therefore dismiss Plaintiffs' Section 15(c) claim.

### 4.   Plaintiffs' Section 15(d) Claim Fails Because Plaintiffs Do Not Allege Facts Regarding AWS's Alleged Disclosure of Biometric Information.

Plaintiff's Section 15(d) claim fails for similar reasons.  Section 15(d) requires that a private entity may not "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information" unless the individual consents or the disclosure completes a financial transaction.  740 ILCS 14/15(d).  Plaintiffs allege that AWS violated Section 15(d) because "Pindrop, after collecting Plaintiffs' . . . biometric data, disclosed and disseminated that data to AWS," who "after receiving from Pindrop and storing Plaintiffs' . . . biometric data, *redisclosed and disseminated that data to AWS's Amazon Connect customers*."  FAC ¶¶ 157– 58; *see also id.* ¶ 159 ("Defendants disseminated, including between each other and their call center

16

clients, the biometric data of Plaintiffs . . . .").  This vague and conclusory allegation, unsupported by any actual facts, does not support a plausible inference that AWS violated Section 15(d).

As an initial matter, Plaintiffs fail to allege what biometric information AWS allegedly disclosed or how AWS allegedly disclosed it.  Plaintiffs also fail to allege which of "AWS's Amazon Connect customers" allegedly received biometric information.  Absent such specifics, Plaintiffs fail to adequately plead a Section 15(d) violation.  *See Namuwonge*, 418 F. Supp. 3d at 285 (dismissing Section 15(d) claim where plaintiff merely alleged "on information and belief" that defendant disclosed her biometric information to third parties and failed to allege "specifics related to any disclosure by [defendant] to a third party").

Plaintiffs' allegations of dissemination also make no sense.  Plaintiffs allege that AWS "redisclosed and disseminated that data to AWS's Amazon Connect customers," which is presumably a reference to John Hancock, as no other Amazon Connect customers are identified in the FAC.  But as Plaintiffs admit in the FAC, AWS did not disseminate information to John Hancock as a third party; rather, AWS allegedly processed and stored Plaintiffs' biometric information *at John Hancock's request as John Hancock's cloud-services provider*.  Indeed, Plaintiffs admit that they were *calling John Hancock* when their biometrics were collected (with their full knowledge), so AWS cannot be said to have "disseminated" that information to John Hancock in any sense of the word.  Plaintiffs' Section 15(d) should therefore be dismissed.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, AWS respectfully requests that the Court dismiss Plaintiffs' FAC with prejudice.

April 4, 2022

Beth Herrington (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, IL  60601
(312) 324-1000
beth.herrington@morganlewis.com

Raechel Keay Kummer (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000
raechel.kummer@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
_____
Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web Services, Inc.*

18