IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>       Plaintiffs,<br><br>       v.<br><br>AMAZON WEB SERVICES, INC. and PINDROP SECURITY, INC.,<br><br>       Defendants. | C.A. No. 1:20-cv-01399-SB |

**REPLY BRIEF IN SUPPORT OF DEFENDANT AMAZON WEB SERVICES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Dated: June 8, 2022

Beth Herrington (admitted *pro hac vice*)
77 West Wacker Drive, Suite 500
Chicago, IL  60601
(312) 324-1000
beth.herrington@morganlewis.com

Raechel Keay Kummer (admitted *pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000
raechel.kummer@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web Services, Inc.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT .................................................................................................................................. 1

I.  Plaintiffs Falsely Argue That This Court Has Considered and Rejected AWS's Arguments In Favor Of Dismissal In This Motion. ............................................................. 1

II. BIPA's Financial Institution Exception Precludes Liability Here. ..................................... 2

III. Plaintiffs Fail To Plausibly State A Claim Under Any BIPA Section. ................................ 4

    A.    The FAC fails to plausibly allege that AWS "collects" biometric information, so the Section 15(b) claim fails. ......................................................... 4

    B.    The FAC fails to plausibly allege that AWS "possesses" biometric information, so the Section 15(a), (c), and (d) claims fail. .................................... 6

    C.    The FAC fails to plausibly allege that AWS profits from the sale or transfer of biometric information, so the Section 15(c) claim fails. ...................... 9

    D.    The FAC fails to plausibly allege that AWS "disseminates" biometric data to third parties without Plaintiffs' consent, so the Section 15(d) claim fails. ....... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bernal v. ADP, LLC*,
  2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) ...................................................................... 5

*Bridges v. Torres*,
  809 F. App'x 69 (3d Cir. 2020) ................................................................................................ 7

*Bryant v. Compass Grp. USA, Inc.*,
  503 F. Supp. 3d 597 (N.D. Ill. 2020) ....................................................................................... 2

*Cameron v. Polar Tech Indus., Inc.*,
  No. 2019-CH-13 ....................................................................................................................... 5

*Cothron v. White Castle Sys.*,
  467 F. Supp. 3d 604 (N.D. Ill. 2020) ..................................................................................... 10

*Figueroa v. Kronos Inc.*,
  2020 WL 1848206 (N.D. Ill. Apr. 13, 2020) ........................................................................... 2

*Figueroa v. Kronos Inc.*,
  454 F. Supp. 3d 772 (N.D. Ill. 2020) ..................................................................................... 10

*Hazlitt v. Apple Inc.*,
  543 F. Supp. 3d 643 (S.D. Ill. 2021) ........................................................................................ 9

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................................................ passim

*Heard v. Becton, Dickinson & Co.*,
  524 F. Supp. 3d 831 (N.D. Ill. 2021) ....................................................................................... 6

*King v. PeopleNet Corp.*,
  2021 WL 5006692 (N.D. Ill. 2021) ...................................................................................... 6, 9

*Kloss v. Acuant, Inc.*,
  462 F. Supp. 3d 873 (N.D. Ill. 2020) ....................................................................................... 5

*McGoveran v. Amazon Web Servs., Inc.*,
  2020 WL 5602819 (S.D. Ill. Sept. 18, 2020) ........................................................................... 1

*Namuwonge v. Kronos, Inc.*,
  418 F. Supp. 3d 279 (N.D. Ill. 2019) ................................................................................. 6, 10

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Naughton v. Amazon.com, Inc.*,
    2022 WL 19324 (N.D. Ill. Jan. 3, 2022) .................................................................................10

*Neals v. ParTech, Inc.*,
    2021 WL 463100 (N.D. Ill. 2021) ......................................................................................6, 9

*Patterson v. Respondus, Inc.*,
    2022 WL 860946 (N.D. Ill. Mar. 23, 2022) ............................................................................2

*Pooh-Bah Enter., Inc. v. Cnty. of Cook*,
    905 N.E.2d 781 (Ill. 2009) .....................................................................................................9

*Rosenbach v. Six Flags Ent't Corp.*,
    129 N.E.3d 1197 (Ill. 2019) ...................................................................................................8

*Sisk v. Sussex Cty.*,
    2012 WL 1970879 (D. Del. June 1, 2012) .............................................................................7

