**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated, known and unknown, | |
| Plaintiffs, | C.A. No. 1:20-cv-01399-SB |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON WEB SERVICES, INC. and PINDROP SECURITY, INC., | |
| Defendants. | |

**DEFENDANT AMAZON WEB SERVICES, INC.'S ANSWER AND DEFENSES TO
PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Amazon Web Services, Inc. ("AWS"), by and through its attorneys, hereby

answers the First Amended Complaint ("Complaint") filed by Plaintiffs Christine McGoveran,

Joseph Valentine, and Amelia Rodriguez ("Plaintiffs") and sets forth its affirmative and other

defenses as follows:

**GENERAL DENIAL**

Defendant denies each and every allegation of the Complaint not specifically admitted.

**ANSWERS TO PLAINTIFFS' SPECIFIC ALLEGATIONS**

**I.      Nature of the Action**

**1.      Plaintiffs allege that Defendants Pindrop Security, Inc. and Amazon Web
Services, Inc. ("Defendants") violated BIPA by collecting, possessing, redisclosing, profiting
from, and failing to safeguard their biometric identifiers and biometric information
("Biometric Data"). For the reasons discussed in greater detail below, Defendants' violations
of BIPA pose a serious threat of permanent harm in Illinois to Plaintiffs and members of the
putative class.**

1

**ANSWER:**   AWS admits that sentence one characterizes Plaintiffs' allegations, but denies it has engaged in any wrongdoing and denies it violated BIPA.  AWS denies the allegations in sentence two.

2.      **Plaintiffs seek to represent a class of individuals who made one or more phone calls to or received one or more phone calls from call centers, customer service representatives and/or other entities using services offered by Amazon Web Services, Inc., and had their unique, biometric voiceprints collected, possessed, and used by Defendants without their consent or authorization, including through the use of Pindrop's biometric voice authentication technology.**

**ANSWER:**   AWS admits that Plaintiffs seek to represent a class in this case but denies that it has engaged in any wrongdoing, denies that it has violated BIPA, denies that this case is suitable for class treatment, denies that Plaintiffs are similarly situated to other unnamed individuals, and denies that Plaintiffs are entitled to any relief.  AWS denies any remaining allegations in Paragraph 2.

3.      **Plaintiffs have suffered significant damage, as more fully described herein, because their Biometric Data has been intercepted, collected, and disseminated without their knowledge or consent, thereby materially decreasing the security of this intrinsically inalterable information, and substantially increasing the likelihood that they will suffer as victims of fraud and/or identity theft in the future.**

**ANSWER:**   AWS denies the allegations in Paragraph 3.

4.      **Through this lawsuit, Plaintiffs, on behalf of a similarly situated class, seek to enjoin Defendants from collecting, possessing, and profiting from their Biometric Data in violation of BIPA, and seek to obtain actual and statutory damages for their injuries.**

**ANSWER:**   AWS admits that Paragraph 4 characterizes the relief that Plaintiffs seek but denies that it has engaged in any wrongdoing, denies that it has violated BIPA, denies that this case is suitable for class treatment, denies that Plaintiffs are similarly situated to other unnamed individuals, and denies that Plaintiffs are entitled to any relief.  AWS denies any remaining allegations in Paragraph 4.

5.      **The remedies Plaintiffs seek are remedial, and not penal, in nature.**

**ANSWER:**    AWS denies the allegations in Paragraph 5.

II.    **Parties**

6.    **Plaintiff Christine McGoveran is a resident of Wood River in Madison County, Illinois.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 6 and therefore denies the same.

7.    **Plaintiff Joseph Valentine is a resident of Antioch in Lake County, Illinois.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 7 and therefore denies the same.

8.    **Plaintiff Amelia Rodriguez is a resident of Chicago in Cook County, Illinois.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 8 and therefore denies the same.

9.    **Plaintiffs made phone calls to call centers using services provided by Defendant Amazon Web Services ("AWS"); Defendants collected, stored, and used their biometric identifiers and biometric information, as more fully described herein.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief as to the truth of the allegation that "Plaintiffs made phone calls to call centers using services provided by" AWS. AWS denies the remaining allegations in Paragraph 9.

10.    **Defendant AWS is a Delaware corporation that is registered to and does conduct business throughout Illinois. AWS may be served with process through its registered agent, the Corporation Services Company, 251 Little Falls Drive, Wilmington, Delaware 19808.**

**ANSWER:**    AWS admits that it is registered to do business in Illinois and that it may be served through its Delaware registered agent.  AWS denies the remaining allegations in Paragraph 10.

11.    **AWS is a "private entity" under the meaning of BIPA. See 740 ILCS 14/10.**

**ANSWER:**    AWS admits the allegations in Paragraph 11.

12. **Defendant Pindrop Security, Inc. ("Pindrop") is a Delaware corporation that is registered to and does conduct business throughout Illinois. Pindrop may be served with process through its registered agent, the Corporation Services Company, 251 Little Falls Drive, Wilmington, Delaware 19808.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 12 and therefore denies the same.

13. **Pindrop is a "private entity" under the meaning of BIPA. See 740 ILCS 14/10.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief

regarding the truth of the allegations in Paragraph 13 and therefore denies the same.

III.    **Jurisdiction and Venue**

14. **This Court has general personal jurisdiction over Defendants because they are both Delaware corporations.**

**ANSWER:**    AWS admits that this Court has personal jurisdiction over AWS in this case.

AWS denies the remaining allegations in Paragraph 14.

15. **This Court has diversity subject matter jurisdiction over Defendants because the amount in controversy exceeds $75,000 and the dispute is between citizens of different States. 28 U.S.C. §1332 (a)(1). This Court also has subject matter jurisdiction under 28 U.S.C. §1332 (d)(2)(A) because this is a civil class action in which the amount in controversy exceeds $5,000,000, and at least one Class Member is a citizen of a State different from at least one Defendant.**

**ANSWER:**    AWS admits that this Court has subject matter jurisdiction but denies the

remaining allegations in Paragraph 15.

16. **Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).**

**ANSWER:**    AWS denies the allegations in Paragraph 15.

IV.    **The Biometric Information Privacy Act**

17. **"Biometrics" refers to "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1096.**

4

**ANSWER:**   AWS admits that Plaintiffs cite to portions of a case addressing BIPA, but states that the definitions of "biometric identifiers" and "biometric information" are statutorily defined in 740 ILCS 14/10.

18.    **BIPA was enacted in 2008 in order to safeguard biometric information as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.**

**ANSWER:**   AWS admits that Plaintiffs quote the statements of one Illinois representative during a reading of a proposed bill, but denies that, taken alone, this quote accurately reflects the legislative purpose of BIPA.  AWS denies the remaining allegations in Paragraph 18.

19.    **As set forth in BIPA, biologically unique identifiers, such as voiceprint information, cannot be changed. 740 ILCS 14/5(c). As is likewise set forth in BIPA, the inalterable nature of biologically unique identifiers presents a heightened risk when biometric information is not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).**

**ANSWER:**   AWS admits that Paragraph 19 purports to paraphrase from the cited sections of BIPA, but denies that Paragraph 19 accurately reflects the totality of the statute.  AWS denies the remaining allegations in Paragraph 19.

20.    **As a result of the need for enhanced protection of biometric information, BIPA imposes various requirements on private entities that collect or maintain individuals' biometric information, including voiceprints.**

**ANSWER:**   AWS admits that Paragraph 20 purports to paraphrase from the requirements of BIPA, but denies that Paragraph 20 accurately reflects the totality of the statute. AWS denies the remaining allegations in Paragraph 20.

21.    **Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).**

**ANSWER:**   AWS admits that Paragraph 21 quotes from the cited sections of BIPA, but denies that Paragraph 21 accurately reflects the totality of the statute.  AWS denies the remaining allegations in Paragraph 21.

22.   **BIPA applies to entities that interact with two forms of Biometric Data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).**

**ANSWER:**   AWS admits that Paragraph 22 purports to paraphrase from the cited sections of BIPA, but denies that Paragraph 22 accurately reflects the totality of the statute.  AWS denies the remaining allegations in Paragraph 22.

23.   **"Biometric identifiers" are physiological, as opposed to behavioral, characteristics. Examples include, but are not limited to, voiceprints, face geometry, fingerprints, DNA, palmprints, hand geometry, iris patterns, and retina patterns. As the Illinois General Assembly has explained:**

> **Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions.**

**740 ILCS 14/5(c). Moreover,**

> **A person cannot obtain new DNA or new fingerprints or new eyeballs for iris recognition, at least not easily or not at this time. Replacing a biometric identifier is not like replacing a lost key or a misplaced identification card or a stolen access code. The Act's goal is to prevent irretrievable harm from happening and to put in place a process and rules to reassure an otherwise skittish public.** *Sekura v. Krishna Schaumburg Tan, Inc.***, 2018 IL App (1st) 180175, ¶ 59, 115 N.E.3d 1080, 1093, appeal denied, 119 N.E.3d 1034 (Ill. 2019). A "biometric identifier" is defined by BIPA as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.**

**ANSWER:**   AWS admits that Plaintiffs cite to portions of BIPA and a case addressing BIPA, but denies that this Paragraph accurately reflects the definition of "biometric identifiers," which are exclusively defined in 740 ILCS 14/10, or the totality of BIPA's purpose.  AWS denies the remaining allegations in Paragraph 23.

24. **BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. In this case, the biometric identifiers at issue are the voiceprints of individuals, including Plaintiffs, intercepted by Defendants without any notice to or consent from the individuals whose biometric identifiers are collected.**

**ANSWER:** AWS denies that BIPA's text provides a "non-exclusive list" of "biometric identifiers," as the list is defined exclusively to "mean[] a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. AWS denies the allegations in Sentence two.

25. **"Biometric information" consists of biometric identifiers used to identify a specific person. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA.**

**ANSWER:** AWS admits that Paragraph 25 partially quotes from BIPA's statutory language, but denies that the partial quote accurately reflects the totality of the statute and refers the Court to Section 10 of BIPA, which contains the full statutory definitions, 740 ILCS 14/10. AWS denies the remaining allegations in Paragraph 25.

26. **In BIPA, the Illinois General Assembly identified four distinct activities that may subject private entities to liability:**

    (1)    **collecting Biometric Data, 740 ILCS 14/15(b);**

    (2)    **possessing Biometric Data, 740 ILCS 14/15(a);**

    (3)    **profiting from Biometric Data, 740 ILCS 14/15(c); and**

    (4)    **disclosing Biometric Data, 740 ILCS 14/15(d).**

**BIPA also created a heightened standard of care for the protection of Biometric Data. 740 ILCS 14/15(e).**

**ANSWER:** AWS admits that Paragraph 26 purports to paraphrase the cited sections of BIPA, but denies that Paragraph 26 accurately reflects the totality of the statute. AWS denies the remaining allegations in Paragraph 26.

27. **As the Illinois Supreme Court has held, BIPA "codified that individuals**

possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

**ANSWER:** AWS admits that Plaintiffs cite to portions of a case addressing BIPA, but denies that, taken alone, this Paragraph accurately captures the totality of the statute's purpose or application. AWS denies the remaining allegations in Paragraph 27.

A.   Collecting Biometric Data Under Section 15(b).

**28.   BIPA imposes three requirements that must be satisfied before any private entity may "collect, capture . . . or otherwise obtain" biometric information:**

(a)   **First, the private entity must inform the individual in writing that the individual's biometric information is being collected or stored. 740 ILCS 14/15(b)(1).**

(b)   **Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2).**

(c)   **Finally, the private entity must receive a written release executed by the individual or a legally authorized representative. 740 ILCS 14/15(b)(3).**

**ANSWER:** AWS admits that Paragraph 28 purports to paraphrase from the cited sections of BIPA, but denies that Paragraph 28 accurately reflects the totality of the statute. AWS denies the remaining allegations in Paragraph 28.

**29.   BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 ILCS 14/10.**

**ANSWER:** AWS admits that Paragraph 29 quotes from the cited sections of BIPA, but denies that Paragraph 29 accurately reflects the totality of the statute. AWS denies the remaining allegations in Paragraph 29.

