**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CHRISTINE MCGOVERAN, JOSEPH
VALENTINE, AMELIA RODRIGUEZ,
RICHARD DRESSER, ALIKI MARINOS,
ROBERT RITTER, FRED SPAGAT,
STEVEN TALMONTAS, TRACI
THOMPSON, JEFFREY WHALEN,
MICHELLE WHALEN, and DONNA
WINANDY on behalf of themselves and all
other persons similarly situated, known and
unknown,

        Plaintiffs,

     v.

AMAZON WEB SERVICES, INC.,

        Defendant.

Case No. 1:20-cv-01399-SB

**PUBLIC VERSION**

---

**BRIEF IN SUPPORT OF DEFENDANT AMAZON WEB SERVICES, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Dated: August 21, 2024

Beth Herrington (admitted *pro hac vice*)
110 North Wacker Drive,  Suite 2800
Chicago, IL  60606
(312) 324-1000
beth.herrington@morganlewis.com

Ari M. Selman (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
(202) 309-6168
ari.selman@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web
Services, Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.   SUMMARY OF ARGUMENT ...................................................................... 2

III.  STATEMENT OF FACTS ........................................................................... 5

     A.   AWS's "Amazon Connect" Product ...................................................... 5

     B.   John Hancock and Pindrop ................................................................... 5

     C.   Plaintiffs' Calls to John Hancock ......................................................... 7

IV.   LEGAL ARGUMENT ................................................................................ 8

A.    Illinois's BIPA Statute Does Not Apply to AWS's Out-of-State Activities. .................... 9

     1.   All Transactions Relevant to Plaintiffs' Claims Occurred Outside Illinois. ........ 10

     2.   Plaintiffs' Illinois Residence or Call Location Is Insufficient to Satisfy Illinois's Extraterritoriality Doctrine. ......................... 13

     3.   AWS's Activities in Illinois Unrelated to Any BIPA Violation Are Irrelevant. ......................... 14

B.    AWS Is Entitled to Summary Judgment on Plaintiffs' Section 15(b) Claim Because It Did Not Take An "Active Step" to "Collect" Their Biometric Data. ........... 16

C.    The Court Should Grant Summary Judgment Because There is No Evidence that Pindrop Collected Plaintiffs' "Biometric Identifiers." ...................... 22

     1.   Pindrop's Technology Was Not Run on Nine of the Twelve Plaintiffs' Calls. ................... 22

     2.   There Is No Evidence That Pindrop Collected the Three Remaining Plaintiffs' "Voiceprints" or Could Identify Them Based on Their "Voiceprints." .................. 22

D.    AWS Is Entitled to Summary Judgment on Plaintiffs' Remaining Claims. ................. 25

V.    CONCLUSION .......................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*,
  244 F. Supp. 3d 750 (N.D. Ill. 2017), *aff'd*, 885 F.3d 1090 (7th Cir. 2018) ..........................10

*Avery v. State Farm Mut. Auto. Ins. Co*.,
  835 N.E.2d 801 (2005).................................................................................................................15

*Bhavilai v. Microsoft Corp.*
  2024 WL 992928 (N.D. Ill. Feb. 8, 2024) .......................................................................21, 22

*Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am*.,
  2021 WL 663056 (D. Del. Feb. 19, 2021).....................................................................................9

*Castelaz v. Estee Lauder Cos*.,
  2024 WL 136872 (N.D. Ill. Jan. 10, 2024).................................................................................23

*Clark v. Microsoft Corp*.,
  688 F. Supp. 3d 743 (N.D. Ill. 2023)..................................................................................17, 20

*G.T. v. Samsung Electronics Am. Inc.*,
  2024 WL 3520026 (N.D. Dist. June 24, 2024).............................................................24, 25

*Greene v. Sears Protection Co*.,
  2016 WL 397375 (N.D. Ill. Feb. 2, 2016) .................................................................................15

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ..............................................................................18, 20

*Int'l Equip. Trading, Ltd. v. Illumina, Inc*.,
  312 F. Supp. 3d 725 (N.D. Ill. 2018) ........................................................................................14

*Jacobs v. Hanwha Techwin Am., Inc.*,
  2021 WL 3172967 (N.D. Ill. July 27, 2021)...........................................................................18

*Jones v. Microsoft Corp*.,
  649 F. Supp. 3d 679 (N.D. Ill. 2023) ....................................................................17, 20, 21

*Kyles et al. v. Amazon Web Services, Inc*.,
  2021-CH-04026 (Ill. Cir. Ct. Jan 4, 2023)..............................................................................13

*Landau v. CAN Fin. Corp*.,
  886 N.E.2d 405 (2008).................................................................................................................13

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    809 F. Supp. 2d 857 (N.D. Ill. 2011) ........................................................................16

*Martell v. X Corp.*,
    2024 WL 3011353 (N.D. Ill. June 13, 2024) ............................................................24

*Maui Jim, Inc. v. SmartBuy Guru Enter.*,
    386 F. Supp. 3d 926 (N.D. Ill. 2019) .................................................................9, 16

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ..............................................................18, 20

*Our Pet Project LLC v. Int'l Paper Co.*,
    2023 WL 143224 (N.D. Ill. Jan. 10, 2023) ............................................................15

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ..............................................................................11

*Phillips v. Bally*,
    865 N.E.2d 310 (2007) .........................................................................................15

*Rivera v. Google Inc.*,
    238 F.Supp. 3d 1008 (N.D. Ill. 2017) ...................................................................10

*Sgouros v. Transunion Corp.*,
    2016 WL 4398032 (N.D. Ill. Aug. 18, 2016) ..........................................................15

*Shaw v. Hyatt Int'l Corp.*,
    2005 WL 3088438 (N.D. Ill. Nov. 15, 2005) ..........................................................13

*Vance v. Amazon.com, Inc.*,
    2022 WL 12306231 (W.D. Wash. Oct. 17, 2022) .....................................11, 12, 14

*Vance v. Google LLC*,
    2024 WL 1141007 (N.D. Cal. Mar. 15, 2024) .....................................................9, 10

*Vance v. Microsoft Corp.*,
    2022 WL 9983979 (W.D. Wash. Oct. 17, 2022) .....................................12, 14, 15

*Vulcan Golf, LLC v. Google Inc.*,
    552 F. Supp. 2d 752 (N.D. Ill. 2008) .....................................................................14

*Zellmer v. Meta Platforms, Inc.*,
    104 F.4th 1117 (9th Cir. 2024) ..............................................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Statutes**

740 ILCS 14/15 (a) ...............................................................................................25

740 ILCS 14/25(b) .......................................................................................... passim

740 ILCS 14/5(c) .....................................................................................5, 23, 25

740 ILCS 14/15 (d) ............................................................................................25

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................................9

## I.    NATURE AND STAGE OF PROCEEDINGS

This case involves "Amazon Connect," call center software that Defendant Amazon Web Services, Inc. ("AWS") provided to financial institution John Hancock Life Insurance Co. ("John Hancock"). Plaintiffs allege that they were voice authenticated without their consent during calls they made to John Hancock that were routed by Amazon Connect to John Hancock's call agents, in violation of the Illinois Biometric Information Privacy Act ("BIPA"). On December 17, 2019, Plaintiffs filed their complaint against AWS and Pindrop Security, Inc. ("Pindrop") in the Circuit Court of Madison County, Illinois. *See* D.I. 34 at 4. Following AWS's removal to federal court, the Southern District of Illinois dismissed Plaintiffs' complaint due to lack of personal jurisdiction over AWS or Pindrop because the "litigation does not arise from contacts that Defendants themselves created with Illinois or actions purposefully directed at the residents of Illinois." *Id*.

On October 16, 2020, Plaintiffs filed their Complaint in this Court. D.I. 1. The Honorable Judge Leonard Stark dismissed the case on extraterritoriality grounds. D.I. 35. On February 17, 2022, Plaintiffs filed their First Amended Complaint ("FAC"), asserting claims under BIPA Sections (a)-(d). D.I. 47. On March 29, 2023, the Court: (i) dismissed Plaintiffs' Section 15(a) and (c) claims against AWS based on a lack of Article III standing; and (ii) dismissed Plaintiffs' Section 15(d) claims against AWS for failure to state a claim. D.I. 74. On April 9, 2024, Plaintiffs filed their Second Amended Complaint ("SAC"), adding nine Plaintiffs, and re-asserting Section 15(b) claims, and identical Section 15 (a), (c), and (d) claims previously dismissed. D.I. 175.

Fact and expert discovery closed on March 15 and August 12, 2024. D.I. 81, ¶ 4(a), (f); D.I. 206, 219. On July 29, 2024, AWS moved for judgment on the pleadings on Plaintiffs' re-plead Section 15(d) claim.[1] D.I. 216, 227. Trial is set for December 2024. D.I. 84, ¶ 18.

---

[1] AWS did not move for judgment on the pleadings on Plaintiffs' Section 15(a) and (c) in the SAC because the Court dismissed those identically re-plead claims in Plaintiffs' FAC based on lack of subject matter

## II.    <u>SUMMARY OF ARGUMENT</u>

Plaintiffs initially filed this case in Illinois state court almost five years ago.  They alleged then, as they do now, that AWS (a Washington-based company) violated Section 15(b) of Illinois's BIPA by collecting their "voiceprints" without consent when they called John Hancock (a Massachusetts-based company).  After Plaintiffs re-filed in this District, Judge Stark dismissed their claims against AWS on the ground that BIPA does not apply extraterritorially.  Plaintiffs responded by alleging facts, principally based on conjecture, about AWS's conduct in Illinois and its role in verifying the identity of John Hancock's customers.  Judge Stark found those allegations sufficient at the pleading stage, but discovery has confirmed that they are, and always have been, unfounded.  AWS is therefore entitled to summary judgment on Plaintiffs' Section 15(b) claim.

AWS's cloud-based software product called "Amazon Connect" allows AWS customers to set up and operate virtual call centers.  Amazon Connect eliminates the need for brick-and-mortar call centers by seamlessly routing customer service calls to agents located anywhere in the world, including in their own homes.  John Hancock has been an Amazon Connect customer since 2018 and uses it to route customer service calls to representatives in ███████████████  ███████  Although Amazon Connect has developed its own identity verification product, known as Amazon Connect Voice ID, John Hancock has never used that product (which has yet to be deployed commercially to U.S. consumers).  Instead, John Hancock contracted with Pindrop (a Georgia-based company) for services, including voice authentication.  AWS played no role in providing those services and did not receive any alleged biometric identifiers from John Hancock

---

jurisdiction (D.I. 74) and Plaintiffs re-plead those same claims in Madison County, Illinois.  Should the Court reconsider its prior jurisdictional ruling, summary judgment should also now be entered in AWS' favor on those claims for the reasons stated in Section III(D).

nor Pindrop (both of which are exempt from BIPA under its exclusion for financial institutions). Nor did AWS collect any voiceprints or other biometric identifiers from Plaintiffs on its own.

Based on this uncontroverted factual record, AWS is entitled to summary judgment on all Plaintiffs' BIPA claims for three independent reasons.

1.      BIPA does not apply to AWS's conduct concerning Plaintiffs' calls to John Hancock because that conduct occurred entirely outside Illinois.  Under settled law, BIPA has no extraterritorial effect and applies only to conduct "primarily and substantially" in Illinois.  But AWS engaged in *no relevant conduct in Illinois*, let alone conduct that violated BIPA.  Amazon Connect does not operate from servers in Illinois, and all of the AWS services used by John Hancock, including Amazon Connect, were provided from AWS servers in ███████████████ Nor did AWS "reach into Illinois" to collect Plaintiffs' voice data, as Plaintiffs erroneously allege. When Plaintiffs called John Hancock from Illinois, ██████████████████████████████ ██████████████████████████████████████████████████████████████████████ ███████████████████ There is simply no evidence that AWS engaged in any conduct in Illinois in connection with Plaintiffs' calls to John Hancock.  That alone is fatal to Plaintiffs' BIPA claims.

2.      Even if the requisite territorial nexus existed, Plaintiffs' Section 15(b) claim fails because AWS never collected Plaintiffs' voiceprints or other biometric identifiers, which requires an "active step" under Illinois law.  Plaintiffs alleged that AWS collected their voiceprints by applying its own voice authentication technology to their calls, by routing their voice audio "directly" to Pindrop, and by storing Pindrop's voiceprints on AWS servers.  All of those allegations, however, are specious.  There is no evidence that AWS ever applied its own voice authentication technology to Plaintiffs' calls to John Hancock; rather, it was Pindrop that provided that service.  Nor is there evidence that AWS routed Plaintiffs' voice audio to Pindrop or stored

any "voiceprints" created by Pindrop; rather, ████████████████████  Further, the uncontroverted evidence shows that ███████████████████████████████████████████

████  And even if it had, there is no evidence that AWS took an "active step" to collect those voiceprints or had access to them, as Pindrop encrypted its data and had exclusive control over it at all times.  There is thus no basis to hold AWS liable under Section 15(b).

3.      Even if there were a legal basis to impute Pindrop's conduct to AWS—and there is none—there is no evidence that Pindrop collected Plaintiffs' voiceprints, as that term is used in BIPA, or that such voiceprints were capable of identifying Plaintiffs, as required to constitute a "biometric identifier" under BIPA.  As a threshold matter, Pindrop and John Hancock's records and sworn testimony establish that nine of the twelve Plaintiffs (the "Nine Plaintiffs"[2]) were never subjected to Pindrop's identity-verification technology.  As for the three remaining Plaintiffs— Ritter, Dresser, and Thompson (the "Three Remaining Plaintiffs")—there is no evidence that Pindrop used their call audio to create voiceprints that could identify them based on their unique biological characteristics.  To the contrary, the evidence shows that ███████████████████



After almost five years, it is time for this case to come to an end.  Plaintiffs survived a motion to dismiss by making numerous allegations against AWS that lacked any good faith, factual

---

[2] The Nine Plaintiffs are McGoveran, Valentine, Rodriguez, Marinos, Spagat, Talmontas, Winandy, and Jeffrey and Michelle Whalen.  Emphases are our own unless otherwise noted.

basis.  The Court then gave Plaintiffs one year of discovery to substantiate those allegations. Plaintiffs failed to do so, and AWS is entitled to summary judgment.

## III.   STATEMENT OF FACTS

### A.   AWS's "Amazon Connect" Product

AWS is a Delaware corporation with its principal place of business in Washington.[3] Among other products, AWS offers a cloud-based software system called "Amazon Connect," which thousands of companies use to set up and operate virtual call centers.[4]  Using this software, companies can avoid the time and expense of setting up brick-and-mortar call centers, and instead seamlessly route customer service calls to agents located anywhere in the world.[5]  Amazon Connect includes numerous call management tools developed by AWS,[6] but also allows companies to use third-party tools and integrate with a wide variety of systems.[7]

### B.   John Hancock and Pindrop

John Hancock is a Massachusetts corporation with its principal place of business in Massachusetts.[8]  It provides retirement, life insurance, and other financial products to its customers.  As a financial institution, it is subject to Title V of GLBA and thus exempt from BIPA.[9]

---

[3] 8/16/2024 Declaration of Joseph Sullivan ("Sullivan Decl.") ¶ 3.

[4] Sullivan Decl. ¶ 4.

[5] Ex. 1, McCrillis 2/9/2024 Dep. Tr. 16:2-10, 16:20-17:12, 193:10-194:6.

[6] AWS offers a voice authentication product called "Amazon Connect Voice ID," but that product has not been commercially deployed by any Amazon Connect customer for use with consumers in the United States.  Sullivan Decl. ¶ 37.

[7] 8/16/2024 Declaration of Ramprasad Srirama ("Srirama Decl.") ¶ 3.

[8] Ex. 1, McCrillis 2/9/2024 Dep. Tr. 166:13-167:5.

[9] See 740 ILCS 14/25(c) (providing BIPA does not apply to financial institutions and their affiliates subject to GLBA); D.I. 56 (Plaintiffs' acknowledging "John Hancock is an exempt financial institution"); D.I. 74 at 10-17 (noting Pindrop's exemption derivative of Hancock's exemption).

John Hancock is an Amazon Connect customer[10] and its customer service agents are located primarily in ██████████████████████.[11]   John Hancock solely uses AWS servers in ██████████████ to run Amazon Connect.[12]   In fact, Amazon Connect has never operated using servers in Illinois,[13] and there is no evidence that any AWS employees in Illinois serviced John Hancock's Amazon Connect account.[14]

Pindrop is a Delaware corporation with its principal place of business in Atlanta, Georgia.[15] It offers fraud detection and identity verification technologies to financial services companies, including John Hancock.[16]   The Court previously dismissed Plaintiffs' BIPA claims against Pindrop based on the GLBA exemption.  D.I. 74 at 10-17.

John Hancock used Pindrop's technology to ████████████████████████



██████████████████████[17]████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████[19]████████████████

---

[10] 8/15/2024 Declaration of Scott Stick ("Stick Decl.") ¶ 4; Sullivan Decl. ¶ 6.

[11] Ex. 1, McCrillis 2/9/2024 Dep. Tr. 207:25-208:15, 193:10-194:6.

[12] Sullivan Decl. ¶ 69; Stick Decl. ¶ 5; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 222:2-223:18, 117:23-119:18, 116:1-22.

[13] Sullivan Decl. ¶¶ 65-67; Ex. 2, ¶¶ 3-4.

[14] Stick Decl. ¶¶ 6-7.

[15] Ex. 3, St. John 5/13/2024 Dep. Tr. 33:7-10; D.I. 34 at 8 ("Pindrop is also located outside Illinois in Atlanta, Georgia"); D.I. 1 ¶ 12 (alleging Pindrop is a Delaware corporation).

[16] See D.I. 74 at 14 (noting Pindrop performs "authentication activities for John Hancock"); D.I. 175, SAC ¶¶ 67-69.

[17] See, e.g., D.I. 176-2, 3/13/2024 Declaration of Greg English ("English Decl.") ¶¶ 4-7 ██████████████████████████████████████████; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 1738-187:6 ██████████████████████████████████.

[18] Srirama Decl. ¶¶ 5-12.

[19] Srirama Decl. ¶ 7; Sullivan Decl. ¶ 28.

████████████████████████████████████████████████[20]

     Pindrop's and John Hancock's testimony and records confirm that Pindrop's voice authentication technology was never utilized on any of the Nine Plaintiffs' calls to John Hancock.[21]

### C.    Plaintiffs' Calls to John Hancock

     Plaintiffs called John Hancock, their financial services provider, while allegedly located in Illinois.  SAC ¶¶ 107-119.  Upon placing these calls,



---

[20] Sullivan Decl. ¶¶ 15-16, 25-28, 35-36; Srirama Decl. ¶¶ 5-12; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 42:3-43:6, 44:3-45:3, 291:21-24; Ex. 3, St. John 5/13/2024 Dep. Tr. 140:11-142:28; Ex. 4, McCrillis 05/14/2024 Dep. Tr. 397:10-14, 412:9-19, 413:17-21.

[21] *See* D.I. 176-2 ¶¶ 3-7 ██████████████████████████████████████; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 173:8-187:6 ████████████████████; D.I. 176-1 ¶ 8 ████████████████; Ex. 6 ███████████████████████████; Ex. 5 ██████████████████████████; Ex. 3, St. John 5/13/2024 Dep. Tr. 54:12-19, 55:13-22, 58:13-23, 84:8-86:15, 123:15-124:11, 128:11-15 ██████████████████████████████.

[22] D.I. 176-1 ¶ 5; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 149:13-23, 262:11-20, 285:5-11, 287:12-288:7; Srirama Decl. ¶¶ 15-16; Sullivan Decl. ¶ 18.

[23] *Id*.

[24] *Id*.

[25] Srirama Decl. ¶¶ 13, 19, 22, 30; D.I. 137-3, 2/21/2024 Declaration of Ramprasad Srirama ¶¶ 4-7.



In any event, AWS did not have the right or the ability to access any data that Pindrop created or stored, all of which was encrypted by Pindrop.[31]  Further, ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████[32]

## IV.   LEGAL ARGUMENT

Summary judgment is appropriate where the movant shows that there is "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Once the movant carries its burden, the

---

[26] Ex. 3, St. John 5/13/2024 Dep. Tr. 16:12-16, 97:1-98:6, 131:7-133:6; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 226:20-232:17; D.I. 137-3 ¶ 23.

[27] D.I. 137-3 ¶ 23; Ex. 1, McCrillis 2/9/2024 Dep. Tr. at 226:20-232:17.

[28] Ex. 1, McCrillis 2/9/2024 Dep. Tr. 226:20-232:17; D.I. 137-3 ¶ 23; D.I. 176-1 ¶ 9; Ex. 3, St. John 05/13/24 Dep. Tr. 95:18-97:25; 160:21-161:2, 141:2-142:1, 161:13-162:3; Ex. 4, McCrillis 05/14/2024 Dep. Tr. 327:10-16, 431:12-432:3.

[29] *See* D.I. 176-1 ¶¶ 6, 9; Ex. 3, St. John 5/13/2024 Dep. Tr. 56:20-57:5, 122:5-16, 141:2-142:1, 149:24-150:11, 158:9-21.

[30] Ex. 3, St. John 5/13/2024 Dep. Tr. 37:14-38:25, 56:21-57:5, 122:5-16, 158:9-21.

[31] *See* D.I. 176-1 ¶ 6; Ex. 3, St. John 5/13/2024 Dep. Tr. 140:2-142:16; Srirama Decl. ¶¶ 21, 28; Sullivan Decl. ¶¶ 34-35, 39, 49, 57; Ex. 4, McCrillis 5/14/2024 Dep. Tr. 321:5-25, 397:10-14, 399:19-400:1, 412:9-19, 413:17-21, 428:22-429:5, 431:12-17); Ex. 7 (AWS '1752, '1765).

[32] *Id.;* Ex. 3, St. John 5/13/2024 Dep. Tr. 129:1-130:3; 42:15-25.

nonmovant must "come forward with specific facts" showing a genuine issue for trial exists. *Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 2021 WL 663056, at *2 (D. Del. Feb. 19, 2021).  To survive summary judgment, the non-movant "must present more than just bare assertions, conclusory allegations or suspicions."  *Id.*  The Court should grant summary judgment here because the undisputed evidence shows that AWS: (i) did not engage in any relevant conduct in Illinois, and (ii) never took an "active step" to collect Plaintiffs' "biometric identifiers."

### A.   Illinois's BIPA Statute Does Not Apply to AWS's Out-of-State Activities.

John Hancock contracted with AWS for Amazon Connect call routing services.  AWS provided those services to John Hancock solely from servers located in ███████████.[33] AWS has never provided any voice authentication services to John Hancock—much less from servers in Illinois.[34]  Nonetheless, Plaintiffs assert that BIPA applies to AWS (a Washington-based company) because Plaintiffs allegedly called John Hancock (a Massachusetts-based company exempt from BIPA) from Illinois, and Amazon Connect allegedly routed their calls to Pindrop (a Georgia-based company also exempt from BIPA).[35]  *See* D.I. 74 at 10-17.  Plaintiffs are wrong.  The undisputed evidence shows that ████████████████████████████████████

████████████████████████████████████████████████.  As

---

[33] Sullivan Decl. ¶ 69; Stick Decl. ¶ 5; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 222:2-223:18, 117:23-119:18, 116:1-22.

[34] Srirama Decl. ¶¶ 7, 13; Sullivan Decl. ¶¶ 13, 22-23, 36-37; Ex. 8 at 18-19 (confirming Amazon Voice ID was never deployed commercially in the U.S.); Ex. 1, McCrillis 02/09/24 Dep. Tr. 102:22-103:1 (████████████████████████████████████████████).  Plaintiffs' claims are expressly based on their authentication using Pindrop's technology.  *See* SAC ¶ 188; D.I. 185 at 3; D.I. 190 at 1; *accord* D.I. 171, 181.

[35] SAC ¶¶ 80-81, 100, 141.  The absence of *any* interaction between Plaintiffs and any Illinois company also precludes application of BIPA here.  *See, e.g.*, *Maui Jim, Inc. v. SmartBuy Guru Enter.*, 386 F. Supp. 3d 926, 940 (N.D. Ill. 2019) (dismissing claim as no defendant was an Illinois resident); *Vance v. Google LLC*, 2024 WL 1141007, at *3 (N.D. Cal. Mar. 15, 2024) (holding "Plaintiffs have not alleged a *"direct interaction"* with *Google* imputable to Illinois that would "g[i]ve rise to the alleged BIPA violations").

AWS had *no relevant contacts with Illinois*, here is no basis to apply BIPA to AWS's conduct.

        1.    <u>All Transactions Relevant to Plaintiffs' Claims Occurred Outside Illinois.</u>

Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.,* 244 F. Supp. 3d 750, 757 (N.D. Ill. 2017), *aff'd*, 885 F.3d 1090 (7th Cir. 2018). In his September 30, 2021 Order dismissing Plaintiffs' BIPA claims in their original complaint, the Honorable Judge Leonard Stark correctly concluded that BIPA does not "apply extraterritorially" and, therefore, "BIPA violations must occur in Illinois for Plaintiffs to obtain any relief." D.I. 34 at 6 (citing *Rivera v. Google Inc*., 238 F.Supp.3d 1008, 1100 (N.D. Ill. 2017)). Because BIPA does not apply extraterritorially, Plaintiffs must demonstrate their claims arise from *AWS's contacts* with Illinois. *See id*. at 7, 11-12 ("Plaintiffs fail to allege conduct [that] occurred primarily and substantially in Illinois" or "any *direct interaction* with AWS or Pindrop that might plausibly be imputed to Illinois").

Judge Stark gave Plaintiffs the opportunity to amend their complaint and add allegations showing that their claims arose from AWS's activities in Illinois. In the SAC, Plaintiffs allege: (i) Amazon Connect uses Illinois servers (SAC ¶¶ 140-41); (ii) customers like John Hancock possibly used AWS servers in Illinois for AWS services, such as Amazon Connect (*id*.); (iii) AWS "reached into Illinois" to capture Plaintiffs' call audio (*see id*. ¶¶ 80-81, 100, 141); (iv) AWS accessed Plaintiffs' alleged voiceprints in Illinois (*see id*. ¶¶ 140-41); and (v) Pindrop stored "voiceprints" on AWS servers in Illinois. *Id*. ¶¶ 149, 151-52. At the summary judgment stage, however, "Plaintiffs can no longer rest on their allegations" but rather must "identify [legally sufficient] evidence" that the "essential element[s]" of the BIPA violations occurred in Illinois. *Vance v. Amazon.com, Inc*., 2022 WL 12306231, at *6 (W.D. Wash. Oct. 17, 2022); *Patel v.*

*Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019).  Plaintiffs cannot meet that burden because discovery has proved each of Plaintiffs' allegations in the SAC false.

*First*, contrary to Plaintiffs' allegations, Amazon Connect has *never* operated on Illinois servers.[36]  The servers on which Amazon Connect operates are solely located outside of Illinois.[37] Amazon Connect servers are available in two regions in the U.S. only—Northern Virginia and Oregon, referred to as "U.S. East (us-east-1)" and "U.S. West (us-west-2)," respectively; Illinois is not part of either region.[38]

*Second*, John Hancock has *never* used AWS servers in Illinois with Amazon Connect or any other AWS service.  Rather, John Hancock designated servers in ████████ to handle calls involving Amazon Connect and for storing John Hancock's other content. As a result, █ ████████████████████████████████████████████████████████████████ ███████████████████████.[39]

*Third*, AWS never "reached into Illinois" to capture Plaintiffs' call audio or "directly" "route[d] Illinois citizens' voice audio" to Pindrop without any "intermediary."  SAC ¶¶ 80-81, 100, 141, 168.  To the contrary, the evidence shows that Plaintiffs' call audio was captured, collected and transmitted by ████████████████—*wholly outside* Amazon Connect.[40] Moreover, this call audio is "not the same as a voiceprint" and "does not meet the definition of 'biometric identifier'" under BIPA (D.I. 34 at 7, 9; D.I. 74 at 22-23; D.I. 176-1, 2/28/24 Declaration

---

[36] *See* Sullivan Decl. ¶¶ 65-67; Ex. 2, ¶¶ 3-4.

[37] *See* Sullivan Decl. ¶¶ 3-4; D.I. 34 at 7-8; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 222:11-223:18.

[38] Sullivan Decl. ¶¶ 65-67; Ex. 2, ¶¶ 3-4.

[39] *See* Ex. 1, McCrillis 2/9/2024 Dep. Tr. 222:2-223:18, 117:23-119:18, 116:1-22); Sullivan Decl. ¶¶ 18, 58, 68-69; Stick Decl. ¶¶ 5-6.

[40] D.I. 176-1 ¶ 5; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 149:13-23, 262:11-20, 285:5-11, 287:12-288:7); Srirama Decl. ¶¶ 15-16; Sullivan Decl. ¶ 18.

of Brian St. John ¶ 9), so Plaintiffs purported "voiceprints" were never "collected" *in Illinois* by AWS or anyone else.  740 Ill. Compl. Stat. 14/15(b); *see, e.g.*, *Vance*, 2022 WL 12306231, at *7-8 (dismissing claim on extra-territoriality grounds because "there is no dispute that *other entities*— rather than Amazon—were responsible for the collection of the photographs, the scanning of the photographs, and the generation of facial measurements," and because Plaintiffs have not identified "any conduct *by Amazon* that took place either primarily or substantially in Illinois").

    *Fourth*, contrary to Plaintiffs' speculation, no AWS personnel had access to or used Plaintiffs' "voiceprints"—much less in Illinois.  Rather, ████████████████████████████
████████████████████████████████████████████.[41]

    *Fifth*, ████████████████████████████████████████████
████████, as Plaintiffs falsely suggest.[42] ████████████████████████████████████
████████████████████████████████████████████████████████
████████.[43]  That fact also dooms Plaintiffs' BIPA theory.

    Finally, there is no evidence that Pindrop used AWS servers in Illinois to process Plaintiffs' voice data.  *See* SAC ¶¶ 149, 151-52.  But even if Pindrop had done so, that would not be sufficient to establish a BIPA violation by AWS *in Illinois*.  *See, e.g.*, *Vance v. Microsoft Corp.*, 2022 WL 9983979, at *8 (W.D. Wash. Oct. 17, 2022) (granting summary judgment to Microsoft and noting the fact that defendant had "'chunked,' encrypted, and stored" biometric data "on a server in Illinois" is "too attenuated and *de minimis*" to show any "alleged BIPA violations" occurred

---

[41] *See* D.I. 176-1 ¶ 6; Ex. 3, St. John 5/13/2024 Dep. Tr. 140:2-16-142:16; Srirama Decl. ¶¶ 22, 30; Sullivan Decl. ¶¶ 34-35, 39, 49, 57; Ex. 4, McCrillis 5/14/2024 Dep. Tr. 321:5-25, 397:10-14, 399:19-400:1, 412:9-19, 413:17-21, 428:22-429:5, 431:12-17); Ex. 7, AWS '1752, '1765.

[42] *See* Ex. 3, St. John 5/13/2024 Dep. Tr. 56:20-57:5, 122:5-16, 141:2-142:1, 149:24-150:11, 158:9-21); *accord* D.I. 176-1, St. John Decl. ¶¶ 6, 9.

[43] *See* D.I. 176-1 ¶¶ 6, 9; Ex. 3, St. John 5/13/2024 Dep. Tr. 56:20-57:5, 122:5-16, 141:2-142:1, 149:24-150:11, 158:9-21.

"primarily and substantially in Illinois"); *see Kyles et al. v. Amazon Web Services, Inc*., 2021-CH-04026 MTM (Ill. Cir. Ct. Jan 4, 2023) (bench ruling attached as Ex. 9) (dismissing BIPA claims against AWS finding that AWS, as a cloud service company, does not own or control data collected by a third party stored on its server (35:24-36:3)).

In sum, Plaintiffs' claims are based entirely on AWS's activities outside Illinois (or on activities outside Illinois by exempt third parties).[44] Having no extraterritorial effect, BIPA simply does not apply to these activities, and Plaintiffs' claims should be dismissed in their entirety.  *See, e.g., Shaw v. Hyatt Int'l Corp*., 2005 WL 3088438, at \*2 (N.D. Ill. Nov. 15, 2005) (dismissing statutory claim because "overwhelming majority" of relevant transactions "between Plaintiff and Hyatt concern events outside of Illinois"); *Landau v. CAN Fin. Corp*., 886 N.E.2d 405, 409 (2008) (dismissing statutory claim because "majority of circumstances relating to the alleged violation" occurred outside Illinois).

      2.    Plaintiffs' Illinois Residence or Call Location Is Insufficient to Satisfy Illinois's Extraterritoriality Doctrine.

The only connection between Plaintiffs' BIPA claims and Illinois is that Plaintiffs are Illinois residents who allege that they called John Hancock while supposedly located in Illinois. *See* SAC ¶¶ 80-81.  But as Judge Stark previously held, however, that does not suffice to show their claims arose "primarily and substantially" in Illinois.  D.I. 34 at 6-12.  In this case, "[t]he location of the caller does not . . . say anything about the location where the rest of the conduct

---

[44] Pindrop's alleged conduct is not actionable because Pindrop is exempt from BIPA (*see* D.I. 74 at 10-17), and because *Pindrop's* activities do not show that *AWS* "collected" Plaintiffs' biometric identifiers in Illinois. ████████████████████ █

████████████████████████████████████████████████████
Srirama Decl. ¶¶ 13, 19, 22, 25-31; Sullivan Decl. ¶¶ 36-37; D.I. 137-3 ¶¶ 4-7. ████████
████████████████████████████████████████  So, AWS did not "collect" Plaintiffs' "voiceprints" in Illinois; at most, John Hancock and Pindrop—Massachusetts and Georgia companies both exempt from BIPA—allegedly did so.

occurred," and there was no indication in the complaint that the non-Illinois defendants "did anything in Illinois." *Id.* at 7. If the law were otherwise, "then BIPA could impose liability on a vast number of corporations," but "[t]here is no basis in the statutory language to find that BIPA stretches so far." *Id*. at 12. Other courts have agreed. *See Vance*, 2022 WL 12306231, at *7 (BIPA claim dismissed because "the only connection this case has to Illinois is through Plaintiffs' residence and actions in Illinois").[45]

Finally, Plaintiffs' Illinois residence is irrelevant for another reason. AWS personnel had no "direct interactions" with Plaintiffs *at all*, much less in Illinois.[46] *Vance*, 2022 WL 9983979, at *7; D.I. 34 at 11 (requiring "direct interaction" between Plaintiffs and defendant); *see id*. (dismissing claim because Plaintiffs "do not allege any direct interactions with AWS").[47] In fact, AWS had no relationship with Plaintiffs *at all*. As such, any remote nexus between Plaintiffs and AWS was merely incidental to AWS's provision of services to *John Hancock*, a Massachusetts company, and John Hancock's global clientele. This remote connection is insufficient. *See id.* at 10-11 ("While John Hancock's activities with respect to Plaintiffs might be ascribed to Illinois, the same cannot be said for Pindrop and AWS, who were merely third-party contractors performing work for John Hancock"); *id*. at 11 (requiring "*intentional*[]" interactions with Plaintiffs in Illinois).

3. AWS's Activities in Illinois Unrelated to Any BIPA Violation Are <u>Irrelevant.</u>

AWS's general corporate activities in Illinois also do not suffice to show Plaintiffs' claims

---

[45] *See also Vulcan Golf, LLC v. Google Inc*., 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (same); *Int'l Equip. Trading, Ltd. v. Illumina, Inc*., 312 F. Supp. 3d 725, 733 (N.D. Ill. 2018) (same).

[46] *See* Ex. 1, McCrillis 2/9/2024 Dep. Tr. at 166:13-167:5, 188:1-18, 203:16-25; Ex. 4, McCrillis 5/14/2024 Dep. Tr. 428:22-429:5; Sullivan Decl. ¶¶ 14, 21; Ex. 10, John Hancock '120, '128.

[47] Plaintiffs solely interacted with Hancock agents, who were primarily based in ███████████████████ ███████████████████████████ *See* Ex. 1, McCrillis 2/9/2024 Dep. Tr. 192:23-194:6.

arose "primarily and substantially" in Illinois.   AWS is a Delaware corporation that is headquartered in Washington.[48]  While Plaintiffs aver that AWS has an office, two data centers, and some "operations" in Illinois (e.g., sales and marketing), and that some AWS personnel involved in Amazon Connect work in Illinois (*see* SAC ¶¶ 126-138), those allegations are irrelevant to the extraterritoriality analysis for at least six reasons.

*First*, courts routinely reject the argument that general corporate activities in Illinois are a sufficient basis to find that a BIPA violation occurred "primarily and substantially" in Illinois— *even where* the defendant is headquartered there.  *See*, *e.g.*, *Our Pet Project LLC v. Int'l Paper Co*., 2023 WL 143224, at *5 (N.D. Ill. Jan. 10, 2023) (allegations that "Defendant does business in Illinois" are "not sufficient"); *Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E.2d 801, 855 (2005) (allegations of disseminating fraud from Illinois headquarters "insufficient").[49]

*Second*, AWS's alleged corporate activities in Illinois are wholly unrelated to the BIPA violations alleged and thus wholly irrelevant.  *See Avery*, 835 N.E.2d at 854-55 ("disputed transactions" creating liability must occur in Illinois); *Van Tassell*, 795 F. Supp. 2d at 782 (dismissing claim because "the circumstances *related to the allegedly deceptive conduct*" did not occur "primarily and substantially" in Illinois).  Plaintiffs must show that their claims are based on AWS's Illinois activities, but they have *no evidence* that AWS did *anything* in Illinois related to the voice authentication services that Pindrop provided to John Hancock.  So, again, BIPA simply does not apply.  *See, e.g.*, D.I. 34 at 7 ("Plaintiffs fail to allege conduct that occurred primarily and substantially in Illinois"); *Maui Jim, Inc.*, 386 F. Supp. 3d at 939 (defendant's Illinois location is

---

[48] *See* Sullivan Decl. ¶ 14.

[49] *See Phillips v. Bally*, 865 N.E.2d 310, 315–16 (2007) (defendant's Illinois headquarters "not dispositive"); *Sgouros v. Transunion Corp*., 2016 WL 4398032, at *5 (N.D. Ill. Aug. 18, 2016) (same); *Greene v. Sears Protection Co*., 2016 WL 397375, at *3 (N.D. Ill. Feb. 2, 2016).

insufficient because plaintiff "fails to connect any of [defendant's] alleged action forming the basis of its trade disparagement claim to Illinois").

Rather than produce evidence tying AWS's Illinois activities to a BIPA violation, Plaintiffs merely assert that some AWS employees involved in Amazon Connect worked in Illinois.  *See* SAC ¶ 130.  That is insufficient.  *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 861 (N.D. Ill. 2011) (refusing to infer that defendant's advertising occurred "primarily and substantially in Illinois" merely because defendant happened to be headquartered, and sell relevant products, in Illinois). Thousands of AWS employees across the United States work on Amazon Connect for thousands of AWS customers.  *See* Sullivan Decl. ¶ 5.  That some AWS employees involved in Amazon Connect happen to work in Illinois does not establish that they were involved in any of the activities underlying Plaintiffs' BIPA claims.  To the contrary, there is no evidence that any of the AWS employees who service the Amazon Connect-John Hancock relationship are based in Illinois.  *See* Stick Decl. ¶ 6.  And while Plaintiffs allege that AWS had servers in Illinois (SAC ¶¶ 132-33), the undisputed evidence shows that those servers were not utilized by Amazon Connect, John Hancock or Pindrop.[50]   Those servers are thus wholly irrelevant to the extraterritoriality analysis.

**B.      AWS Is Entitled to Summary Judgment on Plaintiffs' Section 15(b) Claim Because It Did Not Take An "Active Step" to "Collect" Their Biometric Data.**

Plaintiffs' BIPA Section 15(b) claim fails for another reason: there is no evidence that AWS took an "active step" to "collect" Plaintiffs' biometric identifiers or information.  740 Ill.

---

[50] *See* Sullivan Decl. ¶ 65-67, 69; Ex. 2 ¶¶ 3-4; Stick Decl. ¶ 5; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 222:2-223:18, 117:23-119:18, 116:1-22.  Plaintiffs' allegations that *Pindrop* advertised its software "nationwide" (SAC ¶¶ 143-45), that Pindrop personnel in Illinois marketed Passport in the U.S. "*central region*" (*id.* ¶ 146), and that Pindrop's General Counsel worked in Chicago (*id.* ¶ 143)—all fail because: (i) Pindrop is exempt from BIPA; (ii) Hancock is not based in the "central region"; and (iii) no evidence ties Plaintiffs' claims to *AWS*'s contacts with Illinois.

Compl. Stat. 14/15(b); *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 746 (N.D. Ill. 2023).

"Merely possessing" biometric data is not enough; instead, Plaintiffs must prove that AWS took

an "affirmative act" in "furtherance of collection." *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679,

683 (N.D. Ill. 2023). Here, however, the undisputed evidence shows that AWS took no such step,

and summary judgment should be entered in Amazon's favor on their Section 15(b) claim.

Plaintiffs' Section 15(b) claim rests on five allegations:

1. AWS "collected" Plaintiffs' biometric data using *its own* voice authentication technology, *separate and apart* from Pindrop's technology. SAC ¶¶ 78-79, 123.

2. AWS "*processes* Illinois citizens' audio data, *creating* Biometric Data" (*id*. ¶ 105);

3. Amazon Connect "collect[s] voice audio by *reaching into Illinois* via cloud-based technology" and "routing" voice audio "spoken in Illinois in real time" through "AWS's network of servers" *"directly"* to Pindrop (*id*. ¶¶ 80-81, 100, 105 141, 168);

4. AWS dictates *which* callers are voice authenticated by Pindrop and "offered" Pindrop's technology to Hancock *natively integrated* with Amazon Connect (*id*. ¶¶ 73-77); and

5. "Voiceprints" were stored on *AWS servers* accessible to AWS (*id*. ¶¶ 64-65, 93, 95).

Discovery, however, has disproven each of these allegations.

*First*, Plaintiffs' basic supposition is wrong: AWS has *never* deployed its own voice

authentication technology, Amazon Connect Voice ID, commercially in the U.S. to John Hancock

or any other Amazon Connect customer.[51]   Therefore, the central fact Plaintiffs advanced to defeat

AWS's motion to dismiss—that "*Amazon itself* extracts voiceprints and uses them to authenticate

callers"—is false. D.I. 74 at 22. That alone warrants dismissal of Plaintiffs' Section 15(b) claim.

*Second*, discovery has disproven Plaintiffs' allegation that AWS "*processes* Illinois

citizens' audio data, *creating* Biometric Data." SAC ¶ 105. The evidence shows that AWS did

not perform any voice authentication on Plaintiffs and did not provide any voice authentication

---

[51] Srirama Decl. ¶¶ 7, 13; Sullivan Decl. ¶¶ 13, 22-23, 36-37; Ex. 8 at 18-19 (confirming Amazon Voice ID was never deployed commercially in the U.S.); Ex. 1, 02/09/24 McCrillis Dep. Tr. 102:22-103:1 (confirming Hancock never used AWS voice authentication technology).

services to John Hancock.[52]  *Only Pindrop provided such services, and it did so using its own propriety technology that Pindrop alone controlled, operated and could access.*[53]  Accordingly, to the extent anyone collected Plaintiffs' "biometric identifiers," it was Pindrop—a third-party exempt from BIPA—*not* AWS.

*Third*, the evidence shows that Amazon Connect never "reached into Illinois" and never collected and transmitted Plaintiffs' call audio "*directly*" to Pindrop.[54]  Rather, when Plaintiffs called Hancock, ██████████████████████████████████████████████ ████████████████████████████████████████, *without any involvement by Amazon Connect.*[55]

*Fourth*, the evidence shows that AWS never dictated when Pindrop's voice authentication technology was used and never integrated Pindrop's technology natively with Amazon Connect.[56] In fact, AWS had no say at all in whether, when, or how John Hancock used Pindrop's technology.[57] ████████████████████████████████████████████████ ████████████████████████████████████████████████

---

[52] *See id.*; Srirama Decl. ¶¶ 6, 13; Sullivan Decl. ¶¶ 13, 22-23, 36-37. Plaintiffs' claims are expressly based on their authentication using Pindrop's technology.  *See* SAC ¶ 188; D.I. 185 at 3; D.I. 190 at 1; *accord* D.I. 171, 181.

[53] Srirama Decl. ¶¶ 21-22; Sullivan Decl. ¶ 36-37.  Neither Amazon Connect's source code nor any other source code written by AWS prescribes whether, when, or how Pindrop's proprietary technology is used. Instead, Hancock uses Pindrop's API to utilize Pindrop's authentication technology.    AWS does not maintain, possess, control, or have access to such code or any other source code for Pindrop's technology. Srirama Decl. ¶¶ 6, 19.  In fact, Hancock began using Pindrop's technology before it even began using Amazon Connect.    Because AWS literally did nothing to "engage in an affirmative act of collection," Plaintiffs' Section 15(b) claim fails. *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020); *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3 n.2 (N.D. Ill. July 27, 2021) ("unlike the instant case, the factual allegations [in *Kronos* and *Neals*] made clear that the manufacturers of the fingerprint scanners had *themselves collected*" biometric data).

[54] *See* SAC ¶¶ 80-81, 100, 105 141, 168) (emphasis in original).

[55] D.I. 176-1 ¶ 5; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 149:13-23, 262:11-20, 285:5-11, 287:12-288:7); Srirama Decl.  ¶¶ 15-16; Sullivan Decl. ¶ 18.

[56] Srirama Decl. ¶ 7; Sullivan Decl. ¶ 28; SAC ¶¶ 73-77.

[57] Srirama Decl. ¶¶ 19-22, 24; Sullivan Decl. ¶¶ 15-16, 35-36.

███████████████████████ [58] ████████████████████████████████████████████

███████████████████████████████████████████████████████ [59] As Amazon Connect's role was

entirely passive and confined to routing calls through John Hancock's prescribed call flow, AWS

did not take an "active" step to "collect" Plaintiffs' biometric data, as required to impose liability.

*Fifth*, Plaintiffs' allegation that AWS is liable under Section 15(b) because Pindrop

supposedly stored Plaintiffs' "voiceprints" on AWS servers accessible to AWS is both factually

and legally wrong. *See* SAC ¶¶ 64-65, 93, 95. As a threshold matter, the uncontroverted evidence

shows that ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████. [60] ████████████████████████████████████████

████████████████████████████████. [61] In any event, the *storage* of biometric identifier is

legally distinct from the *collection* of biometric identifiers under Section 15(b), and courts have

repeatedly rejected efforts to conflate the two. *See, e.g., Clark*, 688 F. Supp. 3d at 748 ("Microsoft

provided technology to Brainshark, plus storage. That is not an active step" under Section 15(b));

*Jones*, 649 F. Supp. 3d at 684–85 (storage not an "active step"). [62] Thus, even if Pindrop had stored

---

[58] *See* Srirama Decl. ¶¶ 6-11; Sullivan Decl. ¶¶ 15-16, 24-29, 35; Ex. 3, St. John 5/13/2024 Dep. Tr. 140:11-142:8; Ex. 1, McCrillis 2/9/2024 Dep. Tr. 42:3-43:6, 44:3-45:3; Ex. 7 (AWS '1752 '1765); Ex. 4, McCrillis 05/14/2024 Dep. Tr. 291:21-24, 397:10-14, 412:9-19, 413:17-21.

[59] *See* Ex. 3, St. John 5/13/2024 Dep. Tr. 140:11-142:8; Srirama Decl. ¶¶ 6-10, 20, 25; Sullivan Decl. ¶¶ 15-16, 24-33, 35-36; Ex. 4, McCrillis 05/14/2024 Dep. Tr. 397:10-14, 412:9-19, 413:17-21); Ex. 7 (AWS '1752 '1765).

[60] *See* D.I. 176-1 ¶¶ 6, 9; Ex. 3, St. John 5/13/2024 Dep. Tr. 56:20-57:5, 122:5-16, 141:2-142:1, 149:24-150:11, 158:9-21.

[61] *See* D.I. 176-1 ¶ 6; Ex. 3, St. John 5/13/2024 Dep. Tr. 140:2-16-142:16; Srirama Decl. ¶¶ 25, 27-31; Sullivan Decl. ¶¶ 34-35, 39, 49, 57; Ex. 4, McCrillis 5/14/2024 Dep. Tr. 321:5-25, 397:10-14, 399:19-400:1, 412:9-19, 413:17-21, 428:22-429:5, 431:12-17; Ex. 7 (AWS '1752, '1768).

[62] *See Heard*, 440 F. Supp. 3d at 967 ("storage" and "possession" of biometric data not sufficient); *Namuwonge v. Kronos, Inc*., 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (stressing "difference between *possessing* and *collecting* biometric information") (emphasis in original).

"voiceprints" on AWS's servers (it did not), and even if AWS had access to them (it did not), that would still be legally insufficient to hold AWS liable for "collecting" that data under Section 15(b), as AWS took no active step to obtain it.

Three recent cases involving cloud service providers demonstrate why Plaintiffs' Section 15(b) claim fails.  In *Clark*, plaintiffs alleged that Microsoft violated Section 15(b) by providing a cloud computing platform to Brainshark, which in turn developed and sold facial recognition software to plaintiff's employer.  *Clark*, 688 F. Supp. 3d at 745-46.  Brainshark's software allegedly "interface[d] with and/or integrate[d]" Microsoft Azure cloud services ("Azure") and Azure Cognitive Services applications ("ACS").  Azure and other public clouds enable users to "build and deploy applications", "store data," "deliver software on demand," and "analyze data using machine learning and artificial intelligence", and ACS allegedly "help[s] developers build cognitive solutions . . . into their applications."  *Id*.  Nonetheless, the court dismissed plaintiffs' Section 15(b) claim because Microsoft merely provided a platform for Brainshark's proprietary software, but did not develop, deploy, or use its technology.  *Id.* at 748.  The same is true here regarding Amazon Connect.  AWS may have provided a call center platform, but AWS did not develop, deploy, or use any voice recognition technology.

Likewise, in *Jones*, the court dismissed plaintiffs' Section 15(b) claim against Microsoft. There, plaintiffs alleged that: (i) third-party Paychex provided biometric timekeeping services to plaintiff's employer and scanned plaintiff's fingerprint; and (ii) Paychex then sent the data to Microsoft's Azure platform.  649 F. Supp. 3d at 683-85.  The court dismissed plaintiffs' claims, reasoning, "[Microsoft] was merely a vendor to the third-party that provided the biometric timekeeping technology and services to [plaintiff's] employer. Although several courts have extended BIPA to apply to third-party providers that supply biometric collection technology and

20

services, *no case has extended BIPA to vendors for such third-party providers*." *Id*. at 684–85. The court thus rejected as insufficient allegations that Microsoft "contracted with Paychex to provide access to its cloud computing storage platform," because "this act, unlike like those in the cases cited by the parties, does not constitute an active step or affirmative act on Microsoft's part to get, acquire, or obtain [plaintiff's] biometric data." *Id*. at 684. Again, the same is true here. Even if Pindrop had used AWS cloud services to store Plaintiffs' biometric identifiers (and, again, the uncontroverted evidence shows it did not), AWS could not be held liable under Section 15(b) because providing passive cloud infrastructure does not constitute an active step toward collection.

*Bhavilai v. Microsoft Corp*. is also instructive. 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024). There, the plaintiff alleged that Microsoft "designed, licensed, and updated [] facial scan software on users' devices" without their consent, in violation of Section 15(b). *Id*. Microsoft allegedly actively "collected" plaintiff's facial scan data by: (i) "*enabl[ing]* the facial biometric scanning within its Photos application"; (ii) "retain[ing] the ability to *control* whether and how a user could use the facial scan software"; and (iii) giving users "the ability to collect facial scan data." Rejecting these arguments and dismissing plaintiff's claim, the court reasoned that "selling or licensing a tool that can be used to collect a facial scan is not the same as *actually doing* the collecting," and the argument "conflates two different activities—*providing* the tool versus *using* the tool." The plaintiff "failed to allege that Microsoft did anything beyond providing a tool." *Id*.

AWS's connection to any purported "collection" of biometric data here is even more attenuated because AWS: (i) had *no* control over whether, when, or how John Hancock used Pindrop's authentication technology; (ii) had *no* say over whom Pindrop voice authenticated; and (iii) did *not* sell, license, or supply any voice authentication tool to Hancock. Only *Pindrop* did. Accordingly, Plaintiffs' Section 15(b) claim should be dismissed.

### C.   The Court Should Grant Summary Judgment Because There is No Evidence that Pindrop Collected Plaintiffs' "Biometric Identifiers."

#### 1.   Pindrop's Technology Was Not Run on Nine of the Twelve Plaintiffs' Calls.

Pindrop's and John Hancock's sworn testimony and business records establish that the Nine Plaintiffs were never subject to Pindrop's voice authentication technology in the first place.[63] Plaintiffs' counsel thus confirmed that they are no longer pursuing claims on behalf of the Nine Plaintiffs.  Summary judgment should now be entered in AWS's favor on each of their claims.[64]

#### 2.   There Is No Evidence That Pindrop Collected the Three Remaining Plaintiffs' "Voiceprints" or Could Identify Them Based on Their "Voiceprints."

There is no legal basis to impute Pindrop's activities to AWS.  But even if there were, summary judgment would still be warranted on the Three Remaining Plaintiffs' claims because there is no evidence that Pindrop collected their "voiceprints," as that term is used in BIPA, or that such "voiceprints" were capable of identifying them among the general population, as required to constitute a "biometric identifier."

As a threshold matter, there is no evidence that Pindrop's voice authentication software generates "voiceprints," which are generally understood to be "an individually distinctive pattern of certain voice characteristics that is spectrographically produced," and sufficient to enable unique identification.[65]  Instead, ██████████████████████████████████

████████████████████████████████████████████████████████████████

---

[63] *See* Ex. 5 ████████████████; Ex. 6 ██████████████████████████████; Ex. 3, St. John 5/13/24 Dep. Tr. 54:12-19, 55:13-22, 58:13-23, 84:8-86:15, 123:15-124:11,  128:11-15 █████████████████████████████████████████████; *accord* D.I. 176-1 ¶ 8; D.I. 176-1 ¶ 8 ████████████████████████████; D.I. 176-2 ¶¶ 3-7 (same).

[64] *See* Ex. 11; D.I. 185 at 3; D.I. 190 at 1 (confirming pursuit of Three Remaining Plaintiffs' claims only).

[65] https://www.merriam-webster.com/dictionary/voiceprint



In any event, even if Pindrop's technology did generate "voiceprints" within the meaning of BIPA, such "voiceprints" still would not constitute "biometric identifiers" under BIPA, because there is no evidence that they are capable of identifying Plaintiffs. Because "biometric identifiers" are "biologically unique to the individual," 740 ILCS 14/5(c), they must be "capable of determining Plaintiffs' [] identities." *Castelaz v. Estee Lauder Cos.*, 2024 WL 136872 at *6-7 (N.D. Ill. Jan. 10, 2024). Biometrics "are not covered by BIPA if they cannot identify a person." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024). Indeed, "[i]f the Court were to read BIPA as applying to any retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry without those items actually identifying an individual," then "it would contravene the very purpose of BIPA." *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024).

Here, however, the record is devoid of any evidence that Pindrop generated "voiceprints" that could be used to identify Plaintiffs or anyone else. Plaintiffs' mere speculation and use of the pejorative label "voiceprint" is not enough. They must present evidence that the information Pindrop collected about their voices could be used to identify them based on their unique biological

---

[66] *See* Ex. 3, St. John 5/13/24 Dep. Tr. 13:5-14:13, 24:5-21, 37:14-38:19, 53:10-54:6, 57:3-15, 81:5-83:17; *see also id.* at 122:5-16, 158:14-21 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

[67] Ex. 3, St. John 5/13/24 Dep. Tr. 80:24-81:22, 128:16-23, 133:8-18, 145:18-146:10, 131:7-11, 131:24-133:6, 129:8-20; Ex. 4, McCrillis 05/14/24 Dep. Tr. 374:3-13, 322:25-323:2, 397:24-398:1, 393:8-394:10, 395:2-398:4, 394:20-25, 410:8-416:6, 415:12-416:6, 441:16-21.

[68] *See id.*

[69] Srirama Decl. ¶ 23; Ex. 4, McCrillis 05/14/2024 Dep. Tr. 351:8-15, 327:10-16, 431:12-432:3; D.I. 176-1 ¶ 9; Ex. 3, St. John 05/13/24 Dep. Tr. 95:18-97:25, 141:2-142:1, 160:21-161:2, 161:13-162:3. ▆▆▆▆▆▆▆▆ Ex. 4, McCrillis 05/14/2024 Dep. Tr. 431:19-22.

characteristics.  But Plaintiffs have no such evidence.   In fact, the uncontroverted evidence shows that: (i) ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████,[70] and (ii) ████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████[71]   Absent any evidence that Pindrop collected Plaintiffs' biometric identifiers (or that Pindrop's conduct could be imputed to AWS), Plaintiffs cannot maintain a Section 15(b) claim.[72]

A recent decision from the Northern District of Illinois, *G.T. v. Samsung Electronics Am. Inc.*, 2024 WL 3520026 (N.D. Dist. June 24, 2024), is instructive.  In that case, the plaintiff alleged that Samsung collected biometric data through a photo gallery application on its phones.  *Id.* at *1. Specifically, plaintiffs alleged that once a photo had been taken, the application scanned the photo for faces.  If a face was present, plaintiffs claimed that the application analyzed the face's "unique facial geometry" and then created a "face template" from that photo, which purported to be a "unique digital representation" of the face from the photo.   Next, plaintiffs asserted that the application extracted facial feature from the face template and converted them into "numerical vectors" based on the facial feature and compared the vectors against other faces in the user's application to group like faces together.  *Id.*   The court found that these face templates and numerical vectors did not constitute biometrics subject to BIPA liability because they could not be

---

[70] ██████████████████████████████████████████████████████████████████████████ ██████████████████████, *See* Ex. 3, St. John 5/13/2024 Dep. Tr. at 129:1-130:3; 42:15-25.

[71] Ex. 3, St. John 5/13/2024 Dep. Tr. 13:5-14:13, 24:5-21, 37:14-38:19, 53:10-54:6, 57:3-15, 81:5-83:17.

[72] As discussed, *AWS* did not have access to any "voiceprints" Pindrop allegedly created. ███████ ██████████████████████████.  As such, AWS had no ability to identify Plaintiffs, or any other John Hancock callers, based on the "voiceprints" Pindrop allegedly created.

used to identify any specific person.  *Id.* at *7.

Here, even with the benefit of discovery, Plaintiffs are unable to make the required showing that Pindrop or AWS could identify them using their biometric data.  There is simply no evidence that either entity collected information sufficient to identify Plaintiffs or any other Hancock caller based on the unique biometric characteristics of their voice, let alone that any such capability of Pindrop could be imputed to AWS.   And again, ███████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████, as would be needed to identify the specific individual associated with any alleged "voiceprint."  AWS is therefore entitled to summary judgment on Plaintiffs' Section 15(b) claims on this basis as well.

### D.       **AWS Is Entitled to Summary Judgment on Plaintiffs' Remaining Claims.**

Following dismissal of Plaintiffs' Section 15(a), (c), and (d) claims, Plaintiffs inexplicably replead those claims in D.I. 175, without substantive modification.  This Court's prior ruling in D.I. 74 that it lacked subject matter jurisdiction to decide Plaintiffs' Section 15(a) and (c) claims in their FAC also requires dismissal of their identical claims in the SAC.  But to the extent any of those claims may proceed (and to the extent the Court denies AWS's pending motion for judgment on the pleadings, *see* D.I. 216, 227), AWS is entitled to summary judgment in its favor based on the extraterritoriality doctrine, and because there is no evidence AWS possessed, profited from, disclosed, or otherwise disseminated Plaintiffs "biometric identifiers" or "biometric information" as defined by BIPA.  740 ILCS 14/15 (a), (c), (d).

## V.     **CONCLUSION**

Summary judgment should be granted in AWS's favor on all claims asserted in the SAC.

August 21, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

Beth Herrington (admitted *pro hac vice*)
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
(312) 324-1000
beth.herrington@morganlewis.com

*Attorneys for Defendant Amazon Web
Services, Inc.*