IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTINE McGOVERAN, et al.,
individually and on behalf of all others
similarly situated, known and unknown,

       *Plaintiffs,*

       v.

AMAZON WEB SERVICES, INC.

       *Defendant.*

No. 1:20-cv-01399-SB

---

Alexander L. Braitberg, Andrew D. Schlichter, Joel Rohlf, Nathan D. Stump, Peter Cosgrove, SCHLICHTER BOGARD LLP, St. Louis, Missouri; David T. Crumplar, JACOBS & CRUMPLAR, P.A., Wilmington, Delaware

*Counsel for Plaintiffs.*

Jody C. Barillare, MORGAN LEWIS & BOCKIUS LLP, Wilmington, Delaware; Ari M. Selman, MORGAN LEWIS & BOCKIUS LLP, New York, New York; Elizabeth Herrington, MORGAN LEWIS & BOCKIUS LLP, Chicago, Illinois; Jordan McCrary, MORGAN LEWIS & BOCKIUS LLP, Los Angeles, California; Raechel K. Kummer, MORGAN LEWIS & BOCKIUS LLP, Washington, DC.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

October 18, 2024

---

BIBAS, *Circuit Judge*, sitting by designation.

Plaintiffs' lawyers squandered their discovery time. They repeatedly asked for extensions, and I repeatedly denied those requests because they failed to show good cause. Yet they kept asking for more. While they were busy doing that, the months passed. They kept trying to reopen fact discovery when they should have been conducting expert discovery. Because plaintiffs gave me no good reason to modify the scheduling order, I refused to do so—six times. This motion to reconsider is just their latest attempt to rehash this issue.

Motions to reconsider exist to let district judges "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotation marks omitted). A party asking for reconsideration must show (1) a change in controlling law, (2) availability of new evidence, or (3) a need to prevent injustice, fix a factual error, or correct a clear legal mistake. *Id.* None is present. Rather, plaintiffs repeat the same points, asking again to reopen discovery. The answer is still no. I deny plaintiffs' motion for reconsideration.

Seeking to avoid that outcome, plaintiffs also ask me to let them dismiss the only named plaintiffs with standing. Because that is a ploy to avoid judgment against them, I deny that request too.

## I. FACT AND EXPERT DISCOVERY REMAINS CLOSED

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015). In the last year, plaintiffs have

asked me to change the fact discovery deadline six times. I denied all six for lack of good cause. Plaintiffs have not shown that anything has changed.

### A. I will not reopen fact discovery

Plaintiffs sued Amazon Web Services for allegedly violating the Illinois Biometric Information Privacy Act. I dismissed many of the claims, but one remained. D.I. 74. So in July 2023, I issued a scheduling order setting out how this case would proceed. D.I. 81. That order accepted the parties' proposed deadline of March 15, 2024, as the cutoff for fact discovery. D.I. 80, 81.

Six months later, in December 2023, a discovery dispute arose. I issued an order requiring Amazon to provide five more custodians, answer relevant interrogatories, and meet and confer with plaintiffs about other issues. D.I. 114.

But even after that, the parties told me they could not resolve a few search-term issues. D.I. 115. So I held a status conference on December 22, in which I told the parties I would not change any discovery deadlines without a stronger showing of cause; but I added that I might consider extending the deadlines a few weeks to finish up straggling items. *See* D.I. 152 at 2. I issued an oral order, directing plaintiffs to submit new search terms and ordering Amazon to run the searches on all electronic discovery, except Slack. D.I. 118. Plaintiffs asked me to extend discovery at that time. But I denied the request, telling them to raise the issue again in mid-February, a month before fact discovery was set to close under the scheduling order. *Id.*

In early January 2024, I ordered Amazon to produce documents based on plaintiffs' newest proposed list of search terms, which complied with my previous order. D.I. 123. Then in February, I held a hearing and required Amazon to finish all

3

document production by the end of that month. D.I. 136. At that meeting, I reiterated that I would not extend discovery wholesale. *See* D.I. 152 at 2. I told plaintiffs to show me particular depositions that hinged on late-breaking documents and reasons why they could not be completed by the deadline. *See id.*

The day of that February hearing, plaintiffs filed a motion asking again to extend the fact discovery deadline. D.I. 135. They argued that Amazon had dragged its feet when producing documents, making it impossible for them to review all the documents and depose witnesses by the mid-March deadline. *Id.* at 2. They complained that Amazon had produced only 3,000 documents, supposedly a fraction of what was produced in similar cases. *Id.* They accused Amazon's lawyers of "refus[ing] to collaborate with plaintiffs on a proposed amended schedule," instead seeking to "benefit from" violating the scheduling order. *Id.* at 3. They claimed that Amazon's tactics were sanctionable. *Id.* at 7. So they proposed pushing back the fact discovery deadline by nine weeks. *Id.* at 9; D.I. 147-1 at 2.

Amazon responded that it had produced 14,000 pages by early November, and it had to review an additional 65,000 documents after November 3 because of the Court's discovery-dispute ruling. D.I. 137 at 1. It had a thirty-lawyer team review more than 60,000 documents, producing 3,000 responsive pages and other native files in about a month. *Id.* at 2.

I found Amazon's representations credible. There was no good reason to extend discovery. So I stated again that I was "not inclined to grant a blanket discovery extension but might entertain narrowly tailored requests for extensions." D.I. 148. I

4

gave plaintiffs until the March 2024 fact-discovery deadline to "amend their broad request." *Id.* They trimmed their proposed extension from nine to seven weeks. D.I. 150-1 at 3. Otherwise their request remained unchanged. This was another blanket discovery extension that I was not inclined to grant. Two days later, under the controlling scheduling order, fact discovery closed. D.I. 81.

But a standing issue remained. D.I. 171. The named plaintiffs needed to show that they had suffered an injury-in-fact—that their phone calls were authenticated without consent. *Id.* So I ordered "limited discovery to assure the court that each of the twelve named plaintiffs" was actually injured. *Id.* I gave the parties until mid-May 2024 to conduct this limited discovery. *Id.* I reiterated this deadline a few weeks later. D.I. 174. And I let plaintiffs depose a few witnesses to gather relevant information. D.I. 181. I also stayed all other discovery deadlines for thirty days, starting on April 22, 2024. *Id.*

A month later, in May, plaintiffs asked to reopen fact discovery. D.I. 185 at 4. They claimed that they were still entitled to significantly more discovery on the merits and needed at least seven more weeks to get it. *Id.* I told plaintiffs that they could resubmit their motion to issue a new scheduling order once they got back some final bits of standing-related discovery. D.I. 189. This oral order inadvertently implied that the stay was still in place, but it had already expired by its original terms. D.I. 181. The parties did not raise this mistake with the Court, and it did not affect either party's substantial rights.

In June, plaintiffs again requested a new scheduling order reopening fact discovery, setting the cutoff on August 15—five months after it had closed under the controlling scheduling order. D.I. 190 at 9, 190-11 at 2. To justify that request, they offered only two sentences, without attempting to explain why I should delay the case for five months more by reopening fact discovery. D.I. 190 at 9. Amazon objected that plaintiffs had not identified any late-breaking documents and had not narrowly tailored the request. D.I. 193 at 6.

In July, I denied that request because I was "still not inclined to grant a blanket discovery extension." D.I. 195. I also ordered the parties to meet and confer for a status conference to discuss "what, if any discovery should be permitted going forward." *Id.*

The day before that status conference, plaintiffs filed a flurry of letters about a heap of discovery issues. D.I. 200–04. They accused Amazon of "refus[ing] to substantively discuss" several discovery issues at the Court-ordered meet and confer. D.I. 199. Amazon correctly pointed out that the meet and confer was to discuss the parties' availability for a status conference, not discovery issues. D.I. 205.

At the July status conference, plaintiffs again asked me to extend fact discovery, citing the alleged document production delays in November 2023. D.I. 218-1 at 7 (tr. 6:8–13). Plaintiffs alleged that Amazon had misled the Court about complying with the scheduling order. *Id.* at 8 (tr. 7:15–23). Amazon stated that it had substantially produced the relevant documents in November 2023 and turned over the rest by the end of February 2024. *Id.* at 11–12 (tr. 10:8–16, 11:6–21). The rest came later only

because of my orders clarifying which custodians were discoverable. *Id.* at 11–12 (tr. 10:8–16, 11:6–21).

I found that plaintiffs had accused Amazon of lying and acting in bad faith without any proof. *Id.* at 24 (tr. 23:1–5). I found Amazon's representations about complying with the scheduling order and production deadlines credible. *Id.* at 31 (tr. 30:18–24), 32 (tr. 31:9–18). I found no evidence to the contrary. *Id.* at 35 (tr. 34:2–5).

So there was no good cause to reopen fact discovery in July 2024, just as there was no good cause to extend or reopen discovery in December 2023, February 2024, March 2024, May 2024, or June 2024. I issued an order reiterating my oral findings and rulings at the status conference and denying all outstanding requests to extend discovery. D.I. 206.

Evidently, those six denials were not enough. Plaintiffs now ask me to reconsider my order refusing to reopen fact discovery. D.I. 228. They argue that I applied an incorrect legal standard and that my ruling is contradicted by the record. *Id.* at 5. Not so.

I applied the good cause standard in my oral order, formalizing my ruling at the status conference. D.I. 206 ("I credit Defendants' representations that they have complied with the Court's discovery orders. As I have already repeatedly denied requests to extend or reopen fact discovery (D.I. 148, 195) and am still not inclined to grant a blanket discovery extension, I DENY all outstanding requests to extend discovery."). I also stated, "Plaintiffs showed no extraordinary evidence that [Amazon] failed to

produce required documents and comply with the Scheduling Order generally." D.I. 206.

Plaintiffs lift my use of "extraordinary evidence" out of context to argue I applied a different standard. D.I. 228 at 7–10. But that is wrong. I referred to "extraordinary evidence" only because plaintiffs made extraordinary (and baseless) claims about Amazon's lying to the Court. D.I. 218-1 at 8–9 (tr. 7:15–25, 8:1–21); D.I. 206. Plaintiffs argued there was good cause to reopen fact discovery because Amazon had failed to comply with the scheduling order and then misled the Court about doing so. D.I. 218-1 at 9 (tr. 8:1–21), 14–15 (tr. 13:15–14:6). So to show good cause, plaintiffs needed extraordinary evidence to support such extraordinary claims. *Id.* at 8 (tr. 7:24–25) ("That's a very serious charge. How do you back that serious charge up?"). Yet plaintiffs lacked correspondingly strong evidence. On the contrary, they had "no proof of such serious charges. [Their] rhetoric is unmatched by proof." *Id.* at 24 (tr. 23:1–5). Thus "extraordinary evidence" described only the type of evidence I expected plaintiffs to produce to back up their extraordinary assertions. I denied plaintiffs' sixth request to extend the discovery deadline because they had failed to show good cause.

Plaintiffs argue that they diligently pursued discovery yet I overlooked their good conduct. D.I. 228 at 9. But that is not true either. They claim that fact discovery was derailed by Amazon's meager document production in November and December 2023 and January 2024. *Id.* at 9–10. But I ruled on those disputes in real time, giving plaintiffs relief when they had real proof. D.I. 114, 118, 152 at 2. Yet they kept asking for more without giving any more credible proof of good cause. At the July 2024

hearing, I again credited Amazon's representations. D.I. at 218-1 at 31 (tr. 30:18–24), 32 (tr. 31:9–18), 35 (tr. 34:2–5). It had produced enough by November 2023. *Id.* at 11 (tr. 10:8–16). And it produced more documents later in February 2024 only because of my clarifying orders. *Id.* at 12 (tr. 11:6–21). Plaintiffs keep complaining about a dearth of documents, D.I. 228 at 15, but Amazon credibly explained that third parties possess many of the relevant documents. D.I. 218-1 at 13 (tr. 12:5–18), 220-6.

So too with the depositions. Plaintiffs conceded that they did not notice any deposition of an Amazon employee before March 20, 2024—five days *after* fact discovery closed. D.I. 218-1 at 28 (tr. 27:7–12). Plaintiffs blame the lack of depositions on the production issue, claiming that they could not have deposed witnesses because not enough documents had been produced. D.I. 228 at 20. But that is wrong for the reasons covered above.

Plaintiffs also argue that I had to follow a non-binding standard that other district courts apply in deciding to deny their request to change the schedule. D.I. 228 at 8–9; *see Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, No. 18-819, 2020 WL 5369109, at *6 (D. Del. Sept. 8, 2020). But that is not the correct standard; the standard is just "good cause." *See Lehman Bros. Holdings*, 785 F.3d at 102. Even if it were the right standard, I still would have denied the discovery extension request because: (1) I gave plaintiffs plenty of chances to get additional discovery and make tailored requests, but they did not; (2) plaintiffs cite insufficient evidence of late-breaking documents that require reopening discovery since Amazon produced the vast bulk of materials on time; (3) reopening fact discovery five months after it ended would derail

9

this case's trajectory; and (4) reopening fact discovery would prejudice Amazon, who has filed dispositive motions under the scheduling order. *Xcoal Energy*, 2020 WL 5369109, at *6.

What is more, I had already rejected plaintiffs' arguments to extend or reopen discovery many times. Plaintiffs claim there is other outstanding discovery that they specifically identified as necessary. D.I. 228 at 10. But plaintiffs' repeated requests asked for blanket discovery extensions so that they could conduct more dragnet searches. *See, e.g.*, D.I. 190 at 9, 190-11 at 2. The July 2024 discovery extension request mirrored the requests I had already denied five times. For all these reasons, I deny plaintiffs' request to reconsider my decision to enforce the fact discovery dead-line.

### B. I will not reopen expert discovery

While plaintiffs were busy seeking to reopen fact discovery, their time to conduct expert discovery ran out. As a result, they conducted no expert discovery. D.I. 218-1 at 24 (tr. 23:21–24). Yet now they ask me to reopen expert discovery because they say my ruling was based on factual error and prejudices them. D.I. 228 at 10. This is just another request to change the scheduling order. Fed. R. Civ. P. 16(b)(4). I will not; I deny that motion.

The controlling scheduling order told the parties that expert discovery deadlines would fall in May, June, and July 2024. D.I. 81. When I stayed discovery in April 2024, those deadlines were all pushed back 30 days. D.I. 181. So the final expert dis-covery deadlines hit in June, July, and August 2024. D.I. 206. But plaintiffs blew all

those deadlines, conducting no expert discovery. They failed to prosecute the case diligently.

Plaintiffs resist those facts by attempting to twist my orders. They claim my directives that ordered limited standing discovery modified the scheduling order, pausing all other discovery until the standing inquiry ended. D.I. 228 at 11. But that is wrong. I referred to the standing discovery as "limited" to prevent plaintiffs from using it to get the blanket discovery extension they had sought several times. Also, plaintiffs' reading of my orders makes no sense when read with the stay I ordered on April 22, 2024. In that order, I stayed all discovery (except the standing inquiry) for thirty days. D.I. 181. Under plaintiffs' theory, that order would have been redundant because discovery was already stayed. But the scheduling order was still active until I issued that specific stay order. That was clear, so I will not reopen expert discovery.

Plaintiffs also try to argue that Amazon agreed that expert discovery was stayed. D.I. 228 at 11–12. They cite emails that do not mention expert discovery, and I do not read these documents to show that Amazon agreed that expert discovery was stayed. D.I. 218-2. Both sides had months of notice about the expert discovery deadline. Plaintiffs chose not to pursue their case diligently. So I deny their motion to reconsider.

## II. I DENY PLAINTIFFS' REQUEST TO DISMISS THE NEWLY ADDED PLAINTIFFS' CLAIMS WITHOUT PREJUDICE

Plaintiffs also ask to dismiss voluntarily the three newly added named plaintiffs—Robert Ritter, Traci Thompson, and Richard Dresser. D.I. 228 at 20. They state that these three plaintiffs never had a chance to pursue discovery because they joined the

case after fact discovery closed in March 2024. D.I. 228 at 20–21. Amazon argues that plaintiffs seek to remove these three people from the case so that they can forum shop to a more favorable venue. D.I. 245 at 21. I agree with Amazon and deny plaintiffs' request to dismiss voluntarily the newly added plaintiffs' claims.

Because Amazon has already filed an answer, Federal Rule of Civil Procedure 41(a)(2) controls whether any of the plaintiffs may voluntarily dismiss their claims. D.I. 180. Under that Rule, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). This Rule gives district courts "broad … discretion to shape the proper terms of dismissal." *Polansky v. Exec. Health Res. Inc*, 17 F.4th 376, 393 (3d Cir. 2021) (internal quotation marks omitted).

Courts often look to several factors when considering dismissal. The Third Circuit has instructed courts to grant dismissals liberally, unless the "defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990). The parties ask me to look at four specific factors: "(1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by the defendant in preparing for trial; (3) the extent to which the current suit has progressed; [and] (4) the plaintiffs['] diligence." *Bezarez v. Pierce*, 107 F. Supp. 3d 408, 415 (D. Del. 2015). Amazon also asks me to consider "the pendency of a dispositive motion by the non-moving party." *Id.* Other circuits have crafted similar tests based on similar factors. *See, e.g.*, *JRA Architects & Project*

12

*Managers, P.S.C. v. First Fin. Grp., Inc.*, 375 F. App'x 42, 43 (1st Cir. 2010) (citing *Pace v. S. Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)).

Under any of these factors, Amazon would be severely prejudiced beyond the mere prospect of another suit if I dismiss the newly added plaintiffs. These are the only three plaintiffs who have shown standing. D.I. 195. Without them, I cannot reach the merits issues here—which both sides have now fully briefed in judgment on the pleadings and summary judgment motions. D.I. 216–17, 223, 227, 231–32, 250, 262. Not getting to these motions would be a massive waste of resources.

*First*, letting plaintiffs restart this lawsuit after four years would make the parties spend more time and money repeating steps and relitigating disputes that this Court has already addressed. Doing so would render meaningless four years of litigation, months of discovery, many hours of the Court's time, and the parties' time and money spent briefing dispositive motions. And it could impose those burdens on another court.

*Second*, Amazon has spent significant resources defending this case. Over the four years of litigation, it has answered three separate pleadings, produced more than 36,000 pages of documents, defended several depositions, and briefed several dispositive motions. D.I. 245 at 23. Letting the named plaintiffs dismiss would waste all that time, effort, and money.

*Third*, this suit has been litigated for more than four years. It has progressed through discovery to dispositive motions. Plaintiffs filed this motion for reconsideration just five days before Amazon filed its summary judgment motion. D.I. 228, 231.

The case has progressed too far to let the only named plaintiffs with standing withdraw.

*Fourth*, for all the reasons covered above, plaintiffs have not diligently prosecuted this case. They conducted no expert discovery. They inundated the Court with requests to reopen fact discovery, even though I had already denied those requests many times. Taken together, these factors weigh against voluntary dismissal.

Plaintiffs argue that Dresser, Ritter, and Thompson would be severely prejudiced by having to litigate without being able to conduct discovery. D.I. 228 at 22. But they voluntarily joined the case *after* fact discovery closed. *Id.* And their lawyers had plenty of time to conduct expert discovery after they joined but failed to do so. Plaintiffs act surprised that I refused to reopen fact discovery. But I had told them many times that I was not inclined to do so. *See, e.g.*, D.I. 148 ("I am not inclined to grant a blanket discovery extension …."); D.I. 195 ("I am still not inclined to grant a blanket discovery extension."). I deny plaintiffs' request to dismiss the newly added plaintiffs.

\* \* \* \* \*

Courts grant motions for reconsideration when something new comes up or they badly erred. Neither occurred here. Plaintiffs instead try to use this extraordinary motion to reraise arguments that I have already rejected many times. So I deny plaintiffs' motion to reconsider my discovery order. I also deny plaintiffs' motion to dismiss the newly added plaintiffs voluntarily.

14