**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, AMELIA RODRIGUEZ, RICHARD DRESSER, ALIKI MARINOS, ROBERT RITTER, FRED SPAGAT, STEVEN TALMONTAS, TRACI THOMPSON, JEFFREY WHALEN, MICHELLE WHALEN, and DONNA WINANDY on behalf of themselves and all other persons similarly situated, known and unknown, | |
| Plaintiffs, | Case No. 1:20-cv-01399-SB |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

**BRIEF OF DEFENDANT AMAZON WEB SERVICES, INC. IN SUPPORT OF ITS**
**MOTION TO ENJOIN STATE COURT PROCEEDINGS**

Dated: November 6, 2024

Beth Herrington (admitted pro hac vice)
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
(312) 324-1000
beth.herrington@morganlewis.com

Ari M. Selman (admitted pro hac vice)
101 Park Avenue
New York, NY 10178
(202) 309-6168
ari.selman@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web Services, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 1

ARGUMENT .............................................................................................................. 5

    I.       LEGAL STANDARD .................................................................................. 5

    II.     THE COURT SHOULD PROHIBIT RELITIGATION OF PLAINTIFFS' SECTION 15(D) CLAIM IN STATE COURT ...................................................... 7

    III.    THE COURT SHOULD PROHIBIT RELITIGATION OF WHETHER THE THREE ORIGINAL PLAINTIFFS WERE VOICE AUTHENTICATED .......................................................................................... 8

    IV.    THE COURT SHOULD PROHIBIT RELITIGATION OF THE COURT'S SUMMARY JUDGMENT RULINGS ............................................ 15

        A.     The Court Should Bar Relitigation of Its Extraterritoriality Ruling. ........ 15

        B.     The Court Should Bar Relitigation of Its Ruling that AWS Never Obtained Any Biometric Data. ............................................................... 18

    V.     ADDITIONAL CONSIDERATIONS SUPPORT THE PROPOSED INJUNCTION ......................................................................................... 20

CONCLUSION .......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agnes ex rel. Agnes v. E.I. Du Pont De Nemours & Co.*,
  2011 WL 1322043 (D.N.J. Mar. 31, 2011)................................................................20

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
  2011 WL 6046737 (E.D. Pa. Dec. 6, 2011)................................................................8

*In re Am. Invs. Life Ins. Co. Annuity Mktg. And Sales Pracs. Litig.*,
  715 F. Supp. 2d 610 (E.D. Pa. 2010)........................................................................20

*Aptim Corp. v. McCall*,
  888 F.3d 129 (5th Cir. 2018) ....................................................................................14

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl.
  Cnty.*,
  988 F. Supp. 486 (D.N.J. 1997) ....................................................................6, 19, 20

*Ballenger v. Mobil Oil Corp.*,
  138 F. App'x 615 (5th Cir. 2005) ..............................................................................20

*Bhavilai v. Microsoft Corp.*,
  716 F. Supp. 3d 640 (N.D. Ill. 2024) ..................................................................13, 18

*Butt v. United Bhd. of Carpenters & Joiners of Am.*,
  999 F.3d 882 (3d Cir. 2021)........................................................................................6

*CardioNet, LLC v. ScottCare Corp.*,
  325 F. Supp. 3d 607 (E.D. Pa. 2018) ..........................................................................7

*Carlough v. Amchem Prod., Inc.*,
  1993 WL 144901 (E.D. Pa. May 5, 1993), *aff'd*, 10 F.3d 189 (3d Cir. 1993) .......20

*Churchill v. Star Enters.*,
  183 F.3d 184 (3d Cir. 1999)........................................................................................7

*Daewoo Elecs. Corp. of Am. v. W. Auto Supply Co.*,
  975 F.2d 474 (8th Cir. 1992) ................................................................................8, 19

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002)......................................................................................19

*In re Earned Cap. Corp.*,
  393 B.R. 362 (Bankr. W.D. Pa. 2008) ........................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Erie Indem. Co. v. Stephenson*,
2024 WL 844370 (W.D. Pa. Feb. 28, 2024) ....................................................8, 20

*Gilgallon v. Cnty. of Hudson*,
2006 WL 20519 (D.N.J. Jan. 4, 2006) ....................................................7, 8, 13, 20

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) .................................................................18

*Herrmann v. Gutterguard, Inc.*,
2010 WL 11507993 (N.D. Ga. Sept. 17, 2010) ..................................................13

*In re: Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*,
2015 WL 7575910 (E.D. Pa. Nov. 25, 2015) .................................................5, 20

*J. R. Metzger, Inc. v. Mackin*,
1986 WL 769 (E.D. Pa. Jan. 13, 1986) ................................................................7

*Jacobs v. Hanwha Techwin Am., Inc.*,
2021 WL 3172967 (N.D. Ill. July 27, 2021) .......................................................18

*Jeffreys v. Teamsters Union Local 1150*,
28 F. App'x. 92 (2d Cir. 2002) ............................................................................17

*Jenkins v. Kansas City Missouri Sch. Dist.*,
516 F.3d 1074 (8th Cir. 2008) ...............................................................................6

*Kaplan v. Reed Smith LLP*,
919 F.3d 154 (2d Cir. 2019) ................................................................................19

*Kaplan v. S.A.C. Capital Advisors*,
2017 WL 6403087 (S.D.N.Y. Nov. 16, 2017) ...............................................14, 17

*Larson v. AT&T Mobility LLC*,
2011 WL 1085255 (D.N.J. Mar. 21, 2011) .................................................15, 16, 20

*In re Metro. Life Ins. Co. Sales Pracs. Litig.*,
2011 WL 5509463 (W.D. Pa. Nov. 10, 2011) .......................................................5

*Montesa v. Schwartz*,
2016 WL 8140048 (S.D.N.Y. Jan. 13, 2016) ......................................................19

*Next Level Communications v. DSC Communications Corp.*,
179 F.3d 244 (5th Cir. 1999) ..........................................................................14, 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Philadelphia Nat. Bank v. McGuckin*,
   1990 WL 201496 (E.D. Pa. Dec. 7, 1990) ............................................................8

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
   261 F.3d 355 (3d Cir. 2001) ..................................................................6, 7, 20

*Quintero v. Klaveness Ship Lines*,
   914 F.2d 717 (5th Cir. 1990) ..............................................................................14

*Se. Pennsylvania Transp. Auth. v. Pennsylvania Pub. Util. Comm'n*,
   210 F. Supp. 2d 689 (E.D. Pa. 2002) ..............................................................6, 7

*Sheridan v. NGK Metals Corp.*,
   609 F.3d 239 (3d Cir. 2010) ..................................................................................7

*Smith v. Woosley*,
   399 F.3d 428 (2d Cir. 2005) ..................................................................................6

*Thomas v. Powell*,
   247 F.3d 260 (D.C. Cir. 2001) ..................................................................... *passim*

*Winkler v. Eli Lilly & Co.*,
   101 F.3d 1196 (7th Cir. 1996) ............................................................................19

*Wyly v. Weiss*,
   697 F.3d 131 (2d Cir. 2012) ................................................................................17

**Statutes**

735 ILCS 5/13-217 ......................................................................................................5

28 U.S.C. § 1651 ............................................................................................... passim

28 U.S.C. § 2283 ............................................................................................... passim

**INTRODUCTION**

After voluminous discovery, including dozens of document requests and interrogatories, more than 1,300 pages of testimony, and AWS's production of more than 36,000 pages of records, and after extensive motion practice, including multiple motions to dismiss, motions for judgment on the pleadings and for summary judgment, and countless letter briefs, a critical issue remains: Are Plaintiffs entitled to a complete do-over of the last four years of litigation in state court?

In their Illinois state court action, which is just getting underway, Plaintiffs have laid bare their plans to do just that. There, they hope to relitigate this Court's rulings anew. Plaintiffs have made clear they will try to undo: (i) this Court's entry of judgment on their Section 15(d) claim; (ii) its determination that none of the Original Plaintiffs (Christine McGoveran, Amelia Rodriguez, and Joseph Valentine)—*who are the sole Plaintiffs in the Illinois action*—were ever subject to Pindrop's voice authentication technology; and (iii) its rulings on extraterritoriality and that AWS never collected any biometric data from callers to John Hancock. Plaintiffs' tactic, if permitted, would waste judicial and party resources on relitigation of issues this Court conclusively resolved, risk potentially inconsistent judgments, and make a mockery of proceedings in this Court over the last four years. To prevent this result, the Courts should exercise its broad powers under the All Writs Act and Anti-Injunction Act to prohibit Plaintiffs' collateral attack on its rulings.

**BACKGROUND**

A.    **Illinois I**

In 2019, Plaintiffs McGoveran, Rodriguez, and Valentine (the "Original Plaintiffs" or the "Illinois Plaintiffs") sued AWS in state court, alleging violations of Sections 15(a), (b), (c), and (d) of the Illinois Biometric Information Privacy Act ("BIPA"). Following removal to federal court, their suit was dismissed on jurisdictional grounds. D.I. 217 at 2.

B. **The Delaware Action**

The Original Plaintiffs then re-filed their BIPA action in this Court, alleging violations of Sections 15(a), (b), (c), and (d). *Id*. at 3; D.I. 1. This Court dismissed the complaint on extra-territoriality grounds ("Dismissal Order I") because it was "devoid of any allegations involving conduct that occurred 'primarily and substantially' in Illinois." D.I. 34 at 12.

Plaintiffs amended their complaint (the "FAC"), and AWS again moved to dismiss. D.I. 47, 50, 58. In its ensuing order (the "Dismissal Order II"), this Court dismissed Plaintiffs' Section 15(d) claim because Plaintiffs failed to allege facts establishing that AWS disseminated a "voiceprint" or "information derived from a voiceprint." D.I. 74 at 23; *see* D.I. 217 at 3. The Court provided Plaintiffs with a "detailed blueprint" of required steps to state a claim and granted Plaintiffs leave to amend their pleadings without need to file a formal motion. D.I. 269 at 6-7; D.I. 74 at 23. The Court also dismissed Plaintiffs' Section 15(a) and (c) claims on standing grounds.

In April 2024, Plaintiffs filed a Second Amended Complaint ("SAC," D.I. 175), adding nine new Plaintiffs and asserting BIPA Sections 15(b) and (d) claims. *See* SAC ¶¶ 45, 105-106, 220-25; D.I. 217 at 5. Fact discovery closed on March 15, 2024, D.I. 81, § 4(a), and the Court denied Plaintiffs' request to reopen discovery, for reconsideration, and to voluntarily dismiss newly-added Plaintiffs Robert Ritter, Richard Dresser, and Traci Thompson. D.I. 206, 275, 276. In its reconsideration order, the Court chastised Plaintiffs for "seek[ing] to remove these three people from the case so that they can forum shop to a more favorable venue." D.I. 275 at 12.

In March 2024, this Court directed targeted discovery and briefing "to assure the court that each of the twelve named Plaintiffs had a call which was authenticated with Pindrop's technology while in Illinois." D.I. 171, 181, 187, 188, 189, 190, 193, 194. In their ensuing court filings (D.I. 185 at 3; D.I. 190 at 1; D.I. 256 at 2, 4, 10), Plaintiffs acknowledged that ***none*** of the three Original

2

Plaintiffs was ever subject to Pindrop's voice authentication technology. *See* D.I. 232 at 22. This Court agreed. D.I. 195. Accordingly, counsel confirmed in writing to AWS that they were ***not*** pursuing claims on behalf of the three Original Plaintiffs in their federal action, and that they would solely be pursuing claims on behalf of three newly-added Plaintiffs. D.I. 233-11.

In April 2024, AWS answered the SAC (D.I. 180), and, in July 2024, moved for judgment on the pleadings on Plaintiffs' Section 15(d) claim. D.I. 217.   On October 16, 2024, this Court entered judgment on the pleadings on Plaintiffs' Section 15(d) claim "without leave to amend" ("MJOP Order"). D.I. 269; D.I. 270.   The Court concluded that Plaintiffs rehashed the same "legally flawed" theory this Court previously rejected, and that, by "replead[ing] the same claim without any substantive changes," they had "utterly ignored th[e] blueprint" provided by the Court. D.I. 269 at 1-3, 6; D.I. 270.

In its MJOP Order, the Court again chastised Plaintiffs for forum shopping. D.I. 269 at 4 (Plaintiffs "began their case here, lost, and then ran off to state court."); *id*. at 5 (noting that the "federal jurisdiction preceded state jurisdiction by years").   Accordingly, the Court rejected the various abstention and preclusion doctrines Plaintiffs "dredge[d] up" to evade federal adjudication of their claim. D.I. 269 at 4-6.  Rejecting Plaintiffs' collateral estoppel argument, the Court stated,

> Plaintiffs' last theory is issue preclusion. They argue that because Amazon "moved to dismiss the Section 15(d) claim…and the Illinois court expressly rejected its arguments," I cannot grant Amazon judgment on the pleadings. D.I. 223 at 8. Again, this argument misses the mark. The state-court litigation began after I ruled on plaintiffs' Section 15(d) claim, and there has not been "a final judgment on the merits.  So issue preclusion does not apply.

D.I. 269 at 5-6 (citations removed).

The MJOP Order also affirmed that ***none*** of the three Original Plaintiffs was ever subject to Pindrop's voice authentication technology and, therefore, Dresser, Ritter, and Thompson "***are the only three plaintiffs who have shown standing***." D.I. 275 at 13 (citing D.I. 195).

Notwithstanding this Court's entry of judgment without leave to amend, the Original Plaintiffs refused to agree to withdraw the Section 15(d) claim pending in state court.  *See* Ex. 3.

On October 30, the Court granted AWS summary judgment ("MSJ Order" or "Op.") on Plaintiffs' Section 15(b) claim because: (i) "there is no indication" AWS "did anything in Illinois"; and (ii) AWS never "obtained any voiceprints or other biometric identifiers."  D.I. 283, 284.

## C.  Illinois II

Concluding they could not cure the fatal pleading defects this Court identified, the three Original Plaintiffs—McGoveran, Rodriguez, and Valentine—refiled their Section 15(d) claims, as well as their Section 15(a) and (c) claims, in Illinois state court in May 2023.  D.I. 217-1 (the "Illinois Action" or "Compl.").  As support, Plaintiffs relied on the same basic allegations and theory advanced in the federal action—that AWS was liable under BIPA because Plaintiffs were voice authenticated using Pindrop's technology on calls handled by Amazon Connect.  *Id*. ¶ 146.

Plaintiffs' Section 15(d) claims in their state and federal action also were identical in all material respects.  *Compare id.* ¶¶ 169-174 *with* SAC ¶¶ 220-25.   Nonetheless, in October 2023, Judge Sarah Smith entered *verbatim* a lengthy order prepared by Plaintiffs, denying AWS's motion to dismiss their Section 15(d) claim.  D.I. 223-1 at 3.

While the Delaware Court had found—and the Original Plaintiffs expressly acknowledged in their federal action—that they were never subject to Pindrop's voice authentication technology, the Original Plaintiffs told Judge Smith in their state court proceedings the *opposite* was true.  To convince the state court to compel expansive discovery from AWS, the Original Plaintiffs assured Judge Smith that they had successfully "*demonstrated that they were voice authenticated in the companion federal action by having their voiceprints collected by third-party Pindrop Security, Inc.*"  D.I. 245-1 at 2.  Apart from this blatant misrepresentation, the Original Plaintiffs never

disclosed to Judge Smith this Court's ruling—and their own admission in their federal action—that they were *never* voice authenticated to begin with—and thus could not have cognizable BIPA claims. *Id*. Instead, the Original Plaintiffs continued zealously to prosecute their BIPA claims in the Illinois Action and to seek broad discovery from AWS to support them—fully aware they were never subject to Pindrop's voice authentication technology to begin with.[1]  *Id*. at 3.

In May 2024, AWS notified counsel that their continued prosecution of BIPA claims on behalf of the Original Plaintiffs in their Illinois Action violated Illinois Supreme Court Rule 137 and was sanctionable. Ex. 1. Counsel refused to withdraw their BIPA claims and ignored AWS's request to "explain why—to the best of your knowledge, information, and belief—the allegations regarding the Original Plaintiffs are well grounded in fact." *Id*. Instead, the Original Plaintiffs have continued prosecuting their BIPA claims in state court. Accordingly, an injunction barring Plaintiffs' relitigation of this Court's rulings in state court is now necessary.

## ARGUMENT

## I.  LEGAL STANDARD

The All Writs Act ("AWA") gives federal courts "broad powers" to "protect their own judgments," *In re Metro. Life Ins. Co. Sales Pracs. Litig.*, 2011 WL 5509463, at *1 (W.D. Pa. Nov. 10, 2011), including by issuing "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. While the Anti-Injunction Act (the "AIA") limits certain of those powers, it includes an explicit exception for injunctions necessary to "protect or effectuate [federal court] judgments." *In re: Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2015 WL 7575910, at *2 (E.D. Pa. Nov. 25, 2015) (citing 28 U.S.C. § 2283).

---

[1] AWS's motion for judgment on the pleadings based on Plaintiffs' violation of the Illinois single-refiling rule under 735 ILCS 5/13-217 is pending in the Illinois Action; discovery is stayed pending its resolution.

Under this so-called "relitigation exception," federal courts may "prevent state litigation of an issue that previously was presented to, and decided by, the federal court." *Se. Pennsylvania Transp. Auth. v. Pennsylvania Pub. Util. Comm'n*, 210 F. Supp. 2d 689, 712 (E.D. Pa. 2002). "[T]o protect the integrity of a federal court order," *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 368 (3d Cir. 2001), an injunction may issue at any time "from the institution" of state proceedings "to the close of the final process." *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*, 988 F. Supp. 486, 495 (D.N.J. 1997).

This preemptive remedy serves an important purpose: to "protect [federal] judgments against relitigation in state courts, rather than leave successful federal court litigants to the assertion of collateral estoppel defenses in subsequent state court actions." *Smith v. Woosley*, 399 F.3d 428, 434 (2d Cir. 2005). This "preemptive strike" avoids the need for federal litigants to "assert prior adjudication defenses in a state court when faced with claims that have already been rejected in a federal court." *Id.* Otherwise, "[i]f such defenses were unjustifiably rejected [by the state court], the only federal recourse . . . would be the uncertain prospect of certiorari review by the United States Supreme Court." *Id.*

Finally, "[w]hile a district court's jurisdiction typically ends when a case is closed and judgment entered, a district court retains ancillary jurisdiction to manage its proceedings, vindicate its authority, and effectuate its decrees." *Jenkins v. Kansas City Missouri Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008); *Butt v. United Bhd. of Carpenters & Joiners of Am.*, 999 F.3d 882, 889 (3d Cir. 2021) (court has ancillary jurisdiction to "enforce its judgments" "even where jurisdiction was not explicitly retained" after "disposition of the underlying case").

## II.    THE COURT SHOULD PROHIBIT RELITIGATION OF PLAINTIFFS' SECTION 15(D) CLAIM IN STATE COURT

An injunction under the relitigation exception of the AIA is necessary because Plaintiffs continue to prosecute their Section 15(d) claim in state court, despite this Court's entry of final judgment without leave to amend on that claim.

The relitigation exception in the AIA is "founded in the well-recognized concepts of res judicata and collateral estoppel." *Gilgallon v. Cnty. of Hudson*, 2006 WL 20519, at *3 (D.N.J. Jan. 4, 2006). It applies where, "because of res judicata," the state court "should not hear a case, but does so anyway." *Se. Pennsylvania Transp. Auth.*, 210 F. Supp. 2d at 712; *Prudential*, 314 F.3d at 104 (enjoining state court litigation "barred by res judicata"). Under res judicata, a final judgment on the merits "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999). The doctrine has three elements: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties []; and (3) a subsequent suit based on the same causes of action." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 259–60 (3d Cir. 2010).

Here, these three requirements are easily met. This Court entered "final judgment" "without leave to amend" on Plaintiffs' Section 15(d) claim, D.I. 269 at 7; D.I. 270; D.I. 284[2], and the three Illinois Plaintiffs also are Plaintiffs in this action. *See* Compl. ¶¶ 6-8; SAC ¶¶ 6-8. Finally, the Illinois Plaintiffs assert the same cause of action under Section 15(d) in both suits.[3]

---

[2] *See, e.g.*, *J. R. Metzger, Inc. v. Mackin*, 1986 WL 769, at *3 (E.D. Pa. Jan. 13, 1986) (entry of judgment on the pleadings was a valid final judgment for res judicata purposes); *CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607, 608, 611 (E.D. Pa. 2018) (entry of judgment on the pleadings on two asserted claims "constitutes a final judgment for collateral estoppel purposes because the Parties were fully heard on the issues," and because the court "issued well-reasoned opinions, and although the orders were not immediately appealable, Plaintiffs have had a full and fair opportunity to litigate their claims").

[3] *Compare* Compl. ¶¶ 169-174 *with* SAC ¶¶ 220-25. In fact, both actions assert the **same** claim, by the **same** Plaintiffs, against the **same** Defendant (*compare* Compl. ¶ 170 *with* SAC ¶ 221), based on the **same** allegedly prohibited disclosures (*compare* Compl. ¶¶ 33, 79-80, 169-174 *with* SAC ¶¶ ¶¶ 45, 105-106, 220-

Here, the relitigation risk is particularly acute because Plaintiffs rejected AWS's request promptly to withdraw the Section 15(d) claim "now pending in Madison County, Illinois state court."  D.I. 223 at 1; Ex. 3; *see, e.g.*, *Gilgallon*, 2006 WL 20519, at *3 (enjoining state court proceeding that "restates prior claims" that were "previously decided by this Court"); *Philadelphia Nat. Bank v. McGuckin*, 1990 WL 201496, at *3 (E.D. Pa. Dec. 7, 1990) (enjoining state court litigation of "exact same claims" asserted in "earlier federal action"); *In re Earned Cap. Corp.*, 393 B.R. 362, 371 (Bankr. W.D. Pa. 2008) (enjoining state court litigation of "identical" claim "fully adjudicated" in federal court).

Finally, enjoining Plaintiffs' relitigation of their Section 15(d) claim would serve the relitigation exception's core aims—including preventing "the harassment of federal court litigants by repetitive state court proceedings," "state litigation of an issue [] previously decided," *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 2011 WL 6046737, at *5 (E.D. Pa. Dec. 6, 2011), and "the costly and judicially wasteful redetermination of issues."  *Daewoo Elecs. Corp. of Am. v. W. Auto Supply Co.*, 975 F.2d 474, 477 (8th Cir. 1992).  Here, the associated "cost and vexation" to AWS is particularly great because Plaintiffs have propounded 42 broad document requests, 20 Interrogatories, and a lengthy bill of particulars, and filed a motion to compel, to advance, *inter alia*, their Section 15(d) claim in the Illinois Action.  D.I. 245-1 at 3; *Erie Indem. Co. v. Stephenson*, 2024 WL 844370, at *5 (W.D. Pa. Feb. 28, 2024); D.I. 245-1.  Accordingly, this Court should enjoin Plaintiffs' relitigation of their Section 15(d) claim in state court.

## III.    THE COURT SHOULD PROHIBIT RELITIGATION OF WHETHER THE THREE ORIGINAL PLAINTIFFS WERE VOICE AUTHENTICATED

An injunction also is needed to prevent the Original Plaintiffs from undoing in state court

---

25), made during the ***same*** period (*compare* Compl. ¶ 146 *with* SAC ¶ 188), causing the ***same*** alleged injury (*compare* Compl. ¶¶ 138-145 *with* SAC ¶¶ 179-187), and seeking the ***same*** relief.  *Compare* Compl., Prayer for Relief *with* SAC, Prayer for Relief.  All emphases herein are AWS's.

this Court's ruling that they were never subject to Pindrop's voice authentication technology.

Because the relitigation exception is rooted in the "well-recognized concepts" of collateral estoppel, *Gilgallon*, 2006 WL 20519, at *3, it applies whenever "an *issue* is actually and necessarily determined by a court of competent jurisdiction." *Thomas v. Powell*, 247 F.3d 260, 262–63 (D.C. Cir. 2001). Here, this requirement is readily met. This Court ordered the parties to exchange targeted discovery and then brief whether each Plaintiff "had a call which was authenticated with Pindrop's technology while in Illinois." D.I. 171, 181, 187, 188, 189, 190, 193, 194. The Court then determined—and twice affirmed—that *none* of the three Original Plaintiffs (i.e., McGoveran, Rodriguez, and Valentine) was ever subject to Pindrop's voice authentication technology and, therefore, *none* had standing to sue under BIPA. First, on July 2, 2024, this Court determined that only newly-added Plaintiffs Ritter, Dresser, and Thompson were subject to Pindrop's voice authentication technology. D.I. 195; *see* D.I. 275 at 13 (*citing* D.I. 195) (confirming they "*are the only three plaintiffs who have shown standing*"). The Original Plaintiffs did not dispute this determination, which was supported by the undisputed discovery exchanged.[4] Second, in its MJOP Order on October 16, 2024, the Court reiterated that *none* of the Original Plaintiffs was ever voice authenticated using Pindrop's technology, and that Dresser, Ritter, and Thompson, therefore, are "*the only named plaintiffs with standing.*" D.I. 275 at 2. Finally, in its MSJ Order, the Court affirmed this ruling a third time. Op. at 10; D.I. 284.

However, the Original Plaintiffs improperly attempt to relitigate this Court's rulings in state court. There, the three Original Plaintiffs—*who are the only Plaintiffs in the Illinois Action*—continue to allege that they were subject to Pindrop's voice authentication technology. *See* Compl.

---

[4] *See* D.I. 176-1 ¶ 8; D.I. 176-1 ¶ 8 (original Plaintiffs' phone numbers not voice authenticated); D.I. 176-2 ¶¶ 3-7 (same); D.I. 233-3, St. John 5/13/24 Dep. Tr. 54:12-19, 55:13-22, 58:13-23, 84:8-86:15, 123:15-124:11, 128:11-15 ("-2" "-100", or "null" values denote Pindrop's voice engine was not run).

¶¶ 1, 3, 90-98.  And based on those discredited allegations, the Original Plaintiffs continue to assert in state court that AWS "possess[ed]" and "profited" from their voice biometric data, in violation of BIPA Section 15(a) and (c).  *See id.* ¶¶ 116, 123, 143, 154-168.

In addition to peddling these specious allegations, the Original Plaintiffs have misrepresented this Court's prior rulings to circumvent them.  Since July 2, the Original Plaintiffs have *never* disclosed to Judge Smith this Court's determination that they were never voice authenticated to begin with.  Nor have the three Original Plaintiffs ever disclosed to Judge Smith that, based on the targeted discovery exchanged in their federal case, they *abandoned* their BIPA claims in that proceeding.  Instead, to convince Judge Smith to compel expansive discovery from AWS, the Original Plaintiffs told Judge Smith the *opposite* was true—i.e., that they had *successfully demonstrated* in their federal action that they were voice authenticated using Pindrop's technology:

> ***Even after Plaintiffs demonstrated that they were voice authenticated in the companion federal action by having their voiceprints collected by third-party Pindrop Security, Inc. ("Pindrop")*** on Defendant's servers, Defendant has resisted every attempt to obtain its documentation, depose its employees, and engage in meaningful, substantive discovery, in order to avoid liability under the Illinois Biometric Information Privacy Act ("BIPA").

D.I. 245-1 at 2 (Aug. 8, 2024).  In addition to blatantly mischaracterizing this Court's rulings to Judge Smith, the Original Plaintiffs submitted a "compendium" of key federal decisions with their motion to compel—but conspicuously omitted this Court's rulings that they were never subject to Pindrop's voice authentication technology in the first place.  D.I. 245-1 at 7 (Aug. 8, 2024).  The Original Plaintiffs likewise omitted any mention of those rulings in the opposition to AWS's motion for judgment on the pleadings they recently submitted to Judge Smith.  Ex. 2, at 3-4 (Aug. 20, 2024).  These actions violate counsel's duty of candor to the court and underscore the importance of the injunction sought to prevent Plaintiffs' end-run around this Court's rulings.

Counsel's state court filings not only misstate this Court's rulings but also directly conflict with their own advocacy in their federal action. Indeed, the Original Plaintiffs speak out of both sides of their mouth, depending on the court in which they are litigating. On the one hand, in their federal action, the Original Plaintiffs admit that they were never subject to Pindrop's voice authentication technology. *See* D.I. 232 at 22. For example, following targeted discovery, the Original Plaintiffs acknowledged to this Court that *only* newly-added Plaintiffs Ritter, Dresser, and Thompson "had their biometric voiceprints captured." D.I. 228 at 19; *see* D.I. 185 at 3; D.I. 190 at 1; D.I. 256 at 2, 4 (solely pursuing claims on behalf of Plaintiffs Ritter, Dresser, and Thompson). Likewise, Plaintiffs' counsel confirmed in writing to AWS that they were solely going to "proceed" with those three newly-added Plaintiffs' claims in this action. D.I. 233-11. To remove any theoretical doubt, Plaintiffs confirmed summary judgment should be granted for AWS on the Original Plaintiffs' BIPA claims because they were never voice authenticated to begin with. *See* D.I. 232 at 22; D.I. 256 at 10 (confirming that Plaintiffs "***do not dispute that Defendant's summary judgment motion can be granted*** as to the remaining nine Plaintiffs" if Ritter, Dresser, and Thompson "are voluntarily dismissed").

But Plaintiffs' state court proceedings are an entirely different story. In their Illinois Action, the Original Plaintiffs zealously advance the *opposite* position—that they were voice authenticated, in violation of BIPA. The three Original Plaintiffs recently told Judge Smith, for example, that AWS violated BIPA Sections 15(a) and (c) through its "collection," "possession," and "profit[ing]" from "***Plaintiffs' Biometric Data***." D.I. 245-1 at 4-5 (Aug. 8, 2024). The Original Plaintiffs knew these assertions lacked a good-faith, factual basis and were directly contrary to this Court's rulings, to their admissions in their federal action, and to the undisputed discovery exchanged. But Plaintiffs made them anyway to avoid summary dismissal of their state

11

court action.  Even more troubling, these falsehoods were advanced to convince Judge Smith to grant sweeping discovery to support what the Original Plaintiffs knew were baseless BIPA claims—including 42 document requests, 20 Interrogatories, and lengthy bill of particulars.  D.I. 245-1 at 3.  Given the Original Plaintiffs' knowledge that they were ***never*** subject to Pindrop's voice authentication technology to begin with, their only conceivable purpose for propounding this burdensome discovery—and then moving to compel on it—was to harass AWS.

An injunction is necessary for yet another reason.  Since May 2024, the Original Plaintiffs have rejected AWS's requests to dismiss their BIPA claims and ignored entirely AWS's warning that continued prosecution of their frivolous claims in the Illinois Action violates Illinois Supreme Court Rule 137, requiring a submitting attorney to certify that its pleadings and motions are "well grounded in fact" following "reasonably inquiry."  Ex. 1 (May 23, 2024).  And since May 2024, the Original Plaintiffs have likewise ignored AWS's request that they "explain why—to the best of [their] knowledge, information, and belief—the allegations regarding the Original Plaintiffs are well grounded in fact."  *Id*.  An injunction is necessary, therefore, to prevent relitigation in state court of this Court's rulings that none of the Original Plaintiffs was ever voice authenticated.

Here, a federal injunction is doubly warranted because Plaintiffs have misrepresented this Court's rulings in yet other ways in their state court filings.  For example, to convince Judge Smith to compel expansive discovery from AWS, Plaintiffs repeated their baseless accusations that AWS breached its discovery duties.  *Compare* 245-1 at 1-3, 7-8 (alleging AWS "misrepresented to the federal district court that their production was substantially complete," made a "late and incomplete production in the Delaware case," and used "inadequate search terms and custodians and refus[ed] to work cooperatively with Plaintiffs") *with* D.I. 275 at 7 ("I found that plaintiffs had accused Amazon of lying and acting in bad faith without any proof.").  Further, Plaintiffs have

urged Judge Smith to compel expansive discovery from AWS because "[t]he production in the federal case remains incomplete."  D.I. 245-1 at 8; *compare* D.I. 228 at 16 (requesting permission to proceed in state court because "Plaintiffs cannot obtain" the discovery desired) *with* D.I. 275 at 12 (finding that "plaintiffs seek to remove these three people from the case so that they can forum shop to a more favorable venue" to pursue discovery the Court denied) *and with* Op. at 15 (Plaintiffs "have only themselves to blame for failing to conduct discovery diligently.").

This Court's rulings are also imperiled by Plaintiffs' continued litigation of their Section 15(a) and (c) claims.  While this Court did not expressly adjudicate those claims, an injunction on their prosecution is necessary, for three reasons.  *First*, this Court's determination that the Original Plaintiffs were never subject to Pindrop's voice authentication technology forecloses an essential element of Plaintiffs' Section 15(a) and (c) claims—i.e., that AWS possessed, and profited from, their biometric data.  *See* Compl. ¶¶ 156, 164; D.I. 74 at 6, 8; *Bhavilai v. Microsoft Corp.*, 716 F. Supp. 3d 640, 641 (N.D. Ill. 2024).  Because the Original Plaintiffs were never voice authenticated to begin with, AWS did not—and could not have—possessed and profited from their biometric data.  So, this Court's ruling forecloses the Original Plaintiffs' Section 15(a) and (c) claims.

Where, as here, plaintiffs "could not prevail because an essential element of [their] state cause of action ha[s] already been determined against [them] in the federal suit, the relitigation exception" applies and "permit[s] an injunction against the state proceedings."  *Powell*, 247 F.3d at 263 (relitigation exception applies "[e]ven if a federal court had not decided all the issues raised in the state court action"); *Herrmann v. Gutterguard, Inc.*, 2010 WL 11507993, at *3 (N.D. Ga. Sept. 17, 2010) (relitigation exception "does not require identity of the asserted claim[s]"; "[a]s long as the relevant issue was adjudicated in a previous action, it may not be relitigated by the same parties, even as part of a different claim"; and barring relitigation in state court of allegation

dismissed by federal court but "central" to separate claim asserted in state court); *Gilgallon*, 2006 WL 20519, at *3 (enjoining relitigation in state court of claim, where essential element of such claim was previously decided by federal court in context of resolving a different claim).

*Second*, the proposed injunction is necessary because relitigation is *certain*, not merely theoretical. Indeed, to have Section 15(a) and (c) claims *at all*, the Original Plaintiffs must undo this Court's ruling that they were never subject to Pindrop's voice authentication technology in the first place; otherwise, *there is no* BIPA violation. Courts routinely enjoin state court proceedings in this situation. *See Kaplan v. S.A.C. Capital Advisors*, 2017 WL 6403087, at *9-10 (S.D.N.Y. Nov. 16, 2017) (granting injunction because "[t]he amount of fees to which W&F was entitled was an issue that was litigated" in federal court action, and because state court claims would "*necessarily include*" relitigation of that same issue); *Next Level Communications v. DSC Communications Corp.*, 179 F.3d 244, 256-57 (5th Cir. 1999) (affirming injunction because "[t]he *issue* to be decided in [the state court action] will be the same, and thus it is irrelevant that the issue was decided" in the federal action in a different context).

*Third*, it is well-established that the relitigation exception applies, even where the "actual claims"—and even the "subject matter"—differ in the state and federal action. *Next Level Commc'ns LP*, 179 F.3d at 250. Indeed, the AIA "permits federal courts to enjoin state proceedings that raise a *different* cause of action" where, as here, state proceedings "threaten judgment in [a] federal proceeding." *Powell*, 247 F.3d at 263 (focusing on "whether, [] for the plaintiff to succeed in Superior Court, that court will have to rule upon an issue" that was "already decided by the federal district court"). That is precisely the situation here. A determination by Judge Smith that the Original Plaintiffs were voice authenticated—and that they therefore have cognizable Section 15(a) and (c) claims—would "undermine a federal judgment having preclusive

effect under the well-recognized concept of collateral estoppel" and entail "costly and judicially wasteful" proceedings. *Aptim Corp. v. McCall*, 888 F.3d 129, 145 (5th Cir. 2018); *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir. 1990).

## IV.    THE COURT SHOULD PROHIBIT RELITIGATION OF THE COURT'S SUMMARY JUDGMENT RULINGS

### A.    The Court Should Bar Relitigation of Its Extraterritoriality Ruling.

The relitigation exception also warrants an injunction barring relitigation by Plaintiffs and their counsel of this Court's summary judgment ruling that BIPA "does not apply to Amazon's extraterritorial activities," because "Amazon Connect had nothing to do with Illinois." Op. at 7, 12. The requested injunction is necessary, for four reasons.

*First*, Plaintiffs attempt to relitigate in their Illinois Action the same allegations this Court flatly rejected. In both actions, Plaintiffs argue that BIPA applies to AWS's extra-territorial conduct for the *same* reasons: (i) Amazon Connect uses Illinois servers (*compare* Compl. ¶¶ 67, 113-14 *with* SAC ¶¶ 140-41); (ii) John Hancock used AWS servers in Illinois for AWS services, such as Amazon Connect (*compare* Compl. ¶¶ 113-14 *with* SAC ¶¶ 140-41); (iii) AWS "directly" "reached into Illinois" to capture Plaintiffs' call audio without any intermediary (*compare* Compl. ¶¶ 13, 59, 61-63, 70-71, 75, 112, 128 *with* SAC ¶¶ 80-81, 100, 141); (iv) AWS accessed Plaintiffs' alleged voiceprints in Illinois (*compare* Compl. ¶¶ 72-73, 86-88 *with* SAC ¶¶ 140-41); and (v) Pindrop and AWS stored "voiceprints" on AWS servers in Illinois. *Compare* Compl. ¶¶ 53, 72 *with* SAC ¶¶ 98, 123-24, 149, 151-52. Given the identical allegations advanced in both actions, the relitigation exception applies with particular force.

*Second*, the proposed injunction is warranted under the relitigation exception because this Court previously considered—and expressly rejected—each above allegation, finding, "[d]iscovery clarified that [each] is not true." Op. at 8-11 ("Amazon Connect does not operate on

any servers in Illinois"); *see, e.g., id*. at 10 ("When those plaintiffs called, John Hancock's *phone carrier (AT&T)* routed their calls to Amazon Connect's servers in Northern Virginia"); *id*. at 11 ("All [AWS] did was receive calls (routed from AT&T) on its servers in Northern Virginia."); *id*. at 12 ("No Amazon employee in Illinois had access to any biometric data."); *id*. ("Amazon never stored any biometric identifiers"—much less in Illinois); *see Larson v. AT&T Mobility LLC*, 2011 WL 1085255, at *3 (D.N.J. Mar. 21, 2011) (enjoining relitigation in state court of issues "presented to and decided by a federal court").

*Third*, the proposed injunction is necessary because Plaintiffs improperly seek a do-over in Illinois state court of their arguments that their Illinois residence and dialing their phone from Illinois (*compare* SAC ¶¶ 80-81 *with* Compl. ¶¶ 61-62), and AWS's general corporate activities in Illinois (*compare* SAC ¶¶ 126-138 *with* Compl. ¶¶ 99-111), suffice to invoke BIPA. But this Court previously rejected those arguments as well. Op. at 12-13. Plaintiffs also improperly seek to undo in state court this Court's ruling that "Pindrop itself authenticates the caller, not Amazon." *Compare* Op. at 10 *with* Compl. ¶¶ 76, 129-130 (alleging AWS itself "performed biometric analysis to extract Biometric Data from Illinois citizens," in violation of Sections 15(a) and (c)).

*Fourth*, Plaintiffs' repeated attempts to circumvent this Court's rulings by racing to state court amplify the risk they will repeat this tactic. *See, e.g*., D.I. 269 at 4 (Plaintiffs "began their case here, lost, and then ran off to state court."); D.I. 275 at 12 (agreeing that "plaintiffs seek to remove these three people from the case so that they can forum shop to a more favorable venue").

Finally, to protect its ruling on extra-territoriality, it is necessary that this Court also enjoin Plaintiffs' litigation of their Section 15(a) and (c) claims. In its MSJ Order, this Court found that "Amazon Connect had nothing to do with Illinois," that "there is no indication . . . that [Amazon] did anything in Illinois," and that "[a]ll it did was receive calls (routed from AT&T) on its servers

in Northern Virginia." Op. at 7, 11-12. For these reasons, the Court concluded BIPA "does not apply to Amazon's extraterritorial activities." *Id*. These rulings bar Plaintiffs' Section 15(a) and (c) claims: as AWS did nothing in Illinois, *no provision* of BIPA applies.

Where, as here, plaintiffs "could not prevail because an essential element of [their] state cause of action"—i.e., that AWS did something in Illinois to trigger BIPA—"ha[s] already been determined against [them] in the federal suit, the relitigation exception" applies and "permit[s] an injunction against the state proceedings." *Powell*, 247 F.3d at 263; *Wyly v. Weiss*, 697 F.3d 131, 142 (2d Cir. 2012) (barring relitigation in state court of claim, where essential element of such claim was decided adversely to plaintiff by a federal court); *Jeffreys v. Teamsters Union Local 1150*, 28 F. App'x. 92, 93-94 (2d Cir. 2002) (affirming preclusion of an entire claim where an earlier ruling precluded an essential element of such claim).

Enjoining litigation of Plaintiffs' Section 15(a) and (c) claims is necessary for yet another reason. Absent an injunction, relitigation of this Court's extraterritoriality ruling is inevitable. That is because Plaintiffs Section 15(a) and (c) claims rely on the same extraterritoriality allegations as their Section 15(b) claims—which allegations this Court previously rejected, as discussed above. And because Plaintiffs must show that BIPA applies to have a BIPA claim *at all*, they *must* undo this Court's determination that "Amazon Connect had nothing to do with Illinois" and that BIPA "does not apply to Amazon's extraterritorial activities" (Op. at 7, 11-12); otherwise, *they have no BIPA claims*. Absent the proposed injunction, then, relitigation of this Court's extraterritoriality ruling in state court is certain. *See Kaplan*, 2017 WL 6403087, at *9-10 (enjoining state court proceedings because "[t]he amount of fees to which W&F was entitled was an issue that was litigated" in prior federal court action, and because state court claims would "necessarily include" relitigation of that same issue); *Next Level Commc'ns LP v. DSC Commc'ns*

17

*Corp.*, 179 F.3d at 256-57 (injunction on state court proceedings proper because "[t]he issue to be decided in [state court] will be the same, and thus it is irrelevant that the issue was decided" in the federal action in a different context).

**B.    The Court Should Bar Relitigation of Its Ruling that AWS Never Obtained <u>Any Biometric Data.</u>**

The relitigation exception also warrants an injunction, barring relitigation by Plaintiffs and their counsel of this Court's ruling that "Amazon *never* collected, captured, purchased, received through trade, or otherwise obtained any voiceprints or other biometric identifiers or information." Op. at 14-15.  The proposed injunction is necessary because Plaintiffs improperly seek to relitigate this fundamental ruling in state court.  In their Illinois Action, indeed, Plaintiffs allege the *opposite* is true—i.e., that AWS is "in possession of," "store[d]," and "profited from" biometric data, in violation of Section 15(a) and (c).  *See* Compl. ¶¶ 27-32, 72-76, 86-88, 116, 123, 156, 164.  An injunction is imperative to avoid wasting judicial and party resources on duplicative litigation and to prevent potentially inconsistent judgments on this foundational issue.

To protect this Court's judgment, enjoining Plaintiffs' litigation of their Section 15(a) and (c) claims also is necessary.  This conclusion follows because, to establish a violation of Section 15(a) and (c) *at all*, Plaintiffs must first show that AWS "possess[ed]" and "profit[ed]" from their biometric identifiers—i.e., that AWS obtained, accessed, and exercised control over their biometric data.  *See Bhavilai*, 716 F. Supp. 3d at 641 (dismissing Section 15(a) claim because "possession" requires defendant "*used or exercised [] control*" over plaintiffs' biometric data); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 963 (N.D. Ill. 2020) (dismissing Section 15(a) claim because "possession" requires defendant's "*access*" to plaintiff's biometric data); *accord Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021). But Plaintiffs cannot make *that* required showing because this Court already found that, based on

the specific manner in which Amazon Connect and AWS operate, AWS "*never* got any biometric identifier or information," "*never* made any voiceprints," "*never* stored any voiceprints," and *never* "had access to *any* biometric data." Op. at 12, 14.

Again, where, as here, plaintiffs "could not prevail because an essential element of [their] state cause of action"—i.e., that AWS got any biometric data—"ha[s] already been determined against [them] in the federal suit, the relitigation exception" applies and "permit[s] an injunction against the state proceedings." *Powell*, 247 F.3d at 263; *Montesa v. Schwartz*, 2016 WL 8140048, at *2 (S.D.N.Y. Jan. 13, 2016) (relitigation exception "may also bar entire claims where the issue precluded is an essential element of that claim"); *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019) (enjoining relitigation in state court because "an element of Reed Smith's unjust enrichment claim" is "identical to an issue that was raised, litigated, and actually decided").

Moreover, because proof that AWS possessed and profited from biometric data is essential to establish Section 15(a) and (c) claims, Plaintiffs also cannot prevail on those claims *unless* they successfully undo in the Illinois Action this Court's rulings that AWS "never got any biometric identifiers or information" in the first place. Op. at 14; Compl. ¶¶ 156, 164. Otherwise, *there is no Section 15(a) or (c) violation.* Because Plaintiffs' "success in [their] parallel state court action," however, would necessarily "make a nullity" of this Court's ruling that AWS "never got any biometric identifiers" (Op. at 14), an injunction is "proper." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996); *see Atl. Coast Demolition & Recycling, Inc.*, 988 F. Supp. at 494 (injunction power "well-established" where "the result of state court litigation may eviscerate the effect of a federal court's order"); *W. Auto Supply Co.*, 975 F.2d at 478 (affirming issuance of injunction "necessary to protect the district court's judgment"); *In re Diet Drugs*, 282 F.3d 220,

234 (3d Cir. 2002) (injunction permitted where "the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation").

## V.    ADDITIONAL CONSIDERATIONS SUPPORT THE PROPOSED INJUNCTION

Because "injunctions issued under the authority of the All–Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Fed. R. Civ. P. 65," *Carlough v. Amchem Prod., Inc*., 1993 WL 144901, at *8 (E.D. Pa. May 5, 1993), *aff'd*, 10 F.3d 189 (3d Cir. 1993), the Third Circuit has approved injunctions under the AWA without analyzing traditional equitable requirements.  *See Prudential*, 261 F.3d at 363-70; *Prudential*, 314 F.3d at 103-105; *Ballenger v. Mobil Oil Corp*., 138 F. App'x 615, 622 (5th Cir. 2005) (no "independent demonstration of irreparable harm or a lack of alternative remedies is necessary" under AIA).[5] But even if applicable, AWS readily meets the relevant standard because, as shown above, the injunction sought is "commensurate" with the risk "the court seeks to remedy," *Agnes ex rel. Agnes v. E.I. Du Pont De Nemours*, 2011 WL 1322043, at *10 (D.N.J. Mar. 31, 2011), and is necessary to avoid "irreparable harm"—including duplicative litigation, the possibility of inconsistent judgments, and the needless expenditure of resources by the parties and Judge Smith on relitigation of issues this Court already decided.  *Stephenson*, 2024 WL 844370, at *10.

## CONCLUSION

For these reasons, AWS requests that this Court: (i) prohibit Plaintiffs and their counsel from relitigating in the Illinois Action the above-described rulings, or maintaining and prosecuting their claims against Defendant under Section 15(a), (c), and (d) of BIPA; and (ii) enjoin further proceedings in the Illinois Action associated with such claims.

---

[5] Courts in this circuit thus routinely grant injunctions under the AIA without parsing traditional equitable considerations.  *See, e.g*., *Larson*, 2011 WL 1085255, at *3; *Imprelis Herbicide Mktg*., 2015 WL 7575910, at *2; *Gilgallon,* 2006 WL 20519, at *4; *Atl. Coast Demolition & Recycling, Inc*., 988 F. Supp. at 496; *In re Am. Invs. Life Ins. Co. Annuity Mktg. And Sales Pracs. Litig*., 715 F. Supp. 2d 610, 615 (E.D. Pa. 2010).

November 6, 2024

Beth Herrington (admitted *pro hac vice*)
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
(312) 324-1000
beth.herrington@morganlewis.com

Ari M. Selman (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
(202) 309-6168
ari.selman@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 North Market Street, Suite 2201
Wilmington, DE  19801
(302) 574-3000
jody.barillare@morganlewis.com

*Attorneys for Defendant Amazon Web
Services, Inc.*