*Smith v. Signature Sys., Inc.*,
    2022 WL 595707 (N.D. Ill. 2022) ..........................................................................................6

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    480 F. Supp. 3d 888 (S.D. Ill. 2020) ......................................................................................2

*Vance v. Amazon.com, Inc.*,
    525 F. Supp. 3d 1301 (W.D. Wash. 2021) .........................................................................2, 6

*Vance v. Amazon.com Inc.*,
    534 F. Supp. 3d 1314 (W.D. Wash. 2021) .............................................................................9

*Zellmer v. Facebook, Inc.*,
    2022 WL 976981 (N.D. Cal. Mar. 31, 2022) ..........................................................................8

**Statutes**

740 ILCS 14/10 .........................................................................................................................3, 6

740 ILCS 14/15 ................................................................................................................... *passim*

**Other Authorities**

12 C.F.R. §§ 1016.13-15 ................................................................................................................3

16 C.F.R. § 314.4 ...........................................................................................................................3

Plaintiffs never dispute that they cannot sue John Hancock under BIPA because it is exempt from the statute. This Court should reject their improper attempt to end-run that exemption by suing John Hancock's cloud services provider, AWS, which has no relationship whatsoever with Plaintiffs or any putative class members. Despite multiple chances, Plaintiffs still fail to state any viable BIPA claim against AWS, and all their claims should therefore be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs Falsely Argue That This Court Has Considered and Rejected AWS's Arguments In Favor Of Dismissal In This Motion.

Throughout their brief, Plaintiffs assert that the Court has already considered and rejected AWS's arguments in favor of dismissal. *E.g.*, D.I. 56 at 6 (claiming that "Judge Stark has already considered and declined to adopt" these arguments). That is patently false. Neither Judge Stark nor Judge Rosenstengel in the Southern District of Illinois "declined to adopt" AWS's financial institution and plausibility arguments. *Id.* at 10, 13. In fact, they did not even consider those arguments. Instead, they *granted* AWS's prior motions to dismiss *on other independent grounds* without addressing the arguments AWS presents in this motion. *See McGoveran v. Amazon Web Servs., Inc.*, 2020 WL 5602819, at *5-6 (S.D. Ill. Sept. 18, 2020) (dismissing for lack of personal jurisdiction); D.I. 34 (dismissing because BIPA does not apply extraterritorially). There is no ambiguity about this because, in granting AWS's prior motion "based on extraterritoriality," Judge Stark specifically stated that he "***need not (and does not) reach any other issues presented***"—i.e., the alternative grounds for dismissal presented here. D.I. 34 at 12 n.5 (emphasis added). Plaintiffs' assertions otherwise are wrong and misleading.[1] And the fact that Plaintiffs feel the need to repeatedly make this claim confirms the weakness of their arguments on the merits.

---

[1] Plaintiffs also take a phrase from the order permitting Plaintiffs to file an amended complaint out of context, D.I. 56 at 10, but it held only that "Plaintiffs' proposed amendment is [not] futile" because it appears to solve for extraterritoriality (by alleging the supposed "misconduct occurred … in Illinois"). D.I. 46. The docket entry made no mention of AWS's other arguments, or their merits. *See id.*

1

## II. BIPA's Financial Institution Exception Precludes Liability Here.

Plaintiffs do not dispute that BIPA does not apply "in any manner" to John Hancock as a financial institution. 740 ILCS 14/25(e). Nor do they dispute that if John Hancock built a voice-recognition technology in-house and stored customers' voices on its own servers, there could be no BIPA claim arising from Plaintiffs' calls to John Hancock. Plaintiff's theory of liability thus depends on the fact that John Hancock used vendors to provide voice-recognition technology (Pindrop) and to store customers' voices (AWS). D.I. 56 at 7 (John Hancock contracted "with AWS and its vendor partners to purchase and implement integrated call center services" and voice-recognition technology). But there is no logical reason to apply BIPA to vendors like AWS that provide services to a financial institution for which the institution itself would have no liability if it engaged in the same conduct. In either case, John Hancock and its vendors are still bound to protect customer data in accordance with the strict data-privacy rules in the federal GLBA statute, which is the reason for the exemption in the first place. *See Patterson v. Respondus, Inc.*, 2022 WL 860946, at *20 (N.D. Ill. Mar. 23, 2022); *Bryant v. Compass Grp. USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020).[2]

Plaintiffs' only response to this commonsense interpretation of the statute is to misrepresent AWS's arguments and contort the statutory language. First, Plaintiffs claim AWS "insists that it is immune from BIPA liability solely because one of the companies" with which it has "business relationships" "is a financial institution." D.I. 56 at 11-12. AWS never argued that. AWS argued that it could not be liable for providing services to *John Hancock*—a financial institution—to facilitate

---

[2] Plaintiffs' citations to *Patterson* and *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 903 (S.D. Ill. 2020), do not help them as those cases involved disputes over whether an entity was a "financial institution." Here, there is no dispute that John Hancock is a financial institution, and the issue is whether technology vendors used by such institutions should be liable for conduct for which the institution itself is exempt. Nor are Plaintiffs' other cases (at 7) relevant, as none involves suing a vendor of a financial institution for biometrics used by that institution. *Figueroa v. Kronos Inc.*, 2020 WL 1848206, at *5 (N.D. Ill. 2020) (employer used fingerprint system); *Vance v. Amazon.com, Inc.*, 525 F. Supp. 3d 1301, 1314 (W.D. Wash. 2021) (photo-sharing website Flickr sold faces to IBM, which used face recognition). No exemption applied to any party in those cases.

its business, which BIPA exempts. D.I. 51 at 13. As AWS noted (D.I. 51 at 13), agencies enforcing GLBA have required financial institutions to "oversee service providers" to protect customer information. 16 C.F.R. § 314.4[3]; *see* 12 C.F.R. § 1016.15(a) (CFPB implementing GLBA and permitting financial institutions to make disclosures to service providers to "prevent … fraud" or "unauthorized transactions"). As these services are covered by GLBA, they are exempt from BIPA.[4]

Second, Plaintiffs discuss how BIPA treats government agencies (D.I. 56 at 12), but Plaintiffs compare apples to oranges. Despite Plaintiffs' assertion, government agencies are not "exempted" from BIPA. Rather, BIPA only applies to "private entit[ies]," 740 ILCS 14/15, so government agencies are excluded by definition. *Id.* 14/10.[5] Separately, BIPA lists five exemptions from coverage for private entities, two of which are for financial institutions, *id.* 14/25(c), and government contractors or agents, *id.* 14/25(e). There was no reason to include government agencies in this list because they are not "private entities" in the first place. But including government contractors *was* necessary because they are "private entities" and thus not excluded by the definition in 740 ILCS 14/10. If they were not expressly exempted, it would be unclear whether they are covered.

Such clarification was not necessary for companies that provide direct services for financial institutions, however, because BIPA already exempted financial institutions' biometric-related actions with the broadest possible language—BIPA does not apply "in any manner" to such

---

[3] Plaintiffs claim this regulation is irrelevant because the FTC regulates only some financial institutions governed by GLBA. D.I. 56 at 11 n.1. But the regulation still implements GLBA and discusses third-party service providers. Nor can Plaintiffs dispute that the CFPB—the other agency implementing GLBA—also discusses service providers. 12 C.F.R. §§ 1016.13-15.

[4] The entire point of John Hancock purchasing call center and Voice ID services is "fraud detection," *e.g.*, Amazon Connect Administrator Guide, cited in FAC (D.I. 47) ¶ 69 n.25, at 710, which is especially important when financial institutions speak with customers about their finances. GLBA governs how financial institutions do this, while protecting their customers' biometrics. It is not for courts interpreting Illinois' BIPA to upset Congress's carefully balanced federal approach—as recognized by the Illinois legislature itself in providing this exemption. 740 ILCS 14/25(c).

[5] 740 ILCS 14/10 (defining private entity as "individual, partnership, corporation, limited liability company, association, or other group," and "does not include a State or local government agency").

institutions or their activities. 740 ILCS 14/25(c). Given this broad language, there was no reason to separately state whether BIPA applies to financial institutions using third-party technology or cloud services vendors. BIPA doesn't apply to financial institutions *in any manner*—including indirectly against companies contracting with them to facilitate their business activities.

Plaintiffs conclude with an irrelevant discussion of legislative history mentioning protection of biometrics used in "financial transactions." D.I. 56 at 12-13. That legislative history does not involve financial *institutions*, just financial *transactions*—such as "finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILC 14/5(b). AWS's argument would not "effectively exclude financial transactions from BIPA's coverage." D.I. 56 at 13. To the contrary, transactions with non-exempt private entities would remain covered. AWS's actual argument is that 740 ILCS 14/25(c) applies to third-party vendors of financial institutions engaging in conduct that would not be subject to BIPA if engaged in by the institutions themselves.

### III.  Plaintiffs Fail To Plausibly State A Claim Under Any BIPA Section.

### A.  The FAC fails to plausibly allege that AWS "collects" biometric information, so the Section 15(b) claim fails.

AWS showed that to "collect" biometric data, as required by Section 15(b), an entity must do more than possess the data; it must "take active steps" to capture it. D.I. 51 at 15-16. Plaintiffs do not dispute this clear Illinois law.[6] Rather, they attempt to rewrite the FAC, and rely on allegations of supposed *communication* between themselves and AWS that indisputably does not involve AWS *collecting* any biometric identifiers or information from Plaintiffs. D.I. 56 at 14-18.

First, Plaintiffs admit that their biometrics would not be created or collected unless *John Hancock* took active steps to use Pindrop's voice-recognition technology to prevent fraud. D.I. 56 at

---

[6] Plaintiffs quibble (D.I. 56 at 16-17) with perceived factual differences between this case and those cited by AWS, but they never dispute the core legal holdings: that Section 15(b) cannot attach absent an "active step" to collect or capture "biometric data." *E.g.*, *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 965-66 (N.D. Ill. 2020).

4

17 (conceding AWS would not store their information if not for "their relationship with John Hancock").[7] Thus, it is John Hancock, and not AWS, who is taking active steps to create and collect biometric data, and Section 15(b) would apply *only* to John Hancock (if it wasn't exempt).[8]

Second, even if John Hancock's third-party vendors could be liable under Section 15(b) for collecting biometric information on its behalf, Plaintiffs do not plausibly allege that AWS did so. Instead, Plaintiffs focus on a handful of the FAC's paragraphs that allege—at most—that John Hancock callers interact with AWS's call center technology (by selecting certain options) and are then routed to John Hancock. *See* D.I. 56 at 14 (citing D.I. 47 ¶¶ 69-79, 121-24, 164). None of these FAC paragraphs says AWS "collected *biometric information* directly from callers." D.I. 56 at 15. They allege only that "Illinois callers enter commands via prompts … and AWS *directly* responds to these commands by routing Illinois callers through its system." D.I. 47 ¶ 123. Punching buttons while connected to a call center has nothing to do with collecting biometric data.

By contrast, the FAC's allegations about collecting biometrics focus entirely on Pindrop. The FAC alleges that while customers supposedly communicate with Amazon by entering commands, it is "Pindrop's voice authentication service" that transmits voice data "to Pindrop's servers." D.I. 47 ¶ 77; *see id.* ¶¶ 78-83 (analysis of audio "is done via biometric voice technology developed, maintained, and controlled by Pindrop"). Plaintiffs' opposition to Pindrop's motion only confirms it is Pindrop who "collects biometric information and creates biometric identifiers." D.I. 55 at 25-26

---

[7] Indeed, AWS *clients* decide who will be "enroll[ed]" into "Voice ID for authentication." Amazon Connect Administrator Guide, *supra*, at 860-63. Only the customers that John Hancock selects can be enrolled; AWS *does not decide* (has no control over) whose biometrics John Hancock collects. *Id.*

[8] *See Bernal v. ADP, LLC*, 2019 WL 5028609, at *1 (Ill. Cir. Ct. 2019) ("the legislature did not intend for [15(b)] to apply to a third party entity" providing technology, just the entity contracting with plaintiff); *Cameron v. Polar Tech Indus., Inc.*, No. 2019-CH-13, Tr. at 33-34 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) (Ex. B to D.I. 51) (15(b) applies to employer using time-keeping technology, not to third-party technology vendor); *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (N.D. Ill. 2020) (need to allege direct collection by defendant). Plaintiffs cite no Illinois state cases to the contrary.

5

(citing D.I. 47 ¶¶ 77-78, 80, 84-89); *see id.* at 26 (Pindrop alone "uses" voice audio "to 'generate[]' biometric data" and "creates *new* biometric information"); *id.* at 20 (Pindrop allegedly is "'extracting' voice biometric information from individuals, which Pindrop … process[es]").

After focusing on Pindrop's collection of biometrics, Plaintiffs baldly assert that AWS also somehow "collect[s]" biometric information. D.I. 47 ¶ 87. But that "parrot[ing]" of statutory language—with no supporting facts—does not suffice, particularly where Plaintiffs' other allegations render this conclusory assertion implausible. *Heard*, 440 F. Supp. 3d at 966. According to Plaintiffs, Pindrop obtains "voice audio" from AWS, D.I. 56 at 8, but *audio* is not a biometric identifier—only a processed "voiceprint" is, 740 ILCS 14/10. It is Pindrop that supposedly "processes" the audio and "converts it into biometric voice data." D.I. 56 at 8; D.I. 47 ¶ 80. Then, the data is allegedly stored on AWS's servers. D.I. 56 at 17. As AWS already explained (D.I. 51 at 16-18), and Plaintiffs don't dispute, simply possessing biometric data for storage is not *collecting* biometric data for purposes of BIPA Section 15(b). As the court made clear in *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019), a broad allegation that two entities both "collected, used, stored and disseminated" biometrics is not sufficient to state a claim. *Id.* at 286. "[P]recise allegation[s]" control, and the precise allegation here is that Pindrop collected Plaintiffs' biometric data. *Id.*[9]

**B.      The FAC fails to plausibly allege that AWS "possesses" biometric information, so the Section 15(a), (c), and (d) claims fail.**

Plaintiffs concede that the term "possession," as used in BIPA, requires "control." D.I. 56 at 18. Yet they point to no well-pleaded allegations in the FAC supporting a plausible inference that

---

[9] Plaintiffs' cases don't help them. D.I. 56 at 17-18. *Smith v. Sig. Sys., Inc.*, 2022 WL 595707, at *4 (N.D. Ill. 2022), *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 841 (N.D. Ill. 2021), and *King v. PeopleNet Corp.*, 2021 WL 5006692, at *8 (N.D. Ill. 2021), involved allegations that technology companies "collected" biometrics by directly scanning and capturing fingerprints. The only company that arguably scans and captures the biometrics here is Pindrop. *Neals v. ParTech, Inc.*, 2021 WL 463100 (N.D. Ill. 2021), did not deal with Section 15(b) at all, but refused to remand a 15(*a*) claim. And the party in *Vance*, 525 F. Supp. 3d at 1312-13, "appl[ied] for and download[ed] [a] data set from IBM" to "improve its facial recognition"—far beyond simply storing data for others.

AWS exercised any control over their biometric data as John Hancock's cloud-storage provider. Instead, Plaintiffs attack a strawman and then argue that AWS cannot cite its website, even though the FAC relies heavily on it. Neither strategy can save their claims from dismissal.

First, Plaintiffs misrepresent AWS's argument, claiming AWS argued Plaintiffs had to allege "'AWS exercised control over their biometrics to the exclusion of others.'" D.I. 56 at 19. But that quote is *nowhere* in AWS's brief and is incredibly misleading. AWS did not argue that possession requires *exclusive* control—AWS argued that possession requires *actual* control. The FAC and AWS's website both confirm that John Hancock controls its own data, and AWS does not. D.I. 51 at 16-18. And Plaintiffs point to no allegations in the FAC to the contrary.

Second, Plaintiffs argue (D.I. 56 at 19-20) that AWS cannot rely on its public website terms showing that its customers, *and not AWS*, control the data stored on AWS' servers. Plaintiffs never dispute the accuracy of the website's description. D.I. 51 at 17-18. Instead, they argue that websites are not public records "subject to judicial notice." D.I. 56 at 20. That is wrong, since the documents on the website are "public" and "undisputedly authentic." *Sisk v. Sussex Cty.*, 2012 WL 1970879, at *1 n.3 (D. Del. June 1, 2012). But more importantly, it ignores the chief reason the Court may consider AWS's website: Plaintiffs rely on it themselves, both in the FAC and in *in their opposition*. *See, e.g.*, D.I. 47 at nn. 9-15, 21, 28, 35, 55, 57, 60, 75 (citing documents from AWS's website); D.I. 56 at 21 (citing Amazon Connect Administrator Guide). Because AWS's terms and website are "*integral to [and] explicitly relied* upon in the complaint," *Bridges v. Torres*, 809 F. App'x 69, 71 (3d Cir. 2020) (emphasis in original), AWS may rely on them to show Plaintiffs' claims are futile.

Moreover, based on the FAC, the only sense in which AWS is alleged to "possess" biometrics is as a cloud-storage provider. D.I. 56 at 18 (pointing to allegations that AWS "stores the biometric data" created by Pindrop). But as in *Heard*, mere allegations that AWS "subsequently stored" Plaintiffs' biometric "data in [its] system[]" is insufficient to allege possession because that "does not

7

plead that [AWS] exercised any form of control over the data." 440 F. Supp. 3d at 968.

Nor do Plaintiffs adequately respond to the absurdity of holding cloud storage companies liable under BIPA Section 15(b). D.I. 51 at 18-20. They brush off the "inconvenience" of forcing cloud-storage companies to comply with BIPA, despite those companies having no knowledge of what data their customers are storing or whether it includes biometric information. D.I. 56 at 20-21. As a cloud-storage provider with more than a million enterprise customers, AWS simply stores the information that its customers choose to place on AWS's servers. Plaintiffs never allege *how* AWS is supposed to know what data John Hancock in particular is choosing to store, let alone whether that data contains its customers' biometric information or whether those customers reside in Illinois. Those John Hancock customers are strangers to AWS, making it a practical impossibility for AWS to obtain consents from them under BIPA and underlying the absurdity of Plaintiff's position. Yet instead of recognizing this as a fatal flaw in their novel theory, Plaintiffs offer the supposedly simple (but actually ridiculous) solution that AWS should *exclude* all Illinois citizens from storage. *Id.* But again, AWS does not even know what data John Hancock is storing, let alone know whether it contains biometric information from Illinois citizens. Nor does AWS have the legal or contractual right to delete John Hancock's data, which could disrupt the operations of a major financial institution.

As a district court recognized recently, "BIPA is intended to apply to interactions between businesses and their customers," not to third parties where the plaintiff is *not* the defendant's customer. *Zellmer v. Facebook, Inc.*, 2022 WL 976981, at *4 (N.D. Cal. Mar. 31, 2022). And Plaintiffs' suggestion that cloud-storage providers must police the billions of files that they store on behalf of millions of customers would thwart the legislature's intent not to "ban the use of biometrics altogether," *id.*, and directly contradict the Illinois Supreme Court's warning that BIPA compliance "should not be difficult," *Rosenbach v. Six Flags Ent't Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019).[10]

---

[10] Plaintiffs misrepresent two cases that they claim denied motions to dismiss claims against "cloud

8

### C. The FAC fails to plausibly allege that AWS profits from the sale or transfer of biometric information, so the Section 15(c) claim fails.

Plaintiffs do nothing to refute the clear Illinois law that a list ending with a phrase like "otherwise profit" should be interpreted as similar to the other items in the list, such that "profit" is limited to things like "sell, lease, [and] trade." D.I. 51 at 20-21; *Pooh-Bah Enter., Inc. v. Cty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). Plaintiffs' chief case (D.I. 56 at 22) applied this "cardinal rule of statutory construction" (*ejusdem generis*) and held that "otherwise profit" is limited to "a transaction in which an item is given or shared in exchange for something of value." *Vance v. Amazon.com Inc.*, 534 F. Supp. 3d 1314, 1321 (W.D. Wash. 2021). *Contrast* D.I. 56 at 23 (claiming "otherwise profit" is an "unquestionably broad catch-all"), *with Vance*, 534 F. Supp. 3d at 1321 (holding this "catchall" should *not* be given its "unrestricted sense" or else the other items in the list would become "superfluous"). Section 15(c) bars "for-profit transactions of biometric data" alone. *Id.* at 1323. Plaintiffs' head-in-the-sand approach to case law and clear legislative history on this point is telling.[11]

Instead, Plaintiffs argue (D.I. 56 at 22) that AWS marketing voice-recognition to sell more products violates Section 15(c). But such marketing is *not* exchanging biometrics for something of value, and the "profit" must flow directly from "a customer's biometric identifier or … information." 740 ILCS 14/15(c). Consistent with that language, courts have held sales of devices with biometric technology do *not* implicate Section 15(c). *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. 2021) (15(c) prohibits profiting from "*individual* biometric data," not the use of "facial recognition technology to sell more devices, advertise [] software," or compete). Thus, "enhanced sales of

---

provider[s]." D.I. 56 at 20. These defendants were not cloud storage companies that may receive third-party data but are "cloud-based point-of-sale" systems that directly "collected and stored [plaintiffs'] fingerprints." *Neals*, 2021 WL 463100, at *1; *see King*, 2021 WL 5006692, at *2. Given no allegations beyond storing data here, the claim must be dismissed. *Heard*, 440 F. Supp. 3d at 968.

[11] Plaintiffs' overly broad definition of "profit" (D.I. 56 at 23) proves too much. Businesses that possess biometrics *always* derive commercial benefit from doing so, otherwise they would not do it. That would mean that 15(c) is satisfied *whenever* another part of Section 15 is, making it superfluous.

9

Amazon Connect," D.I. 56 at 23, absent any sales of individuals' biometrics, cannot satisfy 15(c).

> **D.  The FAC fails to plausibly allege that AWS "disseminates" biometric data to third parties without Plaintiffs' consent, so the Section 15(d) claim fails.**

Plaintiffs' tortured reading of Section 15(d) is another consequence of their improper attempt to end-run BIPA's financial institution exemption by suing John Hancock's service providers. Plaintiffs cite cases in which a business with a direct relationship to a customer or employee is plausibly alleged to have sent the individual's biometrics to a third party. D.I. 56 at 24-25 (citing *Cothron v. White Castle Sys.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 785 (N.D. Ill. 2020); *Naughton v. Amazon.com, Inc.*, 2022 WL 19324, at *1 (N.D. Ill. Jan. 3, 2022)). But that fact pattern does not exist here. The analogy here would be suing John Hancock—the entity that allegedly hired Pindrop to collect Plaintiffs' biometrics—for sending Plaintiffs' biometrics to AWS. But Plaintiffs cannot sue John Hancock, so they implausibly claim AWS sends data to unidentified "end users of Amazon Connect." D.I. 56 at 24. Such vague and generalized allegations fail to include specific facts necessary to state a claim. *See Heard*, 440 F. Supp. 3d at 96; *Namuwonge*, 418 F. Supp. 3d at 285.[12]

To the extent the phrase "end users of Amazon Connect" refers to John Hancock, Plaintiffs are essentially arguing that companies accessing their own data stored at AWS somehow equates to AWS *disseminating* their data. Not only does that unsupported assertion stretch the plain meaning of disseminate ("to spread information," OED.com, https://tinyurl.com/y7dec3r5), but it relies on the absurd proposition that a company using cloud storage creates liability for the cloud services provider every time the company accesses its own information. That cannot be the law.

## CONCLUSION

For these reasons, and those in D.I. 51, this Court should dismiss all claims against AWS.

---

[12] The FAC paragraphs cited at D.I. 56 at 25 do *not* allege AWS "disclosed" *biometrics*, only that it sent *audio* to Pindrop and then stored biometrics for John Hancock. D.I. 47 ¶¶ 71-90, 123, 132.

| | |
|---|---|
| June 8, 2022 | **MORGAN, LEWIS & BOCKIUS LLP** |
| Beth Herrington (admitted *pro hac vice*)<br>77 West Wacker Drive, Suite 500<br>Chicago, IL  60601<br>(312) 324-1000<br>beth.herrington@morganlewis.com | */s/ Jody C. Barillare*<br>Jody C. Barillare (#5107)<br>1201 North Market Street, Suite 2201<br>Wilmington, DE  19801<br>(302) 574-3000<br>jody.barillare@morganlewis.com |
| Raechel Keay Kummer (admitted *pro hac vice*)<br>1111 Pennsylvania Avenue, NW<br>Washington, DC  20004-2541<br>(202) 739-3000<br>raechel.kummer@morganlewis.com | *Attorneys for Defendant Amazon Web Services, Inc.* |