B.   Possessing Biometric Data Under Section 15(a).

**30.   BIPA requires that any private entity in possession of Biometric Data develop**

a public, written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information." 740 ILCS 14/15(a).

**ANSWER:**    This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

31.    **BIPA requires that this public, written policy include information about how the entity will destroy the biometric data upon fulfilling the purpose for its collection or within three years, whichever is later.** *Id.*

**ANSWER:**    This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

32.    **BIPA requires a private entity in possession of Biometric Data to "comply with its established retention schedule and destruction guidelines," that is, to actually destroy Biometric Data pursuant to its policies.** *Id.*

**ANSWER:**    This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

C.    BIPA's Unqualified Prohibition on Profiting from Biometric Data Under Section 15(c).

33.    **BIPA additionally bars private entities from profiting from Biometric Data. Section 15(c) provides as follows:**

> **No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.**

**740 ILCS 14/15(c).**

**ANSWER:**    This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

9

34.     **Section 15(c) is an unqualified prohibition on profiting from Biometric Data. Section 15(c) applies to this case, for among other reasons, because Defendants developed, sold, operated, and profited from Plaintiffs' Biometric Data.**

**ANSWER:**     This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

35.     **BIPA forbids any private entity in possession of a biometric identifier or biometric information from "profit[ing]" from that data. 740 ILCS 14/15(c).**

**ANSWER:**     This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

D.     Disseminating Biometric Data Under Section 15(d).

36.     **BIPA prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of Biometric Data without consent, unless the "disclosure or redisclosure completes a financial transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d).**

**ANSWER:**     This Paragraph pertains to a section of BIPA that is no longer at issue in this case, as Plaintiffs' claim was dismissed for lack of jurisdiction or pursuant to Rule 12(b)(6). Therefore, no response is required.

V.     **The Serious Threats Posed by Biometric Data**

37.     **Voice biometrics—also known as voiceprinting—use biological characteristics to verify an individual's identify.**

**ANSWER:**     AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 37 and therefore denies the same.

38.     **For example, voice biometrics may be used to confirm the identity of a caller to a customer service agent or a call center.**

**ANSWER:**     AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and therefore denies the same.

39.     **Operators of call centers and/or customer service operations may, for various reasons, desire to avoid authenticating callers using traditional methods, such as the use of a passcode or answers to secret questions, and instead choose to authenticate callers using voice biometrics, including voiceprints.**

**ANSWER:**     AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and therefore denies the same.

40.     **When a passcode is used as a security measure, in the event of a data breach an individual may simply change the passcode to prevent unauthorized access to the individual's compromised account. By contrast, when call centers or customer service personnel use voice biometrics for authentication, in the event of a data breach there is nothing an individual can do to prevent someone from using the individual's voice biometrics to gain unauthorized access to the compromised account.**

**ANSWER:**     AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and therefore denies the same.

41.     **The global voice biometrics market size is expected to grow dramatically—according to one source, from $984 million in 2019 to $2.8 billion by 2024.[1]**

**ANSWER:**     AWS admits that Plaintiffs cite the source identified in footnote 1.  AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore denies the same.

42.     **"Stolen biometric identifiers . . . can be used to impersonate consumers, gaining access to personal information."[2]**

**ANSWER:**     AWS admits that Plaintiffs cite the source identified in footnote 2. AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and therefore denies the same.

43.     **Unlike other identifiers such as Social Security or credit card numbers, which**

---

[1] *Voice Biometrics Market Worth $2,845 Million by 2024*, Cision PR Newswire (May 2, 2019), https://www.prnewswire.com/news-releases/voice-biometrics-market-worth-2-845-million-by-2024---exclusive-report-by-marketsandmarkets-300842635.html, *archived at* https://perma.cc/8WYU-KW9A.

[2] Elias Wright, *The Future of Facial Recognition Is Not Fully Known: Developing Privacy and Security Regulatory Mechanisms for Facial Recognition in the Retail Sector*, 29 Fordham Intell. Prop. Media & Ent. L.J. 611, 629 (2019).

can be changed if compromised or stolen, biometric identifiers linked to a specific voice or face cannot be modified—ever. These unique and permanent biometric identifiers, once exposed, leave victims with no means to prevent identity theft and unauthorized tracking.

**ANSWER:**   AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and therefore denies the same.

44.   **Once a person or entity has an individual's Biometric Data:**

**[T]hey can get your name, they can find your social networking account, and they can find and track you in the street, in the stores that you visit, the . . . buildings you enter, and the photos your friends post online.[3]**

**ANSWER:**   AWS denies Paragraph 44 to the extent Plaintiffs replace the word "faceprint" from the cited source with "Biometric Data." AWS lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 and therefore denies the same.

45.   **Indeed, the Illinois Supreme Court has held that in BIPA the Illinois "General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach*, 129 N.E.3d at 1206.**

**ANSWER:**   AWS admits that Plaintiffs quote the cited case, but denies that the quotation accurately reflects the totality of the case or relevant interpretations of the statute. AWS denies the remaining allegations in Paragraph 45.

46.   **In so holding, the Court explicitly recognized the "difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised." *Id.* As it further held, "[t]he situation is particularly concerning, in the legislature's judgment, because [t]he full ramifications of biometric technology are not fully known.'" *Id.* (citing BIPA).**

**ANSWER:**   AWS admits that Plaintiffs quote the cited case, but denies that the

---

[3] *What Facial Recognition Technology Means for Privacy and Civil Liberties*, Hearing Before the Subcomm. On Privacy Tech & the Law of the S. Comm. On the Judiciary, 112th Cong. 1 (Jul. 18, 2012), at 1, 2, https://www.congress.gov/112/chrg/CHRG-112shrg86599/CHRG-112shrg86599.pdf, *archived at* https://perma.cc/2F9Y-S8HQ (statement of Sen. Al Franken, raising concerns about the implications of the rising use of facial racial recognition technology to the Subcommittee on Privacy, Technology, and the Law).

quotation accurately reflects the totality of the case or relevant interpretations of the statute.

AWS denies the remaining allegations in Paragraph 46.

**47.     The use of Biometric Data "leads to the fear that a data breach or sale by one holder of a piece of a person's biometric information would compromise the security of all relationships that are verified by that same piece."[4]**

**ANSWER:**     AWS admits that Plaintiffs cite the source identified in footnote 4. AWS

lacks knowledge and information sufficient to form a belief as to the truth of the allegations in

Paragraph 47 and therefore denies the same.

**48.     This fear is not based on mere conjecture. Biometric Data has been illicitly targeted by hackers. For example, a security firm recently uncovered a "major breach" of a biometric system used by banks, police, defense firms, and other entities.[5] This breach involved exposure of extensive biometric and other personal data, including facial recognition data and fingerprints. *Id.***

**ANSWER:**     AWS admits that Plaintiffs cite the source identified in footnote 5. AWS

lacks knowledge and information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 48 and therefore denies the same.

**49.     Even anonymized Biometric Data poses risks. For example, according to a recent report:**

> **In August 2016, the Australian government released an "anonymized" data set comprising the medical billing records, including every prescription and surgery, of 2.9 million people. Names and other identifying features were removed from the records in an effort to protect individuals' privacy, but a research team from the University of Melbourne soon discovered that it was simple to re-identify people, and learn about their entire medical history without their consent, by comparing the dataset to other publicly available**

---

[4] Matthew B. Kugler, *From Identification to Identity Theft: Public Perceptions of Biometric Privacy Harms*, 10 UC Irvine L. Rev. 107, 132 (2019).

[5] Josh Taylor, *Major Breach Found in Biometrics System Used by Banks, UK Police and Defence Firms*, The Guardian (Aug. 14, 2019), https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms, *archived at* https://perma.cc/A848-6JMM (reporting that the "fingerprints of over 1 million people, as well as facial recognition information...was discovered on a publicly accessible database").

information, such as reports of celebrities having babies or athletes having surgeries.[6]

Indeed, "[t]here is a growing skepticism in the field of data protection and privacy law that biometric data can never truly be deidentified or anonymized."[7]

**ANSWER:**   AWS admits that Plaintiffs cite the source identified in footnote 6. AWS lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and therefore denies the same.

## VI.   Defendants Violated BIPA and Exposed Plaintiffs to Serious Harms

   A.   Defendants' Collection, Possession, and Use of Illinois Citizens' Biometric Data.

      1.   *AWS's "Amazon Connect" Cloud-Based Call Center Services*

**50.**   "It has long been a standard practice for businesses of all sizes to operate contact centers, thereby allowing customers to ask questions with a live agent[.]"[8]

**ANSWER:**   AWS states that it was unable to access the link provided in footnote 8. Amazon lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and denies the same.

**51.**   AWS offers call center services under the brand "Amazon Connect."

**ANSWER:**   AWS admits that it offers telephony services under the brand "Amazon Connect" but denies that it offers "call center services" in the context of this case as John Hancock

---

[6] Olivia Solon, '*Data Is A Fingerprint': Why You Aren't as Anonymous As You Think Online*, The Guardian (Jul. 13, 2018), https://www.theguardian.com/world/2018/jul/13/anonymous-browsing-data-medical-records-identity-privacy, *archived at* https://perma.cc/CD9K-GQ7T ("So-called 'anonymous' data can be easily used to identify everything from our medical records to purchase histories").

[7] Justin Banda, *Inherently Identifiable: Is It Possible To Anonymize Health And Genetic Data?*, International Association of Privacy Professionals Privacy Perspectives (Nov. 13, 2019), https://iapp.org/news/a/inherently-identifiable-is-it-possible-to-anonymize-health-and-genetic-data/, *archived at* https://perma.cc/E5VZ-2YNJ.

[8] 4 Evaluation Essentials for Personalizing and Innovating Your Customer Service https://pages.awscloud.com/rs/112-TZM-766/images/SMB_4_Evaluation_Essentials_eBook_connect.pdf, *archived at* https://perma.cc/2USW-J4TM.

offers call center services to its customers.  AWS denies the remaining allegations in Paragraph 51.

**52.    Amazon Connect is a "cloud-based contact center service."[9] Amazon Connect facilitates customer service calls between Illinois citizens and "agents who are located anywhere."[10]**

**ANSWER:**    AWS admits that Plaintiffs quote the cited material in sentence one.  AWS denies that Plaintiffs accurately quote the cited material in sentence two because the source says nothing about Illinois citizens or the services specifically at issue in this case, but rather provides a general overview under the title "What Is Amazon Connect?" and explains that "You [the customer] can set up a contact center (p. 6) in a few septs, add agents who are located anywhere in the world, and start engaging with your customers."  2020 Amazon Connect Administrator Guide, *archived at* https://perma.cc/3WZP-8SMY, at 1.  AWS denies the remaining allegation in Paragraph 52.

**53.    A cloud-based system, such as Amazon Connect, involves the delivery of services through the internet.[11] Accordingly, AWS, through Amazon Connect, delivers services through the internet.[12]**

**ANSWER:**    AWS admits the allegations in Paragraph 53 but denies that it engaged in any wrongdoing and denies that services offered under "Amazon Connect" violate BIPA.

**54.    The nature of a cloud-based system is that the precise location of data is**

---

[9]  Introducing Amazon Connect (Mar. 28, 2017), https://aws.amazon.com/about-aws/whats-new/2017/03/introducing-amazon-connect/, *archived at* https://perma.cc/ZJ2W-DUVM.
[10] 2020 Amazon Connect Administrator Guide, https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin guide/connect-ag.pdf at 7, *archived at* https://perma.cc/3WZP-8SMY, at 1.
[11] https://www.investopedia.com/terms/c/cloud-computing.asp, *archived at* https://perma.cc/7PRD-836Z.
[12] 2020 Amazon Connect Administrator Guide, https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin guide/connect-ag.pdf at 262, 389, *archived at* https://perma.cc/3WZP-8SMY.

uncertain.[13] However, data in a cloud-based system is commonly routed to nearby servers.[14]

**ANSWER:** AWS denies the allegations in Paragraph 54. Answering further, AWS

states that Amazon Connect customers control their own data storage.

55. **AWS, through Amazon Connect, "manages the telephony infrastructure" for businesses and other clients that operate contact centers.[15] Among other things, AWS manages the routing of Illinois citizens' telephone calls, as well as carrier connections for Illinois citizens' calls and "redundancy," which ensures that there are multiple "routes" available for Illinois citizens' data controlled by AWS.[16]**

**ANSWER:** AWS denies the allegations in Paragraph 55.

56. **In connection with its operation of Amazon Connect, AWS possesses and stores a variety of types of data, including the Biometric Data of Illinois citizens, as described in greater detail below.**

**ANSWER:** AWS denies the allegations in Paragraph 56.

2. *Pindrop's Voice Biometric Services*

57. **Pindrop offers voice biometric services.**

**ANSWER:** AWS lacks knowledge and information sufficient to form a belief as to the

truth of the allegations in Paragraph 57 and therefore denies the same.

58. **Pindrop's voice biometric services are used by call centers and customer service personnel to, among other things, confirm the identity of individual callers, including Illinois citizen callers.**

---

[13] Barry Sosinsky, *Cloud Computing Bible* at 4 (in cloud computing systems, "data is stored in locations that are unknown" and 17 ("Intrinsic" to the resource pooling characteristic of cloud computing "is the idea of abstraction that hides the location of resources."), *archived at* https://perma.cc/C492-WL22.
[14] *Id.* at 216 (describing how a service provider lowers latency by delivering content to users who are nearby its servers); AWS Global Infrastructure, https://aws.amazon.com/about-aws/global-infrastructure, *archived at* https://perma.cc/KAF9-HURT (advertising that AWS provides lower latency by having many servers which may be closer to end-users).
[15] 2020 Amazon Connect Administrator Guide, https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin guide/connect-ag.pdf at 262, 389, *archived at* https://perma.cc/3WZP-8SMY, at 7–8.
[16] *Id.*

**ANSWER:**    AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and therefore denies the same.

59.    **Pindrop advertises products and services that confirm the identity of the speaker by voice.[17]**

**ANSWER:**    AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore denies the same.

60.    **Pindrop describes its services as being able to "authenticate callers" by "extract[ing] . . . intelligence from every call encountered."[18]**

**ANSWER:**    AWS admits that Plaintiffs accurately quote from the cited material.  AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 60 and therefore denies the same.

61.    **Pindrop's "Deep Voice" product uses "biometrics" to "identify[] and analyz[e]" repeat callers."[19]**

**ANSWER:**    AWS admits that Plaintiffs accurately quote from the cited material.  AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and therefore denies the same.

62.    **Similarly, Pindrop's "Phoneprinting" product analyzes call audio to "create a distinctive identifier for each caller."[20]**

---

[17]  Pindrop website homepage, https://www.pindrop.com, *archived at* https://perma.cc/X5XJ-KGLR.

[18] Amazon Connect Pindrop Integration Guide ("Integration Guide"), at 3, *archived at* https://perma.cc/5C26-JM4F. ("Analytics for contact center security in the AWS Cloud"), attached hereto as Exhibit 1.

[19] Deep Voice for Speaker Identification, https://www.pindrop.com/technologies/deep-voice/, *archived at* https://perma.cc/3XLG-S24Y.

[20] About Phoneprinting Technology, https://www.pindrop.com/resources/video/video/about-phoneprinting-technology/, *archived at* https://perma.cc/UK2R-25FN.

**ANSWER:**   AWS admits that Plaintiffs accurately quote from the cited material.  AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and therefore denies the same.

**63.   Pindrop charges fees for and profits from the biometric voice products and services it offers, including those described herein.**

**ANSWER:**   AWS lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore denies the same.

3.   *The Integration of Amazon Connect with Pindrop's Voice Biometric Services*

**64.   AWS partners with various software developers and service providers to offer to Amazon Connect customers add-ons that provide additional functionality to Amazon Connect.**

**ANSWER:**   AWS denies the allegations in Paragraph 64.

**65.   AWS advertises that Amazon Connect is capable of "integrat[ing] with a broad set of AWS tools and infrastructure[.]"[21]**

**ANSWER:**   AWS admits that Plaintiffs accurately quote from the cited material, but denies that material accurately reflects the specific services at issue in this case.  AWS denies the remaining allegations in Paragraph 65.

**66.   AWS and Pindrop publicly advertise the availability of a Pindrop "integration with Amazon Connect[.]"[22]**

**ANSWER:**   AWS admits that Plaintiffs accurately quote the cited material, but denies that it has engaged in any wrongdoing and denies that it has violated BIPA.

**67.   Pindrop, in a November 27, 2017 press release, touted that it was "one of the first" partners with AWS in launching the "new Amazon Connect offering."[23] Further,**

---

[21] Introducing Amazon Connect, https://aws.amazon.com/about-aws/whats-new/2017/03/introducing-amazon-connect/ *archived at* https://perma.cc/H5UA-46C6.

[22] Integration Guide at 1.

[23] Amazon Connect Certifies Pindrop's Security and Authentication Technology (Nov. 27, 2017), https://www.businesswire.com/news/home/20171127005113/en/Amazon-Connect-

Pindrop asserted that its integration with Amazon Connect was "native," meaning that its technology "integrate[s] seamlessly with Amazon Connect."[24]

 **ANSWER:** AWS admits that Plaintiffs accurately quote the cited material, but denies

that it has engaged in any wrongdoing and denies that it has violated BIPA.

 68. **Pindrop's biometric voice authentication services are offered by AWS to Amazon Connect customers.**

 **ANSWER:** AWS denies the allegations in Paragraph 68.

 69. **The current version of Amazon Connect has "Voice ID" built in.[25] This feature enables AWS, via Amazon Connect, to use voice biometric information to authenticate Illinois citizens and other callers without the use of a plugin such as that offered by Pindrop.[26] AWS thereby uses voice Biometric Data, which it directly captures from Illinois citizens, to authenticate Illinois citizens itself.[27]**

 **ANSWER:** AWS denies that the services at issue in Plaintiffs' Complaint involve

"Voice ID."  AWS denies the remaining allegations in Paragraph 69.

 70. **In or around December 2020, after Plaintiffs filed their initial complaint, AWS added to its terms of service a requirement that Amazon Connect subscribers using Amazon Connect Voice ID in Illinois ensure compliance with BIPA.[28]**

 **ANSWER:** AWS admits that its terms of service include a requirement that its

subscribers comply with BIPA, but denies that Voice ID is used in any service at issue in this

Complaint, denies that it has engaged in any wrongdoing, and denies that it has violated BIPA.

AWS denies the remaining allegations in Paragraph 70.

---

Certifies-Pindrops-Security-Authentication-Technology, *archived at* https://perma.cc/4FR8-WEXX.

[24] *Id.*

[25] Amazon Connect Administrator Guide, https://docs.aws.amazon.com/connect/latest/adminguide/connect-ag.pdf, *archived at* https://perma.cc/S6SW-SH57.

[26] *Id.*

[27] *Id.*

[28] 2020 AWS Service Terms, https://web.archive.org/web/20201203145433/https://aws.amazon.com/service-terms/, *archived at* https://perma.cc/WQ8U-VAE6.

4.      *Defendants' Collection, Possession, and Dissemination of Illinois
          Citizens' Biometric Data*

**71.      AWS, using Amazon Connect, routes Illinois citizens' voice audio spoken in
Illinois in real time (i.e., while Illinois citizens are speaking words in Illinois) through AWS's
network of servers.[29] No intermediary captures Illinois citizens' audio on behalf of AWS;
instead, AWS reaches into Illinois to captures Illinois citizens' voice audio itself, *directly* from
Illinois citizens' words vocalized in Illinois.[30]**

**ANSWER:**      AWS denies the allegations in Paragraph 71.

**72.      By routing Illinois citizens' voice audio spoken in Illinois through its network
of servers, AWS captures "customer audio for the entire interaction with [a] contact
center."[31] In other words, AWS reaches into Illinois to capture voice audio spoken in Illinois
directly from Illinois citizens, and AWS then routes this audio through AWS's server
network.**

**ANSWER:**      AWS denies the allegations in Paragraph 72.

**73.      AWS has additionally built into its Amazon Connect system the ability to
analyze Illinois citizens' voice audio spoken in Illinois in real time.[32]**

**ANSWER:**      AWS denies the allegations in Paragraph 73.

**74.      Amazon Connect has additional functionality that enables Illinois citizens to
navigate a system of menus using voice commands.[33]**

**ANSWER:**      AWS denies that Plaintiffs accurately portray the cited material, as the cited

section discusses "Amazon Lex Bot" generally and says nothing about Illinois citizens or the

specific services at issue in this case.  *See* 2020 Amazon Connect Administrator Guide at 265-67.

**75.      In this way, Amazon Connect is similar to other internet-based systems, such
as websites.[34] As Illinois citizens would when interacting with a website, Illinois citizens
interacting with Amazon Connect interact directly with AWS's cloud-based system by**

---

[29] 2020 Amazon Connect Administrator Guide,
https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin
guide/connect-ag.pdf, *archived at* https://perma.cc/3WZP-8SMY, at 3.
[30] *Id.*
[31] *Id.* at 445.
[32] *Id.* at 3, 14, 121, 158, 162, 166, 168, 191.
[33] *Id.* at 265–67.
[34] Barry Sosinsky, *Cloud Computing Bible, archived at* https://perma.cc/C492-WL22, at 15
(listing cloud-based call center operations among other cloud-based services such as websites).

entering commands and/or providing information.[35] AWS, through Amazon Connect, then provides information to the Illinois citizen responsive to his or her commands and/or information.[36]

**ANSWER:**    AWS denies the allegations in Paragraph 75.

76.    **With a website, such as, for example, Facebook.com or Google.com, commands are issued by the user by typing, tapping a touchscreen, or clicking a mouse. With a telephone contact center, such as Amazon Connect, commands are issued by a user by making verbal utterances.[37] In either scenario, the user directly interacts with the system and its operator (in this case, AWS); the difference is simply the mechanism of interface.**

**ANSWER:**    AWS denies the allegations in Paragraph 76.

77.    **When integrated with Amazon Connect, Pindrop's voice authentication service relies on real-time transmission of voice audio from the caller, wherever that caller is located, to Pindrop's servers.[38]**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 77 because they relate to Pindrop's technology and therefore denies the same.

78.    **AWS and Pindrop describe this integration with the following diagram:**

---

[35] *See* 2020 Amazon Connect Administrator Guide, https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin guide/connect-ag.pdf at 18, *archived at* https://perma.cc/3WZP-8SMY (describing how customers interact with the system by navigating through the system based on commands entered via their phone, or using interactive voice response).

[36] *See, e.g., id.*, at 142, 154, 158, 169, 238, 243, 268 (describing various messages and information the system delivers to callers in response to their inputs).

[37] *Id.* at 18 (describing how customers interact with the system by navigating through the system based on commands entered via their phone, or using interactive voice response).

[38] *Id.* at 3, 14, 121, 158, 162, 166, 168, 191 (describing AWS's real-time analysis of calls through Amazon Connect); Pindrop Passport + Protect User Guide, https://enterprise.verizon.com/service_guide/secure/passport_and_protect_user_guide.pdf, *archived at* https://perma.cc/6PC4-M7NS, at 4 ("Instant and continuous scoring of every call[.]") (emphasis added).



**ANSWER:**   AWS admits that the picture in Paragraph 78 depicts Figure 1 in the previously cited Integration Guide.  AWS denies the remaining allegations in Paragraph 78.

79.    **Pindrop describes the above figure as a "[d]ataflow diagram of Pindrop architecture within Amazon Connect."[39] As the diagram shows, and as numerous publicly available documents confirm, Pindrop's biometric data services consist not solely of software or hardware solutions sold to customers for their independent use; instead Pindrop offers cloud-based biometric services that Pindrop *itself* performs, and which require Pindrop *itself* to process and analyze Illinois citizens' Biometric Data that Pindrop directly accesses in real time as Illinois citizens make biologically unique sounds while located in Illinois.[40]**

**ANSWER:**   AWS admits that Plaintiffs accurate quote Pindrop's statement from its Integration Guide.  AWS denies the remaining allegations in Paragraph 79.

80.    **As the above diagram, and other publicly available documents cited herein**

---

[39] Integration Guide at 1.

[40] See, e.g., Pindrop Protect Product Description,
https://enterprise.verizon.com/service_guide/secure/pindrop_protect_product_description.pdf,
archived at https://perma.cc/6YRM-8XWW, at 10, 13, 15, 16; Pindrop Authentication,
https://web.archive.org/web/20190309150502/https://www.pindrop.com/solutions/authentication
("During a caller's interaction with the call center, the IVR [(interactive voice response)] or
agent software can confirm the identity of the caller at any point via an API [(application
programming interface)] request to the Pindrop cloud."); Pindrop Passport User Guide,
https://enterprise.verizon.com/service_guide/secure/passport_user_guide.pdf, at, e.g., 4
(describing Pindrop's "Passport" voice biometric offering as a "service"), archived at
https://perma.cc/ZGB7-E75X; Pindrop Protect User Guide,
https://enterprise.verizon.com/service_guide/secure/protect_user_guide.pdf, archived at
https://perma.cc/S28R-BL74, at, e.g., 8 (describing Pindrop's "Protect" voice biometric offering
as a "service").

demonstrate, Pindrop continuously receives biologically unique voice audio, which Defendants reach into Illinois to capture, from incoming calls made by Illinois citizens while vocalizing words in Illinois.[41] After receiving this biologically unique voice audio, Pindrop disseminates Biometric Data generated from it to AWS's server network in real time while calls with Illinois citizens are ongoing. This Biometric Data is then used to authenticate Illinois citizens during their phone calls from Illinois, while they are speaking words in Illinois.[42] In this manner, Defendants use words spoken by Illinois citizens in Illinois, which Defendants reach into Illinois to capture, to uniquely identify Illinois citizens.

**ANSWER:**   AWS denies the allegations in Paragraph 80.

81.   **Pindrop advertises that its services are "cloud-based."[43] In other words, Pindrop hosts Plaintiffs' and the Class's Biometric Data on Defendants' servers.**

**ANSWER:**   AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 81 and therefore denies the same.

82.   **Indeed, Pindrop stated on its website that its services "eliminate the need to purchase and deploy an extensive hardware infrastructure—allowing enterprises to avoid operational and capital expenditure historically tied to on-premises equipment[]."[44]**

**ANSWER:**   AWS admits that Plaintiffs accurately quote the cited source, but denies that the quotation reflects the totality of the cited material.  AWS denies the remaining allegations in Paragraph 82.

83.   **The analysis of words spoken by Illinois citizens in Illinois to extract Biometric Data takes place at least in part on Defendants' server network, and is done via**

---

[41] *See, e.g.*, Pindrop Protect User Guide at 1, https://enterprise.verizon.com/service_guide/secure/protect_user_guide.pdf, archived at https://perma.cc/S28R-BL74 (advertising "continuous scoring of every call based on fraud risk").
[42] *Id.*
[43] *See, e.g.*, Pindrop Protect Product Description, https://enterprise.verizon.com/service_guide/secure/pindrop_protect_product_description.pdf, *archived at* https://perma.cc/6YRM-8XWW, at 10, 13, 15, 16; Pindrop Authentication, https://web.archive.org/web/20190309150502/https://www.pindrop.com/solutions/authentication/, *archived at* https://perma.cc/S6AM-CEN8 ("During a caller's interaction with the call center, the IVR [interactive voice response] or agent software can confirm the identity of the caller at any point via an API [application programming interface] request to the Pindrop cloud.").
[44] Pindrop website, *Passive, Multi-Factor Authentication*, https://www.pindrop.com/solutions/authentication/, *archived at* https://perma.cc/WAG2-HBNF (asserting Pindrop's "passive, multi-factor authentication" helps contact centers authenticate "legitimate callers quickly and accurately" while reducing "call handle times").

biometric voice technology developed, maintained, and controlled by Pindrop.

**ANSWER:**   AWS denies the allegations in Paragraph 83.

84.   As the foregoing allegations and documents show, AWS also obtains and stores Illinois citizens' biometric identifiers and biometric information in connection with its partnership with Pindrop.

**ANSWER:**   AWS denies the allegations in Paragraph 84.

85.   When integrated with Amazon Connect, Pindrop's voice authentication technology uses biometric analysis of Illinois citizens' unique voice audio spoken in Illinois and captured by Defendants after reaching into Illinois to determine the identity of Illinois citizen callers.

**ANSWER:**   AWS denies the allegations in Paragraph 85.

86.   As the foregoing allegations make clear, the unique Biometric Data of Plaintiffs and the Class are matched by AWS to biometric identifiers supplied by Pindrop, creating biometric information.[45] After compiling this biometric information, AWS stores it on its server network.[46]

**ANSWER:**   AWS denies the allegations in Paragraph 86.

87.   Because of the manner in which Pindrop and Amazon Connect are integrated, both Pindrop and AWS collect and possesses "biometric information" as defined by BIPA.

**ANSWER:**   AWS denies the allegations in Paragraph 87.

88.   AWS additionally stores biometric templates on its server network as part of the partnership with Pindrop alleged herein.

**ANSWER:**   AWS denies the allegations in Paragraph 88.

89.   As part of their integrated biometric authentication services, Defendants gathered data about Illinois citizen callers, including their phone numbers.

**ANSWER:**   AWS denies the allegations in Paragraph 89.

90.   Part of the function of the AWS-Pindrop Biometric Data extraction system is to match callers, based on their voice biometrics, with other personally identifiable information, including location.

**ANSWER:**   AWS denies the allegations in Paragraph 90.

---

[45] *E.g.*, Integration Guide at 1.
[46] *Id.*

5.   *Defendants Failed to Comply with BIPA's Requirements in Connection with their Collection, Possession, and Dissemination of Illinois Citizens' Biometric Data*

**91.   Defendants, at all relevant times, knew that they were extracting biometric voice information from calls originating in Illinois, from Illinois citizens, using Illinois phone numbers. The voice audio that Defendants reached into Illinois to capture consisted of words spoken in Illinois by Illinois citizens.**

**ANSWER:**   AWS denies the allegations in Paragraph 91.

**92.   Defendants knew that they were extracting Biometric Data from words vocalized by Illinois citizens in Illinois that Defendants intercepted in Illinois and then converted to Biometric Data using cloud-based technologies.**

**ANSWER:**   AWS denies the allegations in Paragraph 92.

**93.   However, Defendants failed to obtain informed written consent prior to collecting this Biometric Data as required by BIPA section 15(b).**

**ANSWER:**   AWS denies the allegations in Paragraph 93.

**94.   Further, Defendants have not made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information, as required by BIPA section 15(a).**

**ANSWER:**   AWS denies the allegations in Paragraph 94.

**95.   Defendants have also failed to destroy Plaintiffs' Biometric Data as is required by BIPA section 15(a).**

**ANSWER:**   AWS denies the allegations in Paragraph 95.

**96.   As is evident from the facts alleged herein, Defendants also "disclose, redisclose, and disseminate" to and between each other the biometric information and biometric identifiers of Illinois citizens. See BIPA Section 15(d). As alleged herein, Defendants collect voice audio by reaching into Illinois via cloud-based technology to obtain audio vocalized in Illinois by Illinois citizens; processes Illinois citizens' audio data, creating Biometric Data; and disseminate and disclose Illinois citizens' unique Biometric Data through their server networks in an ongoing and continuous manner while telephone calls with Illinois citizens are ongoing.**

**ANSWER:**   AWS denies the allegations in Paragraph 96.

**97.   However, Defendants do not obtain consent for this disclosure, redisclosure and dissemination, as required by BIPA section 15(d).**

**ANSWER:**   AWS denies the allegations in Paragraph 97.

B.    Defendants' Collection, Possession, and Use of *Plaintiffs'* Biometric Data.

**98.    Plaintiffs called Amazon Connect call centers used by John Hancock on numerous occasions, from Illinois, using Illinois telephone numbers. When Plaintiffs called the Amazon Connect call centers, the words they spoke were vocalized in Illinois, and captured by Defendants in Illinois.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in the first sentence of Paragraph 98 and therefore denies the same.

AWS denies the remaining allegations in Paragraph 98.

**99.    For example, Plaintiff Christine McGoveran has called these call center(s) regarding her 401(k) account with John Hancock on several occasions, including twice in April and June of 2019.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 99 and therefore denies the same.

**100.    Similarly, Plaintiff Joseph Valentine called these call center(s) regarding his 401(k) account with John Hancock on multiple occasions.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 100 and therefore denies the same.

**101.    Likewise, Plaintiff Amelia Rodriguez has called these call center(s) regarding a John Hancock annuity on more than one dozen occasions in recent years, most recently in November 2019.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 101 and therefore denies the same.

**102.    These call center(s) use Amazon Connect with Pindrop biometric voiceprint authentication.**

**ANSWER:**    AWS denies the allegations in Paragraph 102.

**103.    Because these call center(s) use this technology, they "no longer require[] customers to have a pin for authentication."[47] Instead they use Pindrop's "voice biometrics"**

---

[47] Salesforce website, *Why John Hancock Uses Salesforce & Amazon Connect for its Call Center*, https://www.salesforce.com/products/service-cloud/resources/john-hancock-contact-center/, *archived at* https://perma.cc/6PTX-CQHW.

to authenticate callers.[48]

**ANSWER:**    AWS denies that Plaintiffs accurately quote the cited material to the extent

Plaintiffs allege that unnamed "call center(s)" use the alleged technology because the cited material

states that "John Hancock" "no longer requires customers to have a pin for authentication" and

"uses Pindrop for fraud detection and voice biometrics."  AWS lacks knowledge or information

sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 103 and

therefore denies the same.

**104.    As is evident from the foregoing allegations, Plaintiff called call centers that
had implemented Defendants' Biometric Data collection technology.**

**ANSWER:**    AWS denies the allegations in Paragraph 104.

**105.    AWS and Pindrop apply their voice biometric technology to every caller to
these call center(s).[49]**

**ANSWER:**    AWS denies the allegations in Paragraph 105.

**106.    Defendants knowingly captured biologically unique voice audio made by
Plaintiffs and other Illinois citizens in Illinois and collected and stored Plaintiffs' Biometric
Data harvested from that biologically unique voice audio.**

**ANSWER:**    AWS denies the allegations in Paragraph 106.

**107.    Pindrop knowingly obtained and analyzed captured voice audio spoken in
Illinois by Plaintiffs and other Illinois citizens to collect and store Plaintiffs' Biometric Data.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 107 and therefore denies the same.

C.    Defendants' Activities in Illinois

---

[48] *Id.*

[49] *See, e.g.*, Pindrop Passport + Protect User Guide,
https://enterprise.verizon.com/service_guide/secure/passport_and_protect_user_guide.pdf,
*archived at* https://perma.cc/6PC4-M7NS, at 3 ("Instant and continuous scoring of *every* call[.]")
(emphasis added).

1.   *AWS's Extensive Operations in Illinois and Direct Interactions with Illinois Citizens Vocalizing Biologically Unique Sounds in Illinois*

**108.   AWS has extensive operations in Chicago, Illinois.[50]**

**ANSWER:**   AWS admits that it has operations in Chicago, Illinois, but denies that its operations are "extensive" as that term is undefined and denies that any of its operations in Illinois or elsewhere violate BIPA.

**109.   AWS regularly employs and hires personnel in Illinois who work on Amazon Connect and the voice biometric technology at issue in this case.[51]**

**ANSWER:**   AWS admits that it employs and hires personnel in Illinois, but denies that its employees work on the alleged voice biometric technology at issue in this case.  AWS denies the remaining allegations in Paragraph 109.

**110.   As of October 28, 2021, AWS advertised that it had 169 full-time job openings in its Chicago office.[52]**

**ANSWER:**   AWS admits that the cited website showed an advertisement showed 169 full-time job openings in Chicago, Illinois.

---

[50] *See, e.g.*, Zumbach, L., *Amazon's Chicago Loop Office Is Doubling Its Head Count, Adding 400 Workers*, https://www.chicagotribune.com/business/ct-biz-amazon-chicago-office-expansion-20190916-2g4gjzjg6jh2ld4mkf6giepzge-story.html, *archived at* https://perma.cc/WWH4-8Z96.

[51] *See, e.g.*, Amazon Jobs Listings, https://www.amazon.jobs/en/locations/chicago?offset=0&result_limit=10&sort=relevant&business_category%5B%5D=amazon-web-services&distanceType=Mi&radius=24km&latitude=&longitude=&loc_group_id=&loc_query=&base_query=&city=&country=&region=&county=&query_options=&, *archived at* https://perma.cc/F6FJ-XL2W; Amazon Jobs Listings, https://www.amazon.jobs/en/jobs/1681526/sr-business-development-manager-aws-cloud-intelligence, *archived at* https://perma.cc/6FNM-53ZM.; Mike Nolan LinkedIn Profile, https://www.linkedin.com/in/mtnolan, *archived at* https://perma.cc/4EHQ-RS7G.

[52] Amazon Jobs Listings, https://www.amazon.jobs/en/locations/chicago?offset=0&result_limit=10&sort=relevant&business_category%5B%5D=amazon-web-services&distanceType=Mi&radius=24km&latitude=&longitude=&loc_group_id=&loc_query=&base_query=&city=&country=&region=&county=&query_options=&, *archived at* https://perma.cc/6QXH-VPUV.

**111.    For example, AWS advertised the position of "Senior Business Development Manager, AWS Cloud Intelligence" in Chicago, Illinois.**[53]

**ANSWER:**    AWS admits that the Plaintiffs correctly quote the archived web posting.

**112.    Publicly available information shows that multiple AWS personnel working on Amazon Connect operate out of Illinois. For example, Mike Nolan, a Senior Solutions Architect for Amazon Connect, works out of the Chicago area.**[54]

**ANSWER:**    AWS admits that some AWS personnel working on Amazon Connect operate out of Illinois and that Mike Nolan is a Senior Solutions Architect for Amazon Connect. AWS denies the remaining allegations in Paragraph 112.

**113.    AWS advertises to its customers its "extensive" "global[]" network of data centers.**[55]

**ANSWER:**    AWS denies that Plaintiffs fully and accurately quote from the cited material, which states that "The AWS Global Cloud Infrastructure is the most secure, extensive, and reliable cloud platform, offering over 200 fully featured services from data centers globally." AWS denies the remaining allegations in Paragraph 113.

**114.    AWS advertises that two of its data centers are currently located in Chicago, Illinois.**[56]

**ANSWER:**    AWS denies the allegations in Paragraph 114.

**115.    AWS has had at least one data center in Chicago, Illinois since at least 2015.**[57]

**ANSWER:**    AWS denies the allegations in Paragraph 115.

---

[53] Amazon Jobs Listings, https://www.amazon.jobs/en/jobs/1681526/sr-business-development-manager-aws-cloud-intelligence, *archived at* https://perma.cc/6FNM-53ZM.

[54] Mike Nolan LinkedIn Profile, https://www.linkedin.com/in/mtnolan, *archived at* https://perma.cc/4EHQ-RS7G.

[55] AWS Global Infrastructure, https://aws.amazon.com/about-aws/global-infrastructure/ , *archived at* https://perma.cc/KAF9-HURT.

[56] *Id.*

[57] AWS New Chicago Edge Location, https://aws.amazon.com/about-aws/whats-new/2015/12/new-chicago-edge-location-cloudfront-route-53/, *archived at* https://perma.cc/7KVZ-JLN7.

116.    **AWS has at least hundreds of employees at its office in Chicago.[58]**

**ANSWER:**    AWS admits the allegations in Paragraph 116.

117.    **In 2019, AWS and/or parent Amazon.com, Inc. added 70,000 square feet to this location and nearly doubled the number of employees at this office.[59]**

**ANSWER:**    AWS admits that Plaintiffs accurately quotes the cited material.

118.    **AWS employees in Illinois include engineers that maintain cloud servers and programmers that create and monitor software for these servers.**

**ANSWER:**    AWS admits that AWS employees in Illinois include engineers that maintain cloud servers and programmers that create and monitor software for these servers, but denies the remaining allegations in Paragraph 118.

119.    **AWS markets and sells its software and services out of its Chicago, Illinois office.**

**ANSWER:**    AWS admits that it markets and sells software and services out of its Chicago, Illinois office, but denies any remaining allegations in Paragraph 119.

120.    **AWS markets and sells Amazon Connect out of its Chicago, Illinois office.**

**ANSWER:**    AWS admits that it markets and sells Amazon Connect out of its Chicago, Illinois office, but denies any remaining allegations in Paragraph 120 to the extent they imply all Amazon Connect marketing and sales occur from the Chicago, Illinois office.

121.    **During phone calls from Illinois citizens that are routed by AWS via Amazon Connect, there is a constant and continuous exchange of information between the Illinois citizen and AWS's server network.[60] This continuous exchange of information between AWS and Illinois citizens includes (1) the live audio of the Illinois citizen's communications with the call center agents and auto-attendants, which the Illinois citizen vocalizes in Illinois and**

---

[58] Zumbach, L., *Amazon's Chicago Loop Office Is Doubling Its Head Count, Adding 400 Workers*, https://www.chicagotribune.com/business/ct-biz-amazon-chicago-office-expansion-20190916-2g4gjzjg6jh2ld4mkf6giepzge-story.html, *archived at* https://perma.cc/WWH4-8Z96.
[59] *Id.*
[60] *See, e.g.*, 2020 Amazon Connect Administrator Guide, https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/adminguide/connect-ag.pdf, *archived at* https://perma.cc/3WZP-8SMY, at 3, 14, 121, 158, 162, 166, 168, 191 (describing AWS's real-time analysis of calls through Amazon Connect).

Defendants reach into Illinois to capture, as well as (2) the Illinois citizen's vocal and other inputs entered while navigating AWS's Amazon Connect call center system.[61] This exchange of information takes place directly between the Illinois citizen caller and AWS.

>   **ANSWER:**   AWS denies the allegations in Paragraph 121.

122.   This continuous exchange of information that takes place between the Illinois caller and AWS occurs on AWS's network of servers, which includes AWS's Illinois-based servers that are in constant communication with other servers in AWS's network.[62]

>   **ANSWER:**   AWS denies the allegations in Paragraph 122.

123.   Illinois callers communicate directly with AWS through Amazon Connect in multiple ways. First Illinois callers dial a number that is routed directly to AWS's network of servers, which include those servers in Illinois.[63] Second, Illinois callers enter commands via prompts and interactions with live agents, and AWS directly responds to these commands by routing Illinois callers through its system (e.g., by providing information through auto-attendants, or routing Illinois callers to customer service agents who may be located anywhere in the country).[64]

>   **ANSWER:**   AWS denies the allegations in Paragraph 123.

124.   This *direct* interaction between AWS and Illinois citizens continues after the Illinois citizen caller initially dials the telephone number he or she is calling and throughout the time that the Illinois citizen caller is connected with customer service representatives or automated attendants via Amazon Connect.[65]

>   **ANSWER:**   AWS denies the allegations in Paragraph 124.

>   2.   *Pindrop's Extensive Operations in Illinois and Direct Interactions with Illinois Citizens Vocalizing Biologically Unique Sounds in Illinois*

---

[61] *Id.* at 18 (describing how customers interact with the system by navigating through the system based on commands entered via their phone, or using interactive voice response).

[62] AWS Global Infrastructure, https://www.amazon.com/about-aws/global-infrastructure, *archived at* https://perma.cc/KAF9-HURT.

[63] 2020 Amazon Connect Administrator Guide, https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin guide/connect-ag.pdf at 7, *archived at* https://perma.cc/3WZP-8SMY; AWS Global Infrastructure, https://www.amazon.com/about-aws/global-infrastructure, *archived at* https://perma.cc/KAF9-HURT.

[64] *Id.* at 3, 14, 121, 158, 162, 166, 168, 191.

[65] *Id.* at 31.

**125.    Pindrop's General Counsel operates out of Chicago, Illinois.[66]**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 125 and therefore denies the same.

**126.    Pindrop has a sales staff that promotes Pindrop's biometric voice services on a nationwide basis, including in Illinois.[67]**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 126 and therefore denies the same.

**127.    Pindrop actively advertises its services, including its Amazon Connect biometric voice authentication services, in Illinois.[68]**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 127 and therefore denies the same.

**128.    As of October 13, 2021, Pindrop was advertising the position of "Account Executive – Central US" operating out of Chicago, Illinois.[69] Pindrop stated that this position would be responsible for being "the primary pursuer of relationships and closer of deals" pertaining to its voice biometric technology in the central region of the United States.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 128 and therefore denies the same.

**129.    During phone calls routed via Amazon Connect that involve Pindrop's authentication services, there is a continuous exchange of voice information between Illinois citizens and Pindrop's server network.[70]**

---

[66] Nicole Chen LinkedIn Profile, https://www.linkedin.com/in/nicole-chen-bb3905a0?miniProfileUrn=urn%3Ali%3Afs_miniProfile%3AACoAABV91HcBu760Jm-X0QAjTUJcaOoQtLYYrbI&lipi=urn%3Ali%3Apage%3Ad_flagship3_search_srp_people%3B9 6rAsO9mRMS04MNVAxihbQ%3D%3D, *archived at* https://perma.cc/H2QC-F2VE.

[67] https://www.military.com/jobview/Account-Executive-Central-US-Chicago-IL-Pindrop-id-cloud-33c24b2a-4c00-4bc1-9e32-16fd8d4af13f, *archived at* https://perma.cc/9XS3-YBZC; https://www.indeed.com/cmp/Pindrop/jobs?jk=8e6f5742c0f411e0&start=0&clearPrefilter=1, *archived at* https://perma.cc/NT2D-DWZX.

[68] *Id.*

[69] *Id.*

[70] *See, e.g.*, Pindrop Passport + Protect User Guide, https://enterprise.verizon.com/service_guide/secure/passport_and_protect_user_guide.pdf, archived at https://perma.cc/6PC4-M7NS at 3 ("Instant and continuous scoring of every call[.]")

**ANSWER:**   AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 129 and therefore denies the same.

**130.   This direct interaction between Illinois citizens and Pindrop continues after the Illinois citizen initially dials the telephone number, and throughout the duration of the Illinois citizen's call.[71]**

**ANSWER:**   AWS lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 130 and therefore denies the same.

**131.   The Illinois citizen's voice audio spoken in Illinois and captured by Defendants in Illinois is analyzed by Pindrop, which sends the Illinois citizen's Biometric Data to AWS's cloud-based server network, which includes servers located in Illinois and elsewhere.[72]**

**ANSWER:**   AWS denies the allegations in Paragraph 131.

**132.   Because Defendants, through their partnership, reach into Illinois to identify and authenticate Illinois citizen callers based on biologically unique sounds made in Illinois, Pindrop is or should be aware that it is harvesting Biometric Data from Illinois citizens while phone calls from Illinois callers are ongoing.**

**ANSWER:**   AWS denies the allegations in Paragraph 132.

**133.   Pindrop also knows, or should know, that the biometric output of its analysis, i.e., Biometric Data, is transmitted across AWS's server network, which includes AWS's Illinois servers. Pindrop knows, or should know, that the Biometric Data it extracts from Illinois citizens is transmitted across AWS's server network that includes Illinois servers because, for among other reasons, Pindrop's chief technology executive, Chief Technology Officer Collin Davis, was, for nearly eight years immediately prior to joining Pindrop, a technology executive at AWS with, according to Pindrop's CEO, a "voice and security**

---

(emphasis added); Pindrop Protect Product Description,
https://enterprise.verizon.com/service_guide/secure/pindrop_protect_product_description.pdf, at
10, 13, 15, 16, *archived at* https://perma.cc/6YRM-8XWW; Pindrop Authentication,
https://web.archive.org/web/20190309150502/https://www.pindrop.com/solutions/authentication
/ ("During a caller's interaction with the call center, the IVR [(interactive voice response)] or
agent software can confirm the identity of the caller *at any point* via an API [(application
programming interface)] request to the Pindrop cloud.") (emphasis added).
[71] *Id.*
[72] *Id., see also* 2020 Amazon Connect Administrator Guide,
https://web.archive.org/web/20200507011611/http://docs.aws.amazon.com/connect/latest/admin
guide/connect-ag.pdf at 3, 14, 121, 158, 162, 166, 168, 191, *archived at* https://perma.cc/3WZP-
8SMY.

background."[73]

**ANSWER:**    AWS denies the allegations in Paragraph 133.

134.    **In addition, the Integration Guide shows that the Pindrop-AWS integration operates by means of AWS's "lambda functions."[74] Lambda functions operate on AWS servers.[75] Pindrop must therefore have installed some or all of its voice authentication code onto AWS servers, potentially including those in Illinois.[76]**

**ANSWER:**    AWS admits that Pindrop uses Lambda functions.  AWS admits that certain

Lambda functions operate on AWS servers, but denies that these Lamba functions violated BIPA.

AWS denies the allegations in the final sentence of Paragraph 134.

D.    Defendants Profit from Plaintiffs' Biometric Data

135.    **Defendants profit (i.e., "derive benefit")[77] from their collection and possession of Plaintiffs' Biometric Data.**

**ANSWER:**    AWS denies the allegations in Paragraph 135.  Responding further, AWS

denies that the definition of "profit" cited in footnote 77 applies to BIPA's specific statutory terms.

136.    **AWS charges fees for and profits from its Amazon Connect services.**

**ANSWER:**    AWS admits that it generally charges fees for and profits from its Amazon

Connect services, but denies that these fees and profits are from the sale of "biometric

---

[73] *Pindrop Names Former AWS Exec as Chief Technology Officer*, Find Biometrics (June 2, 2021), https://findbiometrics.com/pindrop-names-former-aws-exec-as-chief-technology-officer-706023/, *archived at* https://perma.cc/BL5G-N5B2.

[74] Integration Guide at 1.

[75] AWS Lambda FAQs, https://aws.amazon.com/lambda/faqs/, *archived at* https://perma.cc/NB3L-U3QW. ("Q: Can I access the infrastructure that AWS Lambda runs on? No. AWS Lambda operates the compute infrastructure on your behalf, allowing it to perform health checks, apply security patches, and do other routine maintenance."); https://docs.aws.amazon.com/lambda/latest/dg/welcome.html, *archived at* https://perma.cc/X8VP-9UGT. ("Lambda runs your code on a high-availability compute infrastructure and performs all of the administration of the compute resources[.]").

[76] *See* AWS Lambda@Edge, https://aws.amazon.com/lambda/edge/, *archived at* https://perma.cc/W28Q-LDV6.

[77] Merriam-Webster Dictionary, definition of *profit*, https://www.merriam-webster.com/dictionary/profit, *archived at* https://perma.cc/75X4-WDBT.

identifiers" or "biometric information" as defined by BIPA.

**137.    AWS profits from offering Pindrop's voiceprint services in conjunction with its Amazon Connect services.**

**ANSWER:**    AWS denies the allegations in paragraph 137.

**138.    AWS advertises Pindrop integration as a selling point and added value for Amazon Connect customers.**

**ANSWER:**    AWS denies the allegations in Paragraph 138.

**139.    AWS uses Pindrop integration to distinguish AWS's call center services from the call center services offered by AWS's competitors.**

**ANSWER:**    AWS denies the allegations in Paragraph 139.

**140.    AWS bills customers per transaction to verify caller identities.[78]**

**ANSWER:**    AWS denies the allegations in Paragraph 140.

**141.    Pindrop profits from its biometric voice services, including when those services are used to authenticate Illinois citizens, because it generates revenue by processing, creating, controlling, and disseminating biometric voice data used to authenticate callers.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 141 and therefore denies the same.

**142.    Pindrop profits from its partnership with AWS and the integration of its biometric voice technology with AWS's Amazon Connect offering because it generates revenue as the result of this partnership and integration.**

**ANSWER:**    AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 142 and therefore denies the same.

**143.    In addition, Defendants profit from the use of Biometric Data, in violation of BIPA section 15(c).**

**ANSWER:**    AWS denies the allegations in Paragraph 143.

**144.    Pindrop profits from Plaintiffs' Biometric Data by selling Pindrop's Biometric**

---

[78] AWS Pricing, https://aws.amazon.com/connect/pricing/, *archived at* https://perma.cc/C4C9-8BBB.

Data analysis and software as a service.[79] **Pindrop obtains Plaintiffs' biologically unique voice audio spoken in Illinois, then disseminates the resulting sensitive Biometric Data to its customers, a service for which it is paid. Pindrop does not tell Plaintiffs it is profiting from its harvesting of their biological data, nor does it obtain their consent. Even if it did obtain consent—though it did not—Pindrop's practice of profiting from Illinois citizens' Biometric Data is a BIPA violation. BIPA Section 15(c).**

**ANSWER:**     AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 144 and therefore denies the same.

**145.     AWS profits from Plaintiffs' Biometric Data because, as alleged herein, it is paid to collect and store this data, which it knowingly does without Plaintiffs' knowledge or consent. Further, AWS advertises the availability of Amazon Connect's integration with Pindrop as a selling point to obtain customers, from whom it generates sales and profits.**

**ANSWER:**     AWS denies the allegations in Paragraph 145.

**146.     In addition to physically hosting Plaintiffs' Biometric Data, AWS supports the Amazon Connect-Pindrop integration in an ongoing fashion to ensure that the AWS and Pindrop systems continue to work together to analyze Biometric Data. AWS uses this ongoing support as a selling point to attract customers.**

**ANSWER:**     AWS denies the allegations in Paragraph 146.

**147.     Defendants used the features of their services described herein to compete with similar features being offered as part of other call center solutions, giving Defendants a competitive edge that allowed Defendants to profit from the sale of their services.**

**ANSWER:**     AWS denies the allegations in Paragraph 147.

**148.     For the reasons set forth above, among others, Defendants profit from Biometric Data.**

**ANSWER:**     AWS denies the allegations in Paragraph 148.

**149.     Defendants are prohibited from profiting from any "person's or . . . customer's biometric information" because Defendants are "private entit[ies] in possession of a biometric identifier." 740 ILCS 14/15(c). Therefore, the fact that Defendants profit from the Biometric Data they collect in Illinois is unlawful.**

**ANSWER:**     AWS denies the allegations in Paragraph 149.

---

[79] Pindrop website homepage, https://www.pindrop.com, *archived at* https://perma.cc/X5XJ-KGLR.

E.    Defendants' Conduct Violates BIPA

**150.    Plaintiffs' biologically unique voice audio, spoken in Illinois, was captured in Illinois by Defendants, who reached into Illinois via cloud-based technology to obtain it.**

**ANSWER:**    AWS denies the allegations in Paragraph 150.

**151.    Defendants performed biometric analysis to extract Biometric Data from Illinois citizens' biologically unique voice audio spoken in Illinois, which Defendants reached into Illinois to capture.**

**ANSWER:**    AWS denies the allegations in Paragraph 151.

**152.    Though Defendants are aware that they are reaching into Illinois to capture Illinois citizens' biologically unique voice audio spoken in Illinois and conducting biometric voice analysis on Illinois citizens, Defendants do not inform these Illinois citizens that their biometric information and biometric identifiers are being collected and stored.**

**ANSWER:**    AWS denies the allegations in Paragraph 152.

**153.    Defendants do not obtain consent from Illinois citizens, in any form, prior to collecting and storing their voiceprints, let alone obtain written, informed consent, as required by BIPA.**

**ANSWER:**    AWS denies the allegations in Paragraph 153.

**154.    Further, contrary to the requirements of BIPA, neither AWS nor Pindrop have developed any written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information.**

**ANSWER:**    AWS denies the allegations in Paragraph 154.

**155.    Defendants have collected, captured, obtained, and possessed the biometric information and biometric identifiers of Plaintiffs in violation of BIPA.**

**ANSWER:**    AWS denies the allegations in Paragraph 155.

**156.    Defendants have profited from the use of Plaintiffs' biometric information, in violation of BIPA.**

**ANSWER:**    AWS denies the allegations in Paragraph 156.

**157.    Pindrop, after collecting Plaintiffs' and the Class's Biometric Data, disclosed and disseminated that data to AWS.**

**ANSWER:**    AWS denies the allegations in Paragraph 157.

158.   **AWS, after receiving from Pindrop and storing Plaintiffs' and the Class's Biometric Data, redisclosed and disseminated that data to AWS's Amazon Connect customers.**

**ANSWER:**   AWS denies the allegations in Paragraph 158.

159.   **Defendants disseminated, including between each other and their call center clients, the Biometric Data of Plaintiffs, regardless of whether such dissemination was required in order to complete a financial transaction or was required by law, in violation of BIPA.**

**ANSWER:**   AWS denies the allegations in Paragraph 159.

160.   **As alleged herein, Defendants disclosed and re-disseminate Plaintiffs' and Class members' Biometric Data for profit, and otherwise mishandled said Biometric Data.**

**ANSWER:**   AWS denies the allegations in Paragraph 160.

F.   Plaintiffs Suffered Harm in Illinois

161.   **Defendants' failures to comply with BIPA as set forth herein violated Plaintiffs' and other Illinois citizens' privacy rights.**

**ANSWER:**   AWS denies the allegations in Paragraph 161.

162.   **The privacy and economic harms caused by the imminent danger posed by Defendants' conduct were suffered by Plaintiffs and other Illinois citizens in Illinois.**

**ANSWER:**   AWS denies the allegations in Paragraph 162.

163.   **Plaintiffs were physically located in Illinois when their biological characteristics were wrongfully captured in violation of BIPA.**

**ANSWER:**   AWS denies the allegations in Paragraph 163.

164.   **The words Plaintiffs spoke when their voiceprints were extracted were spoken in Illinois, and only in Illinois.**

**ANSWER:**   AWS lacks knowledge or information sufficient to form a belief regarding

the truth of the allegations in Paragraph 164 and therefore denies the same.

165.   **Plaintiffs suffered the economic harm alleged herein in Illinois.**

**ANSWER:**   AWS denies the allegations in Paragraph 165.

166.   **Because Plaintiffs and all members of the putative class are Illinois citizens, whose Biometric Data in Defendants' possession was derived from words that Plaintiffs**

spoke in Illinois, this harm was suffered in Illinois.

**ANSWER:**   AWS denies the allegations in Paragraph 166.

167.   **Because Plaintiffs were located in Illinois when they interacted directly with Defendants and when Defendants harvested their Biometric Data, Defendants were required under BIPA to, among other things, obtain Plaintiffs' informed written consent in Illinois. Defendants' omission, which violated BIPA, necessarily occurred in Illinois.**

**ANSWER:**   AWS denies the allegations in Paragraph 167.

168.   **Defendants violated BIPA by failing to make required disclosures and obtain permissions in Illinois. Defendants' failure to make the disclosures and obtain the permissions BIPA requires necessarily occurred in Illinois.**

**ANSWER:**   AWS denies the allegations in Paragraph 168.

169.   **The harm to Plaintiffs and the other Illinois citizen class members occurred in Illinois, where Plaintiffs were located, where their voice information was taken, and where Plaintiffs spoke the words that Defendants converted to Biometric Data that they possessed and controlled in violation of BIPA. This harm is ongoing for these and other Illinois citizens.**

**ANSWER:**   AWS denies the allegations in Paragraph 169.

VII.   **Class Allegations**

170.   **Plaintiffs seek to represent the following class (the "Class") of similarly situated individuals:**

> **All Illinois citizens who placed one or more phone calls to, or received one or more phone calls from, an entity using Amazon Connect and Pindrop's voice authentication and/or fraud detection technology, from December 17, 2014 until present.**

**ANSWER:**   AWS admits that Paragraph 170 contains a characterization of Plaintiffs

proposed class, but denies that AWS engaged in any wrongdoing, denies that it violated BIPA,

denies that Plaintiffs are entitled to any relief, denies that this case can be maintained as a class

action, and denies that Plaintiffs can represent the class of people they attempt to define.

171.   **Numerosity. The Class includes thousands of people, such that it is not practicable to join all Class members into one lawsuit.**

**ANSWER:**   AWS denies the allegations in Paragraph 171 and denies that this case can

be maintained as a class action.

172.   __Ascertainability__. The identity of Class members is ascertainable and identifiable based on Defendants' records.

__ANSWER:__   AWS denies the allegations in Paragraph 172 and denies that this case can

be maintained as a class action.

173.   __Commonality__. The issues involved with this lawsuit present common questions of law and fact, including:

- whether Defendants collected and/or possessed the Class's "biometric identifiers" or "biometric information";

- whether Defendants properly informed Class members that it captured, collected, used, and stored their biometric identifiers and/or biometric information;

- whether Defendants obtained "informed written consent" (740 ILCS 14/10) to capture, collect, use, and store Class members' biometric identifiers and/or biometric information;

- whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information;

- whether Defendants disseminated Class members' biometric identifiers and/or biometric information;

- whether Defendants profited from Class members' biometric identifiers and/or biometric information;

- whether Defendants used Class members' biometric identifiers and/or biometric information to identify them; and

- whether Defendants' violations of BIPA were committed recklessly or negligently.

__ANSWER:__   AWS denies the allegations in Paragraph 173 and denies that this case can

be maintained as a class action.

174.   __Predominance__. These common questions of law and fact predominate over any individual issue that may arise on behalf of an individual Class member.

__ANSWER:__   AWS denies the allegations in Paragraph 174 and denies that this case can

be maintained as a class action.

175.   **Typicality**. **Plaintiffs, the members of the Class, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.**

**ANSWER:**   AWS denies the allegations in Paragraph 175 and denies that this case can

be maintained as a class action.

176.   **Adequacy**. **Plaintiffs and counsel will fairly and adequately protect the interests of Class members. Plaintiffs' lead counsel, Schlichter Bogard & Denton, LLP, will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g). Schlichter Bogard & Denton has been appointed as lead class counsel in dozens of class actions. Federal courts and others have consistently and repeatedly recognized the firm's unparalleled success:**

- **"This Court is unaware of any comparable achievement of public good by a private lawyer in the face of such obstacles and enormous demand of resources and finance." Order on Attorney's Fees, *Mister v. Illinois Central Gulf R.R.*, No. 81-3006 (S.D. Ill. 1993).**

- **"Schlichter, Bogard & Denton has achieved unparalleled results on behalf of its clients, . . . has invested . . . massive resources and persevered in the face of . . . enormous risks[.]" *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, at \*2 (C.D. Ill. Oct. 15, 2013).**

- **"Of special importance is the significant, national contribution made by the Plaintiffs whose litigation clarified ERISA standards in the context of investment fees. The litigation educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations." *Tussey v. ABB*, Inc., No. 06-4305, 2015 WL 8485265 at \*2 (W.D. Mo. Dec. 9, 2015).**

- **"Class Counsel's efforts have not only resulted in a significant monetary award to the class but have also brought improvement to the manner in which the Plans are operated and managed which will result in participants and retirees receiving significant savings[.]" *Kruger v. Novant Health, Inc.*, No. 14- 208, Doc. 61, at 7–8 (M.D.N.C. Sept. 29, 2016).**

- **"[Schlichter Bogard & Denton achieved an] outstanding result for the class," and "demonstrated extraordinary resourcefulness, skill, efficiency and determination." *Gordan v. Mass Mutual Life Ins., Co.*, No. 14-30184, Doc. 144 at 5 (D. Mass. Nov. 3, 2016).**

- **"[Schlichter, Bogard & Denton] pioneered this ground-breaking and novel area of litigation" that has "dramatically brought down fees in defined contribution plans." *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 WL 434473, at \*2 (D. Md. Jan. 28, 2020).**

- **The firm's class action work has been featured in the New York Times, Wall Street Journal, NPR, Reuters, and Bloomberg, among other media outlets. See, e.g., Anne Tergesen, *401(k) Fees, Already Low, Are Heading Lower*, Wall St. J. (May 15, 2016);[80] Gretchen Morgenson, *A Lone Ranger of the 401(k)'s*, N.Y. Times (Mar. 29, 2014);[81] Liz Moyer, *High Court Spotlight Put on 401(k) Plans*, Wall St. J. (Feb. 23, 2015);[82] Floyd Norris, *What a 401(k) Plan Really Owes Employees*, N.Y. Times (Oct. 16, 2014);[83] Sara Randazzo, *Plaintiffs' Lawyer Takes on Retirement Plans*, Wall St. J. (Aug. 25, 2015);[84] Jess Bravin and Liz Moyer, *High Court Ruling Adds Protections for Investors in 401(k) Plans*, Wall St. J. (May 18, 2015);[85] Jim Zarroli, *Lockheed Martin Case Puts 401(k) Plans on Trial*, NPR (Dec. 15, 2014);[86] Mark Miller, *Are 401(k) Fees Too High? The High-Court May Have an Opinion*, Reuters (May 1, 2014);[87] Greg Stohr, *401(k) Fees at Issue as Court Takes Edison Worker Appeal*, Bloomberg (Oct. 2, 2014).[88]**

**ANSWER:**   AWS lacks knowledge and information sufficient to form a belief as to the

---

[80] Anne Tergesen, *401k Fees, Already Low, Are Heading Lower*, Wall Street Journal (May 15, 2016), http://www.wsj.com/articles/401-k-fees-already-low-are-heading-lower-1463304601, *archived at* https://perma.cc/T4KY-QVCT.

[81] Gretchen Morgensen, *A Lone Ranger of the 401(k)'s*, New York Times (Mar. 29, 2014), http://www.nytimes.com/2014/03/30/business/a-lone-ranger-of-the-401-k-s.html?_r=0, *archived at* https://perma.cc/5ZGL-XCJY.

[82] Liz Moyer, *High-Court Spotlight Put on 401(k) Plans*, Wall Street Journal (Feb. 23, 2015), http://www.wsj.com/articles/high-court-spotlight-put-on-401-k-plans-1424716527, *archived at* https://perma.cc/Z878-LH5R.

[83] Floyd Norris, *What a 401(k) Plan Really Owes Employees*, New York Times (Oct. 16, 2014), http://www.nytimes.com/2014/10/17/business/what-a-401-k-plan-really-owes-employees.html?_r=0, *archived at* https://perma.cc/RN8S-9ARU.

[84] Sara Randazzo, *Plaintiffs' Lawyer Takes On Retirement Plans*, Wall Street Journal (Aug. 25, 2015), http://blogs.wsj.com/law/2015/08/25/plaintiffs-lawyer-takes-on-retirement-plans/, *archived at* https://perma.cc/GPR3-2K8F.

[85] Jess Bravin and Liz Moyer, *High Court Ruling Adds Protections for Investors in 401(k) Plans*, Wall Street Journal (May 18, 2015), http://www.wsj.com/articles/high-court-ruling-adds-protections-for-investors-in-401-k-plans-1431974139, *archived at* https://perma.cc/2B5A-D4GQ.

[86] Jim Zarroli, *Lockheed Martin Case Puts 401(k) Plans On Trial*, National Public Radio (Dec. 15, 2014), http://www.npr.org/2014/12/15/370794942/lockheed-martin-case-puts-401-k-plans-on-trial, *archived at* https://perma.cc/4ANG-CYJS.

[87] Mark Miller, *Are 401(k) fees too high? The high court may have an opinion*, Reuters (May 1, 2014), http://www.reuters.com/article/us-column-miller-401fees-idUSBREA400J220140501, *archived at* https://perma.cc/WP3H-YJ3H.

[88] Greg Stohr, *401(k) Fees at Issue as Court Takes Edison Worker Appeal*, Bloomberg Business (Oct. 2, 2014), http://www.bloomberg.com/news/articles/2014-10-02/401-k-fees-at-issue-as-court-takes-edison-worker-appeal, *archived at* https://perma.cc/DR9Y-3VJN.

truth of the allegations in Paragraph 176 and therefore denies the same.

177.   **Superiority**. **A class action is the appropriate vehicle for fair and efficient adjudication of Plaintiffs' and Class members' claims because if individual actions were required to be brought by each member of the Class, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendants.**

**ANSWER:**   AWS denies the allegations in Paragraph 177 and denies that this case can

be maintained as a class action.

## COUNT I – VIOLATION OF 740 ILCS 14/15(a)

178.   **Plaintiffs incorporate paragraphs 1 through 177 as though fully realleged herein.**

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

179.   **BIPA created statutory duties for Defendants with respect to the possession of the biometric identifiers and biometric information of Plaintiffs and the Class. See 740 ILCS 14/15(a).**

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

180.   **Defendants violated BIPA section 15(a) by possessing Plaintiffs' and Class members' biometric information, including voiceprints and related biometric information, without creating and following a written policy, made available to the public, establishing and following a retention schedule and destruction guidelines for their possession of biometric identifiers and information.**

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

181.   **Defendants' BIPA violations are violations of Defendants' duty of ordinary care owed to Plaintiffs and the Class.**

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

182.   **In the alternative, Defendants' BIPA violations were willful and wanton. Defendants knowingly, intentionally and/or recklessly violated the duty they owed to**

Plaintiffs and the Class.

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

183.   **Plaintiffs incurred injuries that were proximately caused by Defendants'
conduct. Through their actions, Defendants exposed Plaintiffs and the Class to imminent
threats of serious harm.**

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

184.   **Plaintiffs in this Count II hereby request the relief set forth in the Prayer for
Relief below, and incorporated as though fully set forth herein.**

**ANSWER:**   The Court dismissed the Section 15(a) claim, so no answer to this Paragraph

is required.

## COUNT II – VIOLATION OF 740 ILCS 14/15(b)

185.   **Plaintiffs incorporate paragraphs 1 through 184 as though fully realleged
herein.**

**ANSWER:**   AWS incorporates its answers to the foregoing allegations as if fully set

forth herein.

186.   **BIPA created statutory duties for Defendants with respect to the collection of
biometric identifiers and biometric information of Plaintiffs and the Class. See 740 ILCS
14/15(b).**

**ANSWER:**   AWS denies the allegations in Paragraph 186.

187.   **Defendants violated BIPA section 15(b)(1) by capturing, collecting, and
obtaining Plaintiffs' and Class members' biometric identifiers and biometric information,
including voiceprints and related biometric information, without first informing Plaintiffs
and Class members that they were collecting this information.**

**ANSWER:**   AWS denies the allegations in Paragraph 187.

188.   **Defendants violated BIPA section 15(b)(2) by capturing, collecting and
obtaining Plaintiffs' and Class members' biometric identifiers and biometric information,
including voiceprints and related biometric information, without informing Plaintiffs and
Class members in writing of the purpose for the collection. Further, Defendants violated**

BIPA section 15(b)(2) by failing to inform Plaintiffs and Class members in writing of the length of time Defendants would store and use Plaintiffs' and Class members' biometric identifiers and biometric information, including voiceprints and related biometric information.

**ANSWER:**   AWS denies the allegations in Paragraph 188.

189.   Defendants violated BIPA section 15(b)(3) by capturing, collecting and obtaining Plaintiffs' and Class members' biometric identifiers and biometric information, including voiceprints and related biometric information, without first obtaining informed written consent authorizing Defendants to capture or collect Plaintiffs' and Class members' biometric identifiers and/or biometric information.

**ANSWER:**   AWS denies the allegations in Paragraph 189.

190.   Defendants' BIPA violations are violations of Defendants' duty of ordinary care owed to Plaintiffs and the Class.

**ANSWER:**   AWS denies the allegations in Paragraph 190.

191.   In the alternative, Defendants' BIPA violations were willful and wanton. Defendants knowingly, intentionally, and/or recklessly violated the duty they owed to Plaintiffs and the Class.

**ANSWER:**   AWS denies the allegations in Paragraph 191.

192.   Plaintiffs incurred injuries that were proximately caused by Defendants' conduct. Through their actions, Defendants exposed Plaintiffs and the Class to imminent threats of serious harm.

**ANSWER:**   AWS denies the allegations in Paragraph 192.

193.   Plaintiffs in this Count II hereby request the relief set forth in the Prayer for Relief below, and incorporated as though fully set forth herein.

**ANSWER:**   AWS admits that Paragraph 193 contains a characterization of Plaintiffs' case and that Plaintiffs request the relief set forth herein, but denies that AWS engaged in any wrongdoing, denies that it violated BIPA, and denies that Plaintiffs are entitled to any relief.

## COUNT III – VIOLATION OF 740 ILCS 14/15(c)

194.   Plaintiffs incorporate paragraphs 1 through 193 as though fully realleged herein.

**ANSWER:**   The Court dismissed the Section 15(c) claim, so no answer to this

Paragraph is required.

**195.    Under BIPA, Defendants owed a duty to Plaintiffs and the Class not to profit from their Biometric Data.** *See* **740 ILCS 14/15(c).**

> **ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this Paragraph

is required.

**196.    Defendants are subject to BIPA section 15(c) because they are "private entit[ies] in possession of a biometric identifier or biometric information."**

> **ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this Paragraph

is required.

**197.    Defendants violated BIPA section 15(c) by profiting from the possession of Plaintiffs' and Class members' biometric identifiers and biometric information, including voiceprints and related biometric information, by among other things, marketing, selling and performing biometric analysis and storage services that included collecting and possessing Plaintiffs' Biometric Data.**

> **ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this

Paragraph is required.

**198.    Defendants' BIPA violations are violations of Defendants' duty of ordinary care owed to Plaintiffs and the Class.**

> **ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this Paragraph

is required.

**199.    In the alternative, Defendants' BIPA violations were willful and wanton. Defendants knowingly, intentionally and/or recklessly violated the duty they owed to Plaintiffs and the Class.**

> **ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this Paragraph

is required.

**200.    Plaintiffs incurred injuries that were proximately caused by Defendants' conduct. Through their actions, Defendants exposed Plaintiffs and the Class to imminent threats of serious harm.**

> **ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this Paragraph

is required.

**201.    Plaintiffs in this Count III hereby request the relief set forth in the Prayer for Relief below, and incorporated as though fully set forth herein.**

**ANSWER:**    The Court dismissed the Section 15(c) claim, so no answer to this Paragraph

is required.

## COUNT IV – VIOLATION OF 740 ILCS 14/15(d)

**202.    Plaintiffs incorporate paragraphs 1 through 201 as though fully realleged herein.**

**ANSWER:**    The Court dismissed the Section 15(d) claim, so no answer to this Paragraph

is required.

**203.    Defendants violated BIPA section 15(d) by disclosing, redisclosing, and disseminating Plaintiffs' and Class members' biometric identifiers and biometric information, including voiceprints and related biometric information, without consent, and despite that the disclosure, redisclosure, and dissemination was not necessary to complete any financial transaction requested or authorized by Plaintiffs and Class members.**

**ANSWER:**    The Court dismissed the Section 15(d) claim, so no answer to this Paragraph

is required.

**204.    Defendants' BIPA violations are violations of Defendants' duty of ordinary care owed to Plaintiffs and the Class.**

**ANSWER:**    The Court dismissed the Section 15(d) claim, so no answer to this Paragraph

is required.

**205.    In the alternative, Defendants' BIPA violations were willful and wanton. Defendants knowingly, intentionally and/or recklessly violated the duty they owed to Plaintiffs and the Class.**

**ANSWER:**    The Court has dismissed the Section 15(d) claim, so no answer to this

Paragraph is required.

**206.    Plaintiffs incurred injuries that were proximately caused by Defendants' conduct. Through their actions, Defendants exposed Plaintiffs and the Class to imminent threats of serious harm.**

**ANSWER:**    The Court dismissed the Section 15(d) claim, so no answer to this Paragraph

is required.

207.    **Plaintiffs in this Count IV hereby request the relief set forth in the Prayer for Relief below, and incorporated as though fully set forth herein.**

**ANSWER:**    The Court dismissed the Section 15(d) claim, so no answer to this Paragraph

is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for judgment against Defendants Amazon Web Services, Inc. and Pindrop Security, Inc. as follows:

A.    **Certifying this case as a class action, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class Counsel;**

B.    **Finding that Defendants' conduct violates BIPA;**

C.    **Awarding actual damages caused by Defendants' BIPA violations;**

D.    **Awarding statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or damages of $1,000 for each negligent violations pursuant to 740 ILCS 14/20(4).**

E.    **Awarding injunctive and/or other equitable or non-monetary relief as appropriate to protect the Class, including by enjoining Defendants from further violating BIPA pursuant to 740 ILCS 14/20(4);**

F.    **Awarding Plaintiffs reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);**

G.    **Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and**

H.    **Awarding such other and further relief as this Court deems appropriate and as equity and justice may require.**

**ANSWER:**    AWS denies that it has engaged in any wrongdoing, denies that it has

violated BIPA, denies that this case is suitable for class treatment, denies that Plaintiffs are

similarly situated to other unnamed individuals, and denies that Plaintiffs are entitled to any relief.

AWS denies any remaining allegations in this PRAYER FOR RELIEF.

\*      \*      \*

## <u>DEFENDANT AMAZON WEB SERVICES, INC.'S AFFIRMATIVE DEFENSES</u>

AWS, without admitting any of the allegations of the Complaint and without admitting or acknowledging that AWS bears any burden of proof as to any of them, asserts the following additional defenses.  AWS expressly reserves the right to raise additional defenses, amend its answers and affirmative and other defenses, and assert counterclaims as they may become known through the course of further investigation and discovery.

### First Defense
### (Statute of Limitations)

Plaintiffs' claims and the putative class members' claims are barred to the extent that they arose outside the applicable statutes of limitations.  Plaintiffs and the putative class cannot seek recovery for alleged violations that took place prior to the applicable statute of limitations.

### Second Defense
### (No Relationship to AWS)

The claims of Plaintiffs and the putative class are barred because Plaintiffs and the putative class have no relationship with AWS.

### Third Defense
### (AWS Not Liable for Acts of Third Parties)

1.      To the extent that Plaintiffs and the putative class suffered any damages, such resulted, in whole or in part, from their own conduct and/or the conduct of third parties.

2.      AWS is not jointly and severally liable for the actions of third parties, including Pindrop or John Hancock, whether through operation of *respondeat superior*, the law of agency, alter ego, common law joint and several liability, or any other theory of liability.

3.      Neither John Hancock nor Pindrop is an agent or alter ego of AWS.

4.      To the extent Plaintiffs allege that AWS is liable for the acts of John Hancock or Pindrop regarding compliance with BIPA, Plaintiffs' claims are barred.

### Fourth Defense
### (No Negligent, Intentional, or Reckless Conduct)

Plaintiffs' claims are barred in whole or in part by AWS's good faith, and the absence of negligent, intentional, or reckless conduct.  To the extent that BIPA applies to AWS's conduct, AWS is not liable because it relied in good faith upon a reasonable interpretation of BIPA's statutory language and any alleged violation was not negligent, intentional, or reckless.

### Fifth Defense
### (Consent)

To the extent Plaintiffs allege that AWS is liable because Plaintiffs and/or putative class members' biometric information was collected without their consent, such claims are barred because Plaintiffs and/or putative class members voluntarily consented (either implicitly or expressly) to the collection of such information.

### Sixth Defense
### (No Attorneys' Fees)

1.      Any request by Plaintiffs or the putative class for attorneys' fees is contrary to public policy, and Plaintiffs and/or the putative class cannot prove they are entitled to attorneys' fees for purported violations of BIPA.

2.      Plaintiffs and the putative class can recover attorneys' fees under BIPA only if they are the "prevailing party."  *See* 740 ILCS 14/20.

3.      Because Plaintiffs' claims are unfounded, Plaintiffs are not the "prevailing party" under BIPA and therefore is not entitled to attorneys' fees.

**Seventh Defense**
**(No Ratification)**

Plaintiffs and the putative class are not entitled to some or all of the relief requested in the Complaint because, even if any unlawful practice(s) occurred, which AWS denies, such practice(s) was/were prohibited by AWS's policies and was/were not committed, countenanced, ratified, or approved by AWS.

**Eighth Defense**
**(Not Reasonable Estimate of Actual Damages)**

The claims of Plaintiffs and the putative class are barred because the recovery requested would not be a reasonable estimate of any actual damages, but instead would amount to a disparate penalty, akin to punitive damages for strict liability, given that Plaintiffs and the putative class members have not suffered any injury or incurred any harm to warrant such relief.

**Ninth Defense**
**(Failure to Mitigate Damages)**

Plaintiffs and the putative class members have failed to mitigate their damages, if any, and any recovery should be reduced or denied accordingly.

**Tenth Defense**
**(Injunctive Relief Not Warranted)**

The claims of Plaintiffs and the putative class for injunctive relief are barred as there is no danger of immediate, irreparable harm.

**Eleventh Defense**
**(Adequate Remedy at Law)**

To the extent the Complaint seeks equitable relief against AWS, such claims are barred because Plaintiffs have adequate remedies at law. Specifically, the Complaint alleged that

Plaintiffs and the putative class are entitled to damages for alleged violations of BIPA, which will result in monetary recovery if any such alleged violations are proven.

### Twelfth Defense
### (Unconstitutional)

BIPA is unconstitutional on its face and as applied because it violates the due process and equal protection guarantees, and other substantive and procedural safeguards afforded by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and comparable provisions of the Illinois Constitution.

### Thirteenth Defense
### (No Extraterritorial BIPA Application)

The claims of Plaintiffs and the putative class are barred, in whole or in part, because they require the extraterritorial application of BIPA and/or violate the Dormant Commerce Clause.

### Fourteenth Defense
### (Estoppel, Waiver, Laches, Unclean Hands)

The claims of Plaintiffs and the putative class are barred by estoppel, waiver, laches, unclean hands, and/or other equitable defenses because Plaintiffs and putative class members voluntarily participated in the conduct alleged in the Complaint and never objected to the conduct alleged in the Complaint before filing this lawsuit.

### Fifteenth Defense
### (No Biometric Information)

Any information collected from Plaintiffs and the putative class does not constitute "biometric information" or "biometric identifiers" under BIPA.

**Sixteenth Defense**
**(Assumption of the Risk)**

The claims of Plaintiffs and the putative class are barred by the doctrine of primary assumption of the risk.

**Seventeenth Defense**
**(Ratification and Acquiescence)**

The claims are barred in whole or in part by the doctrines of ratification and acquiescence. Upon information and belief, Plaintiffs and the putative class members approved and, in some cases, participated in the complained-of conduct. Accordingly, they are barred from bringing their claims under the doctrines of ratification and acquiescence.

**Eighteenth Defense**
**(Lack of Injury)**

Plaintiffs' claims and the putative class members' claims fail, in whole or in part, because they have not sustained any cognizable injury or damages.

**Nineteenth Defense**
**(Unjust Enrichment)**

Plaintiffs' claims and the putative class members' claims are barred, in whole or in part, because any recovery from AWS would result in Plaintiffs being unjustly enriched.

## <u>PRAYER</u>

WHEREFORE, having answered the Complaint, AWS respectfully requests:

1.      That Plaintiffs take nothing for each and every claim for relief averred in the Complaint;

2.      That judgment on the Complaint, and each and every claim for relief therein, be entered in favor of BNSF and against Plaintiff; and

3.    For such other and further relief as the Court deems just and proper.


                                        Respectfully submitted,

Dated: April 26, 2023

                                        /s/ Jody C. Barillare
Beth Herrington (*pro hac vice*)        Jody C. Barillare (#5107)
110 North Wacker Drive                  1201 North Market Street, Suite 2201
Chicago, IL  60606                      Wilmington, DE  19801
(312) 324-1000                          (302) 574-3000
beth.herrington@morganlewis.com         jody.barillare@morganlewis.com

Raechel Keay Kummer (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
(202) 739-3000                          *Counsel for Defendant Amazon Web Services,*
raechel.kummer@morganlewis.com          *Inc